UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AASYLEI LOGGERVALE, AASYLEI HARDGE-LOGGERVALE, and AAOTTAE LOGGERVALE, | No. C 20-04679 WHA |
| Plaintiffs, | |
| v. | **ORDER RE MOTION TO DISMISS** |
| COUNTY OF ALAMEDA, STEVEN HOLLAND, MONICA POPE, KEITH LEEPER, ANTHONY DESOUSA, CAMERON GALLOWAY, and DOES 1-50, inclusive, | |
| Defendants. | |

**INTRODUCTION**

In this Section 1983 action for unlawful seizure and search against sheriffs' deputies, defendants move to dismiss all claims. For the reasons that follow, the motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

In the morning of September 20, 2019, plaintiffs Aasylei Loggervale (Ms. Loggervale), Aasylei Hodge-Loggervale (Aasylei) and Aaottae Loggervale (Aaottae), parked at a Starbucks in Castro Valley, California. The latter two were Ms. Loggervale's daughters, Aaottae, then seventeen and Aayslei, then nineteen. Both were college students. The three had driven through the night from Las Vegas so the daughters could attend morning classes in the Bay

Area.  Their pause at Starbucks would have been a rest before the final stretch.  Ms. Loggervale parked in a handicapped parking space, with a visible placard on the rear-view mirror (Amd. Compl. ¶ 19).

All three are Black women (*id.* at ¶ 1).

The amended complaint alleges, without much detail, that Alameda County Sheriff's Deputy Steven Holland approached the vehicle.  He informed Ms. Loggervale, in the driver's seat, that the deputies were investigating early-morning break-ins.  The complaint alleges, moreover, that the suspects in these early-morning break-ins were Black *men* (*id*. ¶¶ 1, 19–20, 22).

"Soon after the encounter began," Aaottae allegedly began recording the exchange on her cell phone.  "At some point" Aasylei also recorded some of the encounter (*id.* ¶ 23).

Deputy Holland "indicated" that there had been auto break-ins in the area and asked Ms. Loggervale for her identification.  Ms. Loggervale did not believe she was required to produce identification and refused.  She verbally protested and asked Deputy Holland his reasons for continuing to question her.  Ms. Loggervale was fearful of engaging further "because, as a Black person," she feared that the encounter could result in harm to her or her daughters.  She wanted to end the contact.  Deputy Holland allegedly refused to explain, as did Deputy Pope.  Ms. Loggervale repeatedly denied any involvement with automobile crimes.  Plaintiffs never screamed, yelled, threatened or did anything that would have led a reasonable officer to become fearful, the amended complaint states.  They considered the deputies' actions to be harassment (*id.* at ¶¶ 22, 23).

When Aasylei exited the vehicle to use the bathroom,  Deputy Holland apparently stated that the deputies were detaining all three plaintiffs.  He told Aasylei to return to the car or she would be handcuffed and placed in Deputy Holland's patrol vehicle.  Plaintiffs continued to protest verbally.  Deputy Keith Leeper arrived shortly after Aasylei had exited the car.  Then Aaottae exited the vehicle.  Deputy Holland told Leeper, "They don't want to listen, so let's . . . detain these two."  Deputy Pope handcuffed Aaottae, and Deputy Leeper handcuffed Aasylei (*id.* at ¶¶ 23–25).

The allegations continue: Deputy Holland "physically removed Ms. Loggervale" from the car. Next, the respective deputies "forcibly placed all three" into separate patrol vehicles (*id.* at ¶ 26).

There they remained for over one hour (*id.* at ¶ 27). At some point, Aasylei informed Deputy Leeper she needed to use the bathroom, but he did not allow her to do so (*id.* at ¶ 26–27).

During the detention, one or more deputy searched plaintiffs' vehicle, including the trunk, and plaintiffs' purses, cell phones, and other property. Deputies took plaintiffs' identifications from their belongings (*id.* at ¶ 26).

At some point during the detention, Deputy Galloway arrived. "During that time," Aaottae called 911 to request help "to address the false arrest/detention." Deputy Galloway "grabbed" the cell phone from her hand and hung up the call (*id.* at ¶ 28).

"Eventually," Lt. Anthony DeSousa arrived and "learned the circumstances surrounding the detentions." He did not instruct anyone to halt or to release plaintiffs. Eventually, they released plaintiffs. Deputies issued no citations and no charges had been filed as of the amended complaint (*id.* at ¶ 29).

The amended complaint alleges that the deputies physically injured them (abrasions to wrists and arms), and caused physical pain, mental suffering, emotional distress, fear, and embarrassment (*id.* at ¶ 30).

The amended complaint names violations of 42 U.S.C. § 1983 (Fourth Amendment), 42 U.S.C. § 1983 (Fourteenth Amendment), 42 U.S.C. § 1983 (First Amendment), 42 U.S.C. § 1983 (*Monell* & supervisor liability), 42 U.S.C. § 1981, Cal. Civ. Code §§ 52.1 and 51.7, and tort claims (assault, battery, false imprisonment/arrest, invasion of privacy, negligence, and conversion).

Plaintiffs filed the instant action in July 2020. Plaintiffs amended once, as of right, in January 2021. The motion to dismiss followed, challenging "the entire action" (Br. at 5). This order follows full briefing and oral argument (telephonic due to COVID-19).

**ANALYSIS**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It must plead events that allow the court to draw a reasonable interference that the defendants are liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The district court accepts well-pled factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008).

1. **SECTION 1983 CLAIMS.**

Plaintiffs' first four claims for relief call out Fourth Amendment violations, race discrimination, retaliation for First Amendment protected speech, and excessive force, all under Section 1983. To state a Section 1983 claim, plaintiffs must show "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988).

The amended complaint details Section 1983 violations against individual deputies and a lieutenant of the Alameda County Sheriff's Office as well as the County of Alameda. Liability cannot attach under Section 1983 against public entities on a theory of *respondent superior*. Only narrow circumstances permit Section 1983 suits against governments. *See Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Therefore, this order analyzes the *Monell* claims separately. A similar narrow avenue applies to supervisory liability, which this order likewise addresses separately.

A. *SECTION 1983 CLAIMS AGAINST INDIVIDUAL DEPUTIES.*

Defendants claim that qualified immunity shields the deputies and lieutenant from liability for all four Section 1983 counts. Determining an officer's entitlement to qualified immunity involves a two-pronged inquiry. *First,* courts assess whether the factual allegations, viewed in the light most favorable to the plaintiff, demonstrate that the officer's conduct violated a constitutional right. *Second,* courts inquire about whether the right at issue was

4

clearly established at the time of the officer's conduct. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). In other words, "[q]ualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan,* 555 U.S. 223, 232 (2009). Here, defendants challenge only the second prong, arguing that the amended complaint does not demonstrate that the deputies and their lieutenant clearly violated the law.

### *(i)* **Fourteenth Amendment.**

Viewing the amended complaint in the light most favorable to plaintiffs, it alleges facts adequate to infer that Deputies Holland, Pope, and Leeper, under color of state law, "acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J,* 208 F.3d 736, 740 (9th Cir. 2000) (cleaned up).

The amended complaint states, "[C]hoosing to detain Plaintiffs . . . based on alleged actions" of Black male suspects violated the Fourteenth Amendment because no reasonable suspicion actually existed. Indeed, whatever burglary-related reason for approaching plaintiffs had existed evaporated when Deputies Holland and Pope got close enough to perceive plaintiffs' gender. Moreover, the amended complaint alleges that after the deputies saw plaintiffs' gender, the prolonged detention amounted to differential treatment on the basis of race. It reasons that deputies would not have detained white women on suspicion of being the *Black male* suspects deputies sought. The facts alleged support an inference of racial animus for Deputies Holland and Pope. All in all, justifying the detention of Black women on suspicion they were Black males adequately supports the allegation of discrimination at this stage (Amd. Compl. ¶¶ 30, 33, 39–41).

Plaintiffs had a clearly-established right to be free from intentional racial discrimination. The motion with respect to Deputies Holland and Pope is **DENIED**.

Deputies Leeper arrived later, and nothing currently in the complaint alleges that he knew the detention began with racial animus. The motion to dismiss with respect to Deputy Leeper is **GRANTED**.

5

### *(ii)* **Fourth Amendment.**

A detention's lawfulness hinges on reasonable suspicion. An arrest's turns on probable cause. The requisite fact-specific inquiries rest on "the facts available to the officer" at that time. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). A person is seized within the meaning of the Fourth Amendment "when a law enforcement officer, through coercion, physical force, or a show of authority, in some way restricts [his] liberty." *United States v. Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004) (cleaned up). This count alleges violations by all named defendants.

### *(a)* **Deputies Holland and Pope.**

Viewed in the light most favorable to plaintiffs, the amended complaint alleges facts sufficient to infer that these deputies violated plaintiffs' constitutional rights to be free from detention without reasonable suspicion and from unreasonable search. Both participated: Deputy Holland initially approached Ms. Loggervale. Deputy Pope, the complaint alleges, received the verbal protests, which started shortly after the encounter began. The two personally handcuffed two of the women and put each into respective patrol cars, where they remained for over an hour. "One or more deputies" allegedly searched plaintiffs' car (Amd. Compl. ¶¶ 20–27).

Defendants argue that the deputies had three grounds for reasonable suspicion: *first*, suspicion of auto burglaries by Black men; *second*, Ms. Loggervale's suspected violations of the Vehicle Code; and *third*, resisting arrest.

*First*, as discussed, the burglaries by men did not afford probable cause to arrest the women but it may have justified approaching the car up to the point the deputies realized there were women only inside, at which point suspicion evaporated. *See, e.g., Hutton v. City of Berkeley Police Dep't*, No. 13-CV-03407-JCS, 2014 WL 4674295, at *12–13 (N.D. Cal. Sept. 9, 2014) (Judge Joseph C. Spero).

*Second*, viewed in the light most favorable to plaintiffs, the amended complaint alleges facts supporting a detention that began *prior* to any request for identification. Notwithstanding the contact might have been consensual at one time, an encounter may graduate into a

6

1    detention as soon as a reasonable subject would not have felt free to leave. *See United States v.*
2    *Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004). The amended complaint leaves open this
3    possibility.
4    As to the request for identification, *Brown v. Texas*, 443 U.S. 47, 53 (1979), prohibits
5    officers from insisting on identification during an unlawful detention. The motion to dismiss
6    standard requires us to ask whether it was lawful for Deputy Holland to ask Ms. Loggervale for
7    her identification during such an illegal detention. *Brown v. Texas* answers in the negative,
8    thus Section 12951 cannot resuscitate probable cause. The handicap law, requiring production
9    of identification, also could not justify the interaction, at least at the pleading stage.
10   *Third*, the existence of probable cause for Penal Code Section 148 (resisting arrest)
11   should turn on the actual facts and not the pleadings. The Court will benefit from a summary
12   judgment record on the fact-dependent analyses of reasonable suspicion and probable cause
13   (regarding both the seizures and search). It will hopefully reveal the nature of the initial
14   approach, exactly what officers observed, and other important details on which these concepts
15   turn. The amended complaint plausibly alleges that defendants acting under color of law
16   violated plaintiffs' rights, satisfying Section 1983.
17   While a ruling on qualified immunity should be made early in the proceedings, this order
18   finds that there are sufficient allegations of a violation of plaintiffs' clearly-established
19   constitutional rights and thus cannot resolve the issue of qualified immunity in defendants'
20   favor at this point. *See Talada v. City of Martinez, Cal.,* C 08–02771 WHA, 2009 WL 382758,
21   *11 (N.D. Cal. Feb. 12, 2009) (Judge William Alsup). The motion to dismiss the Fourth
22   Amendment claims as to these deputies is **DENIED**.

*(b)    Deputy Leeper.*

24   Deputy Leeper may also be liable under the Fourth Amendment, based upon the amended
25   complaint. Deputy Leeper arrived soon after Aaottae exited the car. He personally handcuffed
26   one of the women and put her into a patrol car, where she remained for over an hour.
27   Deputy Leeper was entitled to rely on information derived from other officers (and
28   therefore the good faith exception to civil liability) if it was "reasonable" to do so. *Motley v.*

*Parks*, 432 F.3d 1072, 1081–82 (9th Cir. 2005)) (*overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (citing *United States v. Hensley,* 469 U.S. 221, 232–33 (1985)). Having not witnessed the lead-up to the interaction, a reasonable officer in his shoes could have believed the arrests were lawful thus-far, based on information he received from his colleagues. *See Mendocino Env't Ctr. V. Mendocino Cty.*, 192 F.3d 1283, 1294 (9th Cir. 1999) (cleaned up). The good faith exception shields him from liability. The Fourth Amendment claim against him is **DISMISSED**.

### *(c)  Deputy Galloway.*

This order concludes that the amended complaint does not adequately allege that Deputy Galloway is liable. He arrived after the arrests began, and the amended complaint does not allege he knew about the facts leading up to the arrest. Therefore, the good faith exception also shields him. The Fourth Amendment claim against him is **DISMISSED**.

### *(d)  Lt. DeSousa.*

Lt. DeSousa's case differs. Deputy Holland informed him of the "circumstances surrounding the detentions." He then failed to intervene, according to the amended complaint. The three women stayed handcuffed in patrol cars for over an hour, and he spoke to each while in the vehicles. He had ample "realistic opportunity" to intervene, at least on the pleading. *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000) (cleaned up) (Amd. Compl. ¶ 28–30).

Since liability may attach for a failure to intervene, this order does not reach the question of whether liability may attach, alternatively, for his "integral participat[ion]." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019). For the same reasons stated above with respect to Deputies Pope and Holland, qualified immunity does not shield Lt. DeSousa. The motion to dismiss as to Lt. DeSousa is **DENIED**.

### *(iii)  Excessive Force.*

Plaintiffs' first claim for relief alleges that Deputies Holland, Pope, Leeper, and Lt. DeSousa, under color of state law, used excessive force in conducting the unreasonable seizure. Officers violate the Fourth Amendment if they use more force than is objectively

reasonable under the circumstances.  *See LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000).  Determining whether force used in making an arrest is excessive

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.

*Graham v. Connor*, 490 U.S. 386, 396 (1989).  "With respect to a claim of excessive force, the same standard of reasonableness at the moment applies:  Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Ibid.* (cleaned up).  Our court of appeals recently found that handcuffing alone, absent probable cause, may support a claim for excessive force sufficient to survive summary judgment.  In *Nicholson v. City of Los Angeles*, 935 F.3d 685, 689 (9th Cir. 2019), officers had arrested, handcuffed, and held without probable cause a group of teenage boys.  The arrests lasted an "extended period" of five hours.  *Ibid*.  The detention occurred after officers interrupted the boys, who had been playing with a toy gun.  Officers shot one of them.  The other boys alleged excessive force solely from the handcuffing (no injuries).  Our court of appeals "affirm[ed]" the finding that handcuffing during a five-hour detention without probable cause amounted to excessive force under those circumstances.  *Id.* at 692.

The amended complaint alleges that Deputies Holland, Pope, and Leeper handcuffed plaintiffs.  All three plaintiffs claim physical pain and abrasions to their wrists and arms.  The handcuffing lasted more than one hour, throughout the detention.  During the detention, Deputy Galloway and Lt. DeSousa arrived and failed to intervene.

For the reasons stated above, qualified immunity bars the excessive force claim for handcuffing against Deputy Leeper because the amended complaint does not allege that he was aware of the lack of probable cause.  The motion to dismiss with respect to Deputy Leeper is **GRANTED**.  The amended complaint alleges that Lt. DeSousa was informed of the facts leading up to the arrests.  With respect to Deputies Holland and Pope, and Lt. DeSousa, it is **DENIED**.

The second incident involved Deputy Holland, who "physically" removed Ms. Loggervale from the car. One can reasonably infer his physical force exceeded "reasonable" force. He could have requested that she exit. The amended complaint does not allege any resistance by Ms. Loggervale to the arrest, so viewing her "physical" extraction from the car in the light most favorable to her, it may indeed amount to a basis for excessive force. The right to be free from excessive force was clearly established. The motion as to this conduct is **DENIED**.

The third allegation of excessive force involves Deputies Holland, Pope, and Leeper "forcibly" putting plaintiffs into separate patrol cars. As with the extraction, this permits an inference that deputies used unreasonable and excessive force. Plaintiffs' rights here were also clearly established. As to Deputies Holland and Pope, the motion to dismiss excessive force claims for putting the individuals in the cars is **DENIED**. Lt. DeSousa was not yet present when individuals were put in the car, so with respect to him, the motion is **GRANTED**. For the same reason stated above, it would not have been plain to Deputy Leeper that no probable cause existed. As to Deputy Leeper on this allegation, the motion is **GRANTED**.

*(iv)     First Amendment.*

The third claim for relief names Deputies Holland, Pope, Leeper, and Galloway. Plaintiffs have alleged that the women "verbally protest[ed]" and "criticized" deputies, including making a 911 call to report their perceived illegal treatment. Such criticism is political, when viewed in the light most favorable to plaintiffs. So is filming with one's cell phone (so long as it does not interfere with police work). *See Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995). After plaintiff's initial comments and filming, deputies handcuffed them, detained them in separate police cars, and searched their vehicle. After the 911 call, the detention continued. These actions are of the type to chill plaintiffs' speech. The investigation of suspected auto burglaries does not obviously show probable cause existed for the detention. Thus, viewed in the light most favorable to plaintiff, the amended complaint alleges facts that show protected speech, a lack of reasonable suspicion, and injury. The facts alleged thus support an inference of retaliation. *See id.* at 1723.

10

Deputy Leeper arrived before any handcuffing, so he observed the argument and the younger plaintiffs filming. He then helped to handcuff one of the women. Deputy Galloway arrived after the fact. He, however, allegedly took Aayslei's phone. She had called 911 to report plaintiffs' unlawful arrests, which prompted him to allegedly "grab[]" Aayslei's phone. The claim against Deputy Galloway survives as well.

Our Supreme Court's decisions clearly established the right to be free from such retaliation. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). *Nieves v. Bartlett*, 587 U.S. ___, 139 S. Ct. 1715, 1726 (2019), a decision predating this incident, also crystalized the law establishing unlawful retaliation in situations like this. Qualified immunity may bar the claim at summary judgment, but it does not do so now. The motion to dismiss the First Amendment violation is **DENIED**.

### B.    MONELL CLAIM.

Our court of appeals has identified three viable theories for municipal liability under Section 1983:

> *First*, a local government may be held liable when implementation of its official policies or established customs inflicts the constitutional injury . . . . Second, under certain circumstances, a local government may be held liable under Section 1983 for acts of "omission," when such omissions amount to the local government's own official policy . . . . *Third*, a local government may be held liable under Section 1983 when the individual who committed the constitutional tort was an official with final policymaking authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.

*Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (overruled on other grounds by *Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). Here, the *third* ground does not apply.

Under the *first* theory, plaintiffs may only sue Alameda County if a specified official policy or custom undergirded the actions. The complaint must also "demonstrate that the custom or policy was adhered to with 'deliberate indifference' to [a plaintiff's] constitutional rights." *Castro v. County of Los Angeles*, 833 F.3d at 1076. Our complaint reaches the

11

heightened deliberate indifference standard because it alleges eleven "policies," including among others, "[T]o carry out or tolerate unlawful detentions" and to use or tolerate excessive force. A policy of ignoring the Fourth Amendment, for instance, meets the heightened deliberate indifference pleading standard with respect to *policies* (Amd. Compl. ¶ 48).

Plaintiffs style these, alternatively, as widespread customs. To pursue the custom theory of governmental liability, the complaint must describe a custom "so persistent and widespread that it constitutes a permanent and well settled . . . policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (cleaned up). The above referenced practices do not meet the *Monell* standard for *customs* because the amended complaint does not allege they are "widespread" or "persistent" (Amd. Compl. ¶ 48).

Our complaint also satisfies the heightened deliberate indifference standard when pleading under the *second* theory, lack of training. Liability attaches if the Alameda County Sheriff's Office's omission, a failure to adequately train its deputies, amounted to "deliberate indifference to a constitutional right." *Clouthier*, 591 F.3d at 1249. To satisfy the deliberate indifference standard, the need for training must be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). The complaint alleges that Lt. DeSousa and all other deputies had not been trained or were improperly trained in the following (among others): Fourth Amendment search and seizure, respecting First Amendment activity, use of reasonable force, and discrimination. These trainings would go to the heart of a deputy's work and the lawfulness of her actions, such that the need to train is "obvious." *Ibid*. At this stage, plaintiffs cannot possibly know the extent or lack thereof of training and Rule 12 does not require the impossible. Thus, at this stage, the facts in the complaint allege conduct that by itself could support liability for failure to train.

Since the foregoing validly alleges a *Monell* claim, this order does not reach the possibility that the amended complaint alleges a proper claim for failure to properly "screen,

12

1  hire, train, instruct, monitor, supervise, evaluate, investigate, discipline and/or terminate"

2  defendants (Amd. Compl. ¶¶ 47–52).

3  The motion to dismiss the *Monell* claim is **DENIED**.

### C. SUPERVISORY LIABILITY.

Since Lt. DeSousa appeared on scene before the detention ended, the amended complaint adequately alleges supervisory liability. Liability against a supervisor may flow for constitutional violations by her subordinates if a supervisor participated in or directed the violations or knew of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). No *respondeat superior* liability exists under Section 1983. *See Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 680–81 (9th Cir.1984). In contrast,

> the supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates," or "his acquiescence in the constitutional deprivations of which the complaint is made" . . . .

*Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011) (quoting *Watkins v. Cty. Of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). The amended complaint claims that Lt. DeSousa "knew" about the actions' unconstitutionality. At this stage, the following suffices: his physical presence, alleged knowledge of the facts as the amended complaint presents them, and failure to direct deputies to immediately release plaintiffs (Amd. Compl. ¶ 53).

The motion to dismiss the Section 1983 claim against Lt. DeSousa for his liability as a supervisor is **DENIED**.

### 2. SECTION 1981.

Although defendants claim to move for dismissal of all counts, and do mention Count Five in passing, they do not develop the argument. "18 U.S.C. § 1981" does not appear, for example, in defendants' Table of Authorities. Without at least a brief discussion of Section 1981, this order cannot reach the issue. The motion to dismiss the Section 1981 claim (to the extent defendants so move) is **DENIED**.

13

### 3. STATE LAW.

#### A. BANE ACT.

The sixth claim for relief alleges violations by Deputies Holland, Pope, Leeper, and Galloway, and the County of Alameda. The Tom Bane Civil Rights Act, California Civil Code § 52.1, "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'" *Reese v. County of Sacramento*, 888 F.3d 1030, 1040–41 (9th Cir. 2018). When plaintiffs sue public officials under the Bane Act, qualified immunity does not protect. *Id.* at 1041. As of our court of appeals' decision in *Reese,* claims for excessive force under the Bane Act do not require threat, intimidation, or coercion independent of the alleged constitutional violation. Under *Reese*, mere negligence by officers does not suffice. A Bane Act violation requires a "*specific intent* to violate the arrestee's right to freedom from unreasonable seizure." *Id.* at 1043 (emphasis added).

As discussed above, the facts in the amended complaint describe potential discriminatory and/or retaliatory motives. These speak to subjective intent. The constitutional violations alleged in the unlawful arrest, alone, show coercion and intimidation. The motion to dismiss this count is **DENIED**.

#### B. CIVIL CODE § 51.7.

California Civil Code Section 51.7 protects individuals from race discrimination, among other wrongs. For the reasons stated above, the amended complaint's seventh count adequately alleges facts to support this claim for relief under federal law. The motion to dismiss the Section 51.7 claim is **DENIED**.

#### C. TORT.

The amended complaint alleges tort claims of assault and battery against Deputies Holland, Pope, and Leeper, and the County of Alameda. It alleges conversion against Deputy Galloway only. The false imprisonment/arrest, invasion of privacy, and negligence claims name all defendants.

This order first addresses immunity. Section 815 of the California Government Code provides immunity for public entities except as otherwise provided by statute. Section 815.2 provides the relevant statutory exception (emphasis added):

> [A] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity *within the scope of his employment* if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

Our court of appeals has stated that Section 815.2 "clearly allows for vicarious liability of a public entity when one of its police officers uses excessive force in making an arrest." *Blankenhorn v. City of Orange*, 485 F.3d 463, 488 (9th Cir. 2007). Defendants do not dispute that the alleged violations took place during the scope of employment. Since the arresting deputies could still face liability for excessive force, Section 815 does not shield the County of Alameda at this time.

Defendants do not dispute the tort claims except to say, *first*, that the lack of excessive force immunizes them from assault and battery charges. *See Avina v. United States,* 681 F.3d 1127, 1131 (9th Cir. 2012). *Second*, they say that the lack of other Fourth Amendment violations inoculates them. This order has disagreed, at least on this record, with respect to most alleged incidents of excessive force, illegal search, and unlawful seizure. The tort claims may proceed to the extent that the Constitutional violations do.

With respect to conversion, "To state a claim for conversion, a plaintiff must allege that (1) he had ownership or rights to possess the property at issue at the time of the conversion; (2) the defendant converted the property by wrongful act; and (3) the plaintiff suffered damages as a result." *Oakdale Vill. Grp. v. Fong,* 43 Cal.App.4th 539, 543–44 (1996) (partially decertified on other grounds). The amended complaint alleges that Deputy Galloway distracted Aayslei after she used her cell phone to dial 911. He then "grabbed" it from her hand. She alleges no damage to the phone. Although the taking was not *de minimis*, as defendants claim, the amended complaint does not allege damage to the property. The motion to dismiss the conversion claim is **GRANTED**.

The motion to dismiss with respect to the balance of the torts is **DENIED**.

## CONCLUSION

As stated above, the motion is **GRANTED IN PART AND DENIED IN PART**.

By **APRIL 29, 2021, AT NOON**, plaintiffs may seek leave to amend the dismissed claims by a motion noticed on the normal 35-day calendar. Plaintiffs must plead their best case. Their motion should affirmatively demonstrate how the proposed amended complaint corrects the deficiencies identified in this order, as well as any other deficiencies raised in the defendants' motion but not addressed herein. The motion should be accompanied by a redlined copy of the amended complaint.

**IT IS SO ORDERED.**

Dated: April 8, 2021.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE