Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Christopher R. Creech, Esq. (SBN: 293037)
ccreech@ohhlegal.com
**ORBACH HUFF + HENDERSON LLP**
6210 Stoneridge Mall Road, Suite 210
Pleasanton, California 94588
Telephone:    (510) 999-7908
Facsimile:    (510) 999-7918

Attorneys for Defendants
COUNTY OF ALAMEDA, STEVEN HOLLAND, MONICA POPE,
KEITH LEEPER, ANTHONY DeSOUSA and CAMERON GALLOWAY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AASYLEI LOGGERVALE; AASYLEI HARDGE-LOGGERVALE; and AAOTTAE LOGGERVALE,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA; STEVEN HOLLAND; MONICA POPE; KEITH LEEPER; ANTHONY DeSOUSA; CAMERON GALLOWAY; and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No. 20-cv-04679-WHA<br><br>**DEFENDANTS COUNTY OF ALAMEDA, STEVEN HOLLAND, MONICA POPE, KEITH LEEPER, ANTHONY DeSOUSA AND CAMERON GALLOWAY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>DATE:        September 9, 2021<br>TIME:        8:00 a.m.<br>DEPT:        Courtroom 12, 19th Floor<br>JUDGE:      Hon. William Alsup |

ORBACH HUFF + HENDERSON LLP

# TABLE OF CONTENTS

**Page(s)**

I. NOTICE OF MOTION ............................................................................... 1

II. INTRODUCTION AND FACTUAL BACKGROUND ...................................... 1

    A. The Deputies Observe a Suspicious Vehicle ..................................... 2

    B. Reasonable Suspicion of Criminal Involvement ............................... 3

    C. Plaintiffs Refuse to Identify Themselves ......................................... 4

III. LEGAL ARGUMENT .............................................................................. 6

    A. Summary Judgment is Warranted ..................................................... 7

    B. The Deputies Were Justified in Requesting Mother's Identification ...................... 7

        1. There Was Reasonable Suspicion to Investigate the Burglaries ................... 8
        2. The Vehicle Code Authorized Deputy Holland to Request ID .................. 11

    C. Reasonable Suspicion Immediately Ripened into Probable Cause to Arrest ......... 11

        1. Mother Was Subject to Arrest for Refusing to Provide ID ........................... 11
        2. Daughters Were Subject to Arrest for Refusing to Reenter the Vehicle ..... 12
        3. Mother and Aasylei Each Committed a Battery .......................................... 12
        4. All Plaintiffs Resisted Their Detention ..................................................... 13

    D. Reasonable Suspicion and Probable Cause Defeat Plaintiffs' Seizure Claims ...... 13

    E. Plaintiffs' Search Related Claims Fail ............................................... 15

    F. Plaintiffs' Force Related Claims Fail as the Deputies Reasonably Handcuffed and Secured Plaintiffs in Patrol Cars ...................................... 16

    G. Plaintiffs' Discrimination Related Claims Fail .................................. 17

    H. There is No Basis for Derivative Liability for Deputies Leeper and Galloway ..... 18

    I. The Deputy Defendants are Entitled to Immunity ............................ 19

    J. Plaintiffs Have Not Identified an Actionable Policy or Custom ............. 20

    K. Defendants are Entitled to Immunity from Plaintiffs' State Law Claims ............. 21

*ORBACH HUFF + HENDERSON LLP*

1

**TABLE OF CONTENTS (continued)**

2
**Page(s)**

3
L.   Plaintiffs' Bane Act Claim is Unfounded ........................................................... 22

4
M.   Plaintiffs' Claims of Invasion of Privacy, Negligence and Conversion Fail .......... 24

5
IV.   CONCLUSION ........................................................................................................ 25
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORBACH HUFF + HENDERSON LLP

Defs' Notice of Motion and MSJ or, in the alt, Partial Summary Judgment; Memo of P&A [20-cv-04679-WHA]

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AE v. Cty. of Tulare*,
   666 F.3d 631 (9th Cir. 2012) ................................................. 20

*Allen v. City of Sacramento*,
   234 Cal.App.4th 41 (2015) ................................................. 23

*Amylou R. v. Cty. of Riverside*,
   28 Cal.App.4th 1205 (1994) ................................................. 22

*Anderson v. Creighton*,
   483 U.S. 635 (1987) ................................................. 19, 20

*Anthony v. Oliva*,
   No. ED CV 12-1369-FMO (SH), 2013 U.S. Dist. LEXIS 37957, at *17
   (C.D. Cal. Jan. 29, 2013) ................................................. 14

*Arizona v. Johnson*,
   555 U.S. 323 (2009) ................................................. 12

*Arpin v. Santa Clara Valley Transp. Agency*,
   261 F.3d 912 (9th Cir. 2001) ................................................. 13, 17

*Ashcroft v. al-Kidd*,
   131 S. Ct. 2074 (2010) ................................................. 19

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) ................................................. 19

*Austin B. v. Escondido Union School District*,
   149 Cal.App.4th 860 (2007) ................................................. 23

*Avina v. United States*,
   681 F.3d 1127 (9th Cir. 2012) ................................................. 16

*Baughman v. State of Cal.*,
   38 Cal.App.4th 182 (1995) ................................................. 22

*Bingham v. City of Manhattan Beach*,
   341 F.3d 939 (9th Cir. 2003) ................................................. 17

Defs' Notice of Motion and MSJ or, in the alt, Partial Summary Judgment; Memo of P&A [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Bradshaw v. Stoller*,
    72 Fed. App'x 513 (9th Cir. 2003) ................................................................. 9

*Brew v. City of Emeryville*,
    138 F.Supp.2d 1217 (N.D. Cal. 2001) ...................................................... 18

*Brosseau v. Haugen*,
    543 U.S. 194 (2004) ...................................................................................... 19

*Brown v. Gilmore*,
    278 F.3d 362 (4th Cir. 2002) ..................................................................... 16

*Burlesci v. Petersen*,
    68 Cal.App.4th 1062 (1998) ....................................................................... 25

*Burton v. City of San Jose*,
    No. C 06-06331 JW, 2010 U.S. Dist. LEXIS 164515, at *17 (N.D. Cal. Nov. 4, 2010) ........ 12

*Cady v. Sheahan*,
    467 F.3d 1057 (7th Cir. 2006) ................................................................... 15

*Caldwell v. City of Selma*,
    No. 1:13-cv-00465-SAB, 2014 U.S. Dist. LEXIS 121380, at *14
    (E.D. Cal. Aug. 29, 2014) ............................................................................ 8

*California v. Acevedo*,
    500 U.S. 565 (1991) ...................................................................................... 16

*Carter v. City of Post Falls*,
    No. CIV 08-00488-EJL, 2009 U.S. Dist. LEXIS 67246, at *18 (D. Idaho July 31, 2009) ...... 17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................ 7

*City & Cnty. of San Francisco v. Sheehan*,
    135 S. Ct. 1765 (2015) .................................................................................. 19

*City of Canton v. Harris*,
    489 U.S. 378 (1989) ...................................................................................... 21

*City v. Tuttle*,
    471 U.S. 808 (1985) ...................................................................................... 21

ORBACH HUFF + HENDERSON LLP

1

**TABLE OF AUTHORITIES (continued)**

2

**Page(s)**

3

*Cornell v. City and County of San Francisco,*
    17 Cal.App.5th 766 (2017) ................................................................. 23

4

5

*Coverstone v. Davies,*
    38 Cal.2d 315 (1952) ........................................................................ 24

6

*Cty. of L.A. v. Superior Court,*
    181 Cal.App.4th 218 (2009) ............................................................. 22

7

8

*Davis v. Scherer,*
    468 U.S. 183 (1984) .......................................................................... 19

9

10

*Dawson v. City of Seattle,*
    435 F.3d 1054 (9th Cir. 2006) .......................................................... 14

11

12

*Delaware v. Prouse,*
    440 U.S. 648 (1979) .......................................................................... 13

13

14

*Delvecchia v. Frontier Airlines,*
    No. 2:19-cv-01322-KJD-DJA, 2021 U.S. Dist. LEXIS 60775, at *10
    (D. Nev. Mar. 30, 2021)..................................................................... 24

15

16

*DeToledo v. County of Suffolk,*
    379 F.Supp.2d 138 (D. Mass. 2005) ................................................. 17

17

18

*Easley v. Cty. of Santa Clara,*
    702 Fed. App'x 552 (9th Cir. 2017) ................................................... 8

19

20

*Evans v. City of Bakersfield,*
    22 Cal.App.4th 321 (1994) ............................................................... 13

21

22

*Foster v. Metro. Airports Com.,*
    914 F.2d 1076 (8th Cir. 1990) .......................................................... 17

23

24

*Giacomelos v. Bank of Am. Nat'l Tr. & Sav. Asso.,*
    237 Cal.App.2d 99 (1965) ................................................................ 25

25

26

*Gillan v. City of San Marino,*
    147 Cal.App.4th 1033 (2007) ........................................................... 22

27

28

*Goldberg v. List,*
    11 Cal.2d 389 (1938) ........................................................................ 25

Defs' Notice of Motion and MSJ or, in the alt, Partial Summary Judgment; Memo of P&A [20-cv-04679-WHA]

1

## TABLE OF AUTHORITIES (continued)

2

**Page(s)**

3

*Green v. Newport*,
   868 F.3d 629 (7th Cir. 2017) ............................................................... 10

4

5

*Grossman v. City of Portland*,
   33 F.3d 1200 (9th Cir. 1994) ............................................................... 22

6

7

*Hargis v. City of Orlando*,
   586 Fed. App'x 493 (11th Cir. 2014) ..................................................... 8

8

9

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ............................................................................. 19

10

11

*Harmon v. City of Pocatello*,
   431 F.Supp.3d 1135 (D. Idaho 2020) .................................................. 16

12

13

*Hartman v. Moore*,
   547 U.S. 250 (2006) ............................................................................. 18

14

15

*Hayes v. Florida*,
   470 U.S. 811 (1985) ............................................................................... 7

16

17

*Hernandez v. City of Pomona*,
   46 Cal.4th 501 (2009) .......................................................................... 24

18

19

*Hiibel v. Sixth Judicial Dist. Court*,
   542 U.S. 177 (2004) .............................................................. 6, 7, 12, 15

20

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   7 Cal.4th 1 (1994) ................................................................................ 24

21

22

*Holland v. Azevedo*,
   No. 14-cv-01349-JST, 2016 U.S. Dist. LEXIS 59418, at *25 (N.D. Cal. May 3, 2016) ......... 13

23

24

*Horton v. California*,
   496 U.S. 128 (1990) ............................................................................. 24

25

26

*Huber v. Coulter*,
   No. CV 12-3293-GHK (JEM), 2014 U.S. Dist. LEXIS 181926, at *23
   (C.D. Cal. Dec. 22, 2014) aff'd, 684 Fed. App'x 623 (9th Cir. 2017) ........................ 14

27

28

ORBACH HUFF + HENDERSON LLP

Defs' Notice of Motion and MSJ or, in the alt, Partial Summary Judgment; Memo of P&A [20-cv-04679-WHA]

1

**TABLE OF AUTHORITIES (continued)**

2

**Page(s)**

3

*Hunter v. Namanny,*
  219 F.3d 825 (8th Cir. 2000) ......................................................................... 14

4

5

*Hutton v. City of Berkeley Police Dep't,*
  No. 13-cv-03407-JCS, 2014 U.S. Dist. LEXIS 126300, at *34 (N.D. Cal. Sep. 9, 2014) ....... 18

6

7

*In re Arturo D.,*
  27 Cal.4th 60 (2002) ................................................................................... 16

8

9

*Intel Corp. v. Hamidi,*
  30 Cal.4th 1342 (2003) ................................................................................ 25

10

11

*Jenkins v. Cty. of Orange,*
  212 Cal.App.3d 278 (1989) ........................................................................... 22

12

13

*Johnson v. Pacifica,*
  4 Cal.App.3d 82 (1970) ................................................................................ 22

14

15

*Jones v. Murray,*
  962 F.2d 302 (4th Cir. 1992) ......................................................................... 15

16

17

*Jones v. Williams,*
  297 F.3d 930 (9th Cir. 2002) ......................................................................... 18

18

19

*Jordan v. Talbot,*
  55 Cal.2d 597 (1961) ................................................................................... 25

20

*Kuhlken v. Cty. of San Diego,*
  764 Fed. App'x 612 (9th Cir. 2019) ........................................................... 12, 13, 17

21

22

*Lacy v. Cty. of Maricopa,*
  631 F.Supp.2d 1183 (D. Ariz. 2008) ................................................................ 14

23

24

*Lindsey v. SLT Los Angeles, LLC,*
  447 F.3d 1138 (9th Cir. 2006) ........................................................................ 18

25

26

*Lipton v. United States,*
  348 F.2d 591 (9th Cir. 1965) ..................................................................... 11, 21

27

28

*Little v. Gore,*
  148 F.Supp.3d 936 (S.D. Cal. 2015) ................................................................. 14

ORBACH HUFF + HENDERSON LLP

Defs' Notice of Motion and MSJ or, in the alt, Partial Summary Judgment; Memo of P&A [20-cv-04679-WHA]

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Low v. LinkedIn Corp.*,
   900 F.Supp.2d 1010 (N.D. Cal. 2012) ........................................................... 24

*Luchtel v. Hagemann*,
   623 F.3d 975 (9th Cir. 2010) ........................................................................ 14

*Lyall v. City of Los Angeles*,
   807 F.3d 1178 (9th Cir. 2015) ...................................................................... 23

*Maryland v. Wilson*,
   519 U.S. 408 (1997) ..................................................................................... 12

*Michigan v. DeFillippo*,
   443 U.S. 31 (1979) .................................................................................. 11, 21

*Michigan v. Summers*,
   452 U.S. 692 (1981) ....................................................................................... 7

*Minnesota v. Dickerson*,
   508 U.S. 366 (1993) ....................................................................................... 7

*Morse v. County of Merced*,
   No. 1:16- cv-000142-DAD-SKO, 2016 WL 4000406 (E.D. Cal. July 25, 2016) ................... 23

*Motley v. Parks*,
   432 F.3d 1072 (9th Cir. 2005) ...................................................................... 18

*Nakamura v. City of Hermosa Beach*,
   No. CV06-06776 GW(SS), 2009 WL 1445400 (C.D. Cal. May 20, 2009) .................. 15

*Nieves v. Bartlett*,
   139 S. Ct. 1715 (2019) ................................................................................. 18

*Okla. City v. Tuttle*,
   471 U.S. 808 (1985) ..................................................................................... 21

*Orn v. City of Tacoma*,
   949 F.3d 1167 (9th Cir. 2020) ...................................................................... 20

*O'Toole v. Superior Ct.*,
   140 Cal.App.4th 488 (2006) ......................................................................... 21

ORBACH HUFF + HENDERSON LLP

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Pac. Marine Ctr., Inc. v. Silva*,
809 F.Supp.2d 1266 (E.D. Cal. 2011) ............................................... 14

*Payton v. New York*,
445 U.S. 573 (1980) ............................................... 14

*People v. Hart*,
74 Cal.App.4th 479 (1999) ............................................... 16

*People v. Hayes*,
142 Cal.App.4th 175 (2006) ............................................... 13

*People v. Redd*,
48 Cal.4th 691 (2010) ............................................... 11

*People v. Thornton*,
3 Cal.App.4th 419 (1992) ............................................... 12

*People v. Williams*,
26 Cal.4th 779 (2001) ............................................... 13

*Pinder v. Emp't Dev. Dep't*,
227 F.Supp.3d 1123 (E.D. Cal. 2017) ...............................................17-18

*Plumhoff v. Rickard*,
134 S. Ct. 2012 (2014) ............................................... 20

*Price v. Cty. of San Diego*,
990 F.Supp. 1230 (S.D. Cal. 1998) ............................................... 22

*Reynolds v. Cty. of San Diego*,
84 F.3d 1162 (9th Cir. 1996) ............................................... 23

*Rodriguez v. Farrell*,
280 F.3d 1341 (11th Cir. 2002) ............................................... 16

*Rosenbaum v. Washoe Cty.*,
663 F.3d 1071 (9th Cir. 2011) ............................................... 20

*Ruiz v. Flores*,
2015 U.S. Dist. LEXIS 27209 (E.D. Cal. Mar. 4, 2015) ............................................... 23

ORBACH HUFF + HENDERSON LLP

1

## TABLE OF AUTHORITIES (continued)

2

Page(s)

3

*Ryburn v. Huff*,
    565 U.S. 469 (2012)..................................................................................................19-20

4

5

*Saucier v. Katz*,
    533 U.S. 194, 202 (2001)..........................................................................................19, 20

6

7

*Scott v. Harris*,
    550 U.S. 372 (2007)........................................................................................................7

8

9

*Shannon v. Cty. of Sacramento*,
    No. 2:15-cv-00967-KJM-DB, 2017 U.S. Dist. LEXIS 42685, at *3
    (E.D. Cal. Mar. 22, 2017).............................................................................................21

10

11

*Shoyoye v. Cnty. of Los Angeles*,
    203 Cal.App.4th 947 (2012).........................................................................................23

12

13

*Silverstin v. Kohler & Chase*,
    181 Cal. 51 (1919)........................................................................................................25

14

15

*Sinclair v. Akins*,
    696 Fed. App'x 773 (9th Cir. 2017).............................................................................16

16

17

*Smith v. Barton*,
    914 F.2d 1330 (9th Cir. 1990)......................................................................................24

18

19

*Taylor v. Barkes*,
    135 S. Ct. 2042 (2015)..................................................................................................19

20

21

*Terry v. Ohio*,
    392 U.S. 1 (1968).............................................................................................7, 8, 11, 15

22

23

*Thomas v. Dillard*,
    818 F.3d 864 (9th Cir. 2016).........................................................................................8

24

25

*Thrifty Oil Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*,
    322 F.3d 1039 (9th Cir. 2002).......................................................................................7

26

27

*Torry v. City of Chi.*,
    932 F.3d 579 (7th Cir. 2019).........................................................................................9

28

*Trotter v. Stonich*,
    247 Fed. App'x 878 (9th Cir. 2007).............................................................................11

ORBACH HUFF + HENDERSON LLP

Defs' Notice of Motion and MSJ or, in the alt, Partial Summary Judgment; Memo of P&A [20-cv-04679-WHA]

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Trujillo v. City of Ontario*,
428 F.Supp.2d 1094 (C.D. Cal. 2006) ................................................................. 22

*Uganda Knapps v. City of Oakland*,
647 F.Supp.2d 1129 (N.D. Cal. 2009) ................................................................. 18

*United States v. $102,836.00 in United States Currency*,
9 F.Supp.3d 1152 (D. Nev. 2014) ....................................................................... 10

*United States v. Arvizu*,
534 U.S. 266 (2002) ............................................................................................. 8

*United States v. Askew*,
529 F.3d 1119 (D.C. Cir. 2008) ......................................................................... 15

*United States v. Beale*,
921 F.2d 1412 (11th Cir. 1991) ........................................................................... 8

*United States v. Betts*,
806 Fed. App'x 426 (6th Cir. 2020) ..................................................................... 8

*United States v. Bowen*,
500 F.2d 960 (9th Cir. 1974) ......................................................................... 11, 21

*United States v. Briggman*,
931 F.2d 705 (11th Cir. 1991) ........................................................................... 10

*United States v. Carrizoza-Gaxiola*,
523 F.2d 239 (9th Cir. 1975) ......................................................................... 11, 21

*United States v. Christian*,
356 F.3d 1103 (9th Cir. 2004) ......................................................................... 6, 7

*United States v. Cortes*,
588 F.2d 106 (5th Cir. 1979) ............................................................................. 15

*United States v. Farley*,
No. 18-cr-00400-TSH-1, 2019 U.S. Dist. LEXIS 44169, at *20
(N.D. Cal. Mar. 18, 2019) ............................................................................... 9-10

*United States v. Garcia-Barron*,
116 F.3d 1305 (9th Cir. 1997) ........................................................................... 10

Defs' Notice of Motion and MSJ or, in the alt, Partial Summary Judgment; Memo of P&A [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

1

**TABLE OF AUTHORITIES (continued)**

2

**Page(s)**

3

*United States v. Hernandez-Rivas*,
4  348 F.3d 595 (7th Cir. 2003) ........................................................................ 15

5

*United States v. Karapetyan*, No. CR 16-00857-BRO,
6  2017 U.S. Dist. LEXIS 128124, at *10 (C.D. Cal. Aug. 11, 2017)................... 8

7

*United States v. Kim*,
8  25 F.3d 1426 (9th Cir. 1994) ........................................................................ 11

*United States v. King*,
9  687 F.3d 1189, 1189 (9th Cir. 2012) .............................................................. 18

10

*United States v. Monroy*,
11  614 F.2d 61 (5th Cir. 1980) ........................................................................... 15

12

*United States v. Montoya De Hernandez*,
13  473 U.S. 531 (1985)....................................................................................... 10

14

*United States v. Murphy*,
15  261 F.3d 741 (8th Cir. 2001) ....................................................................15-16

16

*United States v. Pick*,
   No. CR 16-00695 DSF, 2017 U.S. Dist. LEXIS 59287, at *8 (C.D. Cal. Feb. 28, 2017).......... 9
17

18

*United States v. Pick*,
   777 Fed. App'x 254 (9th Cir. 2019) .................................................................. 9
19

*United States v. Pinion*,
20  800 F.2d 976 (9th Cir. 1986) .......................................................................... 9

21

*United States v. Rodgers*,
22  656 F.3d 1023 (9th Cir. 2011) ........................................................................ 16

23

*United States v. Smith*,
24  389 F.3d 944 (9th Cir. 2004) .......................................................................... 16

25

*United States v. Sokolow*,
26  490 U.S. 1 (1989)............................................................................................ 8

27

*United States v. Soto-Valencia*,
28  500 Fed. App'x 589 (9th Cir. 2012) ................................................................ 10

ORBACH HUFF + HENDERSON LLP

Defs' Notice of Motion and MSJ or, in the alt, Partial Summary Judgment; Memo of P&A [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*United States v. Spencer*,
  No. CR419-086, 2019 U.S. Dist. LEXIS 176504, at *8-9 (S.D. Ga. Oct. 10, 2019) ................ 9

*United States v. Thompson*,
  597 F.2d 187 (9th Cir. 1979) ................................................................. 16

*United States v. Valdes-Vega*,
  738 F.3d 1074 (9th Cir. 2013) ................................................................ 8

*United States v. Velez*,
  No. CR 15-00102 WHA, 2015 U.S. Dist. LEXIS 70640, at *11 (N.D. Cal. June 1, 2015) ....... 9

*United States v. Villagrana-Flores*,
  467 F.3d 1269 (10th Cir. 2006) .............................................................. 15

*United States v. Williams*,
  419 F.3d 1029 (9th Cir. 2005) ............................................................ 6, 12

*Venegas v. County of Los Angeles*,
  32 Cal.4th 820 (2004) ...................................................................... 23

*Via v. City of Fairfield*,
  833 F.Supp.2d 1189 (E.D. Cal. 2011) ........................................................ 22

*Vienphuong Ti Ho v. City of Long Beach*,
  No. 2:19-cv-09430-DOC-KES, 2020 U.S. Dist. LEXIS 250536, at *50
  (C.D. Cal. Nov. 10, 2020) .................................................................... 9

*Villegas v. Gilroy Garlic Festival Ass'n*,
  541 F.3d 950 (9th Cir. 2008) ................................................................ 20

*Walker v. City of Hayward*,
  No. C07-6205 TEH, 2008 WL 2357249 (N.D. Cal. June 6, 2008) ................................. 23

*Watts v. Cty. of Sacramento*,
  136 Cal.App.3d 232 (1982) .................................................................. 22

*White v. SSA*,
  111 F.Supp.3d 1041 (N.D. Cal. 2015) ........................................................ 24

*Whiteley v. Warden*,
  401 U.S. 560 (1971) ........................................................................ 18

1

ORBACH HUFF + HENDERSON LLP

2

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

3   *Whittier v. Kobayashi,*
4       581 F.3d 1304 (11th Cir. 2009) ................................................................ 20

5   *Young v. Cty. of L.A.,*
6       655 F.3d 1156 (9th Cir. 2011) ............................................................. 7, 12

7   *Zaslow v. Kroenert,*
8       29 Cal.2d 541 (1946) ........................................................................... 25

**STATUTES**

9

10  42 U.S.C. section:
11      1981.......................................................................................................... 18
        1983.......................................................................................................... 20

12  Civil Code section:
13      51.7........................................................................................................... 18
        52.1.............................................................................................. 22, 23, 24
14

15  Government Code section:
16      815.2.......................................................................................................... 22
        820.2.......................................................................................................... 22
17      820.6.................................................................................................... 21, 22
        820.8.......................................................................................................... 18
18      821.6.......................................................................................................... 22

19  Penal Code section:
20      148............................................................................................................ 12
        148(a)(1)............................................................................................ 11, 12
21      243(b)........................................................................................................ 12
        653x.......................................................................................................... 14
22      653y(a)...................................................................................................... 14
        653y(b)...................................................................................................... 14
23      834a.......................................................................................................... 13
24      835a(b)................................................................................................ 16, 21, 22
        847(b)(1)............................................................................................ 14, 21, 22
25

26  Vehicle Code section:
27      12951.................................................................................... 4, 11, 12, 21, 22
        22511.56.............................................................................. 4, 11, 21, 22
28      22658.......................................................................................................... 9

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

**RULES**

Federal Rules of Civil Procedure:
  56(a) ................................................................................................................................ 7

ORBACH HUFF + HENDERSON LLP

Defs' Notice of Motion and MSJ or, in the alt, Partial Summary Judgment; Memo of P&A [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

## I.   NOTICE OF MOTION

PLEASE TAKE NOTICE that on September 9, 2021, at 8:00 a.m. in Courtroom 12, 19th Floor, before the Honorable William Alsup of the above-referenced Court, Defendants COUNTY OF ALAMEDA ("County"), STEVEN HOLLAND, MONICA POPE, KEITH LEEPER, ANTHONY DeSOUSA and CAMERON GALLOWAY (collectively "Defendants") will move this Court for summary judgment against Plaintiffs AASYLEI LOGGERVALE, AASYLEI HARDGE-LOGGERVALE and AAOTTAE LOGGERVALE (collectively "Plaintiffs") or, in the alternative, partial summary judgment.

Said Motion will request the Court summarily adjudicate the entirety of Plaintiffs' claims, including entering judgment in favor of Defendants and against Plaintiffs.  The Motion will be based upon this Notice, the Memorandum of Points and Authorities herein below, the concurrently filed Declarations of Kevin E. Gilbert, Deputy Steven Holland, Deputy Monica Pope, Deputy Keith Leeper, Deputy Cameron Galloway, Lt. Anthony DeSousa and any exhibits attached to each, the pleadings and other papers on file in this action, together with such other oral and documentary evidence as may be received by the Court.

## II.   INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs Aasylei Loggervale ("Mother") and her daughters Aasylei Hardge-Loggervale ("Aasylei") and Aaottae Loggervale ("Aaottae") ("Daughters") claim to have been subjected to an improper detention and search on September 20, 2019, by Deputies with the Alameda County Sheriff's Office.  In summary, the Deputies were in the area investigating a series of recent burglaries, most of which involved the theft of electronics out of vehicles in Starbucks parking lots during the early morning hours on prior days.  While patrolling the area, the Deputies observed a grey four door vehicle parked in a disabled-parking space (and apparently not displaying a disabled-parking placard) that matched the description of a vehicle linked to the earlier burglaries.  Based upon the vehicle and driver (who was still seated in the vehicle) loosely matching the description of the suspects involved in the prior burglaries, Deputy Holland decided to contact the driver.  After making contact, the suspects became defiant and refused to provide any identification.  As the matter escalated, the Deputies placed the driver

1    and the two passengers (the three Plaintiffs) into handcuffs until they could be identified.

2    Although Deputy Holland believed there was probable cause to arrest, a decision was made to

3    forego charges.  Once their identity was confirmed, each of the Plaintiffs was released and

4    allowed to leave, with the incident lasting just over an hour in total.

5    ### A.    The Deputies Observe a Suspicious Vehicle

6         In the early morning on September 20, 2019, Deputies Holland and Pope were on patrol

7    when they each independently alerted to a suspicious vehicle parked in a lot located at 2720

8    Castro Valley Boulevard which services a Starbucks coffeehouse.[1]  Vehicles in this parking lot

9    and two other lots had been hit by a string of burglaries, particularly over the two months prior

10   to this incident.[2]  In fact, the subject lot had experienced burglaries on *both* of the preceding two

11   mornings.[3]  Victims and witnesses described the suspects as one or more African-American

12   individuals, usually but not always men, who were frequently in a silver or grey four door

13   sedan.[4]  The culprits loitered in the lot and struck when victims went into Starbucks.[5]

14        At about 6:35 a.m., Deputy Pope drove through the parking lot and observed Plaintiffs'

15   vehicle – a silver four door sedan – parked in a designated handicapped parking spot and

16   apparently not displaying a placard.[6]  Although Starbucks was the only business open at the

17   time, the vehicle was parked as far from Starbucks as possible, even though there were

18   numerous closer parking spots.[7]  This spot was ideal for casing the parking lot while providing

19   almost no vantage point to get a good view of the vehicle's occupants.[8]  The driver was reclined,

20   further obscuring their presence.[9]  It appeared the driver was surreptitiously watching the

21   comings and goings in the parking lot out their window.[10]  This spot was also the closest exit to

ORBACH HUFF + HENDERSON LLP

---

[1] Declaration of Kevin Gilbert ("Gilbert Dec."), filed concurrently herewith, Ex. M ("Holland Depo. Tx."), 21:8-15; Declaration of Deputy Steve Holland ("Holland Dec."), filed concurrently herewith, ¶¶ 5-13; Gilbert Dec., Ex. N ("Pope Depo. Tx."), 22:10-24:4; Declaration of Monica Pope ("Pope Dec."), filed concurrently herewith, ¶¶ 5-13.
[2] Holland Dec., ¶ 8; Pope Dec., ¶ 8; Pope Depo. Tx., 22:25-23:11.
[3] Holland Dec., ¶ 8; Pope Dec., ¶ 8.
[4] Holland Dec., ¶ 7; Pope Dec., ¶ 7.; Pope Depo. Tx., 19:22-20:16.
[5] Holland Dec., ¶ 6; Pope Dec., ¶ 6.
[6] Pope Dec., ¶¶ 9-11; Pope Depo. Tx., 23:21-24:4, 32:18-24.
[7] Pope Dec., ¶ 11; Holland Dec., ¶ 13.
[8] Pope Dec., ¶ 11; Holland Dec., ¶ 13.
[9] Pope Dec., ¶ 16; Holland Dec., ¶ 18; Pope Depo. Tx., 24:21-26:23; 28:20-29:25.
[10] Pope Depo Tx., 29:16-25; Holland Depo Tx., 82:17-20; Pope Dec., ¶ 11(b); Holland Dec., ¶ 13(b).

the area's main arterial road, allowing for a quick escape to nearby freeways.[11]  While Starbucks customers quickly came and went, Plaintiffs' vehicle remained isolated without anyone going to or coming from it.[12]  The lot is signed with restrictions under California law limiting parking to patrons, and the businesses had previously asked Deputies to address loitering there.[13]

At about 6:42 a.m., Deputy Holland separately drove through the parking lot and independently identified this vehicle as suspicious for similar reasons.[14]  Deputy Holland further noted that the vehicle had a Nevada license plate, which dispatch confirmed was registered to a Nevada rental car company.[15]  Rental vehicles are well-known to be used by criminals to conceal their identity.[16]  From what Deputy Holland could see, the driver appeared to be a black male, which was consistent with the suspect's descriptions in the earlier burglaries.[17]

### B.    Reasonable Suspicion of Criminal Involvement

After sharing their suspicions with one another, Deputies Holland and Pope resumed their surveillance, still without either of them seeing anyone coming to or going from the vehicle.[18] Based upon the information known to them at that point, as well as their own observations noted above, the Deputies suspected that the vehicle and its occupant may have been involved in the prior burglaries and were possibly surveilling the parking lot for yet more burglaries.  At that point, the Deputies decided to approach the vehicle and question the driver, with Deputy Holland on the driver's side of the vehicle and Deputy Pope on the passenger's side.[19]  It was not until Deputy Holland was alongside the vehicle that he realized the driver was not alone and that Aaottae was in the front passenger seat with Aasylei in the back seat.[20]  Like the suspicious driver, Daughters were so far reclined that they were undetectable from afar.[21]  It also was not until Deputy Holland was within a few feet of Mother that he realized she was a female,

---

[11] Pope Dec., ¶ 11; Holland Dec., ¶ 13.
[12] Pope Dec., ¶¶ 11, 13, 17, 19; Holland Dec., ¶¶ 13, 15, 19, 21; Pope Depo. Tx., 30:6-15.
[13] Holland Dec., ¶ 20; Pope Dec., ¶ 18; Holland Depo Tx. 77:15-78:19.
[14] Holland Dec., ¶ 13.
[15] Holland Dec., ¶¶ 13(g), 16; Pope Dec., ¶¶ 11(g), 14; Holland Depo. Tx., 76:6-23.
[16] Holland Dec., ¶ 16; Holland Dec., ¶ 14; Holland Depo. Tx., 76:6-23; Pope Depo. Tx., 33:10-22.
[17] Holland Dec., ¶ 17; Pope Dec., ¶ 15.
[18] Holland Dec., ¶ 19; Pope Dec., ¶ 17; Pope Depo. Tx., 79:12-14; Holland Depo. Tx., 83:3-15.
[19] Holland Dec., ¶ 22; Pope Dec., ¶ 20.
[20] Holland Dec., ¶ 23; Pope Dec., 21.
[21] Holland Dec., ¶ 23; Pope Dec., 21.

Defs' Notice of Motion and MSJ or, in the alt, Partial Summary Judgment; Memo of P&A [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

notwithstanding her short hair and build.[22]  Based upon the other similarities with the previously reported burglaries and recognizing that witnesses could have similarly misidentified the suspect's gender, Deputy Holland remained suspicious as to whether Mother was involved in the prior burglaries and whether she was attempting to commit another.[23]  Deputy Holland also noted that there were no items from Starbucks inside the vehicle, further suggesting that Plaintiffs had not been patronizing the only open business in this lot.[24]

Deputy Holland knocked on Mother's window and Mother immediately started the car, which Deputy Holland not only found suspicious but also threatening.[25]  Mother then claimed she was waiting for Starbucks to open, yet Starbucks had been open for about two hours.[26] Deputy Holland disclosed his investigation of the prior burglaries, with Mother responding that they had "just arrived" after driving from Las Vegas, Nevada.[27]  Deputy Holland again found this suspicious as he knew Plaintiffs had not "just arrived" based upon his prior observations of the vehicle earlier that morning.[28]  Mother then spontaneously stated the car was a rental from Oakland Airport, which was also suspicious as the vehicle was registered in Nevada, not California, and because Deputy Holland had not asked her about the vehicle at all.[29]

## C.    Plaintiffs Refuse to Identify Themselves

Deputy Holland requested Mother provide her driver's license, which she had to provide as she was in control of a vehicle (Cal. Veh. Code § 12951) and parked in a dedicated handicapped spot (Cal. Veh. Code § 22511.56(a)).[30]  Mother reached toward a purse to comply before suddenly changing course and refusing to provide identification.[31]

In the midst of Mother refusing to provide identification, Aasylei exited the vehicle, throwing open the vehicle's door and striking Deputy Pope.[32]  Aasylei demanded access to the

---

[22] Holland Dec., ¶ 24; Pope Dec., ¶ 22.
[23] Holland Dec., ¶¶ 25-26; Pope Dec., ¶¶ 23-24; Holland Depo. Tx., 93:2-11.
[24] Holland Dec., ¶ 28; Pope Dec., ¶ 26.
[25] Holland Dec., ¶ 27; Pope Dec., ¶ 25; Gilbert Dec., Ex. A ("Holland BWC") at 0:21-0:24.
[26] Holland Dec., ¶ 29; Holland BWC at 0:25-0:32.
[27] Holland Dec., ¶ 29; Holland BWC at 0:33-0:50.
[28] Holland Dec., ¶¶ 28-30; Pope Dec., ¶ 27.
[29] Holland Dec., ¶¶ 31-32; Holland BWC at 0:53-1:07.
[30] Holland Dec., ¶ 34; Holland Depo. Tx., 98:17-23.
[31] Holland Dec., ¶ 35; Holland BWC at 1:07-1:11; Gilbert Dec., Ex. S, 3:19-28, Exs. T and U, 3:6-10 ("RFA Set 1 Resp.").
[32] Pope Dec., ¶¶ 28-29; Gilbert Dec., Ex. E ("Pope BWC") at 4:16-4:28; Pope Depo. Tx., 44:12-17, 45:11-22, 47:5-8.

ORBACH HUFF + HENDERSON LLP

trunk, which Deputies Holland and Pope objected based upon concerns that she could potentially retrieve a weapon.[33]  In hopes of avoiding the continued escalation, Deputy Holland ordered Aasylei to return to the vehicle and explained she would be handcuffed and detained in a patrol car if she failed to comply.[34]  Despite numerous directives, Aasylei refused to return to the vehicle.  Equally concerning, Aaottae exited the vehicle, received the same orders to return and similarly refused to comply.[35]  Following Deputy Leeper's arrival on scene, he and Deputy Pope detained Aasylei and Aaottae, with each initially resisting before being placed in a patrol vehicle.[36]  Aaottae also used her feet to stop Deputy Leeper from securing her in the vehicle.[37]

Seeing her Daughters being placed in custody, Mother immediately threw open her door and struck Deputy Holland,[38] followed by again starting the car's engine.[39]  This caused Deputies Holland and Pope to fear Mother would use the car as a weapon or attempt an escape.[40]  Deputy Holland ordered Mother from the car and attempted to control her wrist to prevent her from putting the car in gear.[41]  After Mother refused numerous commands to exit the vehicle, Deputy Holland finally succeeded in handcuffing Mother and securing her in a patrol vehicle.[42]

With Plaintiffs finally secured and their identities verified, the Deputies proceeded with their investigation.  Deputy Holland was able to locate a handicapped placard which had previously been obscured behind a large air freshener hanging from the rearview mirror.[43]  The Deputies were also able to finally confirm Plaintiffs' identities, with the only "search" limited to accessing the locations referenced by Plaintiffs to obtain their identification.[44]

Though Plaintiffs opine that their detention was unreasonably prolonged, they present no evidence to rebut the fact that they were immediately released once the investigation was

---

[33] Holland Dec., ¶ 43; Pope Dec., ¶ 30.
[34] Holland Dec., ¶¶ 41-43.
[35] Holland Dec., ¶ 43-44; Pope Dec., ¶ 30-31.
[36] Pope BWC at 8:45-9:17 (Aaottae keeping arms forward to prevent handcuffing); Gilbert Dec., Ex. F ("Leeper BWC") at 1:13-1:21 (Aasylei pulling away from handcuffing); 2:17-2:47 (Aaottae resisting handcuffing).
[37] Pope BWC at 10:10-10:20, 11:30-12:20; Leeper BWC at 3:40-3:52, 5:02-5:54.
[38] Holland Dec., ¶ 47; Holland BWC at 6:20-6:25.
[39] Holland Dec., ¶ 48; Holland BWC at 6:28-6:29.
[40] Holland Dec., ¶ 48.
[41] Holland Dec., ¶ 49; Holland BWC at 6:30-6:31.
[42] Holland Dec., ¶¶ 49-50; Holland BWC at 6:30-7:30.
[43] Holland Dec., ¶ 52.
[44] Holland Dec., ¶¶ 51, 53; Pope Dec., ¶¶ 39-41; Holland BWC at 10:20-11:20, 11:55-12:13, 14:18-14:34 (Mother ID); Pope BWC at 15:56-16:25 (Aasylei ID), 19:06-19:45 (Aaottae ID).

ORBACH HUFF + HENDERSON LLP

concluded.  In fact, the videos depict the Deputies investigating their suspicions, including addressing a possible connection between Plaintiffs and several related burglaries at a Big 5.[45] The decision was then made to release Plaintiffs notwithstanding their violations of law.[46]

Despite the undisputed facts confirming that the Deputies had a reasonable suspicion to investigate potential criminal conduct and request Plaintiffs' identification, Plaintiffs claim that such actions were discriminatory and violated their civil rights.  Furthermore, Plaintiffs aver that they were subjected to excessive force simply because they were handcuffed.  As discussed below, Plaintiffs' asserted facts are absolutely deficient and fail to support any claims. Furthermore, the Deputies are entitled to immunity as their actions were objectively reasonable and in conformity with the multitude of cases where Courts have consistently confirmed that a law enforcement officer is entitled to request a suspect's identification during an investigation.

## III.   LEGAL ARGUMENT

Plaintiffs' claims are predicated upon the incorrect premise that Deputy Holland's initial request for identification was unlawful.  From that premise, Plaintiffs opine that their resistance was lawful, any touching was a battery and any investigation must be retaliatory or signal racial animus.  These arguments unravel from the outset as Deputy Holland had a reasonable suspicion to ask about loitering and the law clearly establishes that the right to investigate carries with it the right to obtain identification. *United States v. Christian*, 356 F.3d 1103, 1107 (9th Cir. 2004) (holding officer may "[demand] a suspect's identification during a *Terry* stop so long as the request is reasonably related to the detention").  Where, as here, the suspect refuses to provide identification, probable cause exists to arrest on this violation alone. *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 187 (2004).  Further, officers may order passengers to remain in a vehicle while they investigate. *United States v. Williams*, 419 F.3d 1029, 1032 (9th Cir. 2005) ("officers may detain passengers during a traffic stop, whether it is by ordering the passenger to remain inside the automobile or by ordering the passenger to get back into an

---

[45] May Dec., Exhibits C, G, I and L; Holland Depo. Tx., 138:5-19.
[46] Holland Dec., ¶¶ 52-53.

Defs' Notice of Motion and MSJ or, in the alt, Partial Summary Judgment; Memo of P&A [20-cv-04679-WHA]

automobile that he or she voluntarily exited").  When a passenger disobeys, it provides probable cause for their arrest.  *Young v. Cty. of L.A.*, 655 F.3d 1156, 1170 (9th Cir. 2011).

### A.   Summary Judgment is Warranted

Summary judgment is proper where the admissible evidence demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden then shifts to Plaintiffs to identify specific factual evidence showing there is a genuine issue of material fact for trial.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  If Plaintiffs cannot meet this shifted burden, then Defendants are entitled to judgment.  *Celotex*, 477 U.S. at 323.  Where, as here, there is "a video tape capturing the events in question" and "[t]here are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened," the Court need not accept a plaintiff's contrary claims.  See *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Because the pertinent portions of this encounter are all captured on video, "the only disputes relate to the legal significance of undisputed facts, the controversy collapses into a question of law suitable to disposition on summary judgment."  *Thrifty Oil Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002).

### B.   The Deputies Were Justified in Requesting Mother's Identification

A police officer who "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot" may "briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions."  *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993); *Terry v. Ohio*, 392 U.S. 1 (1968).  A *Terry* stop "may include **both** a request for identification **and** inquiry concerning the suspicious conduct of the person detained."  *Michigan v. Summers*, 452 U.S. 692, 700 n.12 (1981) (emphasis added); *Hiibel*, 542 U.S. at 180 ("it is well established that an officer may ask a suspect to identify himself in the course of a *Terry* stop"); *Hayes v. Florida*, 470 U.S. 811, 816 (1985) ("[I]f there are articulable facts supporting a reasonable suspicion … that person may be stopped in order to identify him, ... or to ... obtain additional information."); accord *United States v. Christian*, 356 F.3d 1103, 1107 (9th Cir. 2004).

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

### 1.   There Was Reasonable Suspicion to Investigate the Burglaries

Confronted with a similar vehicle with similar occupants loitering in the same parking lot at the same time as prior burglaries, Deputy Holland had reasonable suspicion to at least find out what Plaintiffs were doing, which includes the right to obtain Mother's identification. Reasonable suspicion to investigate is "not a particularly high threshold to reach." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc).  It requires only that the officer have reason to believe "criminal activity may be afoot." *Thomas v. Dillard*, 818 F.3d 864, 874 (9th Cir. 2016).  "[T]he likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citations and internal quotation marks omitted).  What is required is "articulable facts" together with "reasonable inferences" justifying suspicion under the totality of the circumstances.  *United States v. Sokolow*, 490 U.S. 1, 7 (1989).  Furthermore, "due weight" must be given to the factual inferences drawn by officers given their experience and training in making deductions.  *Arvizu*, 534 U.S. at 273.  The facts of this case meet this low threshold to approach and inquire.

Countless cases have held that loitering in a previously burglarized area without obvious business is sufficiently suspicious *by itself* to warrant a *Terry* stop.  *Easley v. Cty. of Santa Clara*, 702 Fed. App'x 552, 554 (9th Cir. 2017) (individual parked without obvious lawful purpose where burglaries had been reported); *United States v. Karapetyan*, No. CR 16-00857-BRO, 2017 U.S. Dist. LEXIS 128124, at *10 (C.D. Cal. Aug. 11, 2017) (individual wandering carrying several packages in area experiencing high rate of mail theft); *Caldwell v. City of Selma*, No. 1:13-cv-00465-SAB, 2014 U.S. Dist. LEXIS 121380, at *14 (E.D. Cal. Aug. 29, 2014) (report of black male hanging around parked vehicles in an area of prior vehicle burglaries); accord *United States v. Beale*, 921 F.2d 1412, 1431 (11th Cir. 1991) ("phone tip of suspicious activity in a restaurant parking lot where there had been a recent string of car thefts and burglaries"); *United States v. Betts*, 806 Fed. App'x 426, 430 (6th Cir. 2020) (loitering in previously burglarized parking lot when businesses were not open "easily surpassed" reasonable suspicion); *Hargis v. City of Orlando*, 586 Fed. App'x 493, 499 (11th Cir. 2014) (per curiam)

ORBACH HUFF + HENDERSON LLP

1  (circling recently burglarized parking lot once in early morning); see generally *United States v.*
2  *Spencer*, No. CR419-086, 2019 U.S. Dist. LEXIS 176504, at *8-9 (S.D. Ga. Oct. 10, 2019)
3  (collecting cases showing loitering in burglarized area justified request for identification).

4        Thus, where an apartment complex had been historically burglarized, three individuals
5  sitting in a stairwell for just six minutes and asking a passerby to use their cell phone was
6  sufficiently suspicious to find *probable cause* for their arrest for loitering with the intent to
7  commit a crime.  *United States v. Pick*, No. CR 16-00695 DSF, 2017 U.S. Dist. LEXIS 59287,
8  at *8 (C.D. Cal. Feb. 28, 2017), aff'd *United States v. Pick*, 777 Fed. App'x 254 (9th Cir. 2019).
9  Furthermore, the parking lot in this case contains signs in conformity with California Vehicle
10  Code section 22658(a)(1), advising that parking is restricted to patrons, which is an advisement
11  peace officers may enforce, including by citation.  *Vienphuong Ti Ho v. City of Long Beach*, No.
12  2:19-cv-09430-DOC-KES, 2020 U.S. Dist. LEXIS 250536, at *50 (C.D. Cal. Nov. 10, 2020),
13  citing *Bradshaw v. Stoller*, 72 Fed. App'x 513, 514 (9th Cir. 2003).  Whether resting as Plaintiffs
14  insist, or monitoring the parking lot, as Deputies Holland and Pope believed, Plaintiffs were
15  undisputedly loitering where there had been a string of recent burglaries, which was reason
16  enough to identify them and inquire about their suspicious activity.

17        Reasonable suspicion was furthered by the fact that Plaintiffs and their vehicle closely
18  matched the description of the prior burglaries and suspects.  A suspect need only
19  "substantially" match a description; "[t]here will always be discrepancies" between a description
20  and a suspect.  *United States v. Velez*, No. CR 15-00102 WHA, 2015 U.S. Dist. LEXIS 70640,
21  at *11 (N.D. Cal. June 1, 2015); accord *Torry v. City of Chi.*, 932 F.3d 579, 588 (7th Cir. 2019)
22  ("an imperfect match between a suspect and a description does not necessarily make an officer's
23  suspicion unreasonable").  Variances from a general description are not fatal to a finding of
24  reasonable suspicion, particularly where there is reason to believe witnesses might have been
25  mistaken.  See, e.g., *United States v. Pinion*, 800 F.2d 976, 979 (9th Cir. 1986).  Even a general
26  description is sufficient for reasonable suspicion if limited geographically (here, one small
27  parking lot) and temporarily (the same early morning hour as the previous two early morning
28  burglaries).  See *United States v. Farley*, No. 18-cr-00400-TSH-1, 2019 U.S. Dist. LEXIS

44169, at *20 (N.D. Cal. Mar. 18, 2019) (identification of black male in silver four door in particular parking lot held sufficient to justify reasonable suspicion). As Plaintiffs were parked and reclined consistent with someone casing the lot and preparing for a quick getaway, Deputies Holland and Pope could reasonably believe this close match was not a coincidence.

Other factors support the Deputies' reasonable suspicion. Prior to Deputy Holland insisting Mother produce identification, Mother made numerous inconsistent statements that increased Deputy Hollands' suspicions. *E.g., United States v. $102,836.00 in United States Currency*, 9 F.Supp.3d 1152, 1160 (D. Nev. 2014) ("inconsistent statements as to the purpose of travel by occupants of a vehicle established the requisite reasonable suspicion to justify detainment for further investigation"). Even if true, Mother's implausible story of by happenstance renting a Nevada car at the Oakland Airport, only to drive it overnight during the school week to Las Vegas and back with her school-age Daughters, was suspicious enough to warrant further questioning. *United States v. Montoya De Hernandez*, 473 U.S. 531, 542 (1985) ("implausible story" supported reasonable suspicion); *United States v. Soto-Valencia*, 500 Fed. App'x 589, 590 (9th Cir. 2012). Plaintiffs were also using a rental car, a well-known ploy for criminals seeking to conceal their identity. See, e.g., *United States v. Garcia-Barron*, 116 F.3d 1305, 1307 (9th Cir. 1997) (coupled with other factors, use of a rental vehicle "makes the determination of reasonable suspicion constitutionally sound"). Finally, Plaintiffs had selected an inconvenient parking space to enter Starbucks but a perfect spot to monitor the parking lot. See, e.g., *Green v. Newport*, 868 F.3d 629, 634 (7th Cir. 2017) (though loitering in lot of open business lawful, it was also consistent with casing previously burglarized business, which standing alone justified investigative detention); *United States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1991) (per curiam) (solely based on being parked in lot without obvious business, officer had reasonable suspicion to pursue and demand identification and explanation).

Plaintiffs' cannot show that Deputy Holland lacked reasonable suspicion to conduct even the most preliminary investigation: asking the driver of an already voluntarily stopped automobile who she is. Because Deputy Holland had reasonable suspicion to at least identify who Plaintiffs were and why they were loitering, all of Plaintiffs' claims fail.

ORBACH HUFF + HENDERSON LLP

### 2.      The Vehicle Code Authorized Deputy Holland to Request ID

Deputy Holland was also permitted to request identification under the Vehicle Code. Even when parked off-street, California Vehicle Code section 12951 requires those "in the immediate control of an automobile" to provide identification upon demand to law enforcement. *People v. Redd*, 48 Cal.4th 691, 719 (2010).  Users of disabled placards are similarly required to provide identification.  Cal. Veh. Code § 22511.56(a).  While Plaintiffs may claim these are unenforceable "stop and identify statutes," the Ninth Circuit has confirmed that section 12951 falls under an exception to this rule, so this request may be made in the absence of reasonable suspicion.  *Lipton v. United States*, 348 F.2d 591, 594 (9th Cir. 1965).  The same reasoning applies to section 22511.56.  The Ninth Circuit has twice confirmed *Lipton* and the continued enforceability of section 12951, at least where officers do not themselves pull the vehicle over. See *United States v. Bowen*, 500 F.2d 960, 965 (9th Cir. 1974) (per curiam); *United States v. Carrizoza-Gaxiola*, 523 F.2d 239, 241 (9th Cir. 1975).  "Absent indicia of force or aggression, a request for identification or information is not a seizure or investigatory stop." *United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994).  Because the Ninth Circuit in *Bowen* and *Carrizoza-Gaxiola* confirmed *Lipton* remains good law – at least as here where a car is parked voluntarily – Mother violated the law by refusing to identify herself under both statutes.

### C.      Reasonable Suspicion Immediately Ripened into Probable Cause to Arrest

Assuming arguendo that Plaintiffs were "arrested"(which is disputed), such actions were supported by probable cause.  A valid arrest does not depend on whether the suspect actually committed a crime; being acquitted (or not charged with a crime at all) is irrelevant to the validity of the arrest.  *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

### 1.      Mother Was Subject to Arrest for Refusing to Provide ID

Less than a minute into the encounter, Mother clearly and unequivocally refused to provide her identification, which justified an arrest.  Courts have consistently held that a suspect's failure to produce identification during an otherwise permissible *Terry* stop is a violation of California Penal Code section 148(a)(1).  *Trotter v. Stonich*, 247 Fed. App'x 878, 880 (9th Cir. 2007) ("Under California law, where a driver fails to present his or her driver's

license, an officer has broad discretion to effect a custodial arrest."); accord *Hiibel*, 542 U.S. at 186.  The Ninth Circuit has held that a trial court properly granted summary judgment against Fourth Amendment and related claims because a failure to "provide identification upon request, [creates] the probable cause for a violation of California Penal Code § 148(a)(1) and California Vehicle Code § 12951(b)."  *Kuhlken v. Cty. of San Diego*, 764 Fed. App'x 612, 613 (9th Cir. 2019).  Whether because of the Vehicle Code or reasonable suspicion, Mother had to provide her license and her failure to do so justified arresting her.

### 2.    Daughters Were Subject to Arrest for Refusing to Reenter the Vehicle

Because Mother could be detained and/or arrested, the Deputies were empowered to detain the passengers during the encounter.  E.g., *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). While dealing with the driver, officers may without further legal cause order the passengers to either remain in the vehicle or exit it.  *Maryland v. Wilson*, 519 U.S. 408, 410 (1997).  "[T]he need for officers to exercise control over individuals encountered during a traffic stop" allows "an officer to order a passenger back into an automobile that he voluntarily exited because the concerns for officer safety originally announced in *Wilson*."  *United States v. Williams*, 419 F.3d 1029, 1034 (9th Cir. 2005).  A passenger's failure to comply with that order warrants their arrest under California Penal Code section 148.  *Young v. Cty. of L.A.*, 655 F.3d 1156, 1170 (9th Cir. 2011).  Deputy Holland gave both Daughters numerous clear orders that if they did not return to the car, they would be handcuffed and put in patrol vehicles.  However, Daughters refused to comply, instead remaining outside the vehicle while continuing to yell at the Deputies.

### 3.    Mother and Aasylei Each Committed a Battery

Irrespective of their subjective intent, both Mother and Aasylei flung open their doors into Deputy Pope and Deputy Holland, which authorized an arrest for battery upon a peace officer.  Under California Penal Code section 243(b), an unlawful battery against a peace officer occurs "whenever there is the slightest intentional touching, even though there is no intent to harm, and even though the degree of force used is unlikely to cause harm."  E.g., *People v. Thornton*, 3 Cal.App.4th 419, 423 (1992); accord *Burton v. City of San Jose*, No. C 06-06331 JW, 2010 U.S. Dist. LEXIS 164515, at *17 (N.D. Cal. Nov. 4, 2010).  Intent for battery upon a

- 12 -

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

peace officer can be inferred from the natural and probable consequences of an action irrespective of if the culprit believed the battery would not occur.  *People v. Hayes*, 142 Cal.App.4th 175, 180 (2006), citing *People v. Williams*, 26 Cal.4th 779 (2001) (kicking ashtray near officer proof beyond reasonable doubt battery intended).  After hitting Deputy Pope, Aasylei sarcastically told her she should not have been standing so close, showing she knew Deputy Pope would likely be hit.  Mother was similarly talking to Deputy Holland as she flung open her door into him.  These batteries further justified any purported arrest.

### 4.    All Plaintiffs Resisted Their Detention

Plaintiffs each resisted the Deputies, further justifying any alleged arrest.  There is "no right to use force, reasonable or otherwise, to resist an unlawful detention," and it is "well settled there is no right to resist a lawful detention."  E.g., *Evans v. City of Bakersfield*, 22 Cal.App.4th 321, 328, 333 n.3 (1994); Cal. Penal Code § 834a.  Mother resisted by starting the car and then refusing orders thereafter to get out of the car (so she could not put it in gear).  See, e.g., *Holland v. Azevedo*, No. 14-cv-01349-JST, 2016 U.S. Dist. LEXIS 59418, at *25 (N.D. Cal. May 3, 2016).  Aasylei resisted by pulling her arm away from her handcuffing and refusing to put her phone down so she could be handcuffed.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (stiffening arms or pulling away from handcuffing is resistance to arrest).  Aaottae struggled against both Deputies Pope and Leeper, including by using her feet to prevent being secured in a police vehicle.  See *Kuhlken v. Cty. of San Diego*, No. 3:16-CV-2504-CAB-DHB, 2018 U.S. Dist. LEXIS 7646, at *25 (S.D. Cal. Jan. 16, 2018), aff'd 764 Fed. App'x 612 (9th Cir. 2019) (blocking door with feet unlawful resistance).

### D.    Reasonable Suspicion and Probable Cause Defeat Plaintiffs' Seizure Claims

Plaintiffs' First cause of action related to unlawful seizure and derivative Tenth cause of action for false arrest and imprisonment fail because Deputy Holland had reasonable suspicion to investigate, besides probable cause to arrest.[47]  An investigatory detention of a vehicle and its occupants is lawful if founded upon reasonable suspicion.  See, e.g., *Delaware v. Prouse*, 440 U.S. 648, 654 (1979).  Even if the detention eventually ripened into an arrest, a claim of false

---

[47] This same result applies to the related portions of the Fourth, Sixth, Seventh and Twelfth Causes of Action.

Defs' Notice of Motion and MSJ or, in the alt, Partial Summary Judgment; Memo of P&A [20-cv-04679-WHA]

arrest or false imprisonment is only cognizable if the officers lacked probable cause.  See, e.g., *Lacy v. Cty. of Maricopa*, 631 F.Supp.2d 1183, 1193 (D. Ariz. 2008).  California law authorizes officers to make an arrest where "reasonable cause to believe the arrest was lawful."  Cal. Pen. Code § 847(b)(1); *Luchtel v. Hagemann*, 623 F.3d 975, 984 (9th Cir. 2010) ("Probable cause is an absolute defense to a false-arrest claim.").  Because reasonable suspicion and probable cause existed, summary judgment is appropriate.

To the extent Aasylei's claims are predicated upon a refusal to allow her to use the restroom, there is "no authority for the existence of a right on the part of one who is lawfully detained … to use a toilet upon demand."  *Hunter v. Namanny*, 219 F.3d 825, 831 (8th Cir. 2000).  Particularly where, as here, the available restroom is public and unsecured, officers may refuse requests to use a bathroom for several hours to better control the scene during an investigation.  See *Dawson v. City of Seattle*, 435 F.3d 1054, 1069 (9th Cir. 2006) (denial of requests for two hours appropriate); *Pac. Marine Ctr., Inc. v. Silva*, 809 F.Supp.2d 1266, 1286-87 (E.D. Cal. 2011) ("[a] complete denial of the usage of the toilet over the period of many hours … might give rise to a constitutional violation," but denial for four hours is permissible); *Little v. Gore*, 148 F.Supp.3d 936, 952-54 (S.D. Cal. 2015).  In total, Aasylei was detained without a bathroom for about an hour, well within the amount of time allowed under the law.

Aaottae's claim that Deputy Galloway took her phone likewise fails as officers are not required to tolerate violations of law in their presence.  "The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity."  *Payton v. New York*, 445 U.S. 573, 587 (1980).  Dispatch confirmed Aaottae's calls were interfering with emergency dispatch.  See Galloway Dec., ¶¶ 16-20.  Deputy Galloway could seize the phone and arrest Aaottae for calling 9-1-1 without an emergency (Cal. Pen. Code § 653y(a)) and harassingly persisting in her calls after being told a supervisor was summoned (Cal. Pen. Code §§ 653x, 653y(b)).  See *Anthony v. Oliva*, No. ED CV 12-1369-FMO (SH), 2013 U.S. Dist. LEXIS 37957, at *17 (C.D. Cal. Jan. 29, 2013) (cell phone properly seized to prevent suspected unlawful recording of court proceedings); *Huber v. Coulter*, No. CV 12-3293-GHK (JEM), 2014 U.S. Dist. LEXIS 181926,

- 14 -

1   at *23 (C.D. Cal. Dec. 22, 2014) aff'd, 684 Fed. App'x 623 (9th Cir. 2017) (phone properly

2   seized to prevent use of 9-1-1 system for non-emergency complaint).

3        **E.**    **Plaintiffs' Search Related Claims Fail**

4        Plaintiffs' First cause of action for an unlawful search and the derivative Eleventh cause

5   of action for invasion of privacy fail because the Deputies conducted a lawful and focused

6   search for the identification Plaintiffs refused to provide.[48]  Numerous cases have held that a

7   suspect's refusal to produce identification justifies a focused search for identification simply

8   based on the reasonable suspicion that justified the original detention.  See *Hiibel*, 542 U.S. at

9   178; *Cady v. Sheahan*, 467 F.3d 1057, 1063 (7th Cir. 2006) (search of briefcase to find

10  identifying information lawful); *United States v. Villagrana-Flores*, 467 F.3d 1269, 1275 (10th

11  Cir. 2006) (it does not violate the Fourth Amendment "for an officer who performs a *Terry* stop

12  … to obtain that individual's identity"); *United States v. Cortes*, 588 F.2d 106, 111 (5th Cir.

13  1979); accord *United States v. Askew*, 529 F.3d 1119, 1159 (D.C. Cir. 2008) ("Identification

14  procedures constituting searches are permitted during *Terry* stops so long as the procedures are

15  reasonable under the circumstances.").  While the Ninth Circuit has yet to address this issue,

16  "[o]ther circuits have found that police officers do enjoy limited powers to discover the

17  identities of persons detained during investigatory stops when the detainees refuse to cooperate."

18  *Nakamura v. City of Hermosa Beach*, No. CV06-06776 GW(SS), 2009 WL 1445400, at *10

19  (C.D. Cal. May 20, 2009), aff'd, 372 F. App'x 787 (9th Cir. 2010) (upholding search).

20       Similarly, where there is probable cause to arrest, a focused search for identification is

21  permissible if the suspect will not provide information voluntarily.  *Jones v. Murray*, 962 F.2d

22  302, 306 (4th Cir. 1992) ("when a suspect is arrested upon probable cause, his identification

23  becomes a matter of legitimate state interest and he can hardly claim privacy in it"); *United*

24  *States v. Hernandez-Rivas*, 348 F.3d 595, 599 (7th Cir. 2003) (search for identification incident

25  to arrest); *United States v. Monroy*, 614 F.2d 61, 64 (5th Cir. 1980) (coast guard properly

26  searched vessel for identification when crew could not furnish registration); accord *United*

27

28

---

[48] This same result applies to the search related portions of the Fourth, Sixth, Seventh and Twelfth causes of action.

- 15 -

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

1   *States v. Murphy*, 261 F.3d 741, 744 (8th Cir. 2001) (officer lawfully seized license in suspect's

2   wallet after suspect claimed he had no identification).

3       Additionally, police may search an automobile and the containers therein when they have

4   probable cause to believe it contains contraband or evidence of criminal activity.  *California v.*

5   *Acevedo*, 500 U.S. 565, 580 (1991).  The Ninth Circuit has confirmed a search for identification

6   is appropriate where a suspect refuses to provide such information.  See *United States v. Smith*,

7   389 F.3d 944, 952 (9th Cir. 2004); *United States v. Rodgers*, 656 F.3d 1023, 1028-1030 (9th Cir.

8   2011); accord *United States v. Thompson*, 597 F.2d 187, 190 (9th Cir. 1979) (inability to

9   produce identification justifies reasonable steps to confirm identity).  This same rule applies to

10  passengers, provided there is cause to believe the passenger's identification would be in the

11  vehicle.  See *Rodgers*, 656 F.3d at 1029.  In fact, established precedent has confirmed that

12  officers are legally justified in conducting searches in these exact circumstances.  *In re Arturo*

13  *D.*, 27 Cal.4th 60, 65 (2002); accord *People v. Hart*, 74 Cal.App.4th 479, 491 (1999).  Thus, the

14  focused search for identification was lawful.

15      **F.   Plaintiffs' Force Related Claims Fail as the Deputies Reasonably Handcuffed**
16      **and Secured Plaintiffs in Patrol Cars**

17      Plaintiffs' First cause of action for excessive force, Eighth cause of action for assault and

18  Ninth cause of action for battery are defeated as the minimal force in handcuffing Plaintiffs was

19  reasonable.[49]  These claims are coterminous as officers are privileged to use reasonable force as

20  defined under the Fourth Amendment.  See *Avina v. United States*, 681 F.3d 1127, 1131 (9th

21  Cir. 2012); accord Cal. Penal Code § 835a(b).  Plaintiffs' claims of being handcuffed and led to

22  a patrol car are insufficient to support their claims: "[p]ainful handcuffing, without more, is not

23  excessive force in cases where the resulting injuries are minimal."  *Rodriguez v. Farrell*, 280

24  F.3d 1341, 1351 (11th Cir. 2002) (citing cases); *Harmon v. City of Pocatello*, 431 F.Supp.3d

25  1135, 1155 (D. Idaho 2020).  Additionally, garden variety handcuffing is not excessive force

26  where a detention or arrest is lawful.  *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002);

27  accord *Sinclair v. Akins*, 696 Fed. App'x 773, 776 (9th Cir. 2017) ("a detainee's complaints of

28

---

[49] This same result applies to the force related portions of the Fourth, Sixth, Seventh and Twelfth causes of action.

tight handcuffs alone, without any physical manifestation of injury (during or after the handcuffing), where the initial handcuffing was justified" is not excessive force).

Notably, Plaintiffs conceded at deposition that their complaints related to simply being handcuffed.  *DeToledo v. County of Suffolk*, 379 F.Supp.2d 138, 145 n. 5 (D. Mass. 2005) ("Absent evidence that the handcuffs were incorrectly applied, or were applied so as to cause physical injury, their use does not constitute excessive force").  Finally, Plaintiffs told Lt. DeSousa that they had no injuries, the post-incident photographs show no bruises, abrasions or redness and Plaintiffs admit that no medical care was necessary.  See *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (affirming summary judgment against handcuffing claim where no documentable injury).  To the extent Mother complains about Deputy Holland leading her by the arm from her car, such actions were necessary and appropriate in response to Mother's resistance and starting the car's engine.  *Foster v. Metro. Airports Com.*, 914 F.2d 1076, 1082 (8th Cir. 1990); *Carter v. City of Post Falls*, No. CIV 08-00488-EJL, 2009 U.S. Dist. LEXIS 67246, at *18 (D. Idaho July 31, 2009) (collecting cases to show "[o]fficers may forcibly remove suspects who refuse [to exit their vehicle]").

Finally, to the extent Aaottae is complaining about Deputy Leeper trying to move her feet into the car before sliding her across the patrol car's back seat, such actions were necessary in response to Aaottae's refusal to enter the vehicle and blocking the door with her feet.  Where a suspect resists being put in a patrol car, officers may take action to move them into the vehicle. See *Kuhlken*, 2018 U.S. Dist. LEXIS 7646, at *25, aff'd 764 Fed. App'x 612 (officers properly forced feet into car and slid plaintiff across back seat after she used her feet to block the door).

### G.     Plaintiffs' Discrimination Related Claims Fail

Plaintiffs fail to establish that Defendants' actions were retaliatory or based on race, thereby precluding their Second, Third, Fifth and Seventh causes of action.[50]  The fact that a plaintiff is "African-American, the officer is white, and they disagree about the reasonableness of the traffic stop" are not "sufficient to raise an inference of racial discrimination." *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948 (9th Cir. 2003); accord *Pinder v. Emp't Dev. Dep't*,

---

[50] This same result applies to the discrimination and retaliation portions of the Fourth, Sixth and Twelfth causes of action.

Defs' Notice of Motion and MSJ or, in the alt, Partial Summary Judgment; Memo of P&A [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

227 F.Supp.3d 1123, 1140 (E.D. Cal. 2017).  Similarly, a claim under 42 U.S.C. section 1981 "requires a showing of intentional discrimination on account of race," which cannot be proven merely by claiming false arrest and excessive force.  E.g., *Brew v. City of Emeryville*, 138 F.Supp.2d 1217, 1224 (N.D. Cal. 2001).  Likewise, to claim retaliation in violation of the First Amendment, Plaintiffs must "prove the elements of retaliatory animus as the cause of injury," with causation being "understood to be but-for causation." *Hartman v. Moore*, 547 U.S. 250, 260 (2006).  Speculation that peace officers acted on the basis of race is also insufficient to state a claim under the Ralph Act (Cal. Civ. Code § 51.7), which requires "specific evidence showing that the officers' actions" were based on race.  E.g., *Uganda Knapps v. City of Oakland*, 647 F.Supp.2d 1129, 1167 (N.D. Cal. 2009).

To survive a motion for summary judgment, Plaintiffs must present evidence that is "specific and substantial." *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1152 (9th Cir. 2006).  All Plaintiffs present is their subjective belief that Defendants acted with discriminatory intent, which is not sufficient.  *Hutton v. City of Berkeley Police Dep't*, No. 13-cv-03407-JCS, 2014 U.S. Dist. LEXIS 126300, at *34 (N.D. Cal. Sep. 9, 2014) (citing cases).  Moreover, the existence of legal cause for a detention or arrest "should generally defeat a retaliatory arrest claim."  See, e.g., *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724-1727 (2019).  Not only were the Deputies' actions supported by reasonable suspicion, but there are absolutely no facts to suggest the incident was the result of racial or other animus.

## H.   There is No Basis for Derivative Liability for Deputies Leeper and Galloway

As to Plaintiffs' federal claims, officers ordinarily can only be liable for their own actions.  E.g., *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  As to Plaintiffs' state law claims, public employees cannot be liable for the acts of others.  Cal. Gov't Code § 820.8. Deputies Leeper and Galloway arrived on scene late and were therefore permitted to reasonably rely upon the determination of reasonable suspicion and probable cause made before they arrived.  E.g., *Whiteley v. Warden*, 401 U.S. 560, 568 (1971); *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005), overruled on other grounds *United States v. King*, 687 F.3d 1189, 1189 (9th Cir. 2012).  Consistent with the Court's ruling on Defendants' Motion to Dismiss (Dkt. 59,

ORBACH HUFF + HENDERSON LLP

7:23-8:7), because Deputies Leeper and Galloway did not receive information before they acted that would have dispelled their reasonable reliance, Plaintiffs' claims against them fail.

### I.    The Deputy Defendants are Entitled to Immunity

The Deputies are further protected by the qualified immunity doctrine, which shields government officials from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To be clearly established, a right must be sufficiently clear that *every reasonable official* who violates that right would have understood that his conduct was unlawful. *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). There need not be a case directly on point, but existing precedent must place the statutory or constitutional question "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). "Clearly established law" is not to be defined at a high level of generality, for qualified immunity is no immunity at all if "clearly established law" can simply be defined as "the right to be free from unreasonable searches and seizures." *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775-76 (2015). If allowed to define "clearly established law" at such a high level of generality, plaintiffs would be able to convert the plainly established rule of qualified immunity "into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

The relevant inquiry on qualified immunity is whether it would have been clear to every reasonable officer that his conduct was unlawful. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004), citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2010). It is plaintiff's burden to prove that the right allegedly violated was clearly established at the time. *Davis v. Scherer*, 468 U.S. 183, 197 (1984). In analyzing qualified immunity, the Court does not simply repeat the constitutional inquiries for reasonable suspicion and probable cause discussed above. Rather, it employs a similar inquiry with an admonition against "second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." *Ryburn v.*

Defs' Notice of Motion and MSJ or, in the alt, Partial Summary Judgment; Memo of P&A [20-cv-04679-WHA]

1   *Huff*, 565 U.S. 469, 477 (2012).  Thus, the Court is to evaluate whether the Deputies had

2   "'arguable' reasonable suspicion."  *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir.

3   2009).  Similarly, if officers "reasonably but mistakenly conclude that probable cause is

4   present," then qualified immunity applies.  *Anderson v. Creighton*, 483 U.S. 635, 641, (1987).

5   If even a single officer could reasonably disagree about the issue, immunity applies.  *Rosenbaum*

6   *v. Washoe Cty.*, 663 F.3d 1071, 1078 (9th Cir. 2011).  As referenced above, the multitude of

7   legal decisions from the Courts have consistently confirmed that law enforcement officers may

8   request identification from individuals in these exact circumstances.

9          Furthermore, Plaintiffs cannot show "that various courts have agreed that certain conduct

10  is a constitutional violation under facts not distinguishable in a fair way from the facts presented

11  in the case at hand."  *Orn v. City of Tacoma*, 949 F.3d 1167, 1178 (9th Cir. 2020), quoting

12  *Saucier*, 533 U.S. at 202.  Plaintiffs must come forward with analogous cases "particularized" to

13  the current facts.  *Plumhoff v. Rickard,* 134 S. Ct. 2012, 2023 (2014).  However, no published

14  case that Defendants could locate has ever held an officer is precluded from requesting

15  identification after observing suspicious behavior by individuals in a highly burglarized area

16  who matched witnesses descriptions from earlier crimes.

17      **J.     Plaintiffs Have Not Identified an Actionable Policy or Custom**

18          Plaintiffs' Fourth cause of action under 42 U.S.C. section 1983 fails for the same reasons

19  as their constitutional claims against the Deputies.  *Villegas v. Gilroy Garlic Festival Ass'n*, 541

20  F.3d 950, 957 (9th Cir. 2008) ("Because there is no constitutional violation, there can be no

21  municipal liability.").  Additionally, and more fundamentally, Plaintiffs cannot sustain their

22  claim against the County as they have failed to identify "a deliberate policy, custom, or practice

23  that was the moving force behind the constitutional violation."  *AE v. Cty. of Tulare*, 666 F.3d

24  631, 636 (9th Cir. 2012).  When asked to identify the basis for this claim, Plaintiffs only asserted

25  the County's policy and training related to racial profiling and the requests for identification was

26  somehow deficient, allegedly resulting in other violations.  Gilbert Dec., Exs. P-R, Interrog.

27  Resp. No. 15.  But Plaintiffs have been unable to point to even one similar incident and the

28  County's policies and training properly prohibit racial discrimination and require investigations

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

1  be based upon reasonable suspicion.  "[W]here the policy relied upon is not itself

2  unconstitutional, considerably more proof than the single incident will be necessary in every

3  case to establish both the requisite fault on the part of the municipality." *Okla. City v. Tuttle,*

4  *471 U.S. 808, 824 (1985)*; accord *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)

5  ("adequately trained officers occasionally make mistakes; the fact that they do says little about

6  the training program or the legal basis for holding the city liable").  Summary judgment may be

7  granted against this factually unsupported Fourth cause of action.

8     **K.   Defendants are Entitled to Immunity from Plaintiffs' State Law Claims**

9        Defendants are further immunized from Plaintiffs' state law claims.  At the outset, Penal

10  Code sections 835a and 847(b)(1) shield the Deputies from Plaintiffs' state law claims for force,

11  false arrest and imprisonment.  E.g., *Shannon v. Cty. of Sacramento*, No. 2:15-cv-00967-KJM-

12  DB, 2017 U.S. Dist. LEXIS 42685, at *3 (E.D. Cal. Mar. 22, 2017); *O'Toole v. Superior Ct.,*

13  *140 Cal.App.4th 488, 511 (2006).*

14        Next, Government Code section 820.6 law immunizes officers who act "in good faith,

15  without malice, and under the apparent authority of an enactment that is unconstitutional, invalid

16  or inapplicable."  Thus, the obligation to provide identification in sections 12951 and 22511.56

17  supports the Deputies actions and precludes Plaintiffs' claims.  *Lipton*, 348 F.2d at 594, *Bowen,*

18  *500 F.2d at 965*; *Carrizoza-Gaxiola*, 523 F.2d at 241.  Moreover, no Court has ever declared

19  that the demand for identification allowed under Vehicle Code sections 12951 and 22511.56

20  may not be posed to the driver of an already stopped vehicle.  Peace officers are not required to

21  engage in a constitutional analysis or guess at the outcome to a challenge of a law in court.

22  *O'Toole*, 140 Cal.App.4th at 507; accord *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979)

23  ("Society would be ill-served if its police officers took it upon themselves to determine which

24  laws are and which are not constitutionally entitled to enforcement.").  Deputy Holland

25  reasonably believed these statutes authorized his request for identification and if that request

26  was justified, so too were all of the subsequent actions.  By way of the immunity in section

27

28

Defs' Notice of Motion and MSJ or, in the alt, Partial Summary Judgment; Memo of P&A [20-cv-04679-WHA]

820.6, the authority granted by sections 12951 and 22511.56(a) defeat Plaintiffs' Six through Thirteenth causes of action.[51]

The Deputies are further protected under Government Code sections 821.6 and 820.2. See, e.g., *Jenkins v. Cty. of Orange*, 212 Cal.App.3d 278, 283 (1989). "California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits." *Gillan v. City of San Marino*, 147 Cal.App.4th 1033, 1048 (2007). Similarly, "California Government Code section 820.2 provides immunity to peace officers for their discretionary acts in arrest situations." *Price v. Cty. of San Diego*, 990 F.Supp. 1230, 1244 (S.D. Cal. 1998); *Watts v. Cty. of Sacramento*, 136 Cal.App.3d 232, 234 (1982). With the exception of Plaintiffs' assault and battery claims (addressed above), it is well-established that any other action taken during the investigation of a crime is immunized, even if charges are not filed. See *Amylou R. v. Cty. of Riverside*, 28 Cal.App.4th 1205, 1210 (1994) ("Because investigation is 'an essential step' toward the institution of formal proceedings, it 'is also cloaked with immunity.'"). This immunity applies to claims under the Bane and Ralph Acts, *Via v. City of Fairfield*, 833 F.Supp.2d 1189, 1199 (E.D. Cal. 2011), invasion of privacy during a search, *Trujillo v. City of Ontario*, 428 F.Supp.2d 1094, 1124 (C.D. Cal. 2006), allegedly negligent investigations, *Johnson v. Pacifica*, 4 Cal.App.3d 82, 86 (1970) and conversions during an investigation, *Baughman v. State of Cal.*, 38 Cal.App.4th 182, 192 (1995); *Cty. of L.A. v. Superior Court*, 181 Cal.App.4th 218, 230-31 (2009). Thus, the Deputies are immune under Penal Code sections 835a and 847(b)(1) and under Government Code sections 820.2, 820.6 and 821.6 and the County is derivatively immune under Government Code section 815.2(b).

**L.   Plaintiffs' Bane Act Claim is Unfounded**

Plaintiffs' Sixth cause of action under the Bane Act (Cal. Civ. Code § 52.1) also fails. "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he

---

[51] Similarly, Plaintiffs' First through Fifth causes of action fail as the Deputies are immune when acting under a statute's apparent authority. See *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994).

ORBACH HUFF + HENDERSON LLP

or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law."  *Shoyoye v. Cnty. of Los Angeles*, 203 Cal.App.4th 947, 955-956 (2012).  A plaintiff must allege facts showing that defendants attempted or did interfere with plaintiff's state or federal constitutional rights by threatening or committing violent acts. *Austin B. v. Escondido Union School District*, 149 Cal.App.4th 860 (2007).  As confirmed in *Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766 (2017), "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the [person] had a specific intent to violate the [plaintiff's] right."  *Id.* at 801-802.  Furthermore, the Bane Act "does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right."  *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843 (2004).

Two main elements must be met for Plaintiffs to prove a violation of the Bane Act: 1) that Defendants interfered or attempted to interfere in Plaintiffs' exercise of a right, 2) by way of "threats, intimidation, or coercion."  See, CACI instruction, No. 3066; CACI Verdict Form, No. 3035.  As to the first element, Plaintiffs have not established an underlying violation of legal right.  *Reynolds v. Cty. of San Diego*, 84 F.3d 1162, 1170-71 (9th Cir. 1996).  As to the second element, Plaintiffs "must allege threats or coercion beyond the coercion inherent in a detention or search in order to recover under the Bane Act."  *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015); see also *Morse v. County of Merced*, No. 1:16- cv-000142-DAD-SKO, 2016 WL 4000406, at *2 (E.D. Cal. July 25, 2016) ("[I]n cases alleging a violation of a plaintiff's Fourth Amendment right to be free from unlawful searches and seizures, there must be some additional evidence of threat, intimidation, or coercion beyond the coercive nature inherent in each and every arrest to sustain a claim under the Bane Act.").  Although detention, and handcuffing are coercive actions, they are actions that are an inherent part of any arrest. *Ruiz v. Flores*, 2015 U.S. Dist. LEXIS 27209 (E.D. Cal. Mar. 4, 2015).  As such, the mere fact of detention and handcuffing cannot form the basis of a section 52.1 claim.  *Lyall*, 807 F.3d at 1196; accord *Walker v. City of Hayward*, No. C07-6205 TEH, 2008 WL 2357249, at *7 (N.D. Cal. June 6, 2008); *Allen v. City of Sacramento*, 234 Cal.App.4th 41, 69 (2015) ("a wrongful

- 23 -

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

1    arrest or detention, without more, does not satisfy both elements of section 52.1").  Because

2    Plaintiffs failed to demonstrate how the Deputies' actions were intended to interfere with any

3    constitutionally protected rights, their Bane Act claim fails as a matter of law.

4              **M.      Plaintiffs' Claims of Invasion of Privacy, Negligence and Conversion Fail**

5              Plaintiffs' Eleventh, Twelfth and Thirteenth causes of action are further precluded as they

6    are particularly factually unsupported.  Plaintiffs' invasion of privacy claim requires, among

7    other things, "a legally protected privacy interest" (*Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010,

8    1024 (N.D. Cal. 2012)), which cannot be established in this case where the search was lawful.

9    See *Horton v. California*, 496 U.S. 128, 141 (1990).  This claim also requires "a serious

10   invasion of the protected privacy interest," which requires not just "intrusion into a private

11   place" but also "intrusion in a manner highly offensive to a reasonable person."  *Low*, 900

12   F.Supp.2d at 1025; *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 37 (1994) (requiring

13   "egregious breach" to be actionable).  This is intentionally "a high bar for an invasion of privacy

14   claim," which is not met by merely unlawfully copying information from state issued

15   identification.  *White v. SSA*, 111 F.Supp.3d 1041, 1053 (N.D. Cal. 2015).  Moreover, the

16   "gravamen of the tort is ordinarily the unwarranted publication by defendant of intimate details

17   of plaintiff's private life," and so the tort cannot be claimed in a case such as this one where

18   there was no dissemination of Plaintiffs' details to the public.  *Coverstone v. Davies*, 38 Cal.2d

19   315, 323 (1952).  Even if Deputies Holland and Pope were not privileged to obtain Plaintiffs'

20   identification, any violation was not so egregious to meet this high standard.

21             As to Plaintiffs' negligence claim, this claim is again duplicative of their constitutional

22   claims and therefore fails for the same reasons.  See *Hernandez v. City of Pomona*, 46 Cal.4th

23   501, 517 (2009).  To the extent the negligence claim embraces assertions of "negligent

24   discrimination or retaliation," such a claim does not exist.  *Delvecchia v. Frontier Airlines*, No.

25   2:19-cv-01322-KJD-DJA, 2021 U.S. Dist. LEXIS 60775, at *10 (D. Nev. Mar. 30, 2021);

26   accord *Smith v. Barton*, 914 F.2d 1330, 1337 (9th Cir. 1990) (explaining there is "no

27   discrimination actions at common law").

28   ///

- 24 -

Plaintiffs' conversion claim likewise fails as the confiscation of Aaottae's phone is not sufficient to sustain this claim.  First, because a conversion requires an unlawful taking, this claim cannot stand if the Court concludes Deputy Galloway lawfully seized Aaottae's phone. See, e.g., *Silverstin v. Kohler & Chase*, 181 Cal. 51, 54 (1919); accord *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066 (1998) (conversion requires a "wrongful act or disposition of property rights").  Second, Aaottae confirmed there was no damage to her phone and the Court has already held that in the absence of any damage, this claim cannot stand (Dkt. 59, 15:20-28). Accord *Goldberg v. List*, 11 Cal.2d 389, 394 (1938).  Third, absent a refusal to ever return property, it is "incumbent upon the plaintiff to show an intention or purpose to convert the goods and to exercise ownership over them."  *Zaslow v. Kroenert*, 29 Cal.2d 541, 550 (1946); accord *Jordan v. Talbot*, 55 Cal.2d 597, 610 (1961) (temporarily holding items in plaintiff's name is not conversion).  Plaintiffs present absolutely no evidence that Deputy Galloway intended to declare his own ownership over the phone and refusing to return property to inquire into if the property should be returned is not a conversion.  *Giacomelos v. Bank of Am. Nat'l Tr. & Sav. Asso.*, 237 Cal.App.2d 99, 100 (1965).  Finally, not every taking is a conversion because only a "substantial interference" is actionable.  *Zaslow*, 29 Cal.2d at 551.  Where the alleged conversion "consists of intermeddling with or use of or damages to the personal property," the proper claim is one for trespass or case, which Plaintiffs did not plead and cannot plead as there was no "actual damage" in the form of impairment to the property's condition, quality or value.  *Id.*; see also *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1357 (2003).  Like Plaintiffs' claims of invasion of privacy and negligence, the conversion claim is unfounded.

## IV.   CONCLUSION

Defendants respectfully requests this Motion for Summary Judgment be granted in its entirety and judgment entered in their its favor.

Dated:  August 5, 2021          Respectfully submitted,

**ORBACH HUFF + HENDERSON LLP**

By:  */s/ Kevin E. Gilbert*

Kevin E. Gilbert
Attorney for Defendants

- 25 -

ORBACH HUFF + HENDERSON LLP