UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AASYLEI LOGGERVALE, AASYLEI HARDGE-LOGGERVALE, and AAOTTAE LOGGERVALE,

Plaintiffs,

v.

COUNTY OF ALAMEDA, STEVEN HOLLAND, MONICA POPE, KEITH LEEPER, ANTHONY DESOUSA, CAMERON GALLOWAY, and DOES 1-50, inclusive,

Defendants.

No. C 20-04679 WHA

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this Section 1983 action for unlawful conduct by sheriffs' deputies, defendants move for summary judgment on almost all claims. Plaintiffs have moved for summary judgment on the unlawfulness of the searches and seizures. To the extent stated below, both sides' motions are **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

The following facts are uncontroverted. In the morning of September 20, 2019, plaintiffs Aasylei Loggervale (Ms. Loggervale), Aasylei Hodge-Loggervale (Aasylei), and Aaottae Loggervale (Aaottae), parked at a Starbucks in Castro Valley, California. Aaottae, then seventeen and Aayslei, then nineteen were Ms. Loggervale's daughters. Both were college

1  students. All three were African-American. The three had driven through the night from Las
2  Vegas so Aayslei could take a college math test at nine a.m. in Berkeley. Their pause at
3  Starbucks would have been a rest before the final stretch. Ms. Loggervale parked in a
4  handicapped parking space, with a visible placard hanging from the rear-view mirror (DeSousa
5  Decl. Exh. H at 00:00–20:16; Holland Decl. Exh. A at 00:30–01:30).

6      Deputies' body-cameras captured the following events. Alameda County Sheriff's
7  Deputies Steven Holland and Monica Pope were on patrol. In separate vehicles, they parked
8  nearby and observed the Loggervales' silver, four-door Cadillac for "several minutes." After
9  running the plate, they determined it was a rental. They approached the vehicle. Deputy
10 Holland walked up to the driver's window, and Deputy Pope stood on the passenger side of the
11 car. Turning on the engine, Ms. Loggerale rolled down her window to speak to Deputy
12 Holland (then shut off the engine). Deputy Holland told Ms. Loggervale that they were
13 investigating early-morning break-ins. She thanked him for informing them. Next, Deputy
14 Holland asked Ms. Loggervale for her identification. Ms. Loggervale initially reached for her
15 purse, but then refused. She stated that she did not believe she was required to produce it. An
16 argument with Deputy Holland ensued about his reasons for continuing to question her. He
17 insisted on seeing her identification. Ms. Loggervale instructed one daughter to start filming
18 with her cell phone and another to call Ms. Loggervale's cousin (Pope Decl. Exh. E at 00:27–
19 04:50; Holland Decl. Exh. A at 00:30–05:00).

20     Aayslei and Aaottae also began arguing with the deputies. One called 911. All three
21 repeatedly denied any involvement with automobile crimes. Aaottae began videoing. When
22 Aasylei exited the vehicle to use the bathroom, her door hit Deputy Pope's leg. Deputy
23 Holland said, "Hold on." Aayslei asked her mother to pop the trunk. Deputy Holland said,
24 "We're not doing that," and "Everyone in the car's detained." He told Aasylei to sit in the car.
25 She did not. Deputy Holland told Ms. Loggervale to exit the car. Approximately
26 simultaneously, she started the engine, but did not move the car.

27     Deputy Holland then took hold of Ms. Loggervale's left arm and struggled with her,
28 continually asking her to exit the car. The arguments continued. Deputy Holland ultimately

2

United States District Court
Northern District of California

Case 3:20-cv-04679-WHA   Document 106   Filed 10/04/21   Page 3 of 14

extracted Ms. Loggervale, handcuffed her, and seated her in a patrol vehicle. Deputy Keith Leeper arrived shortly after Aasylei had exited the car. Then Aaottae exited the vehicle. Deputy Holland told both to reenter the car, which they did not do. To Deputy Leeper, Deputy Holland said, "They don't want to listen, so let's . . . detain these two," meaning the daughters. As Deputy Leeper tried to handcuff Aasylei, she batted his hand. He said, "You grab my hand again, you're gonna get dropped." Deputy Leeper finished handcuffing her and escorted her to a squad car. Aayslei kept her cell phone, which she then used to call 911. Meanwhile, Deputy Pope held Aaottae against the car. Deputy Leeper returned to the Loggervales' car and helped Deputy Pope to handcuff Aaottae (Leeper Decl. Exh. F at 00:14–01:20; Holland Decl. Exh. A at 00:30–6:33; Pope Decl. Exh. E at 04:30–09:00).

Deputies Leeper and Pope escorted Aaottae to a vehicle, where she sat on the seat but refused to put her feet inside the car. All three argued for several moments. Deputy Leeper put Aaottae's feet into the vehicle, but she removed them immediately. He went around to the opposite door, opened it, and pulled Aaottae fully into the car using her right arm. Deputy Pope shut the other side's door (Pope Decl. Exh. E at 10:00–13:00).

At several points, all three women expressed that their handcuffs were too tight and were causing either numbness or pain (*id.* at 13:00–20:00.).

Deputies Holland and Pope returned to the rental and searched the front seat, back seat (on the side Aayslei had been sitting), and the trunk. They also searched Aaottae and Ms. Loggervales' purses. Deputy Pope could not initially find Aaottae's purse, so asked her where her identification was. Aaottae explained that she had just graduated high school, was 17, and did not have a (state) identification card, but that her student card was in her purse in the trunk. Deputy Pope searched there next. Deputies neither asked for nor received permission to search (Holland Decl. Exh. A at 10:30–17:00; Pope Decl. Exh. E at 13:00–20:00).

At some point, Deputy Cameron Galloway arrived along with non-defendant Deputy S. Eng.

Aasylei informed Deputy Leeper she needed to use the bathroom, but he did not allow her to do so. After Galloway distracted Aayslei by telling her that he would call his supervisor,

3

Deputy Leeper swiftly opened the squad car's rear door next to Aayslei and removed her phone from her lap (Pope Decl. Exh. E at 21:41– 23:00).

Lieutenant Anthony DeSousa arrived sometime after the women were seated inside squad cars. The record does not reflect that he immediately instructed anyone to halt a search or to release plaintiffs. After approximately an hour, plaintiffs were allowed to leave. Deputies issued no citations and no charges have been filed as of this order.

An internal affairs investigation followed. It found no wrongdoing. Alameda County Sheriff Gregory Ahern was briefed and hand-wrote this on the report: "Briefed. No further action required" (May Decl. 2, Exh. AA).

**ANALYSIS**

Summary judgment is proper where the admissible evidence demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a).

1. **SECTION 1983.**

A Section 1983 analysis proceeds in two steps where a defendant asserts qualified immunity. *First*, a district court determines whether a violation of a constitutional right occurred. *Second*, if so, the court determines whether the plaintiff's right to be free from official action "was clearly-established." *Orn v. City of Tacoma*, 949 F.3d 1167, 1178 (9th Cir. 2020). If not, qualified immunity shields the official defendants.

Here, plaintiffs assert four theories. *First*, plaintiffs argue that the deputies lacked reasonable suspicion for an investigatory stop and so the eventual arrests were unlawful. *Second*, they argue that the vehicle search violated the Fourth Amendment. *Third*, they argue the deputies used excessive force. *Fourth*, they argue that race discrimination motivated the other violations. The next section discusses each theory below.

   A. *SEIZURE.*

Defendants contend that the detention was lawful, pursuant to their reasonable suspicion that plaintiffs might be auto-burglary suspects and, separately, for possible violations of the Vehicle Code. An officer may conduct a brief, investigatory stop — a so-called "*Terry* stop"

4

— where the officer has a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

This order denies summary judgment on both liability and qualified immunity grounds because counsel for the defense made four material misrepresentations at the hearing. We know they were material because counsel himself brought them up. Thankfully, plaintiffs' counsel was prepared and exposed all four.

*First,* defense counsel represented that Ms. Loggervale told Deputy Holland that she "doesn't have to give her identification because she's Black." Defense counsel further said, "This is actually her statement. It is actually on the video. The Court can see it for itself." The Court has seen it. Counsel is wrong (09/27/21 H'ng Tr. at 6, 12–13).

*Second*, defense counsel stated that Deputies Holland and Pope had in mind the female African-American suspects from a robbery at Big Five. Defense counsel suggested that knowledge of the Big Five suspects informed the deputies' suspicions about the Loggervales. Both testified to the contrary, under oath, at their depositions (*id*. at 23–25).

*Third*, defense counsel at the hearing and in briefing said that Ms. Loggervale made inconsistent statements. She, defense counsel said, claimed to be waiting for Starbucks to open but in fact it was already open. This representation, however, was untrue. She said she was waiting to go into the Starbucks, and said nothing about waiting for it to open (*id*. at 26).

*Fourth*, defense counsel stated that the officers searched for identifications only in areas of the car described by "each of" the plaintiffs. This was false as to Ms. Loggervale and Aayslei (*id*. at 7, 10).

The district courts rely on the integrity of the lawyers. The judge must be able to rely on what counsel says. No judge has time to rummage through the fact record to sort through the true from the untrue to see if there is enough to support summary judgment.

Importantly, counsel's misrepresentations of the record relate directly to the core legal question: reasonable suspicion for detention. The above misrepresentations dealt with (1) deputies' knowledge of prior crimes, relevant to whether the women could reasonably have been suspected of prior auto burglaries, and (2) Vehicle Code violations. The latter is because

5

defendants' touted case, *Lipton v. United States*, 348 F.2d 591, 594 (9th Cir. 1965), justifies suspicionless detentions and demands for identification (if at all) *only* when officers are *engaged in enforcing* sections of the Vehicle Code that "could not otherwise be effectively enforced." *United States v. Carrizoza-Gaxiola*, 523 F.2d 239, 241 (9th Cir. 1975). *Lipton* makes officers' true purpose essential. *Carrizoza-Gaxiola*, a follow-on case, later assumed the validity of *Lipton* after *Terry*. It held that the Vehicle Code could not justify a suspicionless detention of a defendant, because when they stopped the defendant, officers had actually been investigating auto theft. *See ibid*. Assuming, without deciding, *Lipton*'s validity, this order finds that defense counsel's comments bear on the investigation's purpose and the existence of reasonable suspicion, throwing the record into doubt.

Cognizant of *Fair Housing Council of Riverside City, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001), the undersigned has also accounted for plaintiffs' record. Not being able to rely on the sum total of the record, however, material issues remain about whether the official conduct was unlawful. There remains considerable doubt that reasonable suspicion of burglaries existed. Disputed facts are such that a reasonable jury could find that defendants' suspicion of burglaries was *un*reasonable, and that *Carrizoza-Gaxiola* clearly established the detention was unlawful under the Vehicle Code. A jury must decide liability and qualified immunity.

California Penal Code Section 847(b)(1) grants immunity for false arrest where an officer had "reasonable cause." The cross motions for summary judgment on the 1983 claim for unlawful arrest and detention is **DENIED**. The cross motions for summary judgment on corresponding state law claims of false arrest and imprisonment; negligence; battery; and assault, are **DENIED**. Defendants' motion for summary judgment on qualified immunity is also **DENIED**.

### B. SEARCH.

Unlike the detention, the legal questions surrounding the search depend not a bit on the above. Plaintiffs allege that deputies here searched the passenger compartment, trunk, purses,

1    and wallets, all without a warrant or a valid exception to the warrant requirement.  They further

2    contend that the search was clearly unlawful under the circumstances.  This order agrees.

3        Defendants never argue that they possessed probable cause to search for fruits of any

4    burglary.  They contend that they lawfully searched for identifications.  For the reasons that

5    follow, a jury verdict on the seizure cannot change the search analysis.

6        *First,* longstanding precedent establishes that officers cannot search pursuant to

7    reasonable suspicion.  *See Sibron v. New York*, 392 U.S. 40, 63 (1968).

8        *Second*, defendants argue, "Numerous cases have held that a suspect's refusal to produce

9    identification justifies a focused search for identification simply based on the reasonable

10   suspicion that justified the original detention" (Br. at 15).  But, *none* of the cases defendants

11   have cited purported to justify a physical vehicle search for a driver's identification.

12   Moreover, even if such authority existed, it would not support a search for the girls'

13   identifications.  (For instance, *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cty.*, 542 U.S.

14   177, 196 (2004), did not involve a search at all; *United States v. Villagrana-Flores*, 467 F.3d

15   1269, 1272 (10th Cir. 2006), involved no search but rather an officer obtaining someone's

16   name, likely off a wrist band; and *United States v. Cortes*, 588 F.2d 106, 111 (5th Cir. 1979),

17   found that a Coast Guard statute legal justified a search on the high seas.)

18       *Third*, "Because police could not reasonably have believed either that" the family could

19   have "accessed [their] car at the time of the search or that evidence of the offense for which

20   [they were] arrested might have been found therein, the search in this case was unreasonable."

21   *Arizona v. Gant*, 556 U.S. 332, 344 (2009).  *Gant* overturned longstanding precedent to

22   prohibit a warrantless vehicle search incident to arrest.  It afforded two exceptions:  where

23   suspects could potentially reach weapons in the passenger compartment or its containers, or

24   where evidence of the crime of arrest could be found inside the car.

25       Defendants counter that *United States v. Smith*, 389 F.3d 944, 947 (9th Cir. 2004),

26   permits a warrantless search for identification inside a suspect's car, incident to arrest.  There,

27   the suspect was arrested for giving a false name.  The arrestee's identification would have been

28   direct evidence of the offense.  Therefore, the search fit within an exception to *Gant*.  No

1  parallel exists here.  Defendants do not (and could not) argue for a consent, exigent-
2  circumstances, plain-view, or inventory exception to the warrant requirement.  Nor do they
3  suggest that they had probable cause to search for evidence of the burglaries.  No fact dispute
4  on this topic remains.  Deputies committed a constitutional violation by searching the
5  passenger compartment, trunk, purses, and wallets.

6  When the search occurred, moreover, the law under these circumstances would have been
7  apparent to all but those "plainly incompetent" or "who knowingly violate the law." *Ziglar v.*
8  *Abbasi*, 528 U.S. ___ (2017), quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Officers
9  lawfully arrested the suspect in *Gant* for driving on a suspended license, an arrest which, the
10 Supreme Court held, did not justify a search for evidence in the car.  Officers already knew
11 Gant's license had been suspended.  Here too, probable cause to arrest could have flown only
12 from obstructing the investigation, and evidence of this could not have appeared in the car.  In
13 neither case could arrestees access the car to retrieve weapons.  *See Gant*, 556 U.S. 344.  Under
14 the specific circumstances here, the official conduct was clearly unlawful, so qualified
15 immunity does not shield defendants from plaintiffs' unreasonable search claims under Section
16 1983.

17 Defendants do not argue that any official deserves summary judgment on account of
18 failing to participate in the search, or on account of inadequate supervisory liability.  These
19 arguments are waived for purposes of summary judgment.  Summary judgment is **GRANTED**
20 for plaintiffs and **AGAINST** defendants on the Fourth Amendment search claims as to Deputies
21 Holland and Pope.

22 Plaintiffs, however, have not shown that Lt. DeSousa arrived *before* the searches had
23 ended.  The record is ambiguous as to whether any searching occurred after his arrival.  That
24 ambiguity leaves an issue of material fact.  Thus, the cross motions for summary judgment
25 against Lt. DeSousa are **DENIED**.

26 As to the corresponding state law claim, California Government Code Sections 820.2 and
27 821.6 immunize defendants for non-assaultive torts.  The defense motion for summary
28 judgment on invasion of privacy is **GRANTED**.  Plaintiff's motion on this point is **DENIED**.

8

### C. EXCESSIVE FORCE.

Plaintiffs allege that Deputies Holland, Pope, Leeper, and Galloway used excessive force in detaining them. "Determining whether the force used to effect a particular seizure is reasonable . . . requires a careful balancing of the nature and quality of the intrusion . . . against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396 (1989).

Disputed issues of material fact preclude a finding on liability and qualified immunity as to the seizures. In *Nicholson v. City of Los Angeles*, 935 F.3d 685, 689 (9th Cir. 2019), handcuffing during a four-hour suspicionless detention was unreasonable force. Plaintiffs have produced evidence of force beyond the fact of the handcuffing: they have introduced admissible evidence of handcuffing with complaints of excessive tightness and pain; restraints by the officers; officers moving the women without cooperation; and bruising and abrasions (*see, e.g.,* May Opp. Decl. Exh. EE). Viewed in the light most favorable to the nonmoving plaintiffs, a reasonable jury could find that it was clearly-established that the force used was unreasonable. Nor does the defense argue good-faith reliance by any defendant. The defense motion for summary judgment on excessive force is **DENIED**.

Under California law, a police officer may use "reasonable force" to effect a lawful arrest and to maintain a suspect's detention. Cal. Pen. Code §§ 835, 835a. For the same reasons stated above, summary judgment is **DENIED** to defendants on the state law claim.

### D. FOURTEENTH AMENDMENT AND SECTION 1981.

To prevail at summary judgment on claims of discrimination, defendants must show that the undisputed facts reveal deputies did not intentionally "act[] in a discriminatory manner." *Reese v. Jefferson Sch. Dist. No. 14J,* 208 F.3d 736, 740 (9th Cir. 2000) (cleaned up).

This record raises material disputes for trial. Deputy Holland continued to question Ms. Loggervale even after realizing she was an African-American woman. He did so because he thought that the witnesses to prior auto burglaries might have misgendered the prior suspects, just as he had misgendered Ms. Loggervale. In reality, just one prior incident (from July 10) involved both a silver car and a report of an African-American adult man. Deputies have

9

named a litany of factors that supposedly supported their suspicions. In light of the lack of prior female suspects, reasonable suspicion (if any) evaporated when Deputies Holland and Pope realized plaintiffs' genders. Deputies' reasons for suspicion do not support a "reasonable inference[]" of criminal activity. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Defendants' best decision, *Easley v. Cty. of Santa Clara*, 702 F. App'x 552, 554 (9th Cir. 2017), bears little resemblance: it involved an intoxicated person suspiciously parked on a stranger's property, and recent burglaries nearby.

As stated at the motion to dismiss stage, a reasonable jury could find that justifying the detention of African-American women on suspicion they were African-American male burglary suspects adequately supports an inference of a racially-discriminatory motive. A reasonable jury could conclude that similarly-situated white women would not have been investigated or unlawfully searched, as were the Loggervales. In other words, a reasonable jury could conclude that racial animus motivated defendants' actions (Holland Decl. ¶¶ 13–21, 25; *see, generally,* Pope Decl.). Summary judgment as to Deputies Holland and Pope on the Fourteenth Amendment and Section 1981 race-discrimination claims are **DENIED**.

Deputy Leeper, however, arrived late and is protected by his good-faith reliance on Deputies Holland and Pope's accounts. Defendant's motion for summary judgment as to Deputy Leeper is **GRANTED**.

Summary judgment is, for the same reasons, **DENIED** as to the state-law claims against Deputies Holland and Pope under Civil Code Section 52.1, but **GRANTED** as to Deputy Leeper. Since this order has found the excessive force and unlawful arrest claims will proceed to trial, summary judgment is **DENIED** to defendants on the claims for racially-motivated use of violence under Civil Code Section 51.7.

2. **FIRST AMENDMENT RETALIATION.**

Plaintiffs failed to prosecute this claim in their own motion for summary judgment, or in their opposition to defendants'. Defendants argue that plaintiffs have conceded the point and conceded summary judgment (Pl. Opp. Br. at 14, 24). Alternatively, defendants argue that reasonable suspicion existed, so the First Amendment claim fails. Not so. Plaintiffs'

10

opposition launched a blistering attack on the lawfulness of the search and seizure. As such, it substantially addressed the basis of defendants' argument against the First Amendment claim. Furthermore, defendants have not met their burden. The undisputed facts show that retaliation for the Loggervales' verbal protests provoked the deputies to search their vehicle, or so a reasonable jury could find. Summary judgment for defendants for First Amendment violations is **DENIED**.

### 3. *MONELL* AND SUPERVISORY LIABILITY.

Our court of appeals has identified three viable theories for municipal liability under Section 1983:

> *First*, a local government may be held liable when implementation of its official policies or established customs inflicts the constitutional injury . . . . *Second*, under certain circumstances, a local government may be held liable under Section 1983 for acts of "omission," when such omissions amount to the local government's own official policy . . . . *Third*, a local government may be held liable under Section 1983 when the individual who committed the constitutional tort was an official . . . [who] ratified a subordinate's unconstitutional decision or action and the basis for it.

*Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010) (overruled on other grounds) (emphasis added). Plaintiffs claim *Monell* liability under all three theories.

*First*, defendants move on the grounds that no official policy or custom had been alleged. Plaintiffs' opposition fails to argue that an official policy or custom caused a rights violation. Defendants prevail on this argument.

*Second*, "The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Price v. Sery,* 513 F.3d 962, 973 (9th Cir.2008), quoting *City of Canton v. Harris,* 489 U.S. 378, 388 (1989) (cleaned up). In their opposition, plaintiffs prosecute the failure-to-train theory as to Deputy Holland only. They argue that he did not receive his five-year refresher course on racial bias. (California Penal Code Section 13519.4(i) now requires that all peace officers receive an updated training on racial bias every

11

five years.) Deputy Holland's records do not indicate he got the refresher. Defendants respond that nothing in the record proves he did not (*e.g.* human resources records contain human error). Meanwhile, all other individual defendants took the course. One deputy's missed refresher course does not constitute deliberate indifference (Gilbert Supp. Dec., Exhs. CC and DD at 44–45; *see generally*, Holland Decl.).

*Third,* on reply, defendants discuss at length the adequacy of the internal affairs procedure and *Monell* liability. Plaintiffs argue that Sheriff Greg Ahern ratified the "grossly inadequate" investigation and its basis. *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1535 (9th Cir. 1995), *as amended* (Apr. 24, 1995). The County of Alameda internal affairs investigation manual instructs, "If immediately available, obtain written statements from all witnesses to the incident." Plaintiffs' expert opined that a failure to interview is highly unusual. Defendants concede that the investigator did not interview any parties; that he did not visit the scene; and did not review incident reports or body-worn camera footage from the prior burglaries. This case is distinguishable from *Fuller*. There, our court of appeals held that an investigator who failed to interview parties about sexual harassment allegations recklessly disregarded the rights of the putative victim. Here, the entire incident was captured on body camera. The investigator reviewed it. Ahern cannot be held liable for ratifying the investigation as "grossly inadequate," for it was not (May Opp. Decl. ¶ 2, Exh. AA at 8; DeFoe Dep. 158–63).

Plaintiffs' other theory of ratification, however, will survive. The second amended complaint alleges that Ahern ratified the deputies' underlying conduct by approving the report's conclusion that no unlawful action had occurred. Defendants did not move for summary judgment on this theory of ratification. The argument is deemed waived for purposes of summary judgment. *See Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1100 (9th Cir. 2007). Therefore, this basis for *Monell* liability will proceed to trial (on the remaining underlying claims).

The defense motion for summary judgment as to *Monell* liability is **GRANTED** as to these grounds only: policy/custom and ratification of an inadequate investigation procedure.

### 4. CONVERSION.

As stated at the motion to dismiss stage, conversion requires damages. *See Oakdale Vill. Grp. v. Fong,* 43 Cal.App.4th 539, 543–44 (1996) (partially decertified on other grounds). The phone, which Deputy Leeper took from Aayslei's hand, was returned. Aayslei does not allege damage. Summary judgment on conversion is **GRANTED**.

### 5. EVIDENTIARY ISSUES.

Defendants' objection to May Decl. Exh. EE for lack of personal knowledge is **OVERRULED**. Attorney May could well have personal knowledge of the photographs' origins and depictions. This order has not found it necessary to rely on the remaining contested evidence. Corresponding objections are **DENIED AS MOOT**.

## CONCLUSION

The cross motions for summary judgment on the 1983 claim for unlawful arrest and detention, as well as the corresponding state law claims of false arrest and imprisonment; negligence; battery; and assault, are **DENIED**. Defendants' motion for summary judgment on qualified immunity is also **DENIED**. Summary judgment is **GRANTED** for plaintiffs and **AGAINST** defendants on the Fourth Amendment search claims as to Deputies Holland and Pope. The cross motions for summary judgment against Lt. DeSousa are **DENIED**. The defense motion for summary judgment on state-law invasion of privacy is **GRANTED**, and plaintiff's motion is **DENIED**. The defense motion for summary judgment on excessive force is **DENIED**. Summary judgment is **DENIED** to defendants on the state law claim for unreasonable force. Summary judgment is **DENIED** to defendants on the claims for racially-motivated use of violence under Civil Code Section 51.7. Summary judgment for defendants on First Amendment liability is **DENIED**. The defense motion for summary judgment as to *Monell* liability is **GRANTED IN PART AND DENIED IN PART**. Summary judgment on conversion is **GRANTED**.

The following claims remain: Sections 1983 (unreasonable seizure; unreasonable search as to Lt. DeSousa; race-discrimination; excessive force; and First Amendment) and 1981 (race-discrimination) claims as to Deputies Holland and Pope; state law claims associated with each

of the remaining constitutional claims, except the invasion of privacy claim as to Lt. DeSousa; and, to the extent stated above, the theories of *Monell* and supervisory liability on the still-standing constitutional violations.

**IT IS SO ORDERED.**

Dated: October 4, 2021.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE