Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Christopher R. Creech, Esq. (SBN: 293037)
ccreech@ohhlegal.com
**ORBACH HUFF + HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, California 94588
Telephone:    (510) 999-7908
Facsimile:    (510) 999-7918

Attorneys for Defendants
COUNTY OF ALAMEDA, STEVEN HOLLAND and MONICA POPE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AASYLEI LOGGERVALE; AASYLEI HARDGE-LOGGERVALE; and AAOTTAE LOGGERVALE, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF ALAMEDA; STEVEN HOLLAND; and MONICA POPE, <br><br> Defendants. | Case No. 20-cv-04679-WHA <br><br><br> **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW** |

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

**TABLE OF CONTENTS**

**Page(s)**

I.    Plaintiffs' Claims Against Sgt. Holland for Violation of the 4th Amendment (Improper Detention/False Arrest): ...................................................................................... 1

    A.    Even Without Reasonable Suspicion, Mother Was Required to Produce ID Upon Demand Due to Her Use as a Placard User, and Her Refusal Provided Probable Cause for Arrest.................................................................................................. 1

    B.    Even Without Reasonable Suspicion, Mother As A Driver Was Required to Produce ID Upon Demand, and Her Refusal Provided Probable Cause for Arrest. 3

    C.    Daughters' Refusal to Return to the Vehicle Provided Probable Cause for Their Arrest ............................................................................................................... 4

    D.    All Of The Plaintiffs Refused to Identify Themselves, Which Interfered With the Investigation and Provided Probable Cause for Their Arrest ................................ 5

    E.    Aasylei's Battery of Sgt. Pope Provided Probable Cause for Her Arrest ............... 6

    F.    Mother's Battery of Sgt. Holland Provided Probable Cause for Her Arrest........... 7

II.    Plaintiffs' Claim of Illegal Search against Deputy Holland and Deputy Pope: .................. 8

    A.    It Was Lawful to Conduct A Targeted Search for Identification Under *Arturo D.* . 8

    B.    It Was Lawful to Conduct A Targeted Search for Identification Under the Automobile Exception........................................................................................ 11

    C.    It Was Lawful to Search for Aaottae Loggervale's Identification in the Trunk Under Implied Consent ...................................................................................... 13

III.    Plaintiffs' Claims of Excessive Force Against Deputy Holland ....................................... 13

IV.    Plaintiffs' Claim of Racial Discrimination Against Deputy Holland: ............................. 16

V.    Plaintiffs' Claim of a Bane Act Violation Against Deputy Holland:................................ 17

VI.    Plaintiffs' Request for Punitive Damages: ...................................................................... 18

VII.    Plaintiffs' Monell Claim against the County is Legally Deficient:................................... 19

VIII.    Conclusion.................................................................................................................. 22

Defs' Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Abdel-Shafy v. City of San Jose*,
No. 17-CV-07323-LHK, 2019 WL 570759 (N.D. Cal. Feb. 12, 2019)....................................5

*Arizona v. Gant*,
556 U.S. 332 (2009)..............................................................................................................12

*Arpin v. Santa Clara Valley Transp. Agency*,
261 F.3d 912 (9th Cir. 2001) ..........................................................................................14, 15

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)................................................................................................................2

*Atwater v. City of Lago Vista*,
532 U.S. 318 (2001)...........................................................................................................7, 15

*Barren v. Harrington,*
152 F.3d 1193 (9th Cir. 1998) ..............................................................................................16

*Beier v. City of Lewiston*,
354 F.3d 1058 (9th Cir. 2004) ..............................................................................................14

*Benson v. City of San Jose*,
583 F. App'x 604 (9th Cir. 2014)...........................................................................................16

*Berkemer v. McCarty*,
468 U.S. 420 (1984).............................................................................................................3, 7

*Bingham v. City of Manhattan Beach*,
341 F.3d 939 (9th Cir. 2003) ................................................................................................16

*Birmingham Fire Ins. Co. of Penn. v. Politis & Perlman Int'l Realty*,
52 Fed. Appx. 485 (11th Cir. 2002).......................................................................................13

*Boyd v. Benton Cnty.*,
374 F.3d 773 (9th Cir. 2004) ..................................................................................................9

*Brown v. Gilmore*,
278 F.3d 362 (4th Cir. 2002) .................................................................................................15

*Burton v. City of San Jose*,
No. C 06-06331 JW, 2010 WL 11607063 (N.D. Cal. Nov. 4, 2010) ......................................6

*City & Cnty. of San Francisco v. Sheehan,*
135 S. Ct. 1765 (2015).........................................................................................................10

Defs' Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

# TABLE OF AUTHORITIES

**Page(s)**

*City of Tahlequah, Oklahoma v. Bond*,
No. 20-1668, 2021 WL 4822664 (U.S. Oct. 18, 2021) ............................................................. 9

*Davis v. Scherer*,
468 U.S. 183 (1984) ................................................................................................................ 10

*Demarest v. City of Vallejo, California*,
44 F.4th 1209 (9th Cir. 2022) ............................................................................................... 3, 4

*DeToledo v. County of Suffolk*,
379 F.Supp.2d 138 (D. Mass. 2005) ....................................................................................... 15

*Devenpeck v. Alford*,
543 U.S. 146 (2004) .................................................................................................................. 7

*Edgerly v. City & County of San Francisco*,
599 F.3d 946 (9th Cir. 2010) .................................................................................................... 7

*Foley v. Graham*,
No. 2:16-cv-01871-JAD-VCF, 2020 WL 4736457 (D. Nev. Aug. 14, 2020) ....................... 14

*Graham v. Connor*,
490 U.S. 386 (1989) ................................................................................................................ 15

*Harmon v. City of Pocatello*,
431 F.Supp.3d 1135 (D. Idaho 2020) ..................................................................................... 14

*Headwaters Forest Def. v. Cty. of Humboldt*,
240 F.3d 1185 (9th Cir. 2000) ................................................................................................ 14

*Hiibel v. Sixth Judicial Dist. Court*,
542 U.S. 177 (2004) ............................................................................................................ 5, 11

*Hupp v. City of Walnut Creek*,
389 F.Supp.2d 1229 (N.D. Cal. 2005) .................................................................................... 15

*Jackson v. City of Bremerton*,
268 F.3d 646 (9th Cir. 2001) .................................................................................................. 14

*Knowles v. Iowa*,
525 U.S. 113 (1998) ................................................................................................................ 10

*Kuhlken v. Cnty. of San Diego*,
No. 3:16-CV-2504-CAB-DHB, 2018 WL 454444 (S.D. Cal. Jan. 16, 2018) .......................... 4

*Kuhlken v. Cty. of San Diego*,
764 F. App'x 612 (9th Cir. 2019) .............................................................................................. 5

ORBACH HUFF + HENDERSON LLP

Defs' Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

# TABLE OF AUTHORITIES

**Page(s)**

*LaLonde v. Cty. of Riverside*,
204 F.3d 947 (9th Cir. 2000) ...................................................................................... 14

*Larez v. Holcomb*,
16 F.3d 1513 (9th Cir.1994) ........................................................................................ 13

*Lipton v. United States*,
348 F.2d 591 (9th Cir. 1965) ............................................................................... 1, 2, 3, 4

*Losee v. City of Chico*,
No. 16-16541, 2018 WL 3016891 (9th Cir. June 18, 2018)........................................ 18

*Lull v. Cty. of Sacramento*,
No. 217CV1211TLNEFBPS, 2018 WL 1108747 (E.D. Cal. Mar. 1, 2018) ........................... 5

*MacLellan v. County of Alameda*,
No. C-12-5795 MMC, 2014 WL 793444 (N.D. Cal. Feb. 26, 2014) ..................................... 13

*Maryland v. Wilson*,
519 U.S. 408 (1997)..................................................................................................... 5

*McArthur v. City & Cty. of San Francisco*,
190 F.Supp.3d 895 (N.D. Cal. 2016) ........................................................................... 10

*Messerschmidt v. Millender*,
565 U.S. 535 (2012).................................................................................................... 11

*Michigan v. DeFillippo*,
443 U.S. 31 (1979)................................................................................................... 2, 7

*Michigan v. Summers*,
452 U.S. 692 (1981).................................................................................................... 5

*Nakamura v. City of Hermosa Beach*,
2009 WL 1445400 (C.D. Cal. May 20, 2009) ..................................................... 5, 10

*Patel v. Lanier County Georgia*,
969 F.3d 1173 (11th Cir. 2020) .................................................................................... 9

*Pavao v. Pagay*,
307 F.3d 915 (9th Cir.2002) ....................................................................................... 13

*Pennsylvania v. Mimms*,
434 U.S. 106 (1977)..................................................................................................... 4

*Pinder v. Emp't Dev. Dep't*,
227 F.Supp.3d 1123 (E.D. Cal. 2017).......................................................................... 16

Defs' Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

**TABLE OF AUTHORITIES**

**Page(s)**

*Plumhoff v. Rickard*,
134 S. Ct. 2012 (2014) ............................................................................................................ 9

*Quezada v. Hubbard*,
No. C 01-02303 CRB, 2002 WL 1598873 (N.D. Cal. July 18, 2002) (Judge
Charles R. Breyer) ................................................................................................................. 10

*Reese v. Cty. of Sacramento*,
888 F.3d 1030 (9th Cir. 2018) ............................................................................................... 17

*Rodriguez v. Farrell*,
280 F.3d 1341 (11th Cir. 2002) ............................................................................................. 14

*Screws v. United States*,
325 U.S. 91 (1945) ................................................................................................................. 17

*Sinclair v. Akins*,
696 Fed. App'x 773 (9th Cir. 2017) ....................................................................................... 15

*Smith v. Wade*,
461 U.S. 30 (1983) ................................................................................................................. 18

*Snowden v. Hughes*,
321 U.S. 1 (1944) ................................................................................................................... 16

*Sorrels v. McKee*,
290 F.3d 965 (9th Cir. 2002) ................................................................................................. 10

*Trotter v. Stonich*,
247 F. App'x 878 (9th Cir. 2007) ............................................................................................. 4

*United States v. Alvarez*,
899 F.2d 833 (9th Cir. 1990) ........................................................................................... 11, 12

*United States v. Bowen*,
500 F.2d 960 (9th Cir. 1974) (per curiam) ............................................................................ 1, 2

*United States v. Carrizoza-Gaxiola*,
523 F.2d 239 (9th Cir. 1975) ................................................................................................ 1, 2

*United States v. Christian*,
356 F.3d 1103 (9th Cir. 2004) ...................................................................................... 5, 11, 13

*United States v. Kim*,
25 F.3d 1426 (9th Cir. 1994) ................................................................................................... 4

ORBACH HUFF + HENDERSON LLP

Defs' Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Lopez*,
    482 F.3d 1067 (9th Cir. 2007) .................................................................................. 5

*United States v. Osborn*,
    203 F.3d 1176 (9th Cir.2000) .................................................................................. 4

*United States v. Rodgers*,
    656 F.3d 1023 (9th Cir. 2011) .................................................................................. 12

*United States v. Ross*,
    456 U.S. 798 (1982) .................................................................................................. 11

*United States v. Sharpe*,
    470 U.S. 675 (1985) .................................................................................................. 7

*United States v. Williams*,
    419 F.3d 1029 (9th Cir. 2005) .................................................................................. 5

*Vanegas v. City of Pasadena*,
    No. 220CV07845SVWAGR, 2021 WL 1917126 (C.D. Cal. Apr. 13, 2021) ........................ 6

*Vasquez v. Cty. of Los Angeles*,
    349 F.3d 634 (9th Cir. 2003) .................................................................................. 16

*Ward v. San Jose*,
    967 F.2d 280 (9th Cir. 1991) .................................................................................. 19

*Young v. Cty. of L.A.*,
    655 F.3d 1156 (9th Cir. 2011) .................................................................................. 5

*Zurcher v. Stanford Daily*,
    436 U.S. 547 (1978) .................................................................................................. 12

**State Cases**

*Adler v. Dep't of Motor Vehicles*,
    228 Cal.App.3d 252 (1991) .................................................................................. 3

*In re Arturo D.*,
    27 Cal.4th 60 (2002) .................................................................................. 3, 8, 9, 10

*Basich v. Allstate Ins. Co.*,
    87 Cal.App.4th 1112 (2001) .................................................................................. 19

*Bender v. County of Los Angeles*
    (2013) 217 Cal.App.4th 968 .................................................................................. 18

Defs' Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Cornell v. City and County of San Francisco*
(2017) 17 Cal.App.5th 766 ..................................................................................... 17

*People v. Hart*,
74 Cal.App.4th 479 (1999) ................................................................................. 3, 8

People v. Henderson,
58 Cal. App. 3d 349 ............................................................................................... 6

*People v. Lopez*
(2019) 8 Cal.5th 353 .............................................................................................. 8

*People v. Redd*,
48 Cal.4th 691 (2010) ............................................................................................ 3

*Shoyoe v. County of Los Angeles*,
203 Cal.App.4th 947 (2012) ................................................................................ 18

## Federal Statutes

42 U.S.C. section:
1983 ......................................................................................................... 16, 17, 18

## State Statutes

California Penal Code section:
148(a)(1) ........................................................................................................... 5, 6

California Vechile Code section:
305 ....................................................................................................................... 3
12500(c) .............................................................................................................. 3
12951(a) ........................................................................................................... 3, 4
22507.8 (a) .......................................................................................................... 1
22507.8(d) ........................................................................................................... 1
22511.8(a) ........................................................................................................... 1
22511.56(a) ......................................................................................................... 1
22511.56(b) ......................................................................................................... 2

California Civil Code section:
3294 ................................................................................................................... 19

Defs' Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

**TABLE OF AUTHORITIES**

**Page(s)**

California Penal Code section:
148 ................................................................................................................ 5, 6
243(b).................................................................................................................. 6
243(c).................................................................................................................. 6

Vehicle Code section:
22507.8 ............................................................................................................... 2
22511.5 ............................................................................................................... 2
22511.56 .......................................................................................................... 1, 2
22511.56 (2)........................................................................................................ 2
4462 ................................................................................................................... 3
12951 .......................................................................................................... 1, 2, 3, 4

ORBACH HUFF + HENDERSON LLP

Defs' Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

Defendants COUNTY OF ALAMEDA, STEVEN HOLLAND and MONICA POPE ("Defendants") hereby move for Judgment as a Matter of Law, pursuant to Rule 50 on the Federal Rules of Civil Procedure following grounds:

## I.    Plaintiffs' Claims Against Sgt. Holland for Violation of the 4th Amendment (Improper Detention/False Arrest):

Plaintiffs allege, in summary, that their detention and/or arrest was improper and not supported by reasonable suspicion and/or probable cause.

### A. Even Without Reasonable Suspicion, Mother Was Required to Produce ID Upon Demand Due to Her Use as a Placard User, and Her Refusal Provided Probable Cause for Arrest

It is well-established that even without reasonable suspicion, officers may conduct vehicle stops to "to enforce laws susceptible of no other means of effective enforcement." *United States v. Carrizoza-Gaxiola*, 523 F.2d 239, 241 (9th Cir. 1975), citing *Lipton v. United States*, 348 F.2d 591 (9th Cir. 1965); accord *United States v. Bowen*, 500 F.2d 960, 965 (9th Cir. 1974) (per curiam) (acknowledging continued validity of "judicial decisions upholding automobile stops for the purpose of checking drivers' licenses").  The Ninth Circuit has held that this rule applies to a request for drivers to produce their license under Vehicle Code section 12951.  *Lipton*, 348 F.2d at 594. Although no known Court has addressed this issue, this same rationale applies to Vehicle Code section 22511.56, which similarly requires persons using a disabled placard to "upon request of a peace officer … present identification and evidence of the issuance of that placard … to that person."[1] Cal. Veh. Code § 22511.56(a).  If officers could not approach an already stopped vehicle and identify who a placard user is, then there would be no way to know if the placard belongs to the user, and the

---

[1] "It is unlawful for any person to park or leave standing any vehicle in a stall or space designated for disabled persons and disabled veterans pursuant to Section … 22511.8 of this code … unless the vehicle displays either a special identification license plate … or a distinguishing placard…." Cal. Veh. Code § 22507.8 (a).  This rule applies to "any privately owned and maintained offstreet parking facility." Cal. Veh. Code § 22507.8(d).  "[A] person in lawful possession of an offstreet parking facility may designate stalls or spaces in an offstreet parking facility owned or operated by the … person for the exclusive use of a vehicle that displays either a special license plate … or a distinguishing placard…." Cal. Veh. Code § 22511.8(a).

Defs' Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

statutory scheme would be defeated. Under California law, Mother's refusal of this request is not just a violation of Section 22511.56; by operation of law, this refusal creates a "rebuttable presumption that the placard or plate is being misused and that the associated vehicle has been parked in violation of Section 22507.8, or has exercised a disabled person's parking privilege pursuant to Section 22511.5." Cal. Veh. Code § 22511.56(b). Upon Mother's refusal to provide identification, there was probable cause to arrest her for violating (1) Veh. Code § 22511.56, (2) Veh. Code § 22507.8, and (3) Veh. Code § 22511.5.

The Ninth Circuit has repeatedly reaffirmed the rule from *Lipton*. *Bowen*, 500 F.2d at 965; *Carrizoza-Gaxiola*, 523 F.2d at 241. No Court has ever declared that the demand for identification allowed under Vehicle Code sections 12951 and 22511.56 may not be posed to the driver of an already stopped vehicle, even without reasonable suspicion. At the time of this incident, there was not "a robust 'consensus of cases of persuasive authority'" let alone "controlling authority" placing this issue "beyond debate" such that "every 'reasonable official'" would have known that it was unlawful to pose this request. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). At very least this entitles the officers to qualified immunity. Officers are allowed to assume that all laws are constitutional and enforceable, and qualified immunity is meant to apply to situations like this because "[s]ociety would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). Whether under qualified immunity or because the request for identification was outright lawful, the moment Mother refused to provide identification, there was probable cause for her arrest.

The only exception to this rule is where the request for identification is purely a "ruse" and the request for identification is "unrelated" to the law being enforced. See *Lipton*, 348 F.2d at 594. Thus, this rule would not apply where officers admitted that a stop was "not to check for compliance with licensing and registration requirements." *Carrizoza-Gaxiola*, 523 F.2d at 241. Here, the video evidence submitted by Plaintiffs confirms Sgt. Holland and Sgt. Pope's discussions of checking the placard. Sgt. Pope comments as the two first approach Plaintiffs' vehicle, "Oh, here's one [placard] in his windshield. I'll just confirm it." Ex. 7, 0:30-0:35. Later, while Sgt. Holland is trying to get Mother to produce ID, and before Aasylei H. Loggervale exits the vehicle and derails the

investigation, Sgt. Pope ask Sgt. Holland, "Do you want me to run the placard?" Ex. 7, 3:35-3:40. After Sgt. Holland had Mother detained, he went back to her car, retrieved her placard (Ex. 37, 13:18-13:25) and then retrieved her identification (Ex. 37, 14:18-14:34), further confirming that Sgt. Holland was trying to identify Mother in part to determine if she was parked lawfully. Thus, within minutes of this encounter beginning, there was probable cause for Mother's arrest and no basis for her to complain about the duration of her detention. See *Berkemer v. McCarty*, 468 U.S. 420, 440 n. 29 (1984) (once probable cause develops during a detention, the limited duration rules under *Terry* no longer apply).

### B. Even Without Reasonable Suspicion, Mother As A Driver Was Required to Produce ID Upon Demand, and Her Refusal Provided Probable Cause for Arrest

"Vehicle Code sections 4462 and 12951 long have required that the person in the immediate control of an automobile present evidence of registration and a driver's license upon proper command of a police officer." *In re Arturo D.*, 27 Cal.4th 60, 67 (2002). The Ninth Circuit currently holds that officers may stop a vehicle without reasonable suspicion and require the driver[2] to produce identification under Vehicle Code section 12951.[3] *Lipton*, 348 F.2d at 594. At very least this rule should continue to apply where, as here, officers approach an already stopped vehicle and, during the consensual initial portion of the encounter, pose the request for identification. See *Demarest v. City of Vallejo, California*, 44 F.4th 1209, 1224 (9th Cir. 2022) (driver already stopped at checkpoint lawfully arrested for refusing to provide license even though the officer lacked reasonable suspicion when request made and primary purpose of checkpoint was to identify intoxicated drivers). "[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a

---

[2] Any "driver" of a motor vehicle must provide identification upon demand. Cal. Veh. Code § 12951(a). "Driver" is defined as "a person who drives or is in actual physical control of a vehicle" (Cal. Veh. Code § 305) and there applies even in situations where the car is "parked with its engine off" (*Adler v. Dep't of Motor Vehicles*, 228 Cal.App.3d 252, 258 (1991)). The demand for identification may therefore be lawfully posed even when a driver is parked in an offstreet area. See *People v. Redd*, 48 Cal.4th 691, 719 (2010). "There is no distinction to be made in violations of the Vehicle Code for purposes of requesting identification just because the vehicle is either moving or parked when the violation occurs." *People v. Hart*, 74 Cal.App.4th 479, 492 (1999).

[3] Even drivers in offstreet parking facilities must be licensed. Cal. Veh. Code § 12500(c).

- 3 -

ORBACH HUFF + HENDERSON LLP

Fourth Amendment seizure." *United States v. Osborn*, 203 F.3d 1176, 1180 (9th Cir.2000) (quoting *INS v. Delgado*, 466 U.S. 210, 216 (1984)).  When officers approach an already parked vehicle, "[a]bsent indicia of force or aggression, a request for identification or information is not a seizure or investigatory stop" requiring even reasonable suspicion. *United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994) (such circumstances  render "the reasonable cause requirement nugatory, and the agent's motivation for approaching [the vehicle] therefore irrelevant").  Once a driver fails to produce identification upon demand, "the officer ha[s] probable cause to arrest the [driver] … for violation of § 12951 of the California Vehicle Code." *Lipton*, 348 F.2d at 594; accord *Trotter v. Stonich*, 247 F. App'x 878, 880 (9th Cir. 2007) ("Under California law, where a driver fails to present his or her driver's license, 'an officer has broad discretion to effect a custodial arrest.'").  A driver may be arrested for refusing to provide identification upon demand even when they are parked and out of their vehicle in an offstreet parking facility.  *Kuhlken v. Cnty. of San Diego*, No. 3:16-CV-2504-CAB-DHB, 2018 WL 454444, at *6 (S.D. Cal. Jan. 16, 2018), aff'd, 764 F. App'x 612 (9th Cir. 2019).

"[I]t is a misdemeanor under California law to refuse to produce one's driver's license for examination 'upon demand of a peace officer enforcing the provisions of this code.'" *Demarest*, 44 F.4th at 1224, citing Cal. Veh. Code § 12951(a) (affirming summary judgment against false arrest claims where driver refused to provide identification).  "Enforcing provisions of this code" does not mean that the officer must "have made a 'valid stop based upon reasonable suspicion' of some other Vehicle Code violation." Id.  It is sufficient that the officer is engaged in an enforcement activity authorized under the vehicle code. Id. (upholding arrest under Cal. Veh. Code § 12951(a) posed at sobriety checkpoint).  Here, Sgt. Pope and Sgt. Holland were, among other things, enforcing the handicapped placard requirements of the Vehicle Code.  Whether under Vehicle Code section 12951 or 22511.56, there was probable cause to arrest Mother within minutes of this encounter beginning.

### C. Daughters' Refusal to Return to the Vehicle Provided Probable Cause for Their Arrest

"[A]s a matter of course," (*Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977)) officers "may detain passengers during a traffic stop, whether it is by ordering the passenger to remain inside the automobile or by ordering the passenger to get back into an automobile that he or she voluntarily

- 4 -

exited." *United States v. Williams*, 419 F.3d 1029, 1032 (9th Cir. 2005). Both daughters admitted to exiting the vehicle and refusing commands by the Deputies to return to the vehicle. See, e.g., Ex. 7, 5:50-5:54 (Aasylei); 6:47-6:57; 7:22-8:10 (Aaottae). Both Daughters were required to return to the vehicle as commanded (*Maryland v. Wilson*, 519 U.S. 408, 410 (1997); *Williams*, 419 F.3d at 1034), and their failure to do so would have justified their arrest for violating California Penal Code section 148 (*Young v. Cty. of L.A.*, 655 F.3d 1156, 1170 (9th Cir. 2011)). Prior to the Daughters being handcuffed or ever touched by any officer, there was probable cause for their arrest, which defeats any unlawful seizure claim.

### D. All Of The Plaintiffs Refused to Identify Themselves, Which Interfered With the Investigation and Provided Probable Cause for Their Arrest

Moreover, if Sgt. Holland and Sgt. Pope had reasonable suspicion to investigate, then that investigation "may include both a request for identification and inquiry concerning the suspicious conduct of the person detained." *Michigan v. Summers*, 452 U.S. 692, 701 (1981); accord *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 180 (2004) ("it is well established that an officer may ask a suspect to identify himself in the course of a *Terry* stop"). Where a suspect will not identify themselves during a *Terry* stop, an officer may compel the production of identification "so long as the request is reasonably related to the detention." *United States v. Christian*, 356 F.3d 1103, 1107 (9th Cir. 2004); *United States v. Lopez*, 482 F.3d 1067, 1078 n. 13 (9th Cir. 2007) (holding suspects have an obligation under *Hiibel* to disclose their identity during a *Terry* stop). If a suspect will not identify themselves, Courts have consistently interpreted such a refusal as itself a violation of Penal Code section 148 because it interferes with an officer's attempts to identify the individual and consequently their investigation. *Kuhlken v. Cty. of San Diego*, 764 F. App'x 612, 613 (9th Cir. 2019); Accord *Nakamura v. City of Hermosa Beach*, 2009 WL 1445400, at *8 (C.D. Cal. May 20, 2009), aff'd, 372 F. App'x 787 (9th Cir. 2010) (describing § 148(a)(1) as analogous to Nevada statute in *Hiibel* and finding probable cause to arrest suspect for violating § 148(a)(1) where suspect "refused to provide either his name or identification" to police officer*); Lull v. Cty. of Sacramento*, No. 217CV1211TLNEFBPS, 2018 WL 1108747, at *8 (E.D. Cal. Mar. 1, 2018), adopted in pertinent part, 2018 WL 1569433 (E.D. Cal. Mar. 30, 2018); *Abdel-Shafy v. City of San Jose*, No. 17-CV-07323-

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

LHK, 2019 WL 570759, at *7 (N.D. Cal. Feb. 12, 2019); *Vanegas v. City of Pasadena*, No. 220CV07845SVWAGR, 2021 WL 1917126, at *5 (C.D. Cal. Apr. 13, 2021) ("Plaintiff's refusal to produce his identification during a lawful investigative detention gave officers probable cause to arrest him for violating Cal. Pen. Code § 148(a)(1)").

All of the Plaintiffs refused to identify themselves.  Mother expressly and repeatedly refused to provide identification.  E.g., Ex. 37, 3:07-3:10; 2:48-2:54.  Aasylei refused to provide so much as her name.  Ex. 11.  Aaottae similarly refused requests for her name.  Ex. 7, 18:08-18:12; 18:20-18:24.  While Aaottae eventually provided her first name, she refused to provide her last name.  *Id*. at 18:35-18:40.  When asked to spell her name, Aaottae refused but indicated Sgt. Pope could get it from her student ID, which Sgt. Pope then retrieved.  *Id*. at 18:38-58.  While yelling at Sgt. Popes, Aaottae once mentioned the month and day of her birth (but not the year).  Unfortunately, in the confusion, Sgt. Pope did not have a chance to write the birthdate down, and Aaottae thereafter refused all later requests for her birthdate.  *Id*. at 19:58-20:20; Ex. 22, 3:50-4:00; 4:03-4:05; 4:17-4:30.  All of the Plaintiffs therefore impeded the investigation by refusing to provide identifying information, which further provided probable cause for their arrest under Penal Code section 148.

**E.  Aasylei's Battery of Sgt. Pope Provided Probable Cause for Her Arrest**

Aasylei struck Sgt. Pope with her door, which would have justified her arrest under California Penal Code section 243(b).  E.g., *Burton v. City of San Jose*, No. C 06-06331 JW, 2010 WL 11607063, at *6 (N.D. Cal. Nov. 4, 2010) ("The slightest unlawful touching of a police officer during the discharge of his or her duties is sufficient to constitute battery against a police officer, even if the touching causes no pain or bodily harm or leaves no mark.").  For the purpose of this crime, it is irrelevant if there was legal cause for any detention.  A battery on a peace officer during even an unlawful seizure does not excuse the battery; it simply means that the suspect is guilty of a common battery under Penal Code section 243(b) rather than the more significant crime of battery upon a peace officer under Penal Code section 243(c). See, e.g., People v. Henderson, 58 Cal. App. 3d 349, 358.  There was therefore probable cause for Aasylei's arrest the moment she opened her door into Sgt. Pope.  See Ex., 7, 4:19-4:28 (after hitting Sgt. Pope, who says "excuse me," Aasylei says, "yeah, yeah,

Defs' Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

well, you were standing too [sic] the car"); accord Ex., 7, 2:30-2:50, 3:47-3:50 (showing Aasylei watching and recording Sgt. Pope before opening the door into her).

### F.  Mother's Battery of Sgt. Holland Provided Probable Cause for Her Arrest

Like Aasylei, there was probable cause to arrest Mother for hitting Sgt. Holland with her door. When Sgt. Leeper arrived and began detaining Aasylei, Mother said, "No, you're not going to detain them."  She then threw her door open into Sgt. Holland. Ex. 37, 6:17-6:28.  Mother was talking to Sgt. Holland.  Irrespective of if the detention was lawful, Mother committed a battery on Sgt. Holland.

### G.  It Is Irrelevant That Plaintiffs Were Not Arrested; There Was Still Objective Probable Cause to Arrest Which Justifies Any Seizure

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  Because there was probable cause to arrest, it is irrelevant that Sgt. Holland ultimately decided not to arrest Plaintiffs.  E.g., *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979); *Devenpeck v. Alford*, 543 U.S. 146, 155 (2004) ("Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest.").  It is similarly irrelevant if Sgt. Holland or Sgt. Pope did not recognize these statutes as providing a basis for arrest.  *Edgerly v. City & County of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) (probable cause to search, seize and arrest predicated not on any crime "suggested by the Officers and City to the district court" but upon statute found by the Court on its own research after the close of evidence at trial); accord *Devenpeck*, 543 U.S. at 153-55 (offense supporting probable cause need not even be "'closely related' to the offense stated by the arresting officer at the time of arrest").

While Plaintiffs claim that their detention was unlawfully prolonged, "a seizure that in duration, scope, or means goes beyond the bounds of *Terry*" is only unlawful under the Fourth Amendment "in the absence of probable cause." *United States v. Sharpe*, 470 U.S. 675, 691 (1985). Where, as here, probable cause develops during an investigative detention, the duration of the detention portion of the encounter becomes nugatory because there is now probable cause to arrest and hold until a magistrate determines when and if the suspect should be released.  See, e.g., *Berkemer*

- 7 -

ORBACH HUFF + HENDERSON LLP

*v. McCarty*, 468 U.S. 420, 440 n. 29 (1984) (holding that traffic stop once supported by probable cause may exceed the bounds set by *Terry*).  Thus, Plaintiffs

## II.    Plaintiffs' Claim of Illegal Search against Deputy Holland and Deputy Pope:

It is undisputable that the only "search" these officers conducted comprised solely of going to Plaintiffs' purses, opening their wallets, and obtaining from those wallets their identification.  See Ex. 37, 14:18-13:34, 15:28-15:55, 18:57-19:22; Ex. 7, 15:47-16:18, 19:20-19:40.  It was reasonable to believe that persons on an interstate trip will have their identification with them and that it would be found in their purses in any container that appeared to be a wallet.  It was also reasonable to believe Mother's ID would be in the purse at her feet because (1) she was a driver who confirmed she had her ID (Ex. 37, 2:52-2:56), (2) Mother initially reached for the purse at her feet for her ID before refusing to provide ID (Ex. 37, 1:06-1:11), and (3) Mother told Sgt. Holland her ID was in her purse (in a coin pouch rather than the wallet where Sgt. Holland originally though it might be) (Ex. 37, 12:02-12:11).  Aaottae Loggervale similarly told Sgt. Pope where her student ID could be found before Sgt. Pope went to the trunk to retrieve this identification.  Ex. 7, 18:35-18:58.  While there was no warrant to retrieve Plaintiffs' identification, any intrusion in this targeted search was *de minimis* and moreover justified by multiple warrant exceptions.

### A.  It Was Lawful to Conduct A Targeted Search for Identification Under *Arturo D.*

While overruled in November 2019 after this incident by *People v. Lopez* (2019) 8 Cal.5th 353, at the time of the incident underlying this action, the California Supreme Court for over a decade held "[l]imited warrantless searches for required registration and identification documentation are permissible when, following the failure of a traffic offender to provide such documentation to the citing officer upon demand, the officer conducts a search for those documents in an area where such documents reasonably may be expected to be found."  *In re Arturo D.*, 27 Cal. 4th 60, 86 (2002), citing with approval *People v. Hart*, 74 Cal.App.4th 479, 491 (1999) ("There was no evidence he was searching for anything but her identification. … Under these circumstances, the search did not violate the Fourth Amendment.").  In coming to this holding, the California Supreme Court noted that under "longstanding authority, established under California law as well as federal and sister state decisions" an officer may "conduct under certain circumstances a limited warrantless search of a vehicle for

- 8 -

ORBACH HUFF + HENDERSON LLP

required regulatory documentation, prior to issuing a traffic citation." *Id*. at 76. The California Supreme Court was clear that its holding was limited to searches for identification; it is the need for an officer to obtain identification for the purpose of issuing a citation that the California Supreme Court held justified a targeted search for identification:

> [I]n view of the circumstance that [the officer] was preparing to issue a traffic citation and therefore needed to learn the true identity of the person to be cited, we believe it was reasonable for the officer to conduct a limited search of the glove compartment, the area underneath the driver's seat, and the area beneath the front passenger seat.

*Id*., 27 Cal. 4th at 87. *Arturo D.* is clear that it is the reduced expectation of privacy in vehicles coupled with the need of an officer "to learn the true identity of the person to be cited" that justifies a targeted search for identification. This rationale is not dependent upon whether the individual to be cited is the driver or some other occupant of the vehicle. It is the need of an officer to identify whomever they may be citing that justifies a focused search. Accordingly, because there was probable cause to arrest or cite all of the Plaintiffs, under *Arturo D.* Sgt. Pope and Sgt. Holland were permitted to conduct a focused search for identification for each of the Plaintiffs, not just the driver.

*Arturo D.* also confirms Sgt. Holland and Sgt. Pope's entitlement to qualified immunity. See *Patel v. Lanier County Georgia*, 969 F.3d 1173 (11th Cir. 2020) (authority from "the highest state court under which the claim arose can clearly establish the law"); *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004) (explaining propriety of looking to the highest state court authority for qualified immunity purposes). Notably, at the time of this incident, no case held that *Arturo D*. is limited to searches for only a driver's identification, as opposed to the identification of passengers who were to be cited or arrested. "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *City of Tahlequah, Oklahoma v. Bond*, No. 20-1668, 2021 WL 4822664, at *2 (U.S. Oct. 18, 2021) (quotations omitted). There was therefore no "clearly established" precedent holding that such a targeted search for a passenger's identification was unlawful under *Arturo D.* Plaintiffs must come forward with law "particularized" to the facts of this case; otherwise, the analysis "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014);

- 9 -

ORBACH HUFF + HENDERSON LLP

City & Cnty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1775-76 (2015) (the Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality"). For the purposes of qualified immunity, it is Plaintiffs' burden to prove that the right allegedly violated was clearly established at the time. Davis v. Scherer, 468 U.S. 183, 197 (1984); Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002). Officers are entitled to rely upon the California Supreme Court's explanation in Arturo D. that it is the need to identify an individual for citation that justifies the search of their vehicle for identification. Officers are not required to guess when no case has held that Arturo D. is restricted to searches for a driver's identification. As Plaintiffs have no come forward with any precedent holding that Arturo D. cannot apply to searches for a passenger's identification, Sgt. Holland and Sgt. Pope are, at a minimum, entitled to qualified immunity.

The California Supreme Court in Arturo D. distinguished Knowles v. Iowa, 525 U.S. 113 (1998) by confirming that a targeted search for identification before issuing a citation comports with the Fourth Amendment. In re Arturo D., 27 Cal. 4th 60, 76 (2002). Since then, federal cases have said that it is unsettled after Knowles if a targeted search for identification is allowed. Quezada v. Hubbard, No. C 01-02303 CRB, 2002 WL 1598873, at *4 (N.D. Cal. July 18, 2002) (Judge Charles R. Breyer) ("Knowles does not prohibit limited searches for identification prior to a custodial arrest or citation."); McArthur v. City & Cty. of San Francisco, 190 F.Supp.3d 895, 905 (N.D. Cal. 2016) ("The law, as yet, is not 'clearly established' that taking identification from a suspect's wallets is impermissible."). Moreover, "[o]ther circuits have found that police officers do enjoy limited powers to discover the identities of persons detained during investigatory stops when the detainees refuse to cooperate." Nakamura v. City of Hermosa Beach, No. CV06-06776 GW(SS), 2009 WL 1445400, at *10 (C.D. Cal. May 20, 2009), aff'd, 372 F. App'x 787 (9th Cir. 2010) (upholding search for identification on qualified immunity grounds). Taken together, these cases show that the propriety of a targeted search for identification incident to the issuance of a citation or arrest remains an unresolved area of law. Again, Sgt. Holland and Sgt. Pope are at least entitled to qualified immunity.

///

///

ORBACH HUFF + HENDERSON LLP

**B. It Was Lawful to Conduct A Targeted Search for Identification Under the Automobile Exception**

The automobile exception "justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). For the automobile exception to apply, all that is required is "probable cause to believe that an automobile contains evidence of a crime." *United States v. Alvarez*, 899 F.2d 833, 839 (9th Cir. 1990). With such probable cause, officers "may search the vehicle, including the trunk and all containers in which there is probable cause to believe that evidence was concealed." *Id.* "Evidence of a crime" is defined broadly and is evaluated under the same "probable cause" standard as warrant applications. *Ross*, 456 U.S. at 810 ("In this class of cases, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained."). As with the issuance of a warrant, it is only necessary that the target of the search "aid" in the investigation:

> The Fourth Amendment does not require probable cause to believe evidence will conclusively establish a fact before permitting a search, but only "probable cause ... to believe that the evidence sought *will aid* in a particular apprehension or conviction."

*Messerschmidt v. Millender*, 565 U.S. 535, 552 fn.7 (2012) (emphasis in original) (granting qualified immunity where officer reasonably believed *evidence would aid in prosecution*). Obtaining a suspect's identification "has an immediate relation to the purpose, rationale, and practical demands of a *Terry* stop" and "serves important government interests":

> Knowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder. On the other hand, knowing identity may help clear a suspect….

*Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 186-188 (2004). The Ninth Circuit similarly holds that identifying a suspect goes "to the heart of *Terry*" by allowing officers to, among other things, "fully investigat[e]," "relocate the suspect in the future," and "protect[] the officer from harm" through a criminal history check. *United States v. Christian*, 356 F.3d 1103, 1106-1107 (9th Cir. 2004). If there was probable cause to believe Plaintiffs' identification would be found in the wallets in their purses (which is where Sgt. Holland and Sgt. Pope looked), then obtaining Plaintiffs' identification was unquestionably relevant to the investigation after Plaintiffs refused to identify themselves.

Defs' Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

Importantly, it is irrelevant if Plaintiffs' identification was direct evidence of any of the crimes that they might have been arrested for. As the High Court has explained:

> The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought.

*Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). Thus, the vehicle exception "allows searches for evidence relevant to offenses other than the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 347 (2009) (emphasis added).

The Ninth Circuit has at least implied that the automobile exception can justify a targeted search for identification at least where there is probable cause to believe the identification will be found in the car. *United States v. Rodgers*, 656 F.3d 1023 (9th Cir. 2011). The Ninth Circuit in *Rodgers* found the search unlawful under the automobile exception, but in doing so the Court also explained what would be necessary in future cases to justify a similar search:

> What is missing in the search [for passenger's identification] is any specific particularized fact indicating that [passenger] had identification and that such identification was located in [driver's] car.

*Id*. at 1029. "Probable cause exists if, under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Alvarez*, 899 F.2d at 839, quoting *United States v. Rodriguez*, 869 F.2d 479, 484 (9th Cir. 1989). Unlike *Rodgers*, Mother and Aaottae Loggervale told the Deputies where there identification would be found. While Aasylei Loggervale did not divulge the location of her identification, it was reasonable to assume she would not have left it in Nevada during an interstate trip and that it would be found in the purse next to where she was seated. Plaintiffs' own expert, Scott DeFoe, admitted that reasonably trained officers would believe under the automobile exception that a targeted search for identification was appropriate where reasonable suspicion existed. Because there was probable cause to believe the vehicle contained Plaintiffs' identification, and Plaintiffs' identification became relevant to the investigation when Plaintiffs refused to identify themselves, Sgt. Holland and Sgt. Pope were justified in conducting a focused search for the identification Plaintiffs' refused to provide.

///

- 12 -

ORBACH HUFF + HENDERSON LLP

At very least, this area of law is sufficiently unsettled that Sgt. Holland and Sgt. Pope should be granted qualified immunity. Looking to *Rodgers* and its explanation of what was necessary for a lawful automobile search for identification, Sgt. Holland and Sgt. Pope would have rightly believed that they had probable cause to search the vehicle. Plaintiffs' identification was undisputably relevant to their investigation, and their targeted search was therefore lawful.

### C. It Was Lawful to Search for Aaottae Loggervale's Identification in the Trunk Under Implied Consent

Finally, the search for Aaottae's identification in the trunk of the car was at least permitted under implied consent. Implied consent can justify the search of a vehicle for identification even where the suspect later claims that the consent was coerced or otherwise involuntary. *United States v. Christian*, 356 F.3d 1103, 1108 (9th Cir. 2004). Here, Sgt. Pope simply asked Aaottae for her name, and after initially refusing, Aaottae gave her first name but not her last name. When Sgt. Pope asked Aaottae, "Can you spell it?" she responded, "It's in my wallet. I just graduated from Chaparral High School." Sgt. Pope then asked, "Where's your wallet?" and Aaottae responded by telling Sgt. Pope which purse was her and where her student identification could be found. See Ex. 7, 18:30-19:00. Plaintiffs put on no evidence that this statement was coerced or involuntary. The only evidence in this regard is the video itself, which shows that it was Aaottae who proposed to Sgt. Pope that she get the spelling of her name from her student identification in the trunk of the car. Importantly, it is Plaintiffs who "carr[y] the ultimate burden of establishing each element of [their] claim, including lack of consent [to search]." *Pavao v. Pagay*, 307 F.3d 915, 919 (9th Cir.2002); *Larez v. Holcomb*, 16 F.3d 1513, 1517-18 (9th Cir.1994) (jury instruction properly placed burden on plaintiff to show exception to the warrant requirement did not apply). Under these circumstances, Sgt. Pope should be at least qualifiedly immune for believing that she had consent from Aaottae to get the spelling of her name from her student identification.

### III.     Plaintiffs' Claims of Excessive Force Against Deputy Holland

Plaintiffs appear to have abandoned or waived their claim of excessive force, as evidenced by its omission from their proposed verdict form. Dkt 178; *Birmingham Fire Ins. Co. of Penn. v. Politis & Perlman Int'l Realty*, 52 Fed. Appx. 485 (11th Cir. 2002). Plaintiffs have expressly dismissed their

Defs' Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

excessive force claims against anyone other than Sgt. Holland. Dkt. 174. The only person who Sgt. Holland physically interacted with was Mother. Plaintiffs adduced no evidence in their case that any of the Plaintiffs complained to Sgt. Holland about their handcuffs. *MacLellan v. County of Alameda,* No. C-12-5795 MMC, 2014 WL 793444, at *5 (N.D. Cal. Feb. 26, 2014) (granting summary judgment because there was "no evidence to support an inference that any of the deputies had any reason to believe the handcuffs may have required any adjustment"); *Foley v. Graham,* No. 2:16-cv-01871-JAD-VCF, 2020 WL 4736457, at *3 (D. Nev. Aug. 14, 2020) (granting qualified immunity because the plaintiff alleged "that he was subjectively experiencing pain" but offered no facts that suggested the officer "knew or should have known" that the handcuffs were too tight). Accordingly, if the Court does not find this claim altogether waived, it should certainly find the claim untenable against Sgt. Holland based upon his interaction with Mother.

Throughout this litigation and relying on *Headwaters Forest Def. v. Cty. of Humboldt,* 240 F.3d 1185 (9th Cir. 2000), Plaintiffs have claimed that any handcuffing without probable cause to arrest constitues excessive force. See *id.* at 1199 ("where there is no need for force, any force used is constitutionally unreasonable"). But the Supreme Court vacated *Headwaters* (534 U.S. 801 (2001)), and the Ninth Circuit has implied that the reasoning in that decision is no longer consistent with Supreme Court precedent. *Jackson v. City of Bremerton,* 268 F.3d 646, 652 n.3 (9th Cir. 2001) ("We do not decide whether Headwaters remains good law in this Circuit in light of *Saucier.* But we note that the Ninth Circuit's § 1983 analysis employed in *Headwaters,* 240 F.3d at 1206–09, was specifically rejected by the Supreme Court in *Saucier,* 121 S. Ct. at 2155."). Moreover, the Ninth Circuit itself has since rejected the approach in *Headwaters* and held that excessive force cannot be proven merely by showing an unlawful arrest. *Beier v. City of Lewiston,* 354 F.3d 1058, 1064 (9th Cir. 2004), citing *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 921-22 (9th Cir. 2001) ("establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa"). The legal premise of Plaintiffs' excessive force claim is that it was excessive force to handcuff Plaintiffs because there was not probable cause for their arrest. That premise is legally unsound.

///

- 14 -

ORBACH HUFF + HENDERSON LLP

Contrary to Plaintiffs' position, "[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (citing cases); *Harmon v. City of Pocatello*, 431 F.Supp.3d 1135, 1155 (D. Idaho 2020); accord *LaLonde v. Cty. of Riverside*, 204 F.3d 947, 964 (9th Cir. 2000); accord *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (handcuffing "inconvenient and embarrassing … but not so extraordinary as to violate the Fourth Amendment"). Indeed, the Ninth Circuit has suggested that Courts should not entertain claims of an excessively painful handcuffing where there is no evidence of resulting medical injury. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) ("Arpin's claim of injury is equally unsupported as she does not provide any medical records to support her claim that she suffered injury as a result of being handcuffed."), citing *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) ("Foster presents no medical records indicating he suffered any long-term injury as a result of the handcuffs. … We do not believe that Foster's allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are sufficient to support his claim of excessive force."). While Plaintiffs assert their wrists were red after being handcuffed, the photographs they took immediately after the incident do not show any redness. Ex. 305. Plaintiffs present the same kind of unsupported claim of injury from handcuffs that was rejected by the Ninth Circuit in *Arpin*. Judgment must be granted against this claim.

Moreover, a garden variety handcuffing is not excessive force where a detention or arrest is lawful. *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002); accord *Sinclair v. Akins*, 696 Fed. App'x 773, 776 (9th Cir. 2017) ("a detainee's complaints of tight handcuffs alone, without any physical manifestation of injury (during or after the handcuffing), where the initial handcuffing was justified" is not excessive force). This rule is reasonable because "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Absent evidence that the handcuffs were incorrectly applied, or were applied so as to cause physical injury, their use does not constitute excessive force." *DeToledo v. County of Suffolk*, 379 F.Supp.2d 138, 145 n. 5 (D. Mass. 2005). "In cases where the Ninth Circuit has held that excessively tight handcuffing can constitute a Fourth Amendment

- 15 -

violation, plaintiffs either were demonstrably injured by the handcuffs or their complaints about the handcuffs being too tight were ignored by the officers." *Hupp v. City of Walnut Creek*, 389 F.Supp.2d 1229, 1232 (N.D. Cal. 2005). Plaintiffs advanced no evidence that Mother (or anyone else) ever complained to Sgt. Holland about these handcuffs. Sgt. Holland did not apply any handcuffs except for Mother's. Plaintiffs' own photographs show that there were no demonstrable injuries from these handcuffs.

### IV.    Plaintiffs' Claim of Racial Discrimination Against Deputy Holland:

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). The fact that a plaintiff is "African-American, the officer is white, and they disagree about the reasonableness of the traffic stop" are not "sufficient to raise an inference of racial discrimination." *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948 (9th Cir. 2003); accord *Pinder v. Emp't Dev. Dep't*, 227 F.Supp.3d 1123, 1140 (E.D. Cal. 2017). Racial discrimination claims related to a detention generally require the plaintiff to "produce 'some tangible evidence in the record that tends to support his conclusion' that the seizure was racially motivated— evidence, for instance, that [the officer] or the [department] had a practice, or engaged in a pattern, of seizing African–Americans or that [the officer] made a race-related remark during the encounter." *Benson v. City of San Jose*, 583 F. App'x 604, 606 (9th Cir. 2014), quoting *Bingham*, 341 F.3d at 954. Plaintiffs have no such evidence. In *Snowden v. Hughes*, 321 U.S. 1, at 8 (1944), the U.S. Supreme Court stated:

> The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person ... [citations], or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself [citations]. But a discriminatory purpose is not presumed ... [citations] there must be a showing of 'clear and intentional discrimination'[.] (Emphasis added.)

ORBACH HUFF + HENDERSON LLP

When relying on only circumstantial evidence of racial motivation, that evidence must be "specific and substantial." See *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

Accordingly, for Plaintiffs to sustain a claim for racial discrimination in violation of the Equal Protection Clause, they would have to produce evidence of discriminatory intent on the face of the action--e.g., racial slurs or epithets--or evidence indicating such an intent through a showing that non-African-Americans are treated differently. Plaintiffs in their case in chief advance no such evidence. Plaintiffs did not identify anything that Sgt. Holland said or did during the incident that had racial overtones. Though Plaintiffs are sure to argue that Sgt. Holland's "demeanor" is somehow proof of such racial motivation, the evidence does not support this inference. Unlike Plaintiffs who can be seen screaming at the officers throughout this encounter, Plaintiffs each admitted that Sgt. Holland did not raise his voice and spoke professionally. Plaintiffs have elicited no evidence showing that Sgt. Holland intentionally discriminated against them on the basis of race.

## V.    Plaintiffs' Claim of a Bane Act Violation Against Deputy Holland:

*Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043-145 (9th Cir. 2018) is the standard for Bane Act claims. *Reese* discussed *Cornell v. City and County of San Francisco*, (2017) 17 Cal.App.5th 766. Reese stated, in regards to Cornell "Bane Act claims are routinely alleged in Section 1983 claims under federal pendent jurisdiction" Reese, at 1043 (citations omitted). Acknowledging that Bane Act claims are the source of a great deal of "confusion", Reese explained "that '[p]roperly read, the statutory phrase 'threat, intimidation or coercion' serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief." Id. at 383. Accordingly, Cornell held that "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure." Id. at 384. In so holding, Cornell adopted the specific intent standard established in *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), for assessing criminal violations of federal civil rights.'"

The specific intent requirement was explained in *Cornell v. City and County of San Francisco* (2017) 17 Cal.App.5th 766, wherein the First District stated that "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the [person] had a specific intent to

Defs' Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

violate the [plaintiff's] right." (Id. at 801-802.) The Cornell Court expressly confirmed the requirement that a Bane Act violation requires plaintiffs to prove the defendant commit the acts in question with the "with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that ... right." (Cornell, 17 Cal.App.5th at 803; accord County Inmate Telephone Service Cases (2020) 48 Cal.App.5th 354, 370.; Shoyoe v. County of Los Angeles, 203 Cal.App.4th 947 (2012) holding the "act of interference with a constitutional right must itself be deliberate or spiteful", but that "[t]he statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." Id. at 958; CACI 3066 confirming the specific elements of a valid Bane Act claim.)  Notably, the coercion required to support a Bane Act claim must be coercion *independent* from that inherent in the wrongful detention itself, which Plaintiffs have failed to prove. Bender v. County of Los Angeles (2013) 217 Cal.App.4th 968.

Furthermore, Plaintiffs' assertions that a violation of the Fourth Amendment automatically establishes a Bane Act violation is legally incorrect; "Evidence simply showing that an officer's conduct amounts to a constitutional violation under an "objectively reasonable" standard is insufficient to satisfy the additional intent requirement under the Bane Act." Losee v. City of Chico, No. 16-16541, 2018 WL 3016891, at *2 (9th Cir. June 18, 2018).

Here, Plaintiffs merely claim and offer evidence which they argue show the Deputies unlawfully detained and/or imprisoned each of them, followed by searching their vehicle for identification.  Each of the Plaintiffs has confirmed that no threats were ever made, nor did either of the Deputies ever so much as withdraw a weapon.  In fact, Plaintiffs own testimony is that neither of the Deputies ever even yelled (although the Deputies did speak sternly in directing Plaintiffs during the incident).  Such evidence fails to satisfy the elements of a Bane Act claim.

## VI.        Plaintiffs' Request for Punitive Damages:

Plaintiffs are also seeking an award of punitive damages as against only Deputy Holland. However, they have failed to introduce any evidence to support a finding that Deputy Holland's actions were malicious, oppressive or in reckless disregard of the Plaintiffs' rights.  The appropriate standard for a determination of punitive damages is whether the defendant's conduct is "shown to be

///

ORBACH HUFF + HENDERSON LLP

- 18 -

Defs' Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, (1983).

Officers sued in their individual capacity under 42 U.S.C. § 1983 are subject to punitive damages only upon a showing that their conduct was "motivated by evil motive or intent, or [involved] reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Where a plaintiff provides no evidence of the individual defendant's evil intent, the court may deny punitive damages as a matter of law. *Ward v. San Jose*, 967 F.2d 280, 286 (9th Cir. 1991). The standard for awarding punitive damages under California law is similar. California Civil Code § 3294 provides that a plaintiff must prove by "clear and convincing evidence that defendant has been guilty of oppression, fraud, or malice." *Basich v. Allstate Ins. Co.*, 87 Cal.App.4th 1112, 1118-1120, 105 Cal.Rptr.2d 153 (2001).

Here, Plaintiffs have produced no evidence that the conduct of Deputy Holland exhibited evil intent, malice, fraud, oppression or a callous indifference to Plaintiffs' rights. Indeed, Plaintiffs never even called Deputy Holland. In fact, the only evidence that has been introduced is that two separate deputies – Deputy Holland and Deputy Pope – each independently identified Plaintiffs' vehicle as suspicious and potentially related to a string of auto burglaries in the area. Moreover, the testimony by the experts on both sides was that law enforcement officers may legally detain suspects where a reasonable suspicion exists that they were somehow connected to a crime. Both experts similarly confirmed that with reasonable suspicion, the Deputies were entitled to place the Plaintiffs in handcuffs and even search their vehicle. Even if the Deputies decision to detain and investigate Plaintiffs' involvement in those crimes was improper (which Defendants' dispute), such actions do not show the necessary "evil motive or intent, or reckless callous indifference to the federally protected rights of others" required to support a claim for punitive damages.

## VII.    Plaintiffs' Monell Claim against the County is Legally Deficient:

The only remaining federal claim against the County of Alameda is based upon allegations of ratification under a Monell theory. However, Plaintiffs evidence – which is limited to a showing that Chief Ahern was presented with a summary of the incident and deemed the conduct to be within policy – is legally insufficient.

The Court only allowed Plaintiffs' claims under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) to proceed against the County based on Sheriff Ahern writing "Briefed – No further action required" at the bottom of the completed internal affairs report for the incident. MSJ Order, 12:20-26. Ratification, however, "generally requires more than acquiescence." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), rev'd in part on other grounds, cert. dismissed in part sub nom., 135 S. Ct. 1765 (2015). A police department's "mere failure to discipline [its officers] does not amount to ratification of their allegedly unconstitutional actions." *Id.* at 1231; accord *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010), overruled on other grounds by *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). "For example, it is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Indeed, "[t]o hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983." *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 781 (9th Cir.1997).

At most, by writing "no further action," Sheriff Ahern chose not to overrule the outcome of Capt. Brodie's completed investigation and report. To establish ratification, a final policymaker for the County must "approve a subordinate's decision *and the basis for it*." *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). Merely a "deferential review of a subordinate's discretionary decision" and a failure to overrule that allegedly erroneous decision is not sufficient to establish ratification. *Id.* (neither city manager's decision not to overrule fire chief nor fire chief's decision not to overrule battalion chief established ratification).

Thus, in the case of police department internal disciplinary proceedings, trial courts have consistently held "in order for there to be ratification, there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures." *Koenig v. City of Bainbridge Island*, No. C10-5700 RJB, 2011 WL 3759779 (W.D. Wash. Aug. 25, 2011); accord *Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1189 (D. Haw. 2003) ("The Ninth Circuit appears to require something more than a failure to reprimand to establish a municipal policy or ratification."); *German v. Roberts*, No. CV 15-

- 20 -

ORBACH HUFF + HENDERSON LLP

5237 BHS-DWC, 2017 WL 6547472, at *2 (W.D. Wash. Dec. 22, 2017) ("Based on the analysis outlined in *Larez*, the Court agrees with Defendants that, when establishing *Monell* liability under a ratification theory, a plaintiff must present more than just a police investigation that concludes an officer applied reasonable force."); accord *Peterson v. City of Forth Worth Texas*, 588 F.3d 838, 848 (5th Cir.2009) (holding that there was no ratification of use of excessive force where the Chief of Police determined after investigation that the officers complied with department policies*); Santiago v. Fenton,* 891 F.2d 373, 382 (1st Cir.1989) ("As we have indicated before, we cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under *Monell*." ).  This is where the "sham" investigation exception Plaintiffs previously raised comes into play; the sham of the investigation is the "something more" through which ratification can be established.  But the Court granted summary judgment against Plaintiffs' claims of a sham investigation (MSJ Order, 12:6-19), and Plaintiffs consequently cannot establish the ratification necessary for their *Monell* claim to succeed.

Additionally, there is no evidence Sheriff Ahern is necessarily the policymaking authority *for the County* in regard to personnel matters.  As the Supreme Court has explained:

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. [See, e.g., *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985).]  The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).  The Supreme Court then took up precisely the example before the Court:

> Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff is the official policymaker, would give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire

employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board.

*Id*. at 484 n.12.  While Sheriff Ahern may have authority to hire, fire and discipline individual employees, Plaintiffs have not introduced evidence to satisfy their burden in showing that Sheriff Ahern was the final policymaking authority for setting the County's employment policy.  Because Plaintiffs do not show Sheriff Ahern's ability to set County-wide policy through this one internal affairs investigation, Plaintiffs' claims against the County fail.  Similarly, that Sheriff Ahern elected to not discipline the Deputies and found that their actions during the incident were within policy is insufficient to support a ratification claim.

## VIII.    Conclusion

Defendants submit that under the precedent above, Defendants' Rule 50 Motion for Judgment as a Matter of Law should be granted in its entirety.

Dated:  February 14, 2023          Respectfully submitted,
                                   **ORBACH HUFF + HENDERSON LLP**

                                   By:    /s/ *Kevin E. Gilbert*
                                          Kevin E. Gilbert
                                          Attorney for Defendants
                                          COUNTY OF ALAMEDA, STEVEN
                                          HOLLAND and MONICA POPE

ORBACH HUFF + HENDERSON LLP

- 22 -

Defs' Motion for Judgment as a Matter of Law [20-cv-04679-WHA]