Joseph S. May   SBN 245924
LAW OFFICE OF JOSEPH S. MAY
1388 Sutter Street, Suite 810
San Francisco, CA 94109
Tel: (415) 781-3333
Fax: (415) 707-6600
joseph@josephmaylaw.com

Brian Gearinger   SBN 146125
GEARINGER LAW GROUP
740 Fourth Street
Santa Rosa, CA 95404
Tel: (415) 440-3102
brian@gearingerlaw.com

Craig M. Peters   SBN 184018
ALTAIR LAW
465 California Street, 5th Floor
San Francisco, CA 94104-3313
(415) 988-9828
cpeters@altairlaw.us

Attorneys for Plaintiffs AASYLEI
LOGGERVALE, AASYLEI HARDGE-
LOGGERVALE, and AAOTTAE
LOGGERVALE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| AASYLEI LOGGERVALE; AASYLEI HARDGE-LOGGERVALE; and AAOTTAE LOGGERVALE, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF ALAMEDA; STEVEN HOLLAND; MONICA POPE; KEITH LEEPER; ANTHONY DeSOUSA; CAMERON GALLOWAY; and DOES 1 to 50, inclusive, <br><br> Defendants. | CASE NO. C20-4679-WHA <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' RULE 50 MOTION** <br><br> Action Filed:  July 14, 2020 <br> Trial Date:     February 13, 2023 |

Loggervale v. County of Alameda et al., Case No. C20-4679-WHA
PLAINTIFFS' OPPOSITION TO DEFENDANTS' RULE 50 MOTION

# TABLE OF CONTENTS

I.     Fourth Amendment Detention by Defendant Holland ……………………………1

II.    There Was No Basis to Detain the Two Daughters ………………….....……….5

III.   Even if the Detention Was Valid, Plaintiffs Could Refuse to Provide IDs……….6

IV.    Any Battery on Deputy Pope Was Not the Basis for Detention/Arrest…………..6

V.     There is no Evidence Holland was Battered by Mother………………………….7

VI.    The Court Already Deemed the Search Unlawful With One Exception …………7

VII.   The Excessive Force Claims Are Established if the Detention Was Unlawful…..8

VIII.  The Fourteenth Amendment Claim Must Go to the Jury ………………………..8

IX.    Bane Act …………………………………………………………………………9

X.     The Jury Could Find Malice or Reckless Disregard …………………………….10

XI.    Plaintiffs Have Shown a *Monell* Violation Based on Ratification ………….....…11

XII.   Conclusion ………………………………………………………………………12

Loggervale v. County of Alameda et al., Case No. C20-4679-WHA
PLAINTIFFS' OPPOSITION TO DEFENDANTS' RULE 50 MOTION

## TABLE OF AUTHORITIES

**Statutes & Rules**

Cal. Civ. Code § 52.1 …………………………………………………………………………9, 10

Cal. Veh. Code § 360 ………………………………………………………………………….6

Cal. Veh. Code § 4461 ………………………………………………………………………..3

Cal. Veh. Code § 12951 ………………………………………………………………..1, 2, 3

Cal. Veh. Code § 22511.56 ………………………………………………………….1, 2, 3, 4

Cal. Veh. Code § 26708 ……………………………………………………………………….6

Fed. Rule Civ. Proc. 50 ……………………………………………………………………1, 12


**Cases**

*Blankenhorn v. City of Orange*

    485 F.3d 463 (9th Cir. 2007) …………………………………………………………..8

*Delaware v. Prouse*

    440 U.S. 648 (1979) …………………………………………………………………1, 2

*Demarest v. City of Vallejo*

    44 F.4th 1209 (9th Cir. 2022) …………………………………………………………5

*Florida v. Bostick*

    501 U.S. 429 (1991) …………………………………………………………………….4

*Headwaters Forest Def. v. Cnty. of Humboldt*

    240 F.3d 1185 (9th Cir.2000) …………………………………………………………8

*In re Arturo D.*

    27 Cal.4th 60 (2002) …………………………………………………………………..2, 3

*Kuhlken v. City of San Diego*

    3:16-CV-2504-CAB-DHB, 2018 WL 45444 (S.D. Cal. Jan. 16, 2018) …………………5

ii

*Lipton v. United States*

  348 F.2d 591 (9th Cir. 1965) …………………………………………………..…1

*Malley v. Briggs*

  475 U.S. 335 (1986) …………………………………………………………………5

*Martinelli v. City of Beaumont*

  820 F.2d 1491 (9th Cir. 1987) …………………………………………………………6

*Maryland v. Wilson*

  519 U.S. 408 (1997) …………………………………………………………………6

*Minnesota v. Dickerson*

  508 U.S. 366 (1993) …………………………………………………………………1

*Moreno v. Town of Los Gatos*

  267 Fed. Appx. 665 (9th Cir. 2008) ………………………………………………….10

*Reese v. County of Sacramento*

  888 F.3d 1030 (9th Cir. 2018) ……………………………………………….……9, 10

*Reeves v. Sanderson Plumbing Products, Inc.*

  530 U.S. 133 (2000) ……………………………………………………..…………..1

*Sherman v. United States*

  356 U.S. 369 (1958) …………………………………………………………………4

*Terry v. Ohio*

  392 U.S. 1 (1968) …………………………………………………………………1, 6

*Trotter v. Stonich*

  247 F. App'x 878 (9th Cir. 2007) …………………………………………………5

*United States v. Carrizoza-Gaxiola*

  523 F.2d 239 (9th Cir. 1975) ………………………………………………………….2

*United States v. Chan-Jimenez*

  125 F.3d 1324 (9th Cir. 1997) …………………………………………………………8

*United States v. Grissett*

  749 Fed. Appx. 526 (9th Cir. 2018) …………………………………………………5

*United States v. Kim*

25 F.3d 1426 (9th Cir. 1994) ……………………………………………………….4

*United States v. Martinez-Fuerte*

428 U.S. 543 (1976) ……………………………………………………………….5

*United States v. Osborn*

203 F.3d 1176 (9th Cir. 2000) ……………………………………………………4

*United States v. Rodgers*

656 F.3d 1023 (9th Cir. 2011) ……………………………………………………8

*United States v. Williams*

419 F.3d 1029 (9th Cir. 2005) ……………………………………………………6

*Venegas v. County of Los Angeles*

32 Cal. 4th 820 (2004) …………………………………………………………...10

*Whren v. United States*

517 U.S. 806 (1996) ………………………………………………………………9

iv

Motions for judgment as a matter of law, pursuant to FRCP 50, are guided by a standard that "mirrors" motions for summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000). Plaintiffs have presented much of the same evidence at trial that they did in opposition to Defendants' summary judgment motion. The Court has already ruled that some of the claims in this case must be decided by the jury.

## I.    Fourth Amendment Detention by Defendant Holland

Holland claims that he was enforcing the Vehicle Code when he asked Ms. Loggervale for her ID. Specifically, he claims one of his purposes in approaching the vehicle was to check to see if it had a valid placard, as he could not observe one from behind the vehicle. Defendants claim that if Holland's purpose for the stop was to check the placard, then Vehicle Code Section 22511.56 permitted him to demand Ms. Loggervale's ID and her refusal to comply justified her detention, arrest, and search of her vehicle, the trunk, and all the purses and pocketbooks therein to find IDs. Holland also claims that he could demand ID simply to see if Ms. Loggervale had a valid driver's license under Vehicle Code Section 12951. On the other hand, Defendants do not claim, nor could they, that they are entitled to judgment on the lawfulness of the detention if it was for auto burglaries. As such, Plaintiffs will address only the Vehicle Code arguments.

First, law enforcement officers are trained that the Fourth Amendment requires reasonable suspicion of criminal activity to detain someone. Trial Transcript ("TT") (DeFoe direct), 265:23-266:16. This is consistent with longstanding Supreme Court precedent: As a general matter, "searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993).

Defendants' main case, *Lipton v. United States*, 348 F.2d 591 (9th Cir. 1965), pre-dated *Terry v. Ohio*, and is no longer viable to the extent it permits stops of vehicles without reasonable suspicion. *See, e.g., Delaware v. Prouse*, 440 U.S. 648, 663 (1979) ("[W]e hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an

1

occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment."). *United States v. Carrizoza-Gaxiola*, 523 F.2d 239 (9th Cir. 1975) did not hold that *Lipton* remains viable; indeed, it expressly noted it is "assuming" that without deciding it. *Carrizoza-Gaxiola*, 523 F.2d at 241 (invalidating stop lacking reasonable suspicion made for purpose of investigating stolen cars). At any rate, *Delaware v. Prouse* made it clear to any reasonable officer that he or she cannot detain someone unless there is reasonable suspicion. Thus, an officer cannot ask a driver for their license unless the officer has made a valid stop on some other grounds. Further, an officer cannot demand a person's identification if there is a facially valid placard displayed – absent reason to believe it is not being used in accordance with the law.

The Vehicle Code sections at issue do not create any Fourth Amendment exceptions (nor could they), and these sections do not create confusion or uncertainty over these issues. Section 12951 does not suggest in any way that an officer can stop someone without reasonable suspicion. Instead, it merely requires a driver to present ID to an officer enforcing the Vehicle Code. Reading the statute consistently with the Fourth Amendment (as officers are trained), the effect of this section is to allow officers to demand production of a driver's license when the officer has made an otherwise valid stop. *See In re Arturo D*., 27 Cal. 4th 60, 67 (2002), overruled on other grounds by *People v. Lopez*, 8 Cal. 5th 353 (2019) (explaining that the reason for Section 12951 "is plain: An officer who has stopped a vehicle for a traffic infraction and who plans to issue a citation needs to ascertain the true identity of the diver and the owner of the vehicle, in order to include that information on the citation and the written promise to appear"). Thus, since at least 2002 (and likely going back to *Delaware v. Prouse*), all reasonable officers would know that they must have reasonable suspicion of a Vehicle Code violation before Section 12951 permits them to demand identification.

Similarly, Section 22511.56 requires a person using a placard to present ID and proof of issuance to an officer requesting those things. This statute does not, however, permit an officer to stop someone without reasonable suspicion in order to investigate the validity of a placard. Any

2

reasonable officer would know they must read the statute in harmony with the Fourth Amendment and cannot simply stop someone because they are curious about the person's placard. To find otherwise would effectively give disabled persons less Fourth Amendment protection than non-disabled persons, which would be anathema to our Constitution.

If Defendants' argument is accepted, the result would be untenable. Any officer could detain anyone at any time and claim that they were subjectively intending, in their own mind, to investigate some Vehicle Code section or other. Indeed, officers could even stop *pedestrians* and demand ID, later claiming that they were investigating whether that person had jaywalked, which is prohibited by Vehicle Code 21955. Clearly, Section 12951 cannot be used to bootstrap reasonable suspicion into a case when it is not otherwise present or else the Fourth Amendment would be meaningless in California. This appears to be confirmed by *In re Arturo D.*, which stated that the purpose of Section 12951 is clearly for an officer to ensure compliance with the citation they are writing for a Vehicle Code violation.

Even assuming *arguendo* (without conceding) that California statutes permit detentions without reasonable suspicion, there is still a question of fact as to whether Holland was "enforcing the provisions of the Vehicle Code" when he detained Plaintiffs. If Holland was investigating auto burglaries (which is the sole reason disclosed on his body camera and in his police report), then he could not demand Ms. Loggervale's ID under Section 12951, which unambiguously limits application to demand for a license by an officer enforcing the Vehicle Code.

And no reasonable officer could have believed that Ms. Loggervale violated Section 22511.56 by refusing to provide ID because, at the time of detention, Holland did not know whether the placard belonged to her, to one of the two other passengers, or to some other person with disabilities whom the Loggervales were picking up or dropping off at the time. *See* Cal. Veh. Code § 4461(b) ("A person to whom a disabled person placard has been issued may permit another person to use the placard only while in the presence or reasonable proximity of the disabled person for the purpose of transporting the disabled person.").

Finally, even if the jury finds that Holland was truly asking for ID in order to verify the placard, and that he could do so without reasonable suspicion, there was still no reasonable suspicion to believe Ms. Loggervale (or anyone else) violated the statute because the statute requires that both the ID and proof of issuance be provided when requested. This obviously requires that the officer ask for *both* of those items or at least advise the purpose of the request for ID. Otherwise, the mere demand for ID by an officer without further explanation sets up a "trap for the unwary innocent," which is prohibited by the Constitution. *Sherman v. United States*, 356 U.S. 369, 372 (1958). As seen on the body camera, Holland discloses that his purpose for questioning Ms. Loggervale is auto break-ins. Ex. 37, 00:34-00:55 ("let me tell you why I'm here okay. I've been having auto break-ins in this parking lot every morning around this time . . . that's my reason why I'm talking to you.") Ms. Loggervale asks why Holland is asking for ID and Holland never explains that it is to investigate the placard and has ample opportunity to do so. Because he failed to make any mention of the placard and instead affirmatively represented that his reason for contact was a burglary investigation, there is no reasonable basis for Holland to suspect that mother committed the crime of failing to provide ID and proof of issuance of a placard under Section 22511.56.

As usual, many of Defendants' cited cases are completely inapposite. For example, Defendants cite *United States v. Osborn*, 203 F.3d 1176, 1180 (9th Cir. 2000) and *United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994) for the proposition that officers' request for identification does not constitute a detention. In *Osborn*, the officers never insisted on compliance, but instead asked questions about the defendant's identity and criminal history, with which defendant voluntarily complied. In *Kim*, the officers never demanded ID; on the contrary, one of the key factors in finding no detention occurred was the officers' "phrasing of . . . request for permission to question" the defendant, which "left open the possibility of a refusal." Obviously, when Holland said "yeah you have to give me your ID" (Ex. 37, at 1:25), no reasonable person would have felt free to refuse or to simply leave. *See Florida v. Bostick*, 501 U.S. 429, 434-35 (1991) ("We have stated that even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, [citation]; ask to

4

examine the individual's identification, [citation]; and request consent to search his or her luggage, [citation]—as long as the police do not convey a message that compliance with their requests is required.").

*Kuhlken v. City of San Diego*, an unpublished district court case cited by Defendants, involved a suspect reporting to police that the plaintiff ran over his foot with her vehicle, creating reasonable suspicion to detain and demand ID. *Trotter v. Stonich*, 247 F. App'x 878, 880 (9th Cir. 2007) dealt with the question of whether a custodial arrest could be made for an undisputedly valid stop for a traffic violation. *Demarest v. City of Vallejo*, 44 F.4th 1209 (9th Cir. 2022) involved sobriety checkpoints, which are a recognized and limited exception to the reasonable suspicion requirement and irrelevant to this case. *See United States v. Martinez-Fuerte*, 428 U.S. 543 (1976).

In sum, the defense cites no case that permits the detention of drivers (or those parked and in the driver's seat) in order to check the validity of a driver's license or a disabled person parking placard, without first having reasonable suspicion.

For these reasons, a reasonable jury could find that Holland had no reasonable suspicion to detain the Loggervales for any reason, including his after-the-fact claim that he was trying to enforce the Vehicle Code. The law was clearly established at the time and no reasonable officer could have believed that what Holland did – approaching three women sitting in a car with a placard hanging in the windshield, telling them he was investigating burglaries, and then detaining all three because the driver refused to provide identification – was lawful. On the contrary, only a *plainly incompetent* officer would have handled the situation this way, precluding qualified immunity. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

## II.    There Was No Basis to Detain the Two Daughters

Defendants claim that if there was reasonable suspicion to detain Ms. Loggervale for a Vehicle Code violation, they were permitted to detain the daughters. This is not supported by Ninth Circuit precedent. *See United States v. Grissett*, 749 Fed. Appx. 526, 528 (9th Cir. 2018) ("As to the air freshener, even if we were to credit the state's argument that the air freshener

5

violated Cal. Veh. Code § 26708(a)(2)—which makes it illegal to drive a motor vehicle with any object that obstructs or reduces the driver's clear view through the windshield—this would not provide reasonable suspicion as to Grissett, who was merely a passenger in the parked car."). This is distinguishable from situations where a vehicle is subject to a traffic stop on a "highway."[1] In such cases the passengers may be ordered to exit the vehicle or remain (or return to) the vehicle. This is because the intrusion is minimal in that the passenger stopped on a highway has nowhere to go anyway. *See United States v. Williams*, 419 F.3d 1029, 1032 (9th Cir. 2005), citing *Maryland v. Wilson*, 519 U.S. 408 (1997) ("However, the Court reasoned that the additional intrusion was minimal because: 'as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle,' and thus, '[t]he only change in [the passengers'] circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car.' [Citation.]").

Here, even assuming a valid traffic stop of the parked car (which seems unlikely), Holland had no basis to detain the passengers.

**III.    Even if the Detention Was Valid, Plaintiffs Could Refuse to Provide IDs**

*Martinelli v. City of Beaumont*, 820 F.2d 1491, 1494 (9th Cir. 1987) held: "The [district] court should have instructed the jury that the use of Section 148 to arrest a person for refusing to identify herself during a lawful *Terry* stop violates the Fourth Amendment's proscription against unreasonable searches and seizures." The district court cases cited by Defendants that permit arrest for refusal to provide ID are not controlling.

**IV.    Any Battery on Deputy Pope Was Not the Basis for Detention/Arrest**

Plaintiffs' case did not include evidence sufficient for a jury to find that Aasylei Hardge-Loggervale intentionally battered Deputy Pope with her car door. Indeed, Ms. Loggervale testified her door did not strike Pope at all. TT, 621:6-11. Even if the jury finds that the car door

---

[1] "'Highway' is a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel. Highway includes street. Veh. Code, § 360.

Loggervale v. County of Alameda et al., Case No. C20-4679-WHA
PLAINTIFFS' OPPOSITION TO DEFENDANTS' RULE 50 MOTION

struck Pope and that it was intentional, there is no evidence that Holland knew about the battery or based any of his decisions on the battery. Indeed, the evidence is to the contrary, as Holland testified. TT 754:8-10 ("After the call was completed and everyone had been released, it was brought to my attention that Deputy Pope had been struck."). The collective knowledge doctrine would not apply because it was auto burglaries that Holland and Pope were jointly investigating, not battery on a peace officer. Holland's decision to detain Plaintiffs could only be based on what he knew at the time, which did not include an alleged "battery."

### V.    There is no Evidence Holland was Battered by Mother

Defendants argue there was probable cause to arrest Ms. Loggervale for battering Defendant Holland with her car door. Def. Motion at 7:3-7. There is no evidence (neither from Plaintiffs' case nor from Defendants' case either) that Holland was battered. The video shows Mother try to open the door and Holland pushes it closed on her. Ex. 37 (Holland Body Cam) at 06:18-06:26. If anything, that could have been a battery by Holland on Ms. Loggervale. Defendants' contention that they are entitled to judgment as a matter of law based on an alleged battery by Ms. Loggervale is without any merit whatsoever.

### VI.    The Court Already Deemed the Search Unlawful With One Exception

The Court granted Plaintiffs' motion for partial summary judgment as to the illegality of the search of Plaintiffs' car and belongings. Dkt. 106, pp. 6-8. The Court reconsidered its ruling only as to the automobile exception but stated that "all other issues resolved by the order at Dkt. No. 106 remain unaffected." Dkt. 145, 2:21. Even to the extent Defendants can still argue consent, there is no evidence that Ms. Loggervale consented prior to Holland rummaging through her purse, or that Aasylei Hardge-Loggervale ever consented at all. As to Aaottae, the evidence shows that Pope told her that she would release her from handcuffs once she is identified. In reliance on Pope's representation, Aaottae tells her where her student ID is. Aaottae, a juvenile, is handcuffed in the back of the police car, and Pope promises her the handcuffs will be removed if she gives her ID. She was never asked for consent nor explicitly gave consent. Pope never told her she could refuse consent. At best, Pope coerced and fraudulently induced Aaottae to give *implied* "consent." Under these facts, Defendants have

7

failed to meet their "heavy burden" that Aaottae "freely and voluntarily" gave her consent. *United States v. Chan-Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997) ("In order to establish the validity of a consent to search, the government bears the heavy burden of demonstrating that the consent was freely and voluntarily given.").

Defendants rely on *United States v. Rodgers*, a case that actually supports Plaintiffs' position.

> Passenger and vehicle searches have played a prominent role in Fourth Amendment jurisprudence. The Supreme Court has consistently held that probable cause is necessary to conduct a warrantless search of a vehicle. *See Carroll v. United States*, 267 U.S. 132, 160–62, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *California v. Carney*, 471 U.S. 386, 390, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). In recent years, the Court has clarified that "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity," the search may extend to any area where evidence might be found. *See Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 1721, 173 L.Ed.2d 485 (2009) (citing *United States v. Ross*, 456 U.S. 798, 820–21, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)). In addition, when an arrest is made, a warrantless search is permitted "if the arrestee is within reaching distance of the passenger compartment ... or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id*. at 1723. *But the Court has never sanctioned a vehicle search simply because there was probable cause to arrest a passenger or because a passenger could not provide identification. The Fourth Amendment requires more.*

*United States v. Rodgers*, 656 F.3d 1023, 1024 (9th Cir. 2011); italics added.

## VII.    The Excessive Force Claims Are Established if the Detention Was Unlawful

Plaintiffs conceded that if there was a valid detention as to any Plaintiff, that Plaintiff's excessive force claim would not be viable. Conversely, if the detention was invalid as to any Plaintiff, that Plaintiff's excessive force claim is established as a matter of law. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (finding it clearly established that any force is excessive where there is no need for any force at all); *Headwaters Forest Def. v. Cnty. of Humboldt*, 240 F.3d 1185, 1199 (9th Cir.2000), vacated on other grounds, 534 U.S. 801 (2001) ("[W]here there is no need for force, any force used is constitutionally unreasonable.").

## VIII.   The Fourteenth Amendment Claim Must Go to the Jury

The Court's Order on Summary Judgment motions held that "a reasonable jury could find that justifying the detention of African-American women on suspicion they were African-American male burglary suspects adequately supports an inference of a racially-discriminatory

8

Loggervale v. County of Alameda et al., Case No. C20-4679-WHA
PLAINTIFFS' OPPOSITION TO DEFENDANTS' RULE 50 MOTION

motive." The Court further held a "reasonable jury could conclude that similarly-situated white women would not have been investigated or unlawfully searched, as were the Loggervales. In other words, a reasonable jury could conclude that racial animus motivated defendants' actions." (Dkt. 106, p. 10.)

Racial profiling by police can constitute a deprivation of a citizen's right to equal protection under the law. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("[T]he Constitution prohibits selective enforcement of the law based on considerations such as race" and "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause"). Plaintiffs presented evidence that deputies are trained that using race as the sole basis for a detention is unconstitutional. The facts of this case show that Holland detained Plaintiffs on suspicion of auto burglary. Exhibit 70 shows that the information known to Defendants was that there were *never* three Black women identified as suspects in auto burglaries. Defendants, in response, claim that the suspects were often identified as Black men in silver four-door sedans. The jury could find that Defendants are making that up, as the only documentation shows one Black male suspect in a silver vehicle way back on July 10, 2019. The only thing Plaintiffs had in common with prior suspects was that they are Black and a couple (but not all) prior suspects were reported to be Black. Thus, a reasonable jury could find that race was the sole motivating reason for detaining the Plaintiffs and that three white women simply sitting in a car would never be accused of auto burglaries committed by some white men in the past. The right at issue here, to be free from racial profiling, was clearly established long before the incident and no reasonable officer could have believed it was appropriate to detain Plaintiffs for the auto burglaries based on their race.

**IX.    Bane Act**

Plaintiffs' right to be free from unlawful search and seizure, their First Amendment right to question government action, and their Fourteenth Amendment right to equal protection under the law were all violated by threat, intimidation, or coercion by Holland, or a reasonable jury could so find. The Bane Act does not require a separate act of threat, intimidation, or coercion. *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). Bane Act claims do not

9

require violence. *Moreno v. Town of Los Gatos*, 267 Fed. Appx. 665, 666 (9th Cir. 2008) ("The district court erred in holding that a valid section 52.1 claim requires a plaintiff to allege violence or threats of violence . . . Reading section 52.1 on its own terms, as *Venegas [v. County of Los Angeles*, 32 Cal. 4th 820 (2004)] directs, the statutory language clearly requires only 'threats, intimidation, or coercion.'"). However, the jury could find Hollands' conduct in handcuffing and forcing the Loggervales (or causing others to do so) into police vehicles were acts of violence.

Finally, the Bane Act's requirement of "specific intent" to violate the Plaintiffs' rights is satisfied by a showing of reckless disregard for those rights. *Reese, supra*, at 1045 ("But it is not necessary for the defendants to have been 'thinking in constitutional or legal terms at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.' [Citation.]"). Plaintiffs have more than adequately presented evidence to support a finding that Holland violated Plaintiffs' rights under the Bane Act.

## X.    The Jury Could Find Malice or Reckless Disregard

Plaintiffs only claim punitive damages against Defendant Holland. Holland's actions in ignoring the previous day's investigation (where the suspects in the auto burglary were described as a young Black man and young Latino man in a dark gray, small two-door hatchback) could be seen as malicious and in reckless disregard. Not only did Holland ignore the facts from the previous day, he misrepresented them in his police report (Ex. 1), claiming that the previous day there were suspects identified as Black men in a silver four-door sedan. A jury could clearly find that this coverup is evidence of ill will and improper motives for the detention.

This is not simply a case about an honest mistake by police officers. The jury could view Holland's decision to detain the Loggervales as a vindictive and punitive response to their refusal to cooperate in a consensual encounter and questioning of his authority. They could also find that he subjectively intended to improperly use race as the sole basis for the detention, since it is really the only thing the Loggervales had in common with any prior suspects. Indeed, there were three Loggervales, but never three suspects in any of the prior auto burglaries. The Loggervales were women, but no prior suspects were women. The Loggervales had a silver four-door sedan,

Loggervale v. County of Alameda et al., Case No. C20-4679-WHA
PLAINTIFFS' OPPOSITION TO DEFENDANTS' RULE 50 MOTION

but no documented prior suspect was described as having a silver four-door sedan.[2]  And all of the other "suspicions" were simply made up after the fact, and not truly suspicious to begin with. These include the parking away from the Starbucks (they were near the stairs used to get to Starbucks), having a rental car (several victims, but no suspects had rental cars), having an out-of-state plate (again, a victim had an out of state plate, but no suspect), and Ms. Loggervale claiming she was waiting for Starbucks to open when it was already open (the body cam video shows that Ms. Loggervale never said such a thing).

In the Ninth Circuit, Plaintiffs need only show by a preponderance of the evidence that the defendant acted with reckless disregard of their rights. Plaintiffs have easily put forward evidence sufficient for a reasonable jury to make this finding.

## XI.    Plaintiffs Have Shown a *Monell* Violation Based on Ratification

Plaintiffs have shown that the then-Alameda Sheriff, the highest policy making official with respect to the incident, was briefed on the details of what was done and indicated that it was appropriate and within policy. Capt. Brodie confirmed that the police report and body cam videos were reviewed. These items show that Holland, Pope, Leeper, and DeSousa detained Plaintiffs (women) for crimes allegedly committed by Black men. Notably, virtually none of Holland's current defenses were included in those materials, meaning that Alameda County only knew that three Black women were detained for crimes that were allegedly committed by Black men. For example, Holland is now claiming that he believed other witnesses misgendered Ms. Loggervale but this excuse is not in his report. The County decided to approve the detention and searches based on the paltry information in Holland's police report and the body cam videos, which a reasonable jury could find was woefully inadequate to support the deputies' actions.

Plaintiff put on testimony from Alameda's PMK on the investigation, Capt. Brodie, the sole investigator, who reviewed the report and body cam videos and briefed the Sheriff directly. The Sheriff thereafter approved of the report, finding no violations of the Constitution, law, or

---

[2] Defendants claim there was a crime spree by Black men in silver four-door sedans but produced not a shred of evidence to support that claim.

11

department policy and deciding that no further action needs to be taken. Capt. Brodie testified that the Sheriff had the final authority on any action taken vis-à-vis the investigation. TT 417:6-8.

Plaintiffs also put on evidence that an Alameda representative and instructor regarding racial profiling (Sgt. Martinez), when looking at the details of the subject incident (Ex. 70), actually found it was *not* a valid detention. This casts doubt on whether the Sheriff really believed the deputies were acting legally and could suggest that he only endorsed the conduct to avoid having to admit liability on the part of his subordinates.

Further, while the inadequacy of investigation was not itself a basis for *Monell*, it evidenced the fact that Alameda was only interested in a finding that would support the officers and their behavior even when there was much additional evidence for them to review. The bias towards the officers and lack of objectivity suggests that the County had ulterior motives to approve the actions of the subordinates, likely including avoidance of civil liability or negative media attention. Regardless, there is sufficient evidence to support a verdict on *Monell* based on ratification, as the County of Alameda officially approved the deputies' actions and the bases for them.

### XII.   Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion under Rule 50 in its entirety.

Dated: February 20, 2023

LAW OFFICE OF JOSEPH S. MAY
and
GEARINGER LAW GROUP
and
ALTAIR LAW LLP


*/s/ Joseph S. May*
By: JOSEPH S. MAY
Attorneys for Plaintiffs

12