Joseph S. May   SBN 245924
LAW OFFICE OF JOSEPH S. MAY
1388 Sutter Street, Suite 810
San Francisco, CA 94109
Tel: (415) 781-3333
Fax: (415) 707-6600
joseph@josephmaylaw.com

Brian Gearinger   SBN 146125
GEARINGER LAW GROUP
740 Fourth Street
Santa Rosa, CA 95404
Tel: (415) 440-3102
brian@gearingerlaw.com

Craig M. Peters   SBN 184018
ALTAIR LAW
465 California Street, 5th Floor
San Francisco, CA 94104-3313
(415) 988-9828
cpeters@altairlaw.us

Attorneys for Plaintiffs
AASYLEI LOGGERVALE,
AASYLEI HARDGE-LOGGERVALE, and
AAOTTAE LOGGERVALE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| AASYLEI LOGGERVALE; AASYLEI HARDGE-LOGGERVALE; and AAOTTAE LOGGERVALE, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF ALAMEDA; STEVEN HOLLAND; MONICA POPE; and DOES 1 to 50, inclusive, <br><br> Defendants. | CASE NO. C20-4679-WHA <br><br> **PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON-STATUTORY COSTS** <br><br><br> Action Filed:  July 14, 2020 <br> Trial Date:     February 13, 2023 |

1

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................................ 2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 3

I.      OVERVIEW .......................................................................................................... 3

II.     FACTS RELEVANT TO THIS MOTION ......................................................... 4

III.    LEGAL ARGUMENT ......................................................................................... 7

        A.      Plaintiffs Are Entitled to Fees for all Time on This Case ..................... 8

        B.      The Hours Claimed by Plaintiffs' Counsel Are Reasonable ................. 10

        C.      Plaintiffs' Counsel's Requested Rates Are Reasonable ......................... 12

        D.      The Applicable Factors Justify a Significant Multiplier ....................... 14

                1.      The Case Was Difficult and Presented Many Novel and Complex
                        Questions ...................................................................................... 14

                2.      Plaintiffs' Counsel Exhibited a High Level of Skill ................... 15

                3.      Plaintiffs' Counsel Were Precluded from Other Opportunities ... 16

                4.      Counsel Risked a Tremendous Amount of Time and Money ...... 16

                5.      Plaintiffs Achieved a Phenomenal Result ................................... 17

        E.      Plaintiffs' Are Entitled to an Award of Non-Statutory Expenses ......... 18

        F.      Plaintiffs' Are Entitled to an Award of the "Fair Estimate" of Their Anticipated
                Additional Attorneys' Fees ..................................................................... 18

IV.     CONCLUSION ................................................................................................... 19

i

## **TABLE OF AUTHORITIES**

### **CASES**

*A.D. v. Cal. Hwy. Patrol*, 712 F.3d 446 (9th Cir. 2012) ................................................................ 6

*Andrews v. Equinox Holdings, Inc.*, 570 F. Supp. 3d 803, 808 (N.D. Cal. 2021) ........................ 17

*Blackwell v. Foley,* 724 F.Supp.2d 1068 (N.D. Cal. 2010) ........................................................... 11

*Blum v. Stenson,* 465 U.S. 886 (1984) ........................................................................................... 12

*Burgess v. Premier Corporation.,* 727 F.2d 826 (9th Cir. 1984) ................................................... 11

*Caldera v. Dept. of Corr. and Rehabilitation,* 48 Cal.App.5th (2020) ......................................... 16

*Chaudhry v. City of Los Angeles,* 751 F.3d 1096 (9th Cir. 2014) ...................................... 8, 11, 14

*Children's Hospital and Med. Ctr. v. Bonta,* 97 Cal.App.4th 740 (2002) ..................................... 12

*City of Riverside v. Rivera,* 477 U.S. 561 (1986) .................................................................. 7, 9, 12

*Copeland v. Marshall,* 641 F.2d 880 (D.C. Cir. 1980) .................................................................. 11

*Dang v. Cross,* 422 F.3d 800 (9th Cir. 2005) ................................................................................ 18

*Davis v. City and County of San Francisco,* 936 F.2d 1536 (9th Cir. 1992) ............................ 7, 13

*Downey Cares v. Downey Community Development Commission,* 196
    Cal. App. 3d 983 (1987) ............................................................................................................. 9

*Equilon Enters. v. Consumer Cause, Incorporated,* 29 Cal.4th 53 (2002) ................................... 12

*Fox v. Vice,* 563 U.S. 826 (2011) ................................................................................................... 10

*Frank Music Corporation v. Metro-Goldwyn Mayer, Incorporated* 886 F.2d
    1545 (9th Cir. 1989)..................................................................................................................10

*Gates v. Deukmejian,* 987 F.2d 1392 (9th Cir. 1992) ..................................................................... 8

*Graham v. DaimlerChrysler,* 34 Cal.4th 553 (2004) .................................................................... 13

*Guam Social of Obstetricians and Gynecologists v. Ada,* 100 F.3d 691 (9th Cir. 1996) ............. 12

*Hamlin v. Charter Township of Flint,* 165 F.3d 426 (6th Cir. 1999)............................................... 8

*Harris v. Marhoefer,* 24 F.3d 16 (9th Cir. 1994) ...................................................................... 2, 8

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) ............................................................................. 8, 14

*Horsford v. Board of Trustees,* 132 Cal.App.4th 359 (2005) ....................................................... 11

*Ingram v. Oroudjian*, 647 F.3d 925 (9th Cir. 2011) ................................................................ 6, 17

ii

*In re Kekauoha-Alisa*, 674 F.3d 1084 (9th Cir. 2012) ............................................................ 6

*Johnson v. University College,* 706 F.2d 1205 (11th Cir. 1983) ............................................ 10

*Ketchum v. Moses,* 24 Cal.4th 1122 (2001) .................................................................. 7, 14, 16

*Mangold v. Cal. Public Utils. Commission,* 67 F.3d 1470 (9th Cir. 1995)............................. 8

*McCown v. City of Fontana,* 565 F.3d 1097 (9th Cir. 2009) ................................................. 14

*Missouri v. Jenkins by Agyei,* 491 U.S. 274 (1989) ............................................................ 12

*Moore v. Jas. H. Matthews and Company,* 682 F.2d 830 (9th Cir. 1982) ................................ 9

*Moreno v. City of Sacramento,* 534 F.3d 1106 (9th Cir. 2008) ...................................... passim

*Nat'l Fed'n of the Blind v. Target Corp.,* Case No. 06-01802 MHP, 2009
   WL 2390261 (N.D. Cal.   Aug. 3, 2009)..................................................................... 14

*Norman v. Housing Authority,* 836 F.2d 1292 (11th Cir. 1988) .............................................. 9

*PLCM Group v. Drexler,* 22 Cal.4th 1084 (2000) .............................................................. 14

*Perfect 10, Incorporated v. Giganews, Incorporated,* 847 F.3d 657 (9th Cir. 2017) ................. 18

*Prison Legal News v. Schwarzenegger,* 608 F.3d 446 (9th Cir. 2010) ..................................... 13

*Robles v. EDD,* 38 Cal.App.5th (2019).............................................................................. 13

*Rodriguez v. County of Los Angeles,* 891 F.3d 776 (9th Cir. 2018) ....................................... 16

*Serrano v. Unruh,* 32 Cal.3d 621 (1982) ........................................................................... 11

*Sorenson v Mink,* 239 F.3d 1140 (9th Cir. 2001).................................................................. 8

*United Steelworkers of American v. Phelps Dodge Corporation,* 896
   F.2d 403 (9th Cir. 1990)............................................................................................ 13

*Vizcaino v. Microsoft Corporation.,* 290 F.3d 1043 (9th Cir. 2002) ..................................... 16

*Wooldridge v. Marlene Industries Corporation,* 898 F.2d 1169 (6th Cir. 1990) ......................... 9

## **STATUTES**

28 U.S.C. § 1920 ................................................................................................. 2, 8, 18

42 U.S.C. § 1981 ..................................................................................................... 18

42 U.S.C. § 1981(a) ................................................................................................. 18

42 U.S.C. § 1983 ............................................................................................... passim

42 U.S.C. § 1988 ............................................................................................... passim

Cal. Civ. Code § 52.1 ............................................................................................. 10

Cal. Civ. Code § 52.1(h) ................................................................................................ 7

F.R.C.P. § 54(d)(2)(B)(iii) .......................................................................................... 18

F.R.C.P. § 50 .................................................................................................... passim

F.R.C.P. § 59 .................................................................................................... passim

Gov. Code § 815.2 ....................................................................................................... 10

## **NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to the Court's Order at Docket No. 241, Plaintiffs hereby will and hereby do move for an award of reasonable attorneys' fees, costs, and prejudgment interest to be heard by a Special Master in accordance with the Order. Plaintiffs seek fees in the total amount of $3,662,610 (which includes a 2.0 multiplier on the lodestar) and non-statutory costs in the amount of $38,296.21.

This motion will be made on the grounds that 42 U.S.C. Section 1988 and California Civil Code Section 52.1(h) provide for the recovery of reasonable fees by the parties prevailing on Section 1983 and Bane Act claims. An upward multiplier of 2.0 is justified by the contingent nature of the fee, the difficulty of the case, the skill of counsel, the preclusion of other opportunities, and the success achieved. Further, reasonable out-of-pocket expenses that would normally be charged to a paying client are recoverable as part of a fee award, even if those costs are not taxable pursuant to 28 U.S.C. Section 1920. *Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994). Finally, Plaintiffs are entitled to an award of the "fair estimate" of their anticipated future work in opposing Defendants' separate motions under Federal Rule of Civil Procedure 50 and 59 and responding to Defendants' opposition to Plaintiffs' Motion for Attorneys' Fees and Costs.

The motion is based on this notice of motion, the following memorandum of points and authorities, the declarations filed herewith, and on such other evidence as may be presented at or before the hearing.

Dated: March 22, 2023

LAW OFFICE OF JOSEPH S. MAY
and
GEARINGER LAW GROUP
and
ALTAIR LAW LLP


*/s/ Joseph S. May*
By: JOSEPH S. MAY
Attorneys for Plaintiffs

2

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.     OVERVIEW**

3

Plaintiffs Aasylei Loggervale, Aasylei Hardge-Loggervale, and Aaottae Loggervale

4

brought civil rights claims against Alameda County Sheriff Deputies and the County based on

5

their detention/arrest on September 20, 2019. After extremely hard-fought litigation starting in

6

July 2020, Plaintiffs obtained a verdict for $2,750,000 each. As the prevailing parties, Plaintiffs

7

are entitled to an award of reasonable attorneys' fees and costs. *Moreno v. City of Sacramento*,

8

534 F.3d 1106, 1111 (9th Cir. 2008) ("Lawyers must eat, so they generally won't take cases

9

without a reasonable prospect of getting paid").

10

The breakdown of fees and costs Plaintiffs' counsel seeks is as follows:

11

**Attorneys' Fees Incurred through March 17, 2023:**

12

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Joseph May | 902.8 | $700 | $631,960.00 |
| Brian Gearinger | 693.8 | $850 | $589,730.00 |
| Craig Peters | 329.4 | $950 | $312,930.00 |
| Michael Keck (paralegal) | 118.8 | $325 | $38,610.00 |
| | 2044.8 | | **$1,573,230.00** |

18

19

**Non-Statutory Costs Incurred through March 17, 2023:**

20

| Firm | Costs |
|---|---|
| Law Office of Joseph S. May | $8,061.30 |
| Gearinger Law Group | $4,822.84 |
| Altair Law, LLP | $25,412.07 |
| | **TOTAL   $38,296.21** |

25

26

Plaintiffs also seek an additional award of $258,075 as a "fair estimate" of their

27

anticipated future work in opposing Defendants' separate motions under Federal Rule of Civil

28

3

1  Procedure 50 and 59 and responding to Defendants' opposition to Plaintiffs' Motion for

2  Attorneys' Fees and Costs.

3       As set forth more fully below, Plaintiffs seek a 2.0 multiplier on their lodestar rates

4  ($1,573,230 + $258,075 = $1,831,305), for a total requested fee of **$3,662,610**. Plaintiffs request

5  judgment be amended to reflect the addition of these awards of fees and costs, in addition to

6  costs taxed by the clerk, and any interest and penalties awarded. *See* Dkt. 253.

7  **II.**     **FACTS RELEVANT TO THIS MOTION**

8       On September 20, 2019, at approximately 6:45 a.m. Plaintiffs Aasylei Loggervale and her

9  two daughters, Aasylei Hardge-Loggervale (19 at the time) and Aaottae Loggervale (17 at the

10  time) were resting briefly in their car in the parking lot of a Starbucks in Castro Valley after

11  having driven all night from Las Vegas. The older daughter, Aasylei Hardge-Loggervale had a

12  college statistics test at 9:00 a.m. that morning. Deputies Steven Holland and Monica Pope

13  approached the vehicle to investigate whether the Loggervales had any connection to the

14  previous two days' break-ins in that lot. After learning that Ms. Loggervale was about to go to

15  Starbucks and was resting after a long drive, Holland demanded her ID. Ms. Loggervale refused

16  to provide it and, thereafter both daughters exited the vehicle. Holland then advised all three

17  women they were being detained. When they protested, demanded a supervisor, and demanded

18  to know why they were being detained, deputies placed all three women in handcuffs and in the

19  back of three separate police cars, where they were held for more than an hour before being

20  released without charges.

21       Plaintiffs retained Joseph May and Brian Gearinger in December 2019. May Decl., ¶ 13.

22  The fee agreement provides that attorneys will advance case costs, which Plaintiffs only must

23  reimburse if there is a recovery. May Decl., ¶ 18. The agreement also provides for payment of a

24  fee only if there is a recovery. *Ibid*. This is consistent with almost all the civil rights cases

25  counsel for Plaintiffs handle and are otherwise aware of. *Ibid*.

26       Counsel investigated and researched the matter extensively before filing suit. May Decl.,

27  ¶ 13. They also filed a Government Code claim against the officers, and opened an internal

28  affairs investigation with the Sheriff's Office. They also send out evidence preservation letters.

4

Loggervale v. County of Alameda et al., Case No. C20-4679-WHA
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON-STATUTORY COSTS

1    Plaintiffs filed suit July 14, 2020. In the first telephone call between the attorneys, Kevin Gilbert,

2    counsel for Defendants, was very dismissive of Plaintiffs' case, essentially telling counsel that

3    the Plaintiffs' claims have no merit and that they are making a big deal about nothing. May

4    Decl., ¶ 21. This was the tone that the defense maintained throughout the remainder of the case,

5    including through trial. *Ibid*.

6         The defense litigated in an extremely aggressive manner. May Decl., ¶ 21. There were

7    many motions that Plaintiffs' counsel had to file or oppose that were necessitated by the

8    defense's obstinate approach to the case. *Ibid*. There were also many occasions in which defense

9    counsel refused to stipulate to routine matters, forcing Plaintiffs to perform unnecessary work.

10   *Ibid*. Defendants' attorneys also made several arguments that lacked legal merit, requiring

11   substantial amounts of effort. *Ibid*. In addition, Kevin Gilbert, lead counsel for the defense, made

12   numerous misrepresentations of fact in written and oral communications to the Court as well as

13   to Plaintiffs' counsel. *Ibid*.

14        Mr. Gilbert also engaged in unprofessional and uncivil conduct, including making

15   speaking objections (sometimes bordering on witness coaching) and instructing witnesses not to

16   answer deposition questions, and was extremely discourteous and even hostile in many instances.

17   May Decl., ¶ 21. As an example of one such instance, Mr. Gilbert interrupted Mr. May during a

18   "meet and confer" telephone call, while he was explaining Plaintiffs' position, telling him "You

19   need to shut the fuck up" or words to that effect. May Decl., Ex. E. Further details regarding

20   some of the many examples of the aggressive and inappropriate way the defense litigated the

21   case are listed in Paragraph 21 of the Declaration of Joseph May.

22        The complexity of issues and aggressive approach by the defense resulted in the filing of

23   numerous motions in the case, which are set forth in Paragraph 22 of the May Declaration.

24   Plaintiffs were successful in most of the motions including almost all the discovery motions.

25   Plaintiffs were required to file to multiple motions compel production of documents and stop

26   deposition misconduct (including speaking objections and instructions not to answer questions).

27        While the parties did attend a settlement conference with Magistrate Judge Beeler, it

28   appeared that engaging in extensive litigation was required due to the extremely low settlement

1   offers Defendants made early in the case.[1] *See* May Decl., Exs. D, E. Even when Defendants

2   offered larger sums later in the case, the amounts offered never even covered the attorneys' fees

3   and costs that had been incurred to date. *See* May Decl., ¶¶ 25-26, Exs. F, G.

4           The matter proceeded to trial on February 13, 2023. The jury reached its verdict on

5   March 1, 2023, finding for Plaintiffs on their Section 1983 claims against the individual

6   defendants (and the absence of qualified immunity), their Section 1983 *Monell* claim against the

7   County based on ratification of the violations, and their Bane Act claims. Dkt. 237. The only

8   claim the jury did not accept was the one for punitive damages against Holland. The jury

9   awarded each Plaintiff $2.75 million in compensatory damages. *Ibid*.

10          The time spent by Plaintiffs' counsel was substantial, due to the nature of the case and the

11  aggressive way the defense litigated it. As of March 17, 2023, Mr. May spent 902.8 hours on the

12  case, Mr. Gearinger spent 693.8 hours, Mr. Peters spent 329.4 hours and Michael Keck, Mr.

13  Gearinger's paralegal, spent 118.8 hours. Counsel attempted to be efficient and avoid duplication

14  of effort; however, more than one attorney attended many of the depositions and hearings, and

15  all three attended trial. May Decl., ¶ 15. This is customary in complicated cases such as this one,

16  and allows the attorneys to ensure that they are covering all necessary issues and questions, it

17  allows one attorney to seek out documents or case law while the other is questioning a witness or

18  addressing the Court, and it allows the attorneys to take advantage of the adage "two heads are

19  better than one." *Ibid*. Counsel exercised billing judgment and only included time that was

20  reasonable and necessary to the handling of this case. May Decl., ¶ 14, Gearinger Decl., ¶¶ 10

21  and 11, Peters Decl., ¶ 5.

22          The time records of Plaintiffs' counsel are attached to their respective declarations.

23  Further, pursuant to the Court's instructions (Dkt. 241), a project-by-project breakdown of the

24  time entries is attached as Exhibit B to the May Declaration and incorporated herein by

26  [1] The Ninth Circuit permits consideration of settlement negotiations as evidence of the extent of
27  the plaintiffs' success. *See A.D. v. Cal. Hwy. Patrol*, 712 F.3d 446, 460-61 (9th Cir. 2013); *In re Kekauoha-Alisa*, 674 F.3d 1084, 1093-94 (9th Cir. 2012); *Ingram v. Oroudjian*, 647 F.3d 925,
28  927 (9th Cir. 2011).

1   reference. The hourly rates Plaintiffs seek are $700 for Mr. May, $850 for Mr. Gearinger, and

2   $950 for Mr. Peters, which are supported by the declarations of counsel in this matter as well as

3   the declarations of Richard Pearl, Matthew Davis, Sanjay Schmidt, John Houston Scott, and

4   Mark Mosley.

5          The total lodestar fee (hours multiplied by rates) is $1,573,230.00. Plaintiffs seek a 2.0

6   multiplier of the lodestar fee pursuant to the factors set forth in *Ketchum v. Moses*, 24 Cal.4th

7   1122, 1132 (2001), including the novelty and difficulty of the questions involved, the skill

8   displayed in presenting them, the extent to which the nature of the litigation precluded other

9   employment by the attorneys, and the contingent nature of the fee award.

10         Finally, Plaintiffs' counsel also seeks an award of the $38,296.21 in recoverable costs

11  they incurred, not including the statutory costs that are the subject of the Bill of Costs filed

12  March 13, 2023 (Dkt. 244).

13  **III.   LEGAL ARGUMENT**

14         As the prevailing parties, Plaintiffs are entitled to an award of fees and costs incurred by

15  counsel. *See* 42 U.S.C. § 1988; Cal. Civ. Code § 52.1(h). Plaintiffs also are entitled to all fees

16  incurred in preparing this motion. *Ketchum v. Moses*, 24 Cal.4th 1122, 1133–1134 (2001) ("an

17  attorney fee award should ordinarily include compensation for all the hours reasonably spent,

18  including those relating solely to the fee"); *Davis v. City and County of San Francisco* (9th Cir.

19  1992) 976 F.2d 1536, 1544, opinion vacated in part on denial of reh'g (9th Cir. 1993) 984 F.2d

20  345 ("time spent by counsel in establishing the right to a fee award is compensable").

21         The purpose of Section 1988 is to allow civil rights plaintiffs, who often cannot afford

22  attorneys in the private market, to pursue meritorious lawsuits, and to encourage skilled attorneys

23  to take such cases. *See generally City of Riverside v. Rivera*, 477 U.S. 561, 576-77 (1986).

24         Where a plaintiff has obtained excellent results, his attorney should
           recover a fully compensatory fee. Normally this will encompass all
25         hours reasonably expended on the litigation, and indeed in some cases
           of exceptional success an enhanced award may be justified. In these
26         circumstances the fee award should not be reduced simply because
           the plaintiff failed to prevail on every contention raised in the lawsuit.

27

28

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). "We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Id*. at 440.

Where the claims are all related and based on a common core of facts, prevailing plaintiffs are entitled to a fee for all time reasonably spent on the matter, even in the pursuit of claims that were ultimately unsuccessful. *Id*. at 435.

The starting point is the analysis of a fee calculation is the "lodestar," which is the hours counsel reasonably expended on the matter multiplied by a reasonable hourly rate. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). The court may then adjust the figure based on certain factors but when a plaintiff prevails on both federal and state law claims that allow recovery of fees, the district court should apply the more generous state law factors, including the contingent risk, that justify an upward multiplier of the lodestar. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478-79 (9th Cir. 1995).

Prevailing plaintiffs may also seek, as part of the reasonable fee, reasonably incurred out-of-pocket expenses even though not taxable under 28 U.S.C. Section 1920. *Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994).

### A.   Plaintiffs Are Entitled to Fees for all Time on This Case

A fully compensatory fee award does not require complete success on every claim or contention. Instead, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. [Citation]. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley, supra*, at 435; *see also Sorenson v Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) ("A plaintiff may obtain excellent results without receiving all the relief requested"); *Hamlin v Charter Township of Flint*, 165 F.3d 426, 438 (6th Cir. 1999) ("The law does not require plaintiffs to recover 100% of what they sue for in order to be considered successful at trial. Otherwise, virtually no plaintiff

1   would ever recover reasonable attorneys' fees."); *City of Riverside v. Rivera, supra*, 477 U.S.

2   561 (fully compensatory fee affirmed even though 17 of the 30 original defendants dismissed).

3         California follows a similar rule: "Where a lawsuit consists of related claims, and the

4   plaintiff has won substantial relief, a trial court has discretion to award all or substantially all of

5   the plaintiff's fees even if the court did not adopt each contention raised." *Downey Cares v*

6   *Downey Community Dev. Comm'n*, 196 Cal. App. 3d 983, 997 (1987). Under these standards,

7   "every item of service which, at the time rendered, would have been undertaken by a reasonable

8   and prudent lawyer to advance or protect his client's interest ..." is compensable. *Moore v. Jas.*

9   *H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). This includes all the time reasonably

10  billable to "a client of means who was seriously intent on vindicating similar rights." *Norman v.*

11  *Housing Auth.*, 836 F.2d 1292, 1301 (11th Cir. 1988). If the work is reasonably directed to

12  achieving the client's goals, it is compensable, even if not productive. "The question is not

13  whether a party prevailed on a particular motion or whether in hindsight the time expenditure

14  was strictly necessary to obtain the relief achieved. Rather, the standard is whether a reasonable

15  attorney would have believed the work to be reasonably expended in pursuit of success at the

16  point in time when the work was performed." *Wooldridge v. Marlene Industries Corp*., 898 F.2d

17  1169, 1177 (6th Cir. 1990). "The measure of reasonable hours is determined by the profession's

18  judgment of the time that may be conscionably billed and not the least time in which it might

19  theoretically have been done." *Norman*, 836 F.2d at 1306.

20        Here, all Plaintiffs' claims and theories were based on a common core of facts, namely,

21  their detention or arrest, in handcuffs, and in the back of police cars, on September 20, 2019.

22  Plaintiffs lost some of the claims and eventually chose to dismiss some of the parties, for

23  strategic reasons, including to attempt to simplify and streamline the case as much as possible for

24  the jury. The Court noted during trial that it believed Plaintiffs were pursuing too many claims,

25  which made the Court concerned that the verdict form would read like a "tax form." Trial

26  Transcript, 659:1-15, 930:17-20 ("But that verdict form, as I told you, thanks to the way you

27  have presented the case and all the issues that you want, it's going to read – I'm trying to

28  simplify it, but it's going to read like a tax form.").

1    Ultimately, Plaintiffs reduced the case to its essence at trial, which included Section 1983

2  claims against Holland for the detention/arrest, search, and use of force (4th Amendment), racial

3  profiling (14th Amendment), and Bane Act (Cal. Civ. Code § 52.1); against Pope for the search

4  only (4th Amendment), and against County of Alameda for *Monell* liability based on ratification

5  and vicarious liability on the Bane Act (Gov. Code § 815.2). The jury found for Plaintiffs on

6  every claim on the verdict form except the one for punitive damages against Holland.

7  While the verdict form did not allow the jury to specify which Constitutional claims they believe

8  Holland violated, the size of the verdict strongly suggests the jury believed Holland violated all

9  of the rights at issue. Based on the foregoing, the Court should award Plaintiffs' fees for all the

10  work spent litigating this matter, since the Plaintiffs obtained the relief they requested; indeed,

11  the jury awarded slightly more than Plaintiffs' counsel asked for in closing argument.

12    Because Plaintiffs achieved an excellent result on all claims arising out of the same

13  "common core of facts," Plaintiffs did not state, in the project-breakdown requested by the

14  Court, "state, in percentage terms, the proportion of the project directed at issues for which fees

15  are awardable," Dkt. 241, ¶ 2, since Plaintiffs seek 100% of the fees incurred on all projects.

16    **B.      The Hours Claimed by Plaintiffs' Counsel Are Reasonable**

17    Joseph May and Brian Gearinger, who handled the case since the beginning, have

18  carefully and (mostly) contemporaneously tracked the time spent on the case. Mr. Peters has

19  carefully estimated the amount of time he has spent on the case, and to do so has relied on

20  records, including e-mails, calendars, and the time records of his co-counsel. *See Frank Music

21  Corp. v. Metro-Goldwyn Mayer, Inc*. 886 F.2d 1545, 1557 (9th Cir. 1989), citing *Johnson v.

22  University College*, 706 F.2d 1205, 1207 (11th Cir. 1983) ("The lack of contemporaneous

23  records does not justify an automatic reduction in the hours claimed, but such hours should be

24  credited only if reasonable under the circumstances and supported by other evidence such as

25  testimony or secondary documentation."); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The

26  essential goal in shifting fees is to do rough justice, not to achieve auditing perfection."). Further,

27  as Mr. Peters explains in his declaration, his time records reflect an underestimation of total time

28  spent on the matter, which included extensive review of the entire file, extensive preparations for

trial, and many long trial days, all of which ultimately resulted in a tremendous verdict for the Plaintiffs. Peters Decl., ¶ 5.

In determining reasonable hours, "the verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous." *Horsford v. Bd. of Trustees*, 132 Cal.App.4th 359, 396 (2005). "An attorney's sworn testimony that, in fact, it took the time claimed ' . . . is evidence of considerable weight on the issue of the time required . . . . [Citation omitted.]." *Blackwell v. Foley*, 724 F.Supp.2d 1068, 1081 (N.D. Cal. 2010).[2]

The litigation of this case was extremely hard-fought, complicated, and drawn-out, largely due to the tactics of the defense. "[A party] 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'" *Serrano v. Unruh*, 32 Cal. 3d 621, 638 (1982) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (*en banc*); *Burgess v. Premier Corp.*, 727 F.2d 826, 841 (9th Cir. 1984) ("[A]lthough [defendants] had the right to play hardball in contesting [plaintiffs'] claims, it is also appropriate that [defendants] bear the cost of their obstructionist strategy.").

Counsel has submitted evidence supporting the hours spent as reasonable and necessary to the litigation. Further, the nature of the litigation (and particularly defense counsel's deceptive tactics) justified staffing many depositions and hearings with multiple attorneys. *See* May Decl., ¶ 15; Gearinger Decl., ¶ 12; Davis Decl., ¶ 6. The Ninth Circuit has held that duplicative work is not necessarily inherently inappropriate. *Chaudhry, supra*, 751 F.3d at 1111-12. Indeed, some duplication in cases that have prolonged litigation necessarily follows.

> When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research: Cases are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed with the research previously performed. *All this is duplication, of course, but it's necessary duplication; it is inherent in the process of litigating over time.*

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); italics added.

---

[2] Mr. Gearinger was co-counsel for Plaintiff Charles Blackwell in this matter before The Honorable Marilyn Hall Patel.

1

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. *By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.*

2

3

4

5

6  *Id.*; italics added. Plaintiffs' counsel were anything but "a slacker."

7    Given their burden of proof and the risks involved, Plaintiffs' counsel had every reason to

8  be careful and thorough. *See Guam Soc. of Obstetricians and Gynecologists v. Ada*, 100 F.3d

9  691, 700 (9th Cir. 1996). The complexity of this case, and Defendants' many factual and legal

10  defenses, required Plaintiffs' careful, thorough discovery and litigation to achieve the superlative

11  results obtained here.

12    Further, Defendants could have avoided liability for much of the Plaintiffs' fees had they

13  litigated in a less aggressive manner or simply made a reasonable settlement offer early. *Equilon*

14  *Enters. v Consumer Cause, Inc.*, 29 Cal. 4th 53, 62-63 (2002) ("Fee-shifting simply requires the

15  party that creates the costs to bear them."); *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11

16  (1986) ("[P]etitioners could have avoided liability for the bulk of the attorney's fees for which

17  they now find themselves liable by making a reasonable settlement offer in a timely manner.").

18    **C.    Plaintiffs' Counsel's Requested Rates Are Reasonable**

19    Under California law, Plaintiffs' attorneys are entitled to their requested rates if those

20  rates are "within the range of reasonable rates charged by and judicially awarded comparable

21  attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740,

22  783 (2002). Federal law is similar: successful plaintiffs' attorneys are entitled to the rates they

23  request if those rates are "in line with those prevailing in the community for similar services by

24  lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S.

25  886. 896 n.11 (1984).

26    Courts will typically use the rates that apply when the fees are awarded, rather than when

27  the services are rendered to account for the delay in payment. *See Missouri v. Jenkins by Agyei*,

28  491 U.S. 274, 283-84 (1989) ("[A]n appropriate adjustment for delay in payment—whether by

12

1   the application of current rather than historic hourly rates or otherwise—is within the

2   contemplation of [Section 1988].”); *Graham v. DaimlerChrysler*, 34 Cal.4th 553, 584 (2004)

3   (stating that the trial court need not award interest on the fees “if the lodestar rate is based on the

4   present hourly rate rather than the lesser rate applicable when the services were rendered”);

5   *Robles v. EDD*, 38 Cal.App.5th 191, 205 (2019).

6          In addition to their own declarations, Plaintiffs submit extensive additional evidence

7   supporting their requested rates. *See generally* Declarations of Richard Pearl, Matthew Davis,

8   John Houston Scott, Mark Mosley, and Sanjay Schmidt. “Affidavits of the plaintiffs’ attorney

9   and other attorneys regarding prevailing fees in the community, and rate determinations in other

10  cases, particularly those setting a rate for the plaintiffs’ attorney, are satisfactory evidence of the

11  prevailing market rate.” *United Steelworkers of Am. V. Phelps Dodge Corp*., 896 F.2d 403, 407

12  (9th Cir. 1990). Mr. Pearl, a preeminent expert in assessing legal fees, has set forth in great detail

13  his opinions regarding Plaintiffs’ counsel’s requested rates, which Plaintiffs incorporate herein

14  by reference.

15         Plaintiffs request that the Court award fees at Mr. Peters’ requested hourly rate of $950,

16  which is at the lower end of a reasonable fee with a trial attorney with the track record of success

17  that Mr. Peters has. Similarly, Mr. Gearinger’s requested rate of $850 per hour, and Mr. May’s

18  requested rate of $700 per hour, are within the range of reasonable rates charged by attorneys of

19  comparable skill and experience handling similarly complex federal litigation. *See Prison Legal*

20  *News v. Schwarzenegger*, 608 F.3d 446, 454-55 (9th Cir. 2010) (“Although the state officials urge

21  us to look only to the rates charged by other attorneys involved in prison litigation, the proper

22  scope of comparison is not so limited, but rather extends to all attorneys in the relevant

23  community engaged in ‘equally complex Federal litigation,’ no matter the subject matter.”);

24  *Davis v. City and County of San Francisco*, 936 F.2d 1536, 1547 (9th Cir. 1992), affirming *U.S.*

25  *v. City and County of San Francisco*, 748 F. Supp. 1416, 1431 (N.D. Cal. 1990) (plaintiff’s

26  attorneys entitled to rates charged by “corporate attorneys of equal caliber”). Likewise, Mr.

27  Keck’s unique background as a former attorney supports his requested rate of $325 per hour for

28  his work as Mr. Gearinger’s legal assistant. Gearinger Decl., ¶ 15.

13

Loggervale v. County of Alameda et al., Case No. C20-4679-WHA
PLAINTIFFS’ MOTION FOR ATTORNEYS’ FEES AND NON-STATUTORY COSTS

**D.      The Applicable Factors Justify a Significant Multiplier**

Plaintiffs also requests that this Court apply a 2.0 lodestar enhancement for their work on the matter. "[W]hen a plaintiff succeeds on both federal and state claims that support a fee award, the state-law multiplier is available." *Chaudhry, supra*, 751 F.4d at 1112; *see also Nat'l Fed'n of the Blind v. Target Corp*., Case No. 06-01802 MHP, 2009 WL 2390261, at *6 (N.D. Cal. Aug. 3, 2009) ("When a party prevails under both federal and state law, the district court may apply the more generous provisions of state law in calculating a fee award, such as including a multiplier for contingent fee risk."). Among the factors that courts consider in determining whether and to what degree to award a multiplier to the lodestar fee are "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Ketchum, supra*, 24 Cal.4th at 1132.

Another factor is the degree of success obtained. *Chaudhry v. City of Los Angeles, supra*, 751 F.3d at 1110 ("The court may then adjust the lodestar amount based on several factors, including the degree of success achieved by the prevailing party. [Citation.]"); *Hensley v. Eckerhart*, *supra*, 461 U.S. at 440 ("We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988."); *PLCM Group v. Drexler*, 22 Cal.4th 1084, 1096 (2000) ("The trial court makes its determination after consideration of a number of factors, including . . . the amount involved . . . [and] the success or failure . . . ."); *McCown v. City of Fontana*, 565 F.3d 1097, 1101-02 (9th Cir. 2009) ("The reasonableness of the fee is determined primarily by reference to the level of success achieved by the plaintiff.").

### 1.      The Case Was Difficult and Presented Many Novel and Complex Questions

The Defendants have raised a wealth of novel and unusual theories to support the detention and search of Plaintiffs. For example, even though there was never any mention to Plaintiffs of the fact that they were parked in an accessible space or the disabled parking placard, Defendants claimed that the California Vehicle Code permitted them to demand Ms.

Loggervale's identification without reasonable suspicion. The Court initially accepted this proposition until finally, after myriad briefs on the topic, the Court issued an instruction to the jury at trial that confirmed that reasonable suspicion is required to detain people even under the Vehicle Code. *Compare* Trial Transcript, 236:6-14 *with* Final Charge to the Jury (Dkt. 231) 8:26-9:2.

The Court also requested numerous rounds of briefing from counsel during the trial. *See* Dkt. Nos. 184, 201, 208, and commented several times to counsel how hard the Court and its staff had to work researching the various issues in this case and the preparation of the jury instructions and verdict form. *See, e.g.,* Trial Transcript, 237:12-13 ("My law clerk hasn't slept in about 48 hours on account of your case"), 463:9-10 ("I have been working on the jury instructions. These are complicated . …."), 931:1-3 ("And I've done 23 years' worth of verdict forms, and I'm pretty good at coming up with a simplified way for the jury. But at every turn, I see there's a new wrinkle.").

A review of the filings in the case, the numerous motions on various constitutional and procedural issues, and the comments by the Court demonstrate just how difficult and complex this case has been. Plaintiffs have also submitted declarations from respected attorneys who practice before this Court who agree that Section 1983 cases against law enforcement are some of the more difficult and complicated cases to handle for plaintiff attorneys. *See* Davis Decl., ¶ 7; Schmidt Decl., ¶ 6, Scott Decl., ¶ 14, and Pearl Decl., ¶ 12.

This case was also made difficult by defense counsel's aggressive, hostile, and unprofessional conduct throughout the case. *See* May Decl., ¶ 21; Gearinger Decl., ¶¶ 6- 8, and 12.

The difficulty of the case, including the aggressive and offensive conduct by defense counsel, and the novelty and complexity of the issues presented weigh heavily in favor of a substantial increase in the lodestar figure.

### 2.   *Plaintiffs' Counsel Exhibited a High Level of Skill*

Plaintiffs' counsel had to navigate the many defenses, immunities, and other challenges in this matter to not only get the case to trial but also to secure an excellent result for the clients.

Counsel points to the numerous motions (and many successes) filed and opposed in this matter, as set forth more fully in Paragraph 22 of the Declaration of Joseph May. Plaintiffs also submit declarations from colleagues who attest to the skill of the attorneys in this case. This factor also weighs in favor of an enhancement to the lodestar.

### 3.     Plaintiffs' Counsel Were Precluded from Other Opportunities

Mr. Peters turned away a case due to his involvement in this matter. *See* Peters Decl., ¶ 10. While Mr. May did have to turn away another paying client, this case has kept him from his planned closing of his law practice. May Decl., ¶ 20. Mr. Gearinger declined numerous potential cases during the three-plus years that his office has been representing Plaintiffs. Gearinger Decl., ¶ 18. The inability to pursue these other opportunities, whether paid clients or non-pecuniary (i.e., a healthier work-life balance), weigh in favor of a lodestar enhancement.

### 4.     Counsel Risked a Tremendous Amount of Time and Money

"'[T]he unadorned lodestar reflects the general local hourly rate for a *fee-bearing case*; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider….'" *Ketchum v. Moses*, 24 Cal.4th 1122, 1138 (2001) (italics in orig.); *see also Caldera v. Dept. of Corr. & Rehab.*, 48 Cal.App.5th 601, 607 (2020) ("In most contingency cases, courts may then increase the lodestar amount by applying a multiplier."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (Exceptional results in the face of vigorous opposition and in the absence of supporting precedent militate in favor of higher multiplier values.). "'A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services'" *Ketchum*, 24 Cal.4th at 1132, citing Posner, Economic Analysis of Law (4th ed.1992) pp. 534, 567.

Here, Plaintiffs' counsel will only get paid if there is a recovery in the case. Meanwhile, the legal team has expended more than 2,000 total hours, valued at over $1.5 million dollars, and $115,643.31 of their own money in order to prosecute this matter. *See* May Decl., Exs. A, B, H; Gearinger Decl., Exs. A, B; Peters Decl., Exs. A, B. The major risk undertaken by Plaintiffs' counsel justifies a significant multiplier. *See Rodriguez v. County of Los Angeles*, 891 F.3d 776,

800 (9th Cir. 2018) (affirming district court's application of 2.0 multiplier where, *inter alia*, "the substantial financial risk that appellees' counsel assumed in investing $3.4 million of attorney time in a contingency case"). The district court in *Andrews v. Equinox Holdings, Inc.* applied a 1.3 multiplier based on contingent risk even where that risk was greatly minimized due to an EEOC investigation that resulted in a finding that "reasonable cause that Defendant discriminated against Plaintiff based on his age." 570 F. Supp. 3d 803, 808 (N.D. Cal. 2021).

By contrast, there were no such findings in this case. Indeed, to the contrary, the Alameda County Sheriff concluded, based on the Internal Affairs Captain's review of the facts of this matter, that "the deputies' actions were 100 percent lawful" and "[e]verything they did was completely in compliance with state and federal law as well as the County of Alameda's policies." *See* Defense Closing Argument, Trial Transcript, 1257:22-25. This finding, which was made known to Plaintiffs from the beginning of the litigation, made the risk of non-payment much greater than it was in *Andrews, supra*.

### 5. Plaintiffs Achieved a Phenomenal Result

The jury awarded even more than the $2.5 million per Plaintiff that counsel requested. This was a tremendous result for the Plaintiffs, and it was extremely difficult to achieve considering the challenge of getting jurors to understand how severely Plaintiffs were damaged by the Defendants' actions. This required Plaintiffs' counsel to dismantle each of the myriad defenses, excuses, justifications, and even red herrings the defense raised. Plaintiffs' counsel also had to show the jury how the County ratified the conduct through the internal affairs investigation and approval by Sheriff Ahern, and how Holland's actions also constituted a violation of California's Bane Act, which supports a likely award of treble damages in addition to the compensatory damages awarded.

The level of success is also evidenced by Defendants' settlement offers in the case. *See Ingram v. Oroudjian, supra*, 647 F.3d at 927 (finding negotiations relevant to district court's evaluation of level of success as factor in award of fees). Defendants' first offer (after conveying to Plaintiffs' counsel that the case was meritless) was less than one one-thousandth the amount the jury ultimately awarded. Even the Defendants' top offer of just under $750,000, made

17

approximately two weeks before trial, was less than one-tenth of the jury's verdict, and did not include a separate provision for recovery of attorneys' fees and costs.

### E.   Plaintiffs' Are Entitled to an Award of Non-Statutory Expenses

Plaintiffs submitted a Bill of Costs to recover some of the expenses covered by 28 U.S.C. Section 1920. However, Plaintiffs are also entitled to an award of out-of-pocket expenses that would normally be charged to a fee-paying client,[3] so long as reasonable, as part of the fee award under 42 U.S.C. Section 1988. *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005). As set forth in their declarations, Plaintiffs' counsel incurred a total of $38,296.21, which were all reasonable and necessary to the handling of this matter to successful verdict.

### F.   Plaintiffs' Are Entitled to an Award of the "Fair Estimate" of Their Anticipated Additional Attorneys' Fees

Plaintiffs understand that they are required to "state the amount [of attorneys' fees] sought or provide a *fair estimate* of it…." Fed. Rules Civ. Proc., rule 54(d)(2)(B)(iii); italics added. *See also Perfect 10, Inc. v. Giganews, Inc.* (9th Cir. 2017) 847 F.3d 657, 676 ("at minimum [Rule 54] requires a party to 'provide a fair estimate' of the amount of fees sought"). Plaintiffs, however, request the Court permit them to supplement Plaintiffs' Motion for Attorneys' Fees and Costs at the conclusion of post-trial motions. This will allow Plaintiffs' counsel to submit accurate and exact billing records, rather than estimates. Gearinger Decl., ¶ 29.

Alternatively, Plaintiffs provide the following fair estimate of their anticipated additional attorneys' fees. First, Plaintiffs anticipate that Defendants will file separate motions under Federal Rule of Civil Procedure 50 and 59. Second, Plaintiffs anticipate that Defendants vigorously will oppose Plaintiffs' Motion for Attorneys' Fees and Costs. Each of these three discrete projects will require extensive research, briefing, and oral argument. Plaintiffs' best measure of anticipated future work on the above projects comes from their work opposing Defendants' Motion for Summary Judgment in which counsel expended 111 hours.  Exhibit B to Declaration of Joseph May. Mr. May and Mr. Gearinger divided the briefing throughout most of

---

[3] Expert witness fees are not recoverable, except for actions under 42 U.S.C. §§ 1981 or 1981a.

18

1    this case, and they anticipate they will do so opposing Defendants' post-trial motions. Therefore,

2    Plaintiffs will seek a blended rate of $775 per hour, which is the mid-point between the

3    respective requested hourly rates of Messrs. May and Gearinger. As such, Plaintiffs estimate that

4    they will incur an additional $258,075 in attorneys' fees on the remaining post-trial matters.

5    Gearinger Decl., ¶ 28.

6                                 **IV.    CONCLUSION**

7            For the foregoing reasons, Plaintiffs respectfully request (1) an award of reasonable

8    attorneys' fees in the amount of $3,146,460.00 (which includes a 2.0 multiplier applied to the

9    lodestar fee), (2) an award of non-statutory costs in the amount of $38,296.21, and (3) an award

10   of $258,075.00, which represents the "fair estimate" of Plaintiff's anticipated future work in

11   opposing Defendants' separate motions under Federal Rule of Civil Procedure 50 and 59 and

12   responding to Defendants' opposition to Plaintiffs' Motion for Attorneys' Fees and Costs.

13

14   Dated: March 22, 2023                          LAW OFFICE OF JOSEPH S. MAY
                                                     and
15                                                   GEARINGER LAW GROUP
                                                     and
16                                                   ALTAIR LAW LLP

17

18                                                   */s/ Joseph S. May*
                                                     By: JOSEPH S. MAY
19                                                   Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

19