Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Christopher R. Creech, Esq. (SBN: 293037)
ccreech@ohhlegal.com
**ORBACH HUFF + HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, California 94588
Telephone:    (510) 999-7908
Facsimile:    (510) 999-7918

Attorneys for Defendants
COUNTY OF ALAMEDA, STEVEN HOLLAND and MONICA POPE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AASYLEI LOGGERVALE; AASYLEI HARDGE-LOGGERVALE; and AAOTTAE LOGGERVALE,<br><br>                        Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA; STEVEN HOLLAND; and MONICA POPE,<br><br>                        Defendants. | Case No. 20-cv-04679-WHA<br><br>**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>DATE:        May 11, 2023<br>TIME:        8:00 a.m.<br>DEPT:        Courtroom 12, 19th Floor<br>JUDGE:      Hon. William Alsup |

ORBACH HUFF + HENDERSON LLP

# TABLE OF CONTENTS

**Page(s)**

I.  NOTICE OF MOTION ................................................................................. 1

II.  INTRODUCTION ....................................................................................... 1

III.  ARGUMENT .............................................................................................. 3

    A.  There Was No Unlawful Seizure ..................................................... 3

        1.  Defendants Were Lawfully Allowed to Detain Plaintiffs ............................ 3

        2.  Defendants Had Probable Cause Due to Plaintiffs' Obstruction ................. 6

    B.  The Focused Search for ID was Lawful .......................................... 8

    C.  There Was No Excessive Force ...................................................... 11

    D.  There Was No Evidence of Discriminatory Animus ......................... 12

    E.  Defendants Holland and Pope Are Entitled to Qualified Immunity ..................... 14

        1.  Holland Is Entitled to Qualified Immunity on Mother's Search and Seizure Claims .......................................................................... 16

        2.  Qualified Immunity Should be Granted on Daughters' Search and Seizure   Claims ...................................................................... 16

        3.  Holland is Entitled to Qualified Immunity on Plaintiffs' Fourteenth Amendment Claim .......................................................... 18

        4.  Holland is Entitled to Qualified Immunity on Mother's Excessive Force Claim ....................................................................... 18

    F.  There Was No Ratification to Support a *Monell* Violation ..................... 18

    G.  There Was No Evidence of Specific Intent to Support a Violation of the Bane Act ...................................................................... 20

IV.       CONCLUSION ......................................................................... 23

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Abdel-Shafy v. City of San Jose,*
  No. 17-CV-07323-LHK, 2019 WL 570759 (N.D. Cal. Feb. 12, 2019).....................................3

*Act Up!/Portland v. Bagley,*
  988 F.2d 868 (9th Cir. 1993) ...........................................................14

*Arpin v. Santa Clara Valley Transp. Agency,*
  261 F.3d 912 (9th Cir. 2001) ...........................................................11

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011)....................................................... 14, 16, 17, 18

*Barren v. Harrington,*
  152 F.3d 1193 (9th Cir. 1998) ...........................................................12

*Beier v. City of Lewiston,*
  354 F.3d 1058 (9th Cir. 2004) ...........................................................11

*Benson v. City of San Jose,*
  583 F. App'x 604 (9th Cir. 2014) ...........................................................12

*Bingham v. City of Manhattan Beach,*
  341 F.3d 939 (9th Cir. 2003) ...........................................................12

*Birmingham Fire Ins. Co. of Penn. v. Politis & Perlman Int'l Realty,*
  52 Fed. Appx. 485 (11th Cir. 2002)...........................................................11

*Castro v. Cty. of Los Angeles,*
  833 F.3d 1060 (9th Cir. 2016) ...........................................................19

*Christie v. Iopa,*
  176 F.3d 1231 (9th Cir. 1999) ...........................................................19

*City & County of San Francisco v. Sheehan,*
  135 S. Ct. 1765 (2015)...........................................................2

*City of Oklahoma City v. Tuttle,*
  471 U.S. 808 (1985)...........................................................20

*City of Tahlequah, Oklahoma v. Bond,*
  142 S. Ct. 9 (2021) (per curiam) ...........................................................15

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Clouthier v. Cty. of Contra Costa*,
　591 F.3d 1232 (9th Cir. 2010) ........................................... 19

*Davis v. Scherer*,
　468 U.S. 183 (1984) ........................................... 14

*District of Columbia v. Wesby*,
　138 S. Ct. 577, 586 (2018) ........................................... 7, 14

*E.E.O.C. v. Go Daddy Software, Inc.*,
　581 F.3d 951 (9th Cir. 2009) ........................................... 2

*Entler v. Gregoire*,
　872 F.3d 1031 (9th Cir. 2017) ........................................... 14

*Foley v. Graham*,
　No. 2:16-cv-01871-JAD-VCF, 2020 WL 4736457 (D. Nev. Aug. 14, 2020) ................. 12, 22

*Forsberg v. Pac. Nw. Bell Tel. Co.*,
　840 F.2d 1409 (9th Cir. 1988) ........................................... 13

*F.T.C. v. Publ'g Clearing House, Inc.*,
　104 F.3d 1168 (9th Cir. 1997) ........................................... 13

*Gallegos v. City of Los Angeles*,
　308 F.3d 987 (9th Cir. 2002) ........................................... 4, 5

*German v. Roberts*,
　No. CV 15-5237 ........................................... 19

*Gillette v. Delmore*,
　979 F.2d 1342 (9th Cir. 1992) ........................................... 19

*Groh v. Ramirez*,
　540 U.S. 551 (2004) ........................................... 17

*Hardwick v. County of Orange*,
　844 F.3d 1112 (9th Cir. 2017) ........................................... 15

*Hiibel v. Sixth Judicial Dist. Court*,
　542 U.S. 177 (2004) ........................................... 3, 5, 9

*Hope v. Pelzer*,
　536 U.S. 730, 745 (2002) ........................................... 15

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Hupp v. City of Walnut Creek*,
   389 F.Supp.2d 1229 (N.D. Cal. 2005) ................................................................. 11

*Illinois v. Gates*,
   462 U.S. 213 (1983) .................................................................................................. 7

*Illinois v. Wardlow*
   528 U.S. 119 (2000) .......................................................................................... 4, 5, 6

*Kaley v. United States*,
   134 S. Ct. 1090 (2014) ............................................................................................. 7

*Kansas v. Glover*,
   140 S. Ct. 1183 (2020) ........................................................................................... 10

*Kanae v. Hodson*,
   294 F. Supp. 2d 1179 (D. Haw. 2003) ................................................................ 19

*Knowles v. Iowa*,
   525 U.S. 113 (1998) ............................................................................................... 16

*Koenig v. City of Bainbridge Island*,
   No. C10-5700 RJB, 2011 WL 3759779 (W.D. Wash. Aug. 25, 2011) ................ 19

*Kuhlken v. Cty. of San Diego*,
   764 F. App'x 612 (9th Cir. 2019) ........................................................................... 3

*LaLonde v. County of Riverside*,
   204 F.3d 947 (9th Cir. 2000) ................................................................................ 11

*Larez v. Holcomb*,
   16 F.3d 1513 (9th Cir.1994) ............................................................................ 10, 20

*Lipton v. United States*,
   348 F.2d 591 (9th Cir. 1965) ............................................................................ 3, 16

*Lull v. Cty. of Sacramento*,
   No. 217CV1211TLNEFBPS, 2018 WL 1108747 (E.D. Cal. Mar. 1, 2018) ............ 3

*MacLellan v. County of Alameda*,
   No. C-12-5795 MMC, 2014 WL 793444 (N.D. Cal. Feb. 26, 2014) ..................... 11

*Malley v. Briggs*,
   475 U.S. 335 (1986) ............................................................................................... 17

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Maryland v. Pringle,*
  540 U.S. 366 (2003) ............................................................................................... 7

*Maryland v. Wilson,*
  519 U.S. 408 (1997) ............................................................................................... 7

*McArthur v. City & Cty. of San Francisco,*
  190 F.Supp.3d 895 (N.D. Cal. 2016) ................................................................... 16

*Messerschmidt v. Millender,*
  565 U.S. 535 (2012) ......................................................................................... 9, 17

*Michigan v. Summers,*
  452 U.S. 692 (1981) ............................................................................................... 5

*Moonin v. Tice,*
  868 F.3d 853 (9th Cir. 2017) .............................................................................. 14

*Mosley v. United States,*
  425 F. Supp. 50 (N.D. Cal. 1977) ....................................................................... 13

*Nakamura v. City of Hermosa Beach,*
  2009 WL 1445400 (C.D. Cal. May 20, 2009) ............................................. 3, 16-17

*Nelson v. Pima Cmty. Coll.,*
  83 F.3d 1075 (9th Cir. 1996) ............................................................................... 13

*Ornelas v. United States,*
  517 U.S. 690 (1996) ............................................................................................... 7

*Pavao v. Pagay,*
  307 F.3d 915 (9th Cir. 2002) .............................................................................. 10

*Pearson v. Callahan,*
  555 U.S. 223 (2009) ............................................................................................. 17

*Pembaur v. City of Cincinnati,*
  475 U.S. 469 (1986) ............................................................................................. 20

*Pennsylvania v. Mimms,*
  434 U.S. 106 (1977) ............................................................................................... 6

*Peterson v. City of Forth Worth Texas,*
  588 F.3d 838 (5th Cir.2009) ................................................................................ 20

ORBACH HUFF + HENDERSON LLP

Defs' Renewed Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

# TABLE OF AUTHORITIES

**Page(s)**

*Pinder v. Emp't Dev. Dep't,*
227 F.Supp.3d 1123 (E.D. Cal. 2017)......................................................... 12

*Quezada v. Hubbard,*
No. C 01-02303 CRB, 2002 WL 1598873 (N.D. Cal. July 18, 2002)................. 16

*Reese v. County of Sacramento,*
888 F.3d 1030 (9th Cir. 2018) ................................................................ 22

*Rivas-Villegas v. Cortesluna,*
142 S. Ct. 4 (2021).......................................................................... 15, 16

*Rodriguez v. U.S.,*
575 U.S. 348 (2015)........................................................................... 4, 5

*Santiago v. Fenton,*
891 F.2d 373 (1st Cir.1989) ..................................................................... 20

*Screws v. United States,*
325 U.S. 91 (1945) .............................................................................. 21

*Shafer v. County of Santa Barbara,*
868 F.3d 1110 (9th Cir. 2017) ............................................................... 14

*Shaw v. City of Redondo Beach,*
No. CV 05-0481 SVW, 2005 WL 6117549 (C.D. Cal. Aug. 23, 2005)................ 11

*Sheehan v. City & Cty. of San Francisco,*
743 F.3d 1211 (9th Cir. 2014) ............................................................... 19

*Snowden v. Hughes,*
321 U.S. 1 (1944)............................................................................... 12

*Terry v. Ohio,*
392 U.S. 1 (1968)......................................................................... 4, 5, 6, 7, 9

*United States v. Alvarez,*
899 F.2d 833 (9th Cir. 1990) .................................................................. 9

*United States v. Arvizu,*
534 U.S. 266 (2002)......................................................................... 4, 5, 6

*United States v. Bowen,*
500 F.2d 960 (9th Cir. 1974) (per curiam)............................................. 3, 16

Defs' Renewed Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Carrizoza-Gaxiola,*
    523 F.2d 239 (9th Cir. 1975) ........................................................................ 1, 3, 16

*United States v. Christian,*
    356 F.3d 1103 (9th Cir. 2004) ........................................................................ 5, 9, 10

*United States v. Lopez,*
    482 F.3d 1067 (9th Cir. 2007) ........................................................................ 5

*United States v. Miguel,*
    368 F.3d 1150 (2004) ........................................................................................ 4

*United States v. Rodgers,*
    656 F.3d 1023 (9th Cir. 2011) ........................................................................ 10, 17

*United States v. Ross,*
    456 U.S. 798 (1982) ........................................................................................ 9

*United States v. Valdes-Vega,*
    738 F.3d 1074 (9th Cir. 2013) (en banc) ........................................................ 4

*United States v. Williams,*
    419 F.3d 1029 (9th Cir. 2005) ........................................................................ 1-2, 6, 7

*Vanegas v. City of Pasadena,*
    No. 220CV07845SVWAGR, 2021 WL 1917126 (C.D. Cal. Apr. 13, 2021) ...................... 3-4

*Vasquez v. Cty. of Los Angeles,*
    349 F.3d 634 (9th Cir. 2003) ........................................................................ 12

*Villiarimo v. Aloha Island Air, Inc.,*
    281 F.3d 1054 (9th Cir. 2002) ........................................................................ 13

*Weaving v. City of Hillsboro,*
    763 F.3d 1106 (9th Cir. 2014) ........................................................................ 2

*Weisbuch v. County of Los Angeles,*
    119 F.3d 778 (9th Cir.1997) ........................................................................ 19

*Wyoming v. Houghton,*
    526 U.S. 295 (1999) ........................................................................................ 2, 9

*Young v. Cty. of L.A.,*
    655 F.3d 1156 (9th Cir. 2011) ........................................................................ 7

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

<u>**State Cases**</u>

*Austin B. Escondido Union School District*,
   149 Cal.App.4th 860 (2007) ................................................................................ 21

*City and County of San Francisco v. Ballard*,
   136 Cal.App.4th 381 (2006) ................................................................................ 21

*Cornell v. City and County of San Francisco*,
   17 Cal.App.5th 766 (2017) ............................................................................ 21, 22

*Jones v. Kmart Corp.*,
   17 Cal.4th 329 (1998) ........................................................................................ 21

*In re Arturo D.*,
   27 Cal.4th 60 (2002) ................................................................................... 2, 8, 16

*In re M.S.*,
   10 Cal.4th 698 (1995) ........................................................................................ 21

*People v. Hart*,
   74 Cal.App.4th 479 (1999) ................................................................................... 8

*Shoyoye v. Cnty. of Los Angeles*,
   203 Cal.App.4th 947 (2012) ................................................................................ 21

*Venegas v. County of Los Angeles*,
   32 Cal.4th 820 (2004) ........................................................................................ 21

<u>**Federal Statutes**</u>

42 U.S.C. section:
   1983 ........................................................................................................ 12, 14, 19

<u>**State Statutes**</u>

California Civil Code section:
   52.1 .......................................................................................... 2, 20, 21, 22

California Penal Code section:
   148 ................................................................................................... *passim*
   148(a)(1) .................................................................................................. 3, 4
   243 .......................................................................................................... 7

Defs' Renewed Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

# TABLE OF AUTHORITIES

**Page(s)**

California Vehicle Code section:

    12951 ................................................................................................................................ 3, 16

    22507.8 ................................................................................................................................. 3

    22511.5 ................................................................................................................................. 3

    22511.56 ........................................................................................................................... 3, 16

    22511.56(a) ........................................................................................................................... 3

    22511.56(b) ........................................................................................................................... 3

## **Federal Rules**

Federal Rules of Civil Procedure, Rule:

    50(b) .................................................................................................................................... 1

ORBACH HUFF + HENDERSON LLP

Defs' Renewed Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

## I.      NOTICE OF MOTION

PLEASE TAKE NOTICE that on May 11, 2023, at 8:00 a.m. in Courtroom 12, 19th Floor, before the Honorable William Alsup of the above-referenced Court, Defendants COUNTY OF ALAMEDA ("County"), STEVEN HOLLAND ("Holland") and MONICA POPE ("Pope") (collectively "Defendants") will renew their motion for judgment as a matter of law against Plaintiffs AASYLEI LOGGERVALE ("Mother"), AASYLEI HARDGE-LOGGERVALE ("Aasylei") and AAOTTAE LOGGERVALE ("Aaottae"[1]) (collectively "Plaintiffs") pursuant to Federal Rules of Civil Procedure, Rule 50(b).

Said Motion will request the Court summarily adjudicate the entirety of Plaintiffs' claims, notwithstanding the verdict, including entering judgment in favor of Defendants and against Plaintiffs.  The Motion will be based upon this Notice, the Memorandum of Points and Authorities herein below, the record in evidence at trial, and the pleadings and other papers on file in this action, together with such other oral and documentary evidence as may be received by the Court.

## II.     INTRODUCTION

During the pendency of this litigation, the Court has struggled in addressing whether the search for the passengers' identification was lawful.  Shortly before the close of evidence, the Court adjudicated that the search was unlawful, including advising the jury on multiple occasions that the Court found the actions to be "unconstitutional."  However, the Court's conclusion is directly in conflict with established precedent.  Initially, the Deputies were lawfully entitled to request the driver's identification, even without reasonable suspicion, as expressly authorized by *United States v. Carrizoza-Gaxiola*, 523 F.2d 239, 241 (9th Cir. 1975).  Their actions in investigating a string of auto burglaries in the area provided further legal justification.  The Deputies were further empowered to "detain passengers during a traffic stop, whether it is by ordering the passenger to remain inside the automobile or by ordering the passenger to get back into an automobile that he or she voluntarily exited."  *United States v.*

---

[1] Aasylei and Aaottae are collectively "Daughters."

Defs' Renewed Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

1    *Williams*, 419 F.3d 1029, 1032 (9th Cir. 2005).  When the passengers refused to comply with the

2    Deputies' directives to reenter the vehicle, they violated Penal Code section 148 and were

3    subject to citation and/or arrest.  At that point, the Deputies were authorized by then-established

4    precedent – including *In re Arturo D.*, 27 Cal.4th 60, 76 (2002) (which authorizes a targeted

5    search for identification for an individual that is to be cited) and *Wyoming v. Houghton*, 526

6    U.S. 295, 306-07 (1999) (which confirmed a search of a passenger's belongings inside an

7    automobile was lawful where law enforcement were performing a targeted search, despite

8    reasonable suspicion existing for only the driver, not the passenger) – to search for the

9    identification of those individuals.  Further, to the extent the existing precedent is not clearly

10   established on these issues (as this Court suggested during its comments on the record that were

11   focused to the Court of Appeals), the Deputies would absolutely be entitled to qualified

12   immunity.   In fact, the Supreme Court has recently and repetitively chastised lower courts for

13   considering a law "clearly established" at too high a level of generality, which is exactly what

14   the Court did here.  "Clearly established law" is not to be defined at a high level of generality,

15   for qualified immunity is no immunity at all if "clearly established law" can simply be defined

16   as "the right to be free from unreasonable searches and seizures."  *City & County of San*

17   *Francisco v. Sheehan*, 135 S. Ct. 1765, 1775-76 (2015).

18          Not only are the Defendants entitled to judgment as a matter of law, but the jury's verdict

19   must be set aside as the evidence and its inferences cannot reasonably support a judgment in

20   favor of the opposing party.  *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014).

21   A court reviews arguments challenging the factual sufficiency of a jury's verdict for substantial

22   evidence.  *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009).  This

23   standard is clearly not met in the current matter.  Consequently, Defendants are entitled to

24   judgment as a matter of law.[2]

25

26   [2] To be clear, this Motion applies to the claims remaining at the time of trial, which included that Pope
     allegedly violated Plaintiffs' rights under the Fourth Amendment with respect to the search for the
27   Daughters' ID'S, that Holland violated Plaintiffs' rights under the Fourth and Fourteenth Amendments
     with respect to the detention and searches of Plaintiffs, as well as Holland's alleged use of excessive
28   force, and that the County of Alameda allegedly ratified Holland's conduct.  Plaintiffs also asserted a
     claim under the Bane Act (Cal. Civ. Code § 52.1) against Holland.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORBACH HUFF + HENDERSON LLP

### III.   ARGUMENT

#### A.   There Was No Unlawful Seizure

##### 1.   Defendants Were Lawfully Allowed to Detain Plaintiffs

As a matter of law, officers may conduct vehicle stops to "to enforce laws susceptible of no other means of effective enforcement." *United States v. Carrizoza-Gaxiola*, 523 F.2d 239, 241 (9th Cir. 1975), citing *Lipton v. United States*, 348 F.2d 591 (9th Cir. 1965); accord *United States v. Bowen*, 500 F.2d 960, 965 (9th Cir. 1974) (per curiam) (acknowledging continued validity of "judicial decisions upholding automobile stops for the purpose of checking drivers' licenses").  The Ninth Circuit has confirmed this rule applies to a request for drivers to produce their license under Vehicle Code section 12951.  *Lipton*, 348 F.2d at 594.  Similarly, Vehicle Code section 22511.56, requires persons using a disabled placard to "upon request of a peace officer … present identification and evidence of the issuance of that placard … to that person." Cal. Veh. Code § 22511.56(a).  Under California law, Mother's refusal of this request is not just a violation of Section 22511.56; by operation of law, this refusal creates a "rebuttable presumption that the placard or plate is being misused and that the associated vehicle has been parked in violation of Section 22507.8, or has exercised a disabled person's parking privilege pursuant to Section 22511.5." Cal. Veh. Code § 22511.56(b).  As a result, Holland was allowed to question Mother and demand her ID on this basis alone, even without reasonable suspicion.

Upon Mother's refusal to provide her identification, there was then probable cause to arrest her for violating several laws, including Vehicle Code sections 22511.56, 22507.8, and 22511.5 and Penal Code section 148.  *Kuhlken v. Cty. of San Diego*, 764 F. App'x 612, 613 (9th Cir. 2019); *Nakamura v. City of Hermosa Beach*, 2009 WL 1445400, at *8 (C.D. Cal. May 20, 2009), aff'd, 372 F. App'x 787 (9th Cir. 2010) (describing § 148(a)(1) as analogous to Nevada statute in *Hiibel* and finding probable cause to arrest suspect for violating § 148(a)(1) where suspect "refused to provide either his name or identification" to police officer); *Lull v. Cty. of Sacramento*, No. 217CV1211TLNEFBPS, 2018 WL 1108747, at *8 (E.D. Cal. Mar. 1, 2018), adopted in pertinent part, 2018 WL 1569433 (E.D. Cal. Mar. 30, 2018); *Abdel-Shafy v. City of San Jose*, No. 17-CV-07323-LHK, 2019 WL 570759, at *7 (N.D. Cal. Feb. 12, 2019); *Vanegas*

- 3 -

*v. City of Pasadena*, No. 220CV07845SVWAGR, 2021 WL 1917126, at *5 (C.D. Cal. Apr. 13, 2021) ("Plaintiff's refusal to produce his identification during a lawful investigative detention gave officers probable cause to arrest him for violating Cal. Pen. Code § 148(a)(1)").

The Deputies' actions were further supported by the presence of reasonable suspicion related to their investigation of a string of auto burglaries in the area, including crimes during the early morning hours on the two prior days in this very parking lot.  "Because the 'balance between the public interest and the individual's right to personal security,' [citation] tilts in favor of a standard less than probable cause in such cases, *the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion* to believe that criminal activity 'may be afoot.'"  *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (emphasis added).  Reasonable suspicion is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting the particular person detained is engaged in illegal activity.  *Terry v. Ohio,* 392 U.S. 1 (1968).  Reasonable suspicion is "not a particularly high threshold to reach."  *United States v. Valdes-Vega,* 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc).  Reasonable suspicion warranting a detention of a person for investigative reasons requires only a "minimal level of objective justification" (see *Illinois v. Wardlow* 528 U.S. 119, 123 (2000)); it "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard."  *Arvizu*, 534 U.S. at 274.  A reasonable, good-faith error regarding the facts, absent a mistake of law, can establish reasonable suspicion. *United States v. Miguel,* 368 F.3d 1150, 1153-1154 (2004).

With reasonable suspicion (either to investigate the lawful use of the parking placard or related to the investigation of auto burglaries), the Deputies were allowed to detain and conduct an investigatory stop, meaning they were authorized to investigate the factual circumstances that lead to reasonable suspicion and briefly detain and search for evidence of those crimes.  See, *Gallegos v. City of Los Angeles,* 308 F.3d 987, 990 (9th Cir. 2002); *Arvizu,* 534 U.S. at 273; *Wardlow,* 528 U.S. at 123; *Rodriguez v. U.S.,* 575 U.S. 348, 355 (2015) ("Beyond determining whether to issue a traffic ticket, an officer's mission [i.e. permissible scope of investigation] includes 'ordinary inquiries incident to the traffic stop' . . . . [and] involve checking the driver's

Defs' Renewed Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance"); see also, *Michigan v. Summers*, 452 U.S. 692, 701 (1981); *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 180 (2004) ("it is well established that an officer may ask a suspect to identify himself in the course of a *Terry* stop"); *United States v. Christian*, 356 F.3d 1103, 1107 (9th Cir. 2004); *United States v. Lopez*, 482 F.3d 1067, 1078 n. 13 (9th Cir. 2007) (suspects have an obligation under *Hiibel* to disclose identity during a *Terry* stop).

Here, Holland and Pope unquestionably had reasonable suspicion to detain the Plaintiffs. It was never contested that there were auto burglaries in the area and at that Starbucks' parking lot, in particular, where those crimes took place in days prior.  Trial Ex. 1, Trial Tx 642:22-644:7, 647:7-649:19, 891:4-892:20, 1079:23-1082:12  Moreover, the deputies also explained that the car was parked in the handicapped space furthest from the Starbucks, on the other side of the strip mall, when there was nothing else open *except* the Starbucks – again, in the same location as a car that was burglarized the day before.  The deputies checked Plaintiffs' license plate and it came back as owned by a rental agency, another red flag, as rental cars are often used to commit crimes.  666:22-668:1, 1086:14-1087:6, 430:4-13.  Additionally, Plaintiffs were parked in a handicapped stall with the placard obscured by a hanging air freshener, making it appear that the car was not legally parked there. Exs 7, 37, Trial Tx 672:24-674:7, 671:8-16, 732:21-733:12.  As the Deputies initially approached Plaintiffs' vehicle, the audio reflects Pope saying "Oh, there's one [placard] in his windshield," which expressly confirms they were investigating the placard usage. Ex. 7, 0:30-0:35.  Thus, Defendants were lawfully allowed to demand Mother's identification both under the vehicle code statutes (related to the placard use and to confirm she had a driver's license) as well as for the investigation into the auto burglaries. *Gallegos,* 308 F.3d at 990; *Arvizu,* 534 U.S. at 273; *Wardlow,* 528 U.S. at 123; *Rodriguez,* 575 U.S. at 355.

While Plaintiffs argued that there was *no evidence* to support reasonable suspicion, this is flatly contradicted by the record, including not only the testimony from numerous deputies, but also the objective evidence, including videos of the incident, the video interview of a Starbucks

- 5 -

employee the day before confirming the prior burglaries, and the incident reports of the prior auto burglaries, all of which corroborate the deputies' testimony.  Trial Ex. 1, Trial Tx 642:22-644:7, 647:7-649:19, 891:4-892:20, 1079:23-1082:12.  The jury had to have ignored *all* of this evidence to find no reasonable suspicion in this case.  As the Supreme Court explained, reasonable suspicion is not a high bar, it must be more than a "hunch", but obviously Defendants had more than a hunch to detain Plaintiffs in this case.

Moreover, Defendants were entitled to "due weight" in their factual inferences of reasonable suspicion.  *Arvizu*, 534 U.S. at 276-77 (reversing Ninth Circuit's decision where "no weight" was given to several factors that went into analysis of reasonable suspicion and reminding courts that officers are entitled to their inferences on the basis of the totality of circumstances surrounding reasonable suspicion).  The jury was not free to ignore the evidence supporting reasonable suspicion in this case.  *Id.*  Nor were Defendants required in their determination of reasonable suspicion to rule out the possibility of innocent conduct.  *Wardlow,* 528 U.S. at 125-126 (noting that the Fourth Amendment accepts a risk that innocent people may be arrested and detained on the basis of probable cause or reasonable suspicion, and that under *Terry* an officer is allowed to briefly investigate further).  Consequently, Defendants, as a matter of law, had reasonable suspicion to detain *all* of the persons in the car, including Daughters, based on the suspicion of their potential involvement in a string of recent auto burglaries.

### 2.    Defendants Had Probable Cause Due to Plaintiffs' Obstruction

Similarly, Daughters, as passengers in the vehicle, were initially being detained under the reasonable suspicion of their involvement in auto burglaries, as noted above.  "[A]s a matter of course," (*Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977)) officers "may detain passengers during a traffic stop, whether it is by ordering the passenger to remain inside the automobile or by ordering the passenger to get back into an automobile that he or she voluntarily exited." *United States v. Williams*, 419 F.3d 1029, 1032 (9th Cir. 2005).  Thus, when both Daughters exited the vehicle and then refused several times to get back in, they too were in violation of Section 148 for failing to comply with Defendants and interfering and obstructing the investigation, giving Defendants probable cause to arrest them.  See, e.g., Ex. 7, 5:50-5:54

ORBACH HUFF + HENDERSON LLP

(Aasylei); 6:47-6:57; 7:22-8:10 (Aaottae); *Maryland v. Wilson*, 519 U.S. 408, 410 (1997); *Williams*, 419 F.3d at 1034; *Young v. Cty. of L.A.*, 655 F.3d 1156, 1170 (9th Cir. 2011). Like Mother, Aasylei was also in violation of California Penal Code section 243 for her battery on Pope, when she opened the car door into Pope. See Ex., 7, 4:19-4:28 (after hitting Sgt. Pope, who says "excuse me," Aasylei says, "yeah, yeah, well, you were standing too [sic] the car"); accord Ex., 7, 2:30-2:50, 3:47-3:50 (showing Aasylei watching and recording Pope before opening the door into her). Accordingly, there was ample evidence to support probable cause to handcuff all Plaintiffs, and thus, no unlawful seizure. As such, to the extent the jury's finding of an ambiguous "constitutional violation" rested on an unlawful seizure, there was no evidence to support the jury's conclusion.

Essentially, when Plaintiffs began to argue and obstruct Holland's request for Mother's ID, they interfered with a lawful detention under *Terry*, thereby creating additional probable cause to not only detain, but to arrest all Plaintiffs for violations of California Penal Code § 148. "To determine whether an officer had probable cause for an arrest, 'we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause.'" *District of Columbia v. Wesby,* 138 S. Ct. 577, 586 (2018), citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "Because probable cause 'deals with probabilities and depends on the totality of the circumstances,' [citations] it is 'a fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules.'" *Wesb*y, 138 S. Ct. at 586; *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. at 243-44, n. 13 (1983). "Probable cause 'is not a high bar.'" *Wesby*, 138 S. Ct. at 586, citing *Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014).

Here, again, the jury's presumed finding of a lack of probable cause sufficient to handcuff and further restrain Mother and Daughters is not supported by the evidence. After repeatedly refusing to provide her driver's license, continuing to yell and argue with Holland, telling her Daughters to call others, including 9-1-1, and basically interfering and obstructing

Defs' Renewed Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

1  Defendants' investigation, Mother opened her car door (knowing Holland was there) striking

2  him with the door.  Ex 37.  Holland pushed the door closed, then Mother attempted to start the

3  vehicle, which prompted Holland to open the driver's side door and handcuff Mother.  Ex 37.

4  These are all additional facts to support evidence of probable cause to arrest Mother, including

5  for impeding and obstructing an investigation and for battery on Holland when she opened the

6  door into him.  Ex 37.  There is no evidence, however, to support a *lack* of probable cause, as

7  the evidence clearly demonstrates Plaintiffs' belligerence and complete failure to follow

8  commands.

9        **B.**     **The Focused Search for ID was Lawful**

10        At the time of the incident, California law confirmed that "[l]imited warrantless searches

11  for required registration and identification documentation are permissible when, following the

12  failure of a traffic offender to provide such documentation to the citing officer upon demand, the

13  officer conducts a search for those documents in an area where such documents reasonably may

14  be expected to be found."  *In re Arturo D.*, 27 Cal.4th 60, 86 (2002), citing with approval *People*

15  *v. Hart*, 74 Cal.App.4th 479, 491 (1999) ("There was no evidence he was searching for anything

16  but her identification. … Under these circumstances, the search did not violate the Fourth

17  Amendment.").  The California Supreme Court noted that under "longstanding authority,

18  established under California law as well as federal and sister state decisions" an officer may

19  "conduct under certain circumstances a limited warrantless search of a vehicle for required

20  regulatory documentation, prior to issuing a traffic citation."  *Id*. at 76.  "[I]n view of the

21  circumstance that [the officer] was preparing to issue a traffic citation and therefore needed to

22  learn the true identity of the person to be cited, we believe it was reasonable for the officer to

23  conduct a limited search of the glove compartment, the area underneath the driver's seat, and the

24  area beneath the front passenger seat."  *Id*. at 87.  The holding in *Arturo D*. is clear that it is the

25  reduced expectation of privacy in vehicles, coupled with the need of an officer "to learn the true

26  identity of the person to be cited," that justifies a targeted search for identification.  This

27  rationale is not dependent upon whether the individual to be cited is the driver or some other

28  \\\

ORBACH HUFF + HENDERSON LLP

Defs' Renewed Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

1  occupant of the vehicle.  It is the need of an officer to identify whomever they may be citing that

2  justifies a focused search.

3      The United States Supreme Court also confirmed this principle in *Wyoming v. Houghton*,

4  526 U.S. 295, 306-07 (1999), holding that "[p]assengers, no less than drivers, possess a reduced

5  expectation of privacy with regard to the property that they transport in cars, which 'trave[l]

6  public thoroughfares,' [citation] 'seldom serv[e] as ... the repository of personal effects,' ibid.,

7  are subjected to police stop and examination to enforce 'pervasive' governmental controls '[a]s

8  an everyday occurrence,' [citation], and, finally, are exposed to traffic accidents that may render

9  all their contents open to public scrutiny."  *Id.* at 303.

10      Similarly, with reasonable suspicion related to the *Terry* stop, Defendants were lawfully

11  allowed to search for evidence of the crimes they believe may have been recently committed or

12  were about to be committed, including violations of the Vehicle Code, Section 148, and the

13  recent auto burglaries.  The searches for Plaintiffs' identification were also lawful in this case,

14  despite the Court's sua sponte finding to the contrary.  The automobile exception "justifies the

15  search of every part of the vehicle and its contents that may conceal the object of the search."

16  *United States v. Ross*, 456 U.S. 798, 825 (1982).  For the automobile exception to apply, all that

17  is required is "probable cause to believe that an automobile contains evidence of a crime."

18  *United States v. Alvarez*, 899 F.2d 833, 839 (9th Cir. 1990).  With such probable cause, officers

19  "may search the vehicle, including the trunk and all containers in which there is probable cause

20  to believe that evidence was concealed."  *Id*.  Indeed, Plaintiffs' own expert confirmed this

21  point.  RT at 353:1-20.  "Evidence of a crime" is defined broadly and the target of the search

22  needs only to "aid" in the investigation.  *Ross*, 456 U.S. at 810; *Messerschmidt v. Millender*, 565

23  U.S. 535, 552 fn.7 (2012).  Obtaining a suspect's identification "has an immediate relation to the

24  purpose, rationale, and practical demands of a *Terry* stop" and "serves important government

25  interests."  *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 186-188 (2004).  The Ninth Circuit

26  similarly holds that identifying a suspect goes "to the heart of *Terry*" by allowing officers to,

27  among other things, "fully investigat[e]," "relocate the suspect in the future," and "protect[] the

28  officer from harm" through a criminal history check.  *United States v. Christian*, 356 F.3d 1103,

ORBACH HUFF + HENDERSON LLP

- 9 -

Defs' Renewed Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

1   1106-1107 (9th Cir. 2004); see also, *United States v. Rodgers*, 656 F.3d 1023, 1029 (9th Cir.

2   2011) (finding search unlawful where there was no indication that identification could be found

3   in search of car).  Unlike in *Rodgers*, Mother and Aaottae told the Deputies where there

4   identification would be found.  Exs. 7 & 37, Trial Tx 1112:20-1114:19, 734:20-735:7.  While

5   Aasylei did not divulge the location of her identification, it was reasonable to assume she would

6   not have left it in Nevada during an interstate trip and that it would be found in the purse next to

7   where she was seated.  See, *Kansas v. Glover,* 140 S. Ct. 1183, 1188-90 (2020) (finding that

8   officers are allowed to use their own common sense and knowledge from everyday life to make

9   inferences, in addition to their specialized training as officers).  Plaintiffs' own expert, Scott

10  DeFoe, admitted that reasonably trained officers would believe under the automobile exception

11  that a targeted search for identification was appropriate where reasonable suspicion existed.

12  352:19-354:1.  Thus, as above, there is no evidence to support that the search in this incident

13  was unlawful.

14          Finally, the search for Aaottae's identification in the trunk of the car was at least

15  permitted under implied consent.  Implied consent can justify the search of a vehicle for

16  identification even where the suspect later claims that the consent was coerced or otherwise

17  involuntary.  *United States v. Christian*, 356 F.3d 1103, 1108 (9th Cir. 2004).  Here, Pope

18  simply asked Aaottae for her name, and after initially refusing, Aaottae gave her first name but

19  not her last name.  When Pope asked Aaottae, "Can you spell it?" she responded, "It's in my

20  wallet.  I just graduated from Chaparral High School."  Pope then asked, "Where's your wallet?"

21  and Aaottae responded by telling Pope which purse was hers and where her student

22  identification could be found.  See Ex. 7, 18:30-19:00.  Plaintiffs put on no evidence that this

23  statement was coerced or involuntary.  The videos demonstrate Aaottae proposed to Pope that

24  she get the spelling of her name from her student identification in the trunk of the car.

25  Importantly, it is Plaintiffs who "carr[y] the ultimate burden of establishing each element of

26  [their] claim, including lack of consent [to search]."  *Pavao v. Pagay*, 307 F.3d 915, 919 (9th

27  Cir. 2002); *Larez v. Holcomb*, 16 F.3d 1513, 1517-18 (9th Cir.1994) (jury instruction properly

28  placed burden on plaintiff to show exception to the warrant requirement did not apply).

Defs' Renewed Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

1 Ultimately, for the multiple reasons noted above and as a matter of law, Defendants performed a

2 lawful search for Plaintiffs' IDs.

3     **C.**    **There Was No Excessive Force**

4     The legal premise of Plaintiffs' excessive force claim against Holland is that it was

5 excessive force to handcuff Plaintiffs because there was not probable cause for their arrest.  The

6 only person who Holland physically interacted with, however, was Mother, as Daughters were

7 handcuffed by Pope and Pope was dismissed from this claim.[3]  As such, Daughters' handcuffing

8 is no longer in issue.  Importantly and contrary to Plaintiffs' theory, excessive force cannot be

9 proven merely by showing an unlawful arrest.  *Beier v. City of Lewiston*, 354 F.3d 1058, 1064

10 (9th Cir. 2004), citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921-22 (9th

11 Cir. 2001) ("establishing a lack of probable cause to make an arrest does not establish an

12 excessive force claim, and vice-versa").

13     While tight handcuffing can in some circumstances constitute excessive force, it is not in

14 itself a *per se* constitutional violation.  *LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th

15 Cir. 2000).  As with all excessive force claims, whether the act of handcuffing amounts to

16 excessive force depends on the "fact-specific" circumstances.  *Id*.  "In cases where the Ninth

17 Circuit has held that excessively tight handcuffing can constitute a Fourth Amendment violation,

18 plaintiffs either were demonstrably injured by the handcuffs or their complaints about the

19 handcuffs being too tight were ignored by the officers."  *Hupp v. City of Walnut Creek*, 389

20 F.Supp.2d 1229, 1232 (N.D. Cal. 2005).  Cases finding overly tight handcuffs to constitute

21 excessive force involved whether the officers had notice of the tightness.  See, *Shaw v. City of

22 Redondo Beach*, No. CV 05-0481 SVW (FMOx), 2005 WL 6117549, at *8 (C.D. Cal. Aug. 23,

23 2005) (collecting cases); see also, *MacLellan v. County of Alameda*, No. C-12-5795 MMC, 2014

24 WL 793444, at *5 (N.D. Cal. Feb. 26, 2014) (granting summary judgment because there was

25 "no evidence to support an inference that any of the deputies had any reason to believe the

26

27 [3] Notably, Plaintiffs' excessive force claim against Holland appears to have been abandoned or waived, as evidenced by its omission from Plaintiffs' proposed verdict form.  Dkt. 178; *Birmingham Fire Ins.*

28 *Co. of Penn. v. Politis & Perlman Int'l Realty*, 52 Fed. Appx. 485 (11th Cir. 2002); see also, Dkt. 174 (dismissing Pope from excessive force).

1    handcuffs may have required any adjustment"); *Foley v. Graham*, No. 2:16-cv-01871-JAD-

2    VCF, 2020 WL 4736457, at *3 (D. Nev. Aug. 14, 2020) (granting qualified immunity because

3    the plaintiff alleged "that he was subjectively experiencing pain" but offered no facts that

4    suggested the officer "knew or should have known" that the handcuffs were too tight).  In this

5    case, there was simply no evidence at all that Holland was ever aware that Mother's handcuffs

6    were too tight, nor is there any evidence that would suggest he should have known and neither

7    Mother nor Daughters ever said words to that effect.  Consequently, the excessive force claim

8    must fail as a matter of law.

9    **D.   There Was No Evidence of Discriminatory Animus**

10    "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of

11    the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or

12    purpose to discriminate against the plaintiff based upon membership in a protected class."

13    *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  The fact that a plaintiff is "African-

14    American, the officer is white, and they disagree about the reasonableness of the traffic stop" are

15    not "sufficient to raise an inference of racial discrimination."  *Bingham v. City of Manhattan*

16    *Beach*, 341 F.3d 939, 948 (9th Cir. 2003); accord *Pinder v. Emp't Dev. Dep't*, 227 F.Supp.3d

17    1123, 1140 (E.D. Cal. 2017).  Racial discrimination claims related to a detention generally

18    require the plaintiff to "produce 'some tangible evidence in the record that tends to support his

19    conclusion' that the seizure was racially motivated—evidence, for instance, that [the officer] or

20    the [department] had a practice, or engaged in a pattern, of seizing African–Americans or that

21    [the officer] made a race-related remark during the encounter."  *Benson v. City of San Jose*, 583

22    F. App'x 604, 606 (9th Cir. 2014), quoting *Bingham*, 341 F.3d at 954.  "The unlawful

23    administration by state officers of a state statute fair on its face, resulting in its unequal

24    application to those who are entitled to be treated alike, is not a denial of equal protection unless

25    there is shown to be present in it an element of intentional or purposeful discrimination."

26    *Snowden v. Hughes*, 321 U.S. 1, at 8 (1944).  When relying on only circumstantial evidence of

27    racial motivation, that evidence must be "specific and substantial."  See *Vasquez v. Cty. of Los*

28    *Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).  Plaintiffs never presented any evidence to support

ORBACH HUFF + HENDERSON LLP

- 12 -

Defs' Renewed Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

intentional or purposeful discrimination by Holland.  See, footnote 2 above (noting Pope's dismissal from this claim as well).

Plaintiffs did not identify anything that Holland said or did during the incident that had racial overtones.  Though Plaintiffs argued that Holland's "demeanor" is somehow proof of such racial motivation, the evidence does not support this inference.  As explained above, there was objective evidence of Holland's basis for reasonable suspicion from the videos, other incident reports, other deputies' testimony of burglaries, and witness interviews demonstrating the *lack* of pretext in Holland's initial detention of Plaintiffs, which Pope (not alleged to have racially discriminated) independently confirmed.  Plaintiffs' pure speculation about Holland's alleged bias is not evidence sufficient to support a jury verdict on this claim.  See, *Mosley v. United States*, 425 F. Supp. 50, 61 (N.D. Cal. 1977) (granting summary judgment to defendants when plaintiffs adduced no evidence other than speculation of discriminatory animus).  Indeed, unlike Plaintiffs who can be seen screaming at Defendants throughout this encounter, the video demonstrates Holland never raised his voice and spoke professionally at all times.  Other than Plaintiffs' bare allegations, conclusory and self-serving testimony, which the Ninth Circuit has found insufficient as a matter of law to preclude summary judgment, there was no evidence at all on this claim to support the jury's verdict on this issue.  See, *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact"); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"); *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988) ("conclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgment") (citation omitted).  Consequently, without evidence to support that Holland intentionally or purposefully mistreated Plaintiffs on the basis of their race, this claim fails as a matter of law.

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

### E.      Defendants Holland and Pope Are Entitled to Qualified Immunity

Assuming for the moment that Holland's or Pope's actions were unlawful in any way, they were nonetheless entitled to qualified immunity on Plaintiffs' claims because it was not "clearly established" that their actions, as determined by *case precedent,* were unlawful.  In analyzing the applicability of qualified immunity, the violation of a right (often a question of fact) is only the first prong of the analysis, but does not dispose of the defense.  "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, *and* (2) the unlawfulness of their conduct was clearly established at the time." *Wesby*, 138 S. Ct. at 589 (2018) (emphasis added).  "The plaintiff shoulders the burden of proving that the rights he claims are 'clearly established.'" *Davis v. Scherer*, 468 U.S. 183, 197 (1984).  For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  "Case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017).  "[A] body of relevant case law is usually necessary to clearly establish the answer . . . ." *Wesby*, 138 S. Ct. at 590.  To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent to be considered settled law. *Wesby*, 138 S. Ct. at 589.  That means the principle is dictated by either "controlling authority" or a "robust" consensus of cases of persuasive authority. *Id*.  In this Circuit, "controlling authority" is binding precedent – Supreme Court and Ninth Circuit published case law.  See, *Entler v. Gregoire*, 872 F.3d 1031, 1041 (9th Cir. 2017).  Absent such law, the courts may look to persuasive authority from other circuits, district courts and state law to determine whether a robust consensus of cases exists.  See, *Moonin v. Tice*, 868 F.3d 853, 868 (9th Cir. 2017).  Consequently, whether a right is clearly established is a question of law that is determined by the Court. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

Because the Court never even analyzed whether the right at issue in this case was clearly established by existing precedent, there could be no finding that either Holland or Pope violated

clearly established law – and thus no evidence to deny qualified immunity.  In fact, there was never any case or precedent that "squarely" governed the facts of this case.  The Court's comments squarely address this issue, including noting the extensive efforts undertaken by the Court to locate any decisions on point, without success.  Tx at 237:6-238:3, 502:6-503:13, 710:12-711:17.  As more recent Supreme Court authority has emphasized, "courts [are] not to define clearly established law at too high a level of generality."  *City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 11 (2021) (per curiam).  "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id*. (cleaned up).  "[I]n an obvious case," the rule "can clearly establish the answer, even without a body of relevant case law."  *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (internal citations and quotations omitted); *Hardwick v. County of Orange*, 844 F.3d 1112, 1120 (9th Cir. 2017) (noting that sometimes conduct is "so clearly and obviously wrong that the conduct itself unmistakably 'should have provided [defendants] with some notice' that their alleged conduct violated their targets' constitutional rights" (quoting *Hope v. Pelzer*, 536 U.S. 730, 745 (2002))).  But in a situation that is "not . . . obvious," Plaintiffs "must identify a case that put [an officer] on notice that his specific conduct was unlawful."  *Rivas-Villegas*, 142 S. Ct. at 8.  As there is no contention that this case presents an "obvious" violation of a constitutional right, the pure question of law remains whether existing precedent "clearly established" that Defendants' actions were unlawful.

To be absolutely clear, there is ***no*** case that appears to "squarely govern" any of the claims and facts of the case at bar.  If anything, as indicated above, the cases are in favor of Defendants that their actions in this case were entirely lawful.  Thus, without *any* existing precedent to have put Defendants on notice that their actions were unlawful, they *must* be granted qualified immunity on *all* of Plaintiffs' federal claims.  Notwithstanding the lack of any precedent to support the jury's denial of the qualified immunity defense, there is also not any body of clearly established law on any of the individual claims that would clearly establish that Defendants' actions were unlawful.

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

### 1. Holland Is Entitled to Qualified Immunity on Mother's Search and Seizure Claims

Turning first to the issue of Mother's detention and Holland's search for her ID, given that the Ninth Circuit has repeatedly reaffirmed the rule from *Lipton,* i.e. that even without reasonable suspicion, officers may conduct vehicle stops to "to enforce laws susceptible of no other means of effective enforcement," and given there is no case that has ever declared that the demand for identification allowed under Vehicle Code sections 12951 and 22511.56 may *not* be posed to the driver of an already stopped vehicle (even without reasonable suspicion) – Holland was entitled to qualified immunity on Mother's search and seizure claims.  See, *Carrizoza-Gaxiola*, 523 F.2d at 241; *Lipton*, 348 F.2d at 594; *Bowen*, 500 F.2d at 965.  At the time of this incident, there was not "a robust 'consensus of cases of persuasive authority,'" let alone "controlling authority" placing this issue "beyond debate" such that "every 'reasonable official'" would have known that it was unlawful to pose this request or search for Mother's ID.  *al-Kidd*, 563 U.S. at 741.  Consequently, Holland was entitled to qualified immunity on these claims.

### 2. Qualified Immunity Should be Granted on Daughters' Search and Seizure Claims

Similarly, both Defendants were entitled to qualified immunity regarding the Daughters' ID search.  The California Supreme Court in *Arturo D.*, in distinguishing the facts from *Knowles v. Iowa*, 525 U.S. 113 (1998), confirmed that a targeted search for identification before issuing a citation comports with the Fourth Amendment.  *In re Arturo D.*, 27 Cal.4th 60, 76 (2002).  Since then, other federal courts have also concluded that the opinion in *Knowles* does not prohibit a limited search for identification.  *Quezada v. Hubbard*, No. C 01-02303 CRB, 2002 WL 1598873, at *4 (N.D. Cal. July 18, 2002) ("*Knowles* does not prohibit limited searches for identification prior to a custodial arrest or citation."); *McArthur v. City & Cty. of San Francisco*, 190 F.Supp.3d 895, 905 (N.D. Cal. 2016) ("The law, as yet, is not 'clearly established' that taking identification from a suspect's wallets is impermissible.").  Moreover, "[o]ther circuits have found that police officers do enjoy limited powers to discover the identities of persons detained during investigatory stops when the detainees refuse to cooperate." *Nakamura v. City*

ORBACH HUFF + HENDERSON LLP

*of Hermosa Beach*, No. CV06-06776 GW(SS), 2009 WL 1445400, at *10 (C.D. Cal. May 20, 2009), aff'd, 372 F. App'x 787 (9th Cir. 2010) (upholding search for identification on qualified immunity grounds).  Consequently, there could not exist any "clearly established" precedent on this issue and Defendants are therefore entitled to qualified immunity.

Furthermore, the automobile exception can justify a targeted search for identification, at least where there is probable cause to believe the identification will be found in the car.  *United States v. Rodgers*, 656 F.3d 1023 (9th Cir. 2011).  Accordingly, under *Rodgers,* and its explanation of what was necessary for a lawful automobile search for identification, Holland and Pope would have rightly believed that they had probable cause to search the vehicle after Plaintiffs were obstructing their investigation and had whacked them with their respective car doors.  *Messerschmidt v. Millender*, 565 U.S. 535, 552 fn.7 (2012) (emphasis in original) (granting qualified immunity where officer reasonably believed evidence would aid in prosecution).  Importantly, even if the Defendants were mistaken on whether or not Plaintiffs had *actually* committed a violation of Section 148, they were nonetheless entitled to qualified immunity despite their mistaken belief.  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law."  *al-Kidd*, 563 U.S. 731, 743 (2011), quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004).

Similarly, Defendants are entitled to qualified immunity regarding the search for Aaottae's ID given the fact that Aaottae impliedly consented to the search for her ID (even if Pope was mistaken about Aaottae's consent to search).  Pope's video demonstrates incontrovertibly that Aaottae suggested to Pope that Pope get the spelling of Aaottae's name from her student identification in the trunk of the car.  Consequently, Pope is also entitled to qualified immunity for her reasonable belief, even if mistaken, that Aaottae consented to the search for her ID in the trunk.

1

ORBACH HUFF + HENDERSON LLP

**3.      Holland is Entitled to Qualified Immunity on Plaintiffs' Fourteenth Amendment Claim**

Likewise, to the extent that Plaintiffs' equal protection claims were predicated on an unlawful search or seizure by Holland, as explained above, he was entitled to qualified immunity on those facts, precluding the equal protection claim as well.  Moreover, there is no case demonstrating that Holland's reliance on the facts underlying his basis of reasonable suspicion or probable cause (auto burglaries, interfering with an investigation, or violations of the Vehicle Code) could constitute pretext for discriminatory animus, especially when he never uttered any derogatory or even unprofessional comments to Plaintiffs.  Indeed, there is no evidence at all to support that Holland had a discriminatory animus toward Plaintiffs.  As such, at the very least, Holland is entitled to qualified immunity for the lack of any clearly established precedent demonstrating that his actions would constitute discrimination.  See also, *al-Kidd,* 563 U.S. at 741-42 (holding that Attorney General was entitled to qualified immunity on the basis that "not a single judicial opinion had held that pretext could render an objectively reasonable arrest pursuant to a material-witness warrant unconstitutional.")

**4.      Holland is Entitled to Qualified Immunity on Mother's Excessive Force Claim**

Holland is also entitled to qualified immunity on Plaintiffs' excessive force claims.  Again, Holland had no part in Daughters' handcuffing so cannot be held liable for any excessive force in regards to their handcuffing, and Plaintiffs dismissed their excessive force claim as against Pope.  And, as to Mother's handcuffing, again, there was no evidence that Holland *should* have known that Mother's handcuffs were too tight, as she never complained or indicated anything to that effect.  As there has never been any case finding that a *total lack of notice* of handcuffs being too tight can constitute excessive force, Holland must be granted qualified immunity.

**F.      There Was No Ratification to Support a *Monell* Violation**

The only remaining federal claim against the County of Alameda is based upon allegations of ratification under a *Monell* theory for Holland's actions.  The evidence on this

Defs' Renewed Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

issue was based on Sheriff Ahern writing "Briefed – No further action required" at the bottom of the completed internal affairs report for the incident.  MSJ Order, 12:20-26.  Ratification, however, "generally requires more than acquiescence." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), rev'd in part on other grounds, cert. dismissed in part sub nom., 135 S. Ct. 1765 (2015).  A police department's "mere failure to discipline [its officers] does not amount to ratification of their allegedly unconstitutional actions."  *Id*. at 1231; accord *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010), overruled on other grounds by *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).  "For example, it is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).  Indeed, "[t]o hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983." *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 781 (9th Cir.1997).

At most, by writing "no further action," Sheriff Ahern chose not to overrule the outcome of Capt. Brodie's completed investigation and report.  To establish ratification, a final policymaker for the County must "approve a subordinate's decision *and the basis for it*." *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992).  A "deferential review of a subordinate's discretionary decision" and a failure to overrule that allegedly erroneous decision is not sufficient to establish ratification.  *Id*. (neither city manager's decision not to overrule fire chief nor fire chief's decision not to overrule battalion chief established ratification).

Thus, in the case of police department internal disciplinary proceedings, trial courts have consistently held that "in order for there to be ratification, there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures." *Koenig v. City of Bainbridge Island*, No. C10-5700 RJB, 2011 WL 3759779 (W.D. Wash. Aug. 25, 2011); accord *Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1189 (D. Haw. 2003) ("The Ninth Circuit appears to require something more than a failure to reprimand to establish a municipal policy or ratification."); *German v. Roberts*, No. CV 15-5237 BHS-DWC, 2017 WL 6547472, at *2

ORBACH HUFF + HENDERSON LLP

(W.D. Wash. Dec. 22, 2017) ("Based on the analysis outlined in *Larez*, the Court agrees with Defendants that, when establishing *Monell* liability under a ratification theory, a plaintiff must present more than just a police investigation that concludes an officer applied reasonable force"); accord *Peterson v. City of Forth Worth Texas*, 588 F.3d 838, 848 (5th Cir.2009) (holding that there was no ratification of use of excessive force where the Chief of Police determined after investigation that the officers complied with department policies*); Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir.1989) ("As we have indicated before, we cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under *Monell*." ).

Additionally, there is no evidence Sheriff Ahern is the policymaking authority *for the County* in regard to employment policy.  "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986), citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985).  In fact, in *Pembaur*, the Court addressed this very issue, finding that even if a sheriff had discretion to hire and fire employees, if he did not also have responsibility for establishing county employment policy, then he could not be said to be a policymaker for the county.  *Id*. at 484 n.12.  While Sheriff Ahern may have authority to hire, fire and discipline individual employees, Plaintiffs never introduced evidence to satisfy their burden in showing that Sheriff Ahern was the final policymaking authority for setting the County's employment policy.  As a result, Plaintiffs' *Monell* claim fails as a matter of law.

**G.    There Was No Evidence of Specific Intent to Support a Violation of the Bane Act**

Similarly, Plaintiffs' claim against Holland under the Bane Act (Civil Code § 52.1) also fails.  There was absolutely no evidence of specific intent by Holland to have violated any of Plaintiffs' rights.  "The essence of a Bane Act claim is that the defendant, by the specified

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Shoyoye v. Cnty. of Los Angeles*, 203 Cal.App.4th 947, 955-956 (2012).

To establish a claim under section 52.1(b), a plaintiff must allege facts showing that a defendant attempted or did interfere with plaintiff's state or federal constitutional rights by threatening or committing violent acts (*Austin B. Escondido Union School District*, 149 Cal.App.4th 860 (2007)), i.e. there must be evidence that Holland **threatened, intimidated, or coerced** one or more of the Plaintiffs. *City and County of San Francisco v. Ballard*, 136 Cal.App.4th 381, 408 (2006) (complete failure to satisfy requirement that city engaged in a form of coercion); *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334 (1998) (characterizing § 52.1 as requiring "interference with a legal right, accompanied by a form of coercion").

As confirmed by the California Supreme Court in *Venegas v. County of Los Angeles,* 32 Cal.4th 820 (2004), the Bane Act "does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right." *Id.* at 843.  The Court also confirmed that a plaintiff asserting a claim for violation of the Bane Act is required to further plead and prove that the alleged constitutional violation was "accompanied by the requisite threats, intimidation, or coercion." *Id.*  In *Cornell v. City and County of San Francisco,* 17 Cal.App.5th 766 (2017), the Court of Appeal explained that "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the [person] had a specific intent to violate the [plaintiff's] right." *Id.* at pp. 801-802.  The Court in *Cornell* adopted the specific intent standard as set forth in *Screws v. United States,* 325 U.S. 91 (1945), and espoused by the California Supreme Court in *In re M.S.,* 10 Cal.4th 698, 713 (1995), as follows:

> [T]his test 'essentially sets forth two requirements for a finding of "specific intent" . . . . The first is a purely legal determination. Is the … right at issue clearly delineated and plainly applicable under the circumstances of the case?  If the trial judge concludes that it is, then the jury must make the second, factual, determination. Did the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected

1
2
3
4

by that … right? If both requirements are met, even if the defendant did not in fact recognize the [unlawfulness] of his act, he will be adjudged as a matter of law to have acted [with the requisite specific intent]—i.e., "in reckless disregard of constitutional [or statutory] prohibitions or guarantees.'" *Cornell*, 17 Cal.App.5th at 803.

5
6
7

Without a specific intent to purposefully interfere in a plaintiff's right, there is no "egregiousness" as required to succeed on a Bane Act claim, as "ordinary negligence is not cognizable under Section 52.1." *Id*. at 802.

8
9
10
11
12
13
14

In *Reese v. County of Sacramento*, 888 F.3d 1030, 1044-45 (9th Cir. 2018), the Ninth Circuit considered whether a 4th Amendment claim, if the subject conduct is unreasonable, could in itself also violate the Bane Act.  The Court found that because the objective reasonableness test, citing *Graham*, 490 U.S. at 397, does not consider the officer's underlying intent or motivation, a Fourth Amendment violation of the Bane Act *requires* that "the **defendants 'intended not only the force, but its unreasonableness**, its character as 'more than necessary under the circumstances.'"" *Reese*, at 1045 (emphasis added).

15
16
17
18
19
20
21
22
23
24
25
26

Even if Holland's actions were unlawful (they were not), that in and of itself is not sufficient to support a Bane Act claim.  *Id.; Cornell,* at 802 ("ordinary negligence is not cognizeable").  There must be evidence that Holland *specifically intended* to violate Plaintiffs' constitutional rights.  In this case, however, there is no evidence at all to support that he *intentionally* meant to deprive any Plaintiff of her rights, under any law.  As noted above, Holland never made any overt discriminatory comments or otherwise presented any unprofessionalism.  Indeed, the jury found in this case that Holland *was not* liable for any punitive damages.  See, Question 7 of the Amended Special Verdict Form.  Moreover, as it is not clear *which* specific right the jury based its finding that Holland's actions were unconstitutional (see Question 1 of the verdict), there was no determination or evidence to support that Holland *specifically* intended to violate that particular right. Accordingly, Plaintiffs' claim fails as a matter of law.

27
28

///
///

Defs' Renewed Motion for Judgment as a Matter of Law [20-cv-04679-WHA]

ORBACH HUFF + HENDERSON LLP

**IV.     CONCLUSION**

For the reasons discussed herein, Defendants respectfully request that the Court grant this Motion, in its entirety, set aside the jury's verdict, and enter judgment as a matter of law in favor of Defendants.

Dated:  March 29, 2023               Respectfully submitted,
                                     **ORBACH HUFF + HENDERSON LLP**

                                     By:___/s/ *Kevin E. Gilbert*_____
                                         Kevin E. Gilbert
                                         Attorney for Defendants
                                         COUNTY OF ALAMEDA, STEVEN
                                         HOLLAND and MONICA POPE