Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Christopher R. Creech, Esq. (SBN: 293037)
ccreech@ohhlegal.com
**ORBACH HUFF & HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, California 94588
Telephone:      (510) 999-7908
Facsimile:      (510) 999-7918

Attorneys for Defendants
COUNTY OF ALAMEDA, STEVEN HOLLAND and MONICA POPE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AASYLEI LOGGERVALE; AASYLEI HARDGE-LOGGERVALE; and AAOTTAE LOGGERVALE,<br><br>            Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA; STEVEN HOLLAND; MONICA POPE; KEITH LEEPER; ANTHONY DeSOUSA; CAMERON GALLOWAY; and DOES 1 to 50, inclusive,<br><br>            Defendants. | Case No. 20-cv-04679-WHA<br><br>**DEFENDANTS COUNTY OF ALAMEDA, STEVEN HOLLAND AND MONICA POPE'S OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON-STATUTORY COSTS** |

ORBACH HUFF & HENDERSON LLP

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ................................................................................ 2

III.  LEGAL ARGUMENT ......................................................................................... 2

    A.    General Principles ..................................................................................... 2

    B.    Attorneys Gearinger and Peters Failed to Comply with the Court's Order ....................... 3

    C.    Any Fees Awarded Must Be Reduced Due to Plaintiffs' Limited Success ........................ 4

    D.    Plaintiffs' Requested Attorneys' Fees and Costs are Grossly Inflated, Unmerited and Unreasonable ................................................................. 8

        1.    Plaintiffs' Claimed Fees Are Excessive and Unreasonable ....................... 8

        2.    Plaintiffs Request Fees That Are Excessive for the Northern District of California ..................................... 11

        3.    Three Partner Level Attorneys Billed for Work That Should Be Done by Associates or Legal Assistants ....................... 15

        4.    Unnecessary Staffing ........................................................................ 16

        5.    Plaintiffs Rely on Inappropriate Block Billing ...................................... 17

    E.    Any Multiplier is Inappropriate ................................................................ 19

        1.    Plaintiffs Are Not Entitled to a Multiplier Under Federal Law ................ 19

        2.    Plaintiffs Are Not Entitled to a Multiplier Under State Law ................... 20

            a.    The Premium Plaintiffs Seek Via a Multiplier Is Already Encompassed Within the Lodestar ....................... 21

            b.    The Applicable Factors Do Not Weigh in Favor of a Fee Enhancement ....................... 22

            c.    Any Multiplier Should Only Apply to the Fees Incurred In Connection with the Section 52.1 Claim Against Holland ....................... 23

    F.    Plaintiffs Are Not Entitled to Unreasonable Costs ........................................ 24

IV.  CONCLUSION ................................................................................................ 25

Defs' Opp to Plts' Mtn for Attorneys' Fees and Non-Statutory Costs [20-cv-04679-WHA]

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4

*Blum v Stenson*,
  465 U.S. 886 (1984)..................................................................................................11, 19

5

*Brown v. Stackler*,
6   612 F.2d 1057 (7th Cir. 1980) .......................................................................................8

7

*Camacho v. Bridgeport Financial, Inc.*,
8   523 F.3d 973 (9th Cir. 2008) .......................................................................................11

9

*Carson v. Billings Police Dep't*,
  470 F.3d 889 (9th Cir. 2006) .......................................................................................11

10

*Castillo-Antonio v. Lam*,
11   No. 18-CV-04593-EDL, 2019 WL 2642469 (N.D. Cal. Apr. 10, 2019)......................13

12

*Chalmers v. City of Los Angeles*,
13   796 F.2d 1205 (9th Cir. 1986) ..................................................................................9, 16

14

*Chaudhry v. City of Los Angeles*,
  751 F.3d 1096 (9th Cir. 2014) .....................................................................................20

15

*Christiansburg Garment Co. v. EEOC*,
16   434 U.S. 412 (1978)......................................................................................................3

17

*City of Burlington v. Dague*,
18   505 U.S. 557 (1992)....................................................................................................19

19

*Civil Rights Educ. & Enf't Ctr. v. Ashford Hosp. Tr., Inc.*,
  No. 15-CV-00216-DMR, 2016 WL 1177950 (N.D. Cal. Mar. 22, 2016) ...................13

20

*Copeland v. Marshall*,
21   641 F.2d 880 (D.C. Cir. 1980) .....................................................................................8

22

*Cotton v. City of Eureka, Cal.*,
23   889 F.Supp.2d 1154 (N.D. Cal. 2012) .......................................................................9, 12

24

*Craig v. Cnty. of Orange*,
  No. SACV1700491CJCKESX, 2019 WL 12378994 (C.D. Cal. Sept. 5, 2019) ........21, 22

25

*Cunningham v. Cnty. of Los Angeles*,
26   879 F.2d 481 (9th Cir. 1988) .....................................................................................16

27

*Dang v. Cross*,
28   422 F.3d 800 (9th Cir. 2005) ...................................................................................5, 24

ORBACH HUFF & HENDERSON LLP

Defs' Opp to Plts' Mtn for Attorneys' Fees and Non-Statutory Costs [20-cv-04679-WHA]

# TABLE OF AUTHORITIES

**Page(s)**

*Defenbaugh v. JBC & Assocs., Inc.*,
2004 WL 1874978 (N.D. Cal. Aug. 10, 2004) ...................................................................18

*Democratic Party of Wash. State v. Reed*,
388 F.3d 1281 (9th Cir. 2004) ..........................................................................................16

*Farrar v. Hobby*,
506 U.S. 103 (1992) .........................................................................................................4, 5

*Farris v. Cox*,
508 F. Supp. 222 (N.D. Cal. 1981) ......................................................................................8

*Fidalgo Island Packing Co v. Phillips*,
147 F. Supp. 883 (D. Alaska) ............................................................................................20

*Fox v. Vice*,
563 U.S. 826 (2011) .............................................................................................................3

*Gonzalez v. Machado*,
No. 17-CV-02203-LB, 2019 WL 3017647 (N.D. Cal. July 10, 2019) ...............................13

*Halderman ex rel. Halderman v. Pennhurst State Sch. & Hosp.*,
49 F.3d 939 (3rd Cir. 1995) ...............................................................................................15

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) .................................................................................................24

*Heifetz v. Mona's Burgers Clayton LLC.*,
No. 19-CV-02392-LB, 2021 WL 292034 (N.D. Cal. Jan. 28, 2021) ..................................12

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ................................................................................................. *passim*

*Human Rights Def. Ctr. v. Cnty. of Napa*,
2021 WL 1176640 (N.D. Cal. Mar. 28, 2021) ...................................................................13

*Ingram v. Oroudjian*,
647 F.3d 925 (9th Cir. 2011) .........................................................................................7, 12

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*,
109 F.3d 602 (9th Cir. 1997) .............................................................................................21

*Jadwin v. Cnty. of Kern*,
767 F.Supp.2d 1069 (E.D. Cal. 2011) ................................................................................24

*Jessica Dominguez, et al., v. City Of San Jose, et al.*,
No. 18-CV-04826-BLF, 2023 WL 2717266 (N.D. Cal. Mar. 29, 2023) ............................13

ORBACH HUFF & HENDERSON LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

*Johnson v. 12 N Park Victoria LLC*,
   No. 20-CV-02200-LHK, 2021 WL 3291890 (N.D. Cal. Aug. 2, 2021)................................13

*Johnson v. 480 Geary St., LLC*,
   No. 19-CV-02460-JSW, 2021 WL 5407874 (N.D. Cal. Jan. 27, 2021) ...........................12

*Johnson v. AutoZone, Inc.*,
   No. 17-CV-02941-PJH, 2019 WL 2288111 (N.D. Cal. May 29, 2019)............................13

*Johnson v. Johnson*,
   No. 17-CV-04840-SVK, 2020 WL 901517 (N.D. Cal. Feb. 25, 2020)..............................12

*Jordan v. Multnomah County*,
   815 F.2d 1258 (9th Cir. 1987) .......................................................................................11

*Lahiri v. Universal Music & Video Distrib. Corp.*,
   606 F.3d 1216 (9th Cir. 2010) .......................................................................................18

*Lipsett v. Blanco*,
   975 F.2d 934 (1st Cir. 1992)..........................................................................................15

*MacDougal v. Catalyst Nightclub*,
   58 F.Supp.2d 1101 (N.D. Cal. 1999) .............................................................................15

*Mangold v. Cal. Pub. Utils. Comm'n*,
   67 F.3d 1470 (9th Cir. 1995) ....................................................................................20, 24

*Navarro v. General Nutrition Corp.*,
   2005 WL 2333803 (N.D. Cal. Sept. 22, 2005) ...............................................................11

*New Mexico Citizens for Clean Air & Water v. Espanola Mercantile Co., Inc.*,
   72 F.3d 830 (10th Cir. 1996) .........................................................................................15

*Padgett v. Loventhal*,
   No. 5:04-CV-03946-EJD, 2019 WL 2491957 (N.D. Cal. June 14, 2019)........................12

*Perdue v. Kenny A.*,
   559 U.S. 542 (2010).................................................................................................19, 20

*Petroleum Sales, Inc. v. Valero Ref. Co.*,
   C 05-3526, 2007 WL 2694207 (N.D. Cal. Sept. 11, 2007) .............................................18

*Potter v. Blue Cross Blue Shield of Mich.*,
   10 F.Supp.3d 737 (E.D. Mich. 2014)..............................................................................16

*Rodriguez v. Cnty. of Los Angeles*,
   96 F.Supp.3d 1012 (C.D. Cal. 2014) ..........................................................................23-24

ORBACH HUFF & HENDERSON LLP

1

# TABLE OF AUTHORITIES

**Page(s)**

*Sorenson v. Mink*,
    239 F.3d 1140 (9th Cir. 2001) .................................................................................4, 5, 7

*Thomas v. City of Tacoma*,
    410 F.3d 644 (9th Cir. 2005) ...........................................................................................3

*Trujillo v. Orozco*,
    No. 5:17-CV-00566-EJD, 2018 WL 1142311 (N.D. Cal. Mar. 2, 2018) .........................13

*Trustees of Constr. Indus. & Laborers' Health & Welfare Trust v. Redland Ins. Co.*,
    460 F.3d 1253 (9th Cir. 2006) .......................................................................................15

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) .........................................................................................24

*Van Gerwen v. Guar. Mut. Life Co.*,
    214 F.3d 1041 (9th Cir. 2000) .......................................................................................98

*Webb v. Sloan*,
    330 F.3d 1158 (9th Cir. 2003) ......................................................................................4, 5

*Welch v. Met. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) .......................................................................................9, 17

*Zucker v. Occidental Petroleum Corp.*,
    968 F. Supp. 1396 (C.D. Cal. 1997) ...............................................................................15

*Zuegel v. Mountain View Police Dep't*,
    No. 17-CV-03249-BLF, 2021 WL 2808977 (N.D. Cal. July 6, 2021)..............................12

**State Cases**

*Chacon v. Litke*,
    181 Cal.App.4th 1234 (2010) ........................................................................................12

*Chavez v. Netflix, Inc.*
    162 Cal.App.4th 43 (2008) ............................................................................................16

*Clejan v. Reisman*,
    5 Cal.App.3d 224 (1970) ...............................................................................................12

*Cristian Research Institute v. Alnor*,
    165 Cal.App.4th 1315 (2008) ........................................................................................18

*Ketchum v. Moses*,
    24 Cal.4th 1122 (2001) ...............................................................................8, 19, 21, 24

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Lealao v. Beneficial California, Inc.*,
   82 Cal.App.4th 19 (2000) ................................................................................21

*Thayler v. Wells Fargo Bank, N.A.*
   92 Cal.App.4th 819 (2001) ..............................................................................16

*Wilkerson v. Sullivan*,
   99 Cal.App.4th 443 (2002) ..............................................................................12

**Federal Statutes**

42 U.S.C. section:
   1981................................................................................................................6, 7
   1983...........................................................................................................*passim*
   1988.............................................................................................2, 3, 24, 25

**State Statutes**

Civil Code section:
   51.7..........................................................................................................6, 7, 20
   52.1..........................................................................................................*passim*

Government Code section:
   815.2.................................................................................................................6

**Local Rules**

Local Rule:
   7-2(b)..............................................................................................................20

Defs' Opp to Plts' Mtn for Attorneys' Fees and Non-Statutory Costs [20-cv-04679-WHA]

Defendants COUNTY OF ALAMEDA ("County"), STEVEN HOLLAND, and MONICA POPE ("Deputies") (collectively "Defendants") hereby submit their Opposition to the Motion for Attorneys' Fees and Non-Statutory Costs, filed March 22, 2023 ("Motion"), by Plaintiffs Aasylei Loggervale, Aasylei Hardge-Loggervale, and Aaottae Loggervale ("Plaintiffs").

**I.      INTRODUCTION**

In an action that began with 13 causes of action against 6 defendants, resulting in what was effectively 57 independent claims (taking into account each theory of *Monell* liability), Plaintiffs ultimately prevailed on three claims against Holland (for two violations of 42 U.S.C. § 1983 pursuant to the Fourth and Fourteenth Amendments, and for violation of the Bane Act, Cal. Civil Code § 52.1), one against Pope (for violation of § 1983 pursuant to the Fourth Amendment), and one against the County (for municipal/vicarious liability under § 1983 and *Monell*).  With respect to the other claims, Defendants either successfully forced their dismissal or Plaintiffs voluntarily dismissed them.  Despite a success rate of just 9%, Plaintiffs now seek to recover $1,831,305 in attorneys' fees, at rates worthy of an exceptional attorney with 40+ years of civil rights experience (which Plaintiffs' counsel do not have), and at an upward 2.0 multiplier, for a total of $3,662,610.  Plaintiffs also seek $38,296.21 in non-statutory costs.  The Motion should be denied in its entirety as going beyond all bounds of reason.

To begin, despite requesting $3.7 million in fees and costs, Attorneys Brian Gearinger ("Gearinger") and Craig Peters ("Peters") both declined to comply with this Court's order to produce the original underlying time records for inspection upon Defendants' counsel's request.  All of the fees requested by Gearinger and Peters should be denied for that reason alone.  Further, fees should not be awarded, or should be substantially reduced, where Plaintiffs ultimately dismissed approximately 90% of their Second Amended Complaint ("SAC") and three individual defendants after litigating for over two years, ultimately prevailing on just five claims which bore no relation to the dismissed claims.  The fees should also be denied or substantially reduced where they are grossly inflated, unmerited, and unreasonable, including both the hours and rates billed.  As for Plaintiffs' demand for a multiplier, no such enhancement is allowed under federal law and Plaintiffs should not receive one under state law where their requested "lodestar" already encompasses the premium they wish to achieve via the multiplier.  Multipliers are discretionary and Plaintiffs cannot be allowed to double-dip.  Finally, Plaintiffs are not entitled to recover entirely unreasonable and unjustified expenses, such as jury

ORBACH HUFF & HENDERSON LLP

consulting services or travel to Las Vegas to meet with Plaintiffs when a Zoom call would have sufficed.

For these reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion in its entirety or, in the alternative, significantly reduce any award, to no more than $457,826.25 in fees and $10,000 in costs.

## II.   FACTUAL BACKGROUND

In summary, the Deputies were in the area of a Starbucks located at 2720 Castro Valley Boulevard, in Castro Valley, investigating a series of recent burglaries, most of which involved the theft of electronics out of vehicles during the early morning hours on prior days.  While patrolling the area, the Deputies observed a grey four door vehicle parked in a disabled-parking space (and apparently not displaying a disabled-parking placard) that matched the description of a vehicle linked to the earlier burglaries.

Based upon the vehicle and driver (who was still seated in the vehicle) loosely matching the description of the suspects involved in the prior burglaries, Deputy Holland decided to contact the driver.  After making contact, the suspects became defiant and refused to provide any identification.  As the matter escalated, the Deputies placed the three Plaintiffs into handcuffs until they could be identified.  Although Deputy Holland believed there was probable cause to arrest, a decision was made to forego charges.  Once Plaintiffs' identities were confirmed, they were released and allowed to leave, with the incident lasting just over an hour.

Plaintiffs ultimately prevailed at trial on claims under 42 U.S.C. section 1983 and a state law claim under California Civil Code section 52.1, the Tom Bane Civil Rights Act ("Bane Act").  Plaintiffs now bring this Motion seeking entirely unreasonable attorneys' fees and non-statutory costs.  For the reasons discussed herein, the Motion should be denied, with prejudice.  In the alternative, the Court should exercise its discretion to substantially reduce the requested attorneys' fees and non-statutory costs.

## III.   LEGAL ARGUMENT

### A.   General Principles

As the party requesting fees, Plaintiffs bear the burden of establishing an entitlement to an award and documenting the work performed.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  They also have the burden of showing that the fees sought are reasonable.  *Id.* at 433.  None of the statutes under which Plaintiffs proceed guarantee Plaintiffs the recovery of attorneys' fees and costs as a matter of right.[1]  Rather, both of these statutes

---

[1] Plaintiffs seek $1,831,305 in discretionary fees, including a 2.0 multiplier, for a total of $3,662,610, and $38,296.21 in discretionary, non-statutory costs, pursuant to 42 U.S.C. section 1988 and California

Defs' Opp to Plts' Mtn for Attorneys' Fees and Non-Statutory Costs [20-cv-04679-WHA]

ORBACH HUFF & HENDERSON LLP

provide than an award of attorneys' fees and costs should be made – if at all – only if the Court in its discretion decides the litigation, seen as a whole, warrants such an award.  See 42 U.S.C. § 1988 ("In any action or proceeding to enforce a provision of sections … 1983 … of this title ... the court, *in its discretion, may allow* the prevailing party … a reasonable attorney's fee as part of the costs …") (emphasis added); Cal. Civ. Code § 52.1(i) ("the court *may* award the petitioner or plaintiff reasonable attorney's fees") (emphasis added). Further, a fee award must "not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief" (*Fox v. Vice*, 563 U.S. 826, 834 (2011)), must only be for the particular claim on which the plaintiff prevailed (*Hensley*, 461 U.S. at 437), must be reasonable considering the relief obtained (*id.*, at 440), and special circumstances must not render an award unjust (*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416-17 (1978); *Thomas v. City of Tacoma*, 410 F.3d 644, 648 (9th Cir. 2005)).  As explained herein, these governing principles favor reducing Plaintiffs' fees and costs significantly.

### B.      Attorneys Gearinger and Peters Failed to Comply with the Court's Order

On March 8, 2023, the Court issued its Order re Post Trial Motions and Denial of Stipulation ("Post Trial Order").  Dkt. 241.  Paragraph 6 of the Post Trial Order specifically provided, "[i]f the opposing party doubts the accuracy of the declaration, then the moving party must immediately produce the *original* underlying time records for inspection upon request."  Id. at 3:17-19.  Pursuant to the Post Trial Order, on March 24, 2023, counsel for Defendants sent an email to Plaintiffs' three attorneys, asking that they "produce the original underlying time records for Plaintiffs' fee motion as well as the original supporting documents for all other expenses claimed."  Gilbert Dec, ¶ 4, Exh. 1.  These records are particularly important here where Plaintiffs concede in their Motion that Peters *did not* contemporaneously track the time he spent working on this case (and is now attempting to "estimate" such time more than a year after much of it allegedly occurred) and that Attorneys Joseph May ("May") and Gearinger only "mostly" did so.  Motion, at 10:17-20.  This renders counsels' time records inherently suspect where they admit they are operating after the fact, from imperfect memories and circumstantial evidence of time worked, which was not contemporaneously recorded. ///

---

Civil Code section 52.1(h).  Motion, at 3:11-4:6, 7:14-16.  Notably, as discussed further below, nothing in California Civil Code section 52.1(h) provides for the recovery of attorneys' fees and Plaintiffs did not notice any other subdivision of the Bane Act as being a basis for their request for fees. See generally, Notice of Motion.  Fees should be denied under the Bane Act for this reason alone.

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

1       While Mr. May responded to Defendants' counsel's email and explained that "there isn't really an

2 'original underlying time record[]' for me to provide other than what I already have," neither Mr. Gearinger nor

3 Mr. Peters ever responded or provided the original underlying records for their allegedly compensable time.

4 Id., ¶ 4, Exh. 1.  And, although Mr. May attempted to cover for Gearinger and Peters in his emails with

5 Defendants' counsel, stating that he "believe[d] Exhibit A to [Gearinger's] declaration is a printout from his

6 time keeping software," and that Mr. Peters "estimated his time and included that information in his

7 declaration," that is not what is required by the Court's Post Trial Order.  Id.  For instance, Mr. Peters has not

8 provided the original underlying records that he used to "estimate" his time, which would certainly assist

9 Defendants in understanding exactly how Mr. Peters was able to go back, after the fact, and "estimate" 366

10 hours of work over a period exceeding a year.  Because Gearinger and Peters failed to comply with the Court's

11 Post Trial Order, all of their fees and costs should be excluded from any potential recovery by Plaintiffs.

12     **C.**     **Any Fees Awarded Must Be Reduced Due to Plaintiffs' Limited Success**

13       When determining a reasonable fee, the extent of the plaintiff's success is critical.  As stated by the

14 High Court:

15     [A] plaintiff may present in one lawsuit distinctly different claims for relief that are based on

16     different facts and legal theories. In such a suit, even where the claims are brought against the same defendants—often an institution and its officers—counsel's work on one claim will be

17     unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." The [legislature's]

18     intent to limit awards to prevailing parties requires these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the

19     unsuccessful claim.

20 *Hensley,* 461 U.S. at 434-35 (citation omitted).  See also *Farrar v. Hobby*, 506 U.S. 103, 115 (1992).

21       The Supreme Court has held that the extent of a plaintiff's success is a "crucial factor" in determining

22 an attorneys' fee award.  *Hensley*, 461 U.S. at 440.  Thus, "a two-step process for analyzing a deduction for

23 'limited success'" has been adopted by this Circuit.  *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001);

24 accord *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003).  "The first step is to consider whether 'the plaintiff

25 fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded.'"  *Sorenson*, 239 F.3d at

26 1147 (quoting *Hensley*, 461 U.S. at 434).  If so, the Court *must* exclude the time spent on those fruitless and

27 unrelated claims.  *Id.*  With respect to whether claims are related, "the focus is on whether the unsuccessful and

28 successful claims arose out of the same 'course of conduct.'"  *Webb*, 330 F.3d at 1169.  "If they did not, the

Defs' Opp to Plts' Mtn for Attorneys' Fees and Non-Statutory Costs [20-cv-04679-WHA]

1    hours expended on the unsuccessful claims should not be included in the fee award."  *Dang v. Cross*, 422 F.3d

2    800, 813 (9th Cir. 2005) (citing *Webb,* 330 F.3d at 1169).

3           After eliminating any unrelated unsuccessful claims, courts must then "consider whether 'the plaintiff

4    achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee

5    award.'"  *Sorenson*, 239 F.3d at 1147 (quoting *Hensley*, 461 U.S. at 434).  The question is whether the practical

6    effect of the litigation demonstrates that Plaintiff achieved his original goals.  *Sorenson*, 239 F.3d at 1147;

7    *Webb*, 330 F.3d at 1163 (noting that the jury found in favor of plaintiff on all claims against one defendant, but

8    against it on the rest, and affirming a roughly 50 percent fee reduction).  "The result is what matters."  *Hensley*,

9    461 U.S. at 435.  Accordingly, should the Court exercise its ample discretion to award Plaintiffs any fees, its

10   award must be limited and commensurate with the extremely limited scope of Plaintiffs' success.  *Farrar*, 506

11   U.S. at 115 ("Having considered the amount and nature of damages awarded, the court may lawfully award

12   low fees or no fees without reciting the 12 factors bearing on reasonableness or multiplying 'the number of

13   hours reasonably expended . . . by a reasonable hourly rate.'" (citations and quotations omitted)); *Hensley*, 461

14   U.S. at 436-37 ("There is no precise rule or formula for making these determinations. The district court may

15   attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for

16   the limited success").

17          Plaintiffs' SAC alleged 13 causes of action against six defendants, including the County, Holland,

18   Pope, Keith Leeper ("Leeper"), Anthony DeSousa ("DeSousa"), and Cameron Galloway ("Galloway").  On

19   summary judgment, Defendants disposed of several of those claims and several theories of liability.  See Dkt.

20   106 at 8:27-28 (invasion of privacy claim), 10:16-23 (claims against former defendant Deputy Leeper[2]), 11:18-

21   20 (official policy/custom as basis for *Monell* liability), 11:21-12:5 (inadequacy of training as basis for *Monell*

22   liability), 12:6-19 (ratification of "grossly inadequate" investigation as basis for *Monell* liability); 13:1-5

23   (conversion claim).  On November 12, 2021, Plaintiffs voluntarily dismissed all claims against Galloway and

24   agreed to bear their own fees and costs in connection with Galloway, in addition to dismissing the Eighth,

25

26   [2] The Court even noted that Leeper's dismissal from these claims was the result of Leeper arriving to the
     scene "late" and was thereby "protected by his good-faith reliance on Deputies Holland and Pope's
27   accounts."  Dkt. 106 at 10:16-18.  Accordingly, where the Court distinguished the claims against Leeper
     from the claims against Holland and Pope on factual grounds, clearly the claims against Leeper are not
28   part of the same common core of facts that led to liability as against Holland and Pope.

Defs' Opp to Plts' Mtn for Attorneys' Fees and Non-Statutory Costs [20-cv-04679-WHA]

ORBACH HUFF & HENDERSON LLP

1   Ninth, Tenth, and Twelfth Causes of Action for Assault, Battery, False Arrest and Imprisonment, and

2   Negligence.  Dkt. 142.  Further, just prior to trial, Plaintiffs dismissed a number of parties and claims that had

3   been litigated for several years.  Dkt. 174, at 2:7-3:18 (dismissing with prejudice all claims against Leeper and

4   DeSousa, all claims against Pope except for the First Cause of Action regarding the allegedly unlawful search

5   and/or seizure of Plaintiffs' property, and dismissing the Third Cause of Action for violation of 42 U.S.C. §

6   1983 – First Amendment, Fifth Cause of Action for violation of 42 U.S.C. § 1981, and Seventh Cause of

7   Action for violation of Cal. Civil Code § 51.7).  As with Galloway, Plaintiffs agreed to bear their own

8   attorneys' fees and costs relative to Leeper and DeSousa.[3]  Dkt. 174.

9         Indeed, as Plaintiffs concede, by the time of trial, the case had been reduced to a mere skeleton of what

10  Plaintiffs had litigated for over two years, asserting only: (1) as against Holland, violation of section 1983 for

11  the detention/arrest, search and use of force under the Fourth Amendment, racial profiling under the Fourteenth

12  Amendment, violation of the Bane Act, Cal. Civ. Code section 52.1, and punitive damages; (2) as against Pope,

13  violation of section 1983 for the search only, under the Fourth Amendment; and (3) as against the County,

14  violation of section 1983 for *Monell* liability based on ratification, and vicarious liability under the Bane Act,

15  pursuant to Cal. Gov. Code section 815.2.  Motion, at 10:1-5.  Thus, by the time of trial, Defendants had

16  managed to whittle the claims in Plaintiffs' SAC down to approximately 10% of what Plaintiffs litigated from

17  the initiation of this action, and only 3 of the original 6 defendants.[4]  And, as noted, Plaintiffs are not entitled to

18  recover their fees on their unsuccessful claims, unrelated to the claims on which they prevailed at trial.

19        Thus, for example, Plaintiffs' unsuccessful claims against Leeper, DeSousa, and Galloway, who were

20  dismissed entirely as Defendants and did not incur any liability in this matter, are entirely unrelated to

21  Plaintiffs' successful claims against the County, Holland, and Pope.  See, e.g., Dkt. 106, at 10:8-18 (finding

22  Leeper was uninvolved with the initial detention of Plaintiffs and granting summary judgment in favor of

23

24  [3] As such, Plaintiffs are not entitled to *any* fees or costs relative to the dismissed individual defendants,
    including Leeper, DeSousa, and Galloway, as Plaintiffs stipulated to bear their own fees and costs.  Dkt.

25  142, 174.  However, Plaintiffs do not appear to have made any effort whatsoever to reduce their fees in
    accordance with these prior stipulations.

26  [4] Plaintiffs' protestations in the Motion that Defendants' counsel made "arguments that lacked legal

27  merit, requiring substantial amounts of effort" (Motion, at 5:10-11) is belied by the fact that 90% of
    Plaintiffs' case lacked merit and required Defendants' counsel to respond.  Perhaps Plaintiffs would

28  have incurred less fees if their counsel had attempted to only assert meritorious claims from the get-go,
    instead of throwing everything against the wall to see what might stick.

Defs' Opp to Plts' Mtn for Attorneys' Fees and Non-Statutory Costs [20-cv-04679-WHA]

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

Leeper as to Plaintiffs' claims of violation of the Fourteenth Amendment and Cal. Civ. Code § 52.1).

Likewise, the successful claim that Holland's conduct was racially motivated in violation of the Fourteenth Amendment is entirely unrelated to the conduct of Pope and the former named defendants, for whom Plaintiffs did not prove any improper motivation at all.  See Motion, at 10:1-3.  Further, the conduct underlying the claims on which Plaintiffs were granted relief, which focused solely on the detention and searches of Plaintiffs, and Holland's use of force, is entirely unrelated to the conduct underlying the claim that Defendants violated the First Amendment in the dismissed Third Cause of Action, which focused on a deprivation of the right to free speech, the conduct underlying the dismissed Fifth Cause of Action for violation of 42 U.S.C. section 1981 and Seventh Cause of Action for violation of California Civil Code section 51.7, both of which focused on intentional racial discrimination, and the conduct underlying the dismissed Thirteenth Cause of Action for conversion, which focused on the deprivation of property.  Id., at 10:1-5.  Additionally, while Plaintiffs will likely argue that the dismissed state law claims for assault and battery are related to the same common core of facts as the successful claim of excessive force against Holland, that is not the case with respect to Pope and Leeper, against whom Plaintiffs unsuccessfully alleged the claims for assault and battery.  Plaintiffs are not entitled to recover any fees on these unsuccessful, unrelated claims.[5]

Moreover, that is only the first step of excluding fruitless claims, as specified in *Sorenson*.  *Sorenson*, 239 F.3d at 1147 (quoting *Hensley*, 461 U.S. at 434).  Because, even if any of the unsuccessful claims are related to the successful claims (they are not), the second step in *Sorenson* requires the Court to additionally reduce the total compensable hours that remain by the quantum of Plaintiffs' overall success in the litigation.  See *Sorenson*, 239 F.3d at 1147 (quoting *Hensley*, 461 U.S. at 434).  Plaintiffs' claimed sum of $1,831,305 is

---

[5] Plaintiffs submitted settlement communications as part of the Motion, claiming that the "extremely low settlement offers Defendants made early in the case" should be considered in determining the level of Plaintiffs' success.  See May Dec, Exhs. D, E.  These settlement exchanges occurred in January 2021 and September 2021, between a year and a half and two years prior to trial, in the very early stages of the case.  Id.  As Plaintiffs admit in the Motion, Defendants made more substantial settlement offers as the case progressed, including an offer of $200,000 a year prior to trial, in February 2022, and an offer of $748,776 in January 2023.  See May Dec, Exhs. F, G.  These were substantial offers for an allegedly unlawful detention that did not result in physical injuries, or any injuries at all which required any sort of medical attention, and lasted just over an hour.  This is not a case like *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011), which Plaintiffs cite, and in which a party "took unreasonable settlement positions and prolonged the litigation…"  While the jury ultimately disagreed with Defendants, that does not render a $200,000 settlement offer per se unreasonable.  The history of settlement negotiations in this matter does not support Plaintiffs' request for the recovery of attorneys' fees.

1  therefore the ceiling of fees and costs awardable while the ultimate award, if any, should be depreciated

2  commensurate to Plaintiffs' very limited success.  To the extent any fees are awarded at all, Plaintiffs should be

3  awarded no more than $457,826.25, a quarter of their total claim.

4        **D.**    **Plaintiffs' Requested Attorneys' Fees and Costs are Grossly Inflated, Unmerited and**

5               **Unreasonable**

6        Plaintiffs also have the burden of showing the fees sought are reasonable.  *Hensley*, 461 U.S. at 433.

7  As explained below, Plaintiffs' claims are grossly inflated, unmerited and unreasonable and they have failed to

8  carry their burden.

9           **1.**    **Plaintiffs' Claimed Fees Are Excessive and Unreasonable**

10        Counsel for a prevailing party is obligated to exclude hours that are excessive or unnecessary.  As one

11  Court stated, "[h]ours that are not properly billed to one's client are not properly billed to one's adversary

12  pursuant to statutory authority."  *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980).  In *Copeland*, the

13  D.C. Court of Appeals held that hours spent on claims on which the party did not prevail or "hours that simply

14  should not have been spent at all, such as where attorneys' efforts are unorganized or duplicative" are not

15  reasonably expended and may not be compensated.  *Copeland,* 641 F.2d at 902-903; *Farris v. Cox*, 508 F.

16  Supp. 222, 227 (N.D. Cal. 1981) (time on fee petition denied for "overreaching"); *see also*, *Brown v. Stackler*,

17  612 F.2d 1057, 1059 (7th Cir. 1980) ("If ... the Court were required to award a reasonable fee when an

18  outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable

19  demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee

20  to what they should have asked in the first place.").  "In referring to 'reasonable' compensation, we indicated

21  that trial courts must carefully review attorney documentation of hours expended: 'padding' in the form of

22  inefficient duplication of efforts is not subject to compensation."  *Ketchum v. Moses*, 24 Cal.4th 1122, 1131-32

23  (2001).

24        Basically, a fee award should be limited to compensation for the amount of time a competent and

25  objective attorney might reasonably expect to spend efficiently litigating the successful claims, and one factor

26  to consider in making this determination is whether, in light of all the circumstances, the time would reasonably

27  have been billed to a private client.  *Hensley,* 461 U.S. at 434.  In calculating a reasonable number of hours, the

28  applicant must justify his or her motion by submitting evidence supporting the hours worked and the rates

ORBACH HUFF & HENDERSON LLP

- 8 -

claimed.  *See, Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).  The Court reviews the time records to determine whether the hours are adequately documented in a manner that can be properly billed directly to clients.  *Hensley*, 461 U.S. at 433–34.  The Court may reduce these hours if it believes the documentation to be inadequate, the hours duplicative, or excessive or unnecessary.  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986); *Cotton v. City of Eureka, Cal.*, 889 F.Supp.2d 1154, 1176 (N.D. Cal. 2012).  Courts have discretion to reduce hours where billing records are so vague or general as to frustrate the Court's efforts to determine whether the hours were, in fact, reasonable.  *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

There are significant problems with the billing records submitted by Plaintiffs' counsel, including that they are fatally vague, inadequately document the work performed, and reflect excessive, unnecessary and duplicative work.  For example, nearly all of Peters' time entries are too vague to figure out what he actually did in connection with the time billed.  Based on the information provided in his entries, it appears 90% or more of his work on this matter exclusively involved reviewing and writing emails, most of which were to and from May and Gearinger, and none of which provided enough information to so much as deduce whether the emails related to this litigation.  See generally Peters Dec, Exh. A, and see e.g., Exh. A, p. 1 ("Write, review & respond to emails to/from JSM/BGK").  When he was not churning his fees by engaging in excessive email exchanges and other communications with May and Gearinger, Peters would bill upwards of 15.5 hours with a two-word description like "Trial preparation," with no indication whatsoever as to what he was actually doing.  Peters Dec., Exh. A at p. 5.  And, in one of the best examples of the absurdity of the fees requested by Plaintiffs' counsel, they are also attempting to charge Defendants for *not working*.  Indeed, Peters billed 25 hours for two days of "trial deliberations," resulting in fees of $23,750 for time Peters spent doing who knows what, while the jury deliberated.  Peters Dec, Exh. A at p. 6.  May likewise billed extensive time for "wait[ing] for jury to deliberate" and Mr. Gearinger's hours for the same dates appear to include such time as well.  May Dec., Exh. B at pp. 73-74.

The fee records also have other problems, including inaccurate arithmetic (May Dec, Exh. B at p. 1, charging $840 for 0.2 hours of work at $700/hour), attempting to charge Defendants for Plaintiffs' counsels' time to travel to and from Las Vegas to meet with Plaintiffs despite the fact a Zoom call would have sufficed (May Dec, Exh. B at p. 93), and for excessive communications with one another such that the bills are replete

- 9 -

with the same time being charged by two and sometimes all three attorneys.  May Dec., Exh. B at pp. 1 (12/13/2019, May: "Email Cases to Brian"; Gearinger: "Review of email from JSM"), 3 (7/6/2020, May: "E-mails with Brian re complaint filing"; Gearinger: "Review and respond to multiple emails from JSM"), 7 (10/20/2020, May and Gearinger both bill to speak to each other on the phone), 58 (all three attorneys bill to attend a Zoom call with each other, but May stated the meeting occurred on January 9, 2023, while Peters and Gearinger stated that it occurred on January 8, 2023).  The time records also reflect significant time related to unnecessary work that Plaintiffs' counsel created.  Specifically, Plaintiffs' counsel demanded and billed to review all incident reports for auto burglaries in the unincorporated areas of the County for a six-month period, which resulted in counsel reviewing literally hundreds of reports and over a thousand pages that are entirely irrelevant to this action.  May Dec, Exh. B at p. 29 (Motion to Compel); Gilbert Dec, ¶ 7 (resulting in production of AC226-1732); Dkt. 66.  This was a colossal waste of time and resources that was generated solely by Plaintiffs' counsel and should not be charged to Defendants.  Moreover, all three attorneys repeatedly billed to do the exact same legal work and attend the same hearings and events, including that all three of them attended every day of trial, while Defendants managed with one trial counsel.  May Dec, Exh. B at pp. 9 (Gearinger prepared Plaintiffs' opposition to Defendants' motion to retain confidentiality and May "review[ed]" it), 19 (May and Gearinger attended the deposition of Holland), 20 (May and Gearinger attended a discovery hearing), 27 (May and Gearinger attended the deposition of Pope), 34-35 (May and Gearinger attended the depositions of Aaslyei and Aaottae Loggervale), 72-74 (all three attorneys attended trial).

Finally, the bills reflect grossly inflated hours.  For example, in connection with the cross-motions for summary judgment alone, Plaintiffs' counsel billed nearly $59,395 to prepare Plaintiffs' MSJ and another $76,852.50 to oppose Defendants' MSJ.  May Dec, Exh. B at pp. 24, 45.  In comparison, Defendants expended less than half that amount in both preparing their MSJ and opposing Plaintiffs' MSJ.  Gilbert Dec, ¶ 8.  Similarly, Plaintiffs billed $19,650 in connection with the deposition of Holland and $8,700 in connection with the deposition of Pope, for a total of $28,350.  May Dec, Exh. B at pp. 19, 27.  Those depositions lasted a combined total of less than 11 hours.  Gilbert Dec, ¶ 8.  Likewise, Plaintiffs claim to have expended $40,045 in fees in connection with the three Plaintiffs' depositions (May Dec, Exh. B at p. 35), which were similarly of limited duration (Gilbert Dec, ¶ 8).  Plaintiffs also billed $75,860 for trial preparation in 2021 (May Dec, Exh. B at p. 52), another $266,875 for trial preparation in 2022/2023 (id., at p. 69), $24,677.50 for a focus

Defs' Opp to Plts' Mtn for Attorneys' Fees and Non-Statutory Costs [20-cv-04679-WHA]

ORBACH HUFF & HENDERSON LLP

1  group/mock trial (id., at p. 70), and $213,735 for trial (id., at p. 74).  Defendants expended only a fraction of

2  those numbers for trial and trial preparation and did not do a focus group or mock trial.  Gilbert Dec, ¶ 8.

3  Plaintiffs also claim to have spent $13,830 on a "vaccine issue" of their own making, and for which Defendants

4  did not spend any fees.  Gilbert Dec, ¶ 8.  It is unclear how Plaintiffs can accuse Defendants of over-litigating

5  this action (Motion, at 5:6-22, 6:10-11, 12:12-13) when clearly it is Plaintiffs' counsels' fees that are excessive

6  and unreasonable.

7       **2.     Plaintiffs Request Fees That Are Excessive for the Northern District of**

8              **California**

9       Typically, a reasonable hourly rate is the rate for comparable legal services in the community where the

10  case was tried.  In determining the reasonable rate, the Court also considers the lawyer's experience and the

11  nature of the work performed.  *Hensley,* 461 U.S. at 430.  "The fee applicant has the burden of producing

12  satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those

13  prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation."

14  *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987); *see also, Carson v. Billings Police Dep't*,

15  470 F.3d 889, 891 (9th Cir. 2006) ("When a party seeks an award of attorney's fees, that party bears the burden

16  of submitting evidence of the hours worked and the rates paid.").  And, "the relevant community is the forum in

17  which the district court sits."  *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  The

18  Ninth Circuit has determined that "declarations filed by the fee applicant do not conclusively establish the

19  prevailing market rate."  *Id.* at 980.

20      The Supreme Court has defined a reasonable hourly rate as "one that is adequate to attract competent

21  counsel, but that does not produce windfalls to attorneys."  See *Blum v Stenson*, 465 U.S. 886, 893-94 (1984)

22  (citation and internal quotation marks omitted).  The burden of establishing the reasonableness of the hourly rate

23  is on the fee applicant.  *Id.* at 887 (holding that "the burden is on the fee applicant to produce satisfactory

24  evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing

25  in the community for similar services by lawyers of reasonably comparable skill, experience and reputation").

26  "The burden does not shift to [the defendant] to produce rebuttal evidence unless and until Plaintiff meets [its]

27  initial burden."  *Navarro v. General Nutrition Corp.*, 2005 WL 2333803 (N.D. Cal. Sept. 22, 2005).

28  ///

Defs' Opp to Plts' Mtn for Attorneys' Fees and Non-Statutory Costs [20-cv-04679-WHA]

ORBACH HUFF & HENDERSON LLP

Ultimately, this Court has discretion to determine the rate that is most applicable:  "The reasonableness of attorney fees is within the discretion of the trial court, to be determined from a consideration of such factors as the nature of the litigation, the complexity of the issues, the experience and expertise of counsel and the amount of time involved."  *Wilkerson v. Sullivan*, 99 Cal.App.4th 443, 448 (2002).  "Testimony or other direct evidence of the reasonable value of the services need not be introduced, the knowledge and experience of the trial judge being sufficient."  *Clejan v. Reisman*, 5 Cal.App.3d 224, 241 (1970) (citation omitted); *see also Chacon v. Litke*, 181 Cal.App.4th 1234, 1259 (2010) ("The 'experienced trial judge is the best judge of the value of professional services rendered in his court . . .").  "A district court also may consider its own expert knowledge and experience in setting an hourly rate for the lodestar calculation."  *Cotton*, 889 F.Supp.2d at 1166–67, *citing, Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Here, Plaintiffs submit nothing more than their own counsel's declarations and the declarations of other individuals who are members of or sympathetic to Plaintiffs' Bar, with an equally vested interest in supporting as high a rate as possible.  However, the rates proposed by Plaintiffs' counsel are not in line with those approved by the Northern District in civil rights cases, which are generally between $300 and $500 and top out at $700.  *Padgett v. Loventhal*, No. 5:04-CV-03946-EJD, 2019 WL 2491957, at *3 (N.D. Cal. June 14, 2019), aff'd, No. 19-16383, 2021 WL 4804958 (9th Cir. Oct. 14, 2021) ("The relevant community for this motion is the Northern District of California.  A reasonable hourly rate for civil rights attorneys in this community is up to $700 for partners, up to $350 for associates, up to $200 for paralegals and law clerks. [citing cases].");  *Johnson v. Johnson*, No. 17-CV-04840-SVK, 2020 WL 901517, at *6 (N.D. Cal. Feb. 25, 2020) Cal. May 29, 2019) (approving hourly rates between $250 and $475);  *Johnson v. 480 Geary St., LLC*, No. 19-CV-02460-JSW, 2021 WL 5407874, at *6 (N.D. Cal. Jan. 27, 2021) ("Other courts have found approximately $ 250/hr an appropriate rate for plaintiff's firm's junior-most attorneys, which accords with the prevailing rates in this District.");  *Zuegel v. Mountain View Police Dep't*, No. 17-CV-03249-BLF, 2021 WL 2808977, at *7 (N.D. Cal. July 6, 2021), *appeal dismissed in part,* No. 21-16276, 2022 WL 3131820 (9th Cir. Apr. 14, 2022) (citing authority for awarding $675 per hour to "two highly experienced solo practitioners" in a civil rights case, as well as $150 per hour and $173 per hour for the paralegals);  *Heifetz v. Mona's Burgers Clayton LLC.*, No. 19-CV-02392-LB, 2021 WL 292034, at *4–5 (N.D. Cal. Jan. 28, 2021), *reconsideration denied sub nom. Heifetz v. Monas Burgers Clayton LLC.*, No. 19-CV-02392-LB, 2021 WL 1176533 (N.D.

Defs' Opp to Plts' Mtn for Attorneys' Fees and Non-Statutory Costs [20-cv-04679-WHA]

ORBACH HUFF & HENDERSON LLP

Cal. Mar. 29, 2021) (allowing hourly rate of $325 per hour); *Gonzalez v. Machado*, No. 17-CV-02203-LB, 2019 WL 3017647, at *4–5 (N.D. Cal. July 10, 2019) (allowing hourly rates between $250 and $425); *Johnson v. AutoZone, Inc.*, No. 17-CV-02941-PJH, 2019 WL 2288111, at *6–7 (N.D. Cal. May 29, 2019) (allowing hourly rates between $250 and $425); *Castillo-Antonio v. Lam*, No. 18-CV-04593-EDL, 2019 WL 2642469, at *7 (N.D. Cal. Apr. 10, 2019), *report and recommendation adopted,* No. 18-CV-04593-HSG, 2019 WL 2635537 (N.D. Cal. June 27, 2019) (allowing $350 per hour for counsel with over 20 years' experience); *Trujillo v. Orozco*, No. 5:17-CV-00566-EJD, 2018 WL 1142311, at *2–3 (N.D. Cal. Mar. 2, 2018), *aff'd,* 790 F. App'x 96 (9th Cir. 2020) (allowing rates of $400 to $495 for attorneys and between $120 and $175 for paralegals); *Jessica Dominguez, et al., v. City of San Jose, et al.*, No. 18-CV-04826-BLF, 2023 WL 2717266, at *5–6 (N.D. Cal. Mar. 29, 2023) (approving rates of $500 to $650 per hour for attorneys and $190 per hour for paralegal); *Johnson v. 12 N Park Victoria LLC*, No. 20-CV-02200-LHK, 2021 WL 3291890, at *14 (N.D. Cal. Aug. 2, 2021), *on reconsideration*, No. 20-CV-02200-VC, 2022 WL 1914064 (N.D. Cal. June 3, 2022) (allowing rates of between $300 and $475 per hour for attorneys).  While higher rates have been allowed in some cases, they involved attorneys with over 40 years of experience.  *See, e.g., Civil Rights Educ. & Enf't Ctr. v. Ashford Hosp. Tr., Inc.*, No. 15-CV-00216-DMR, 2016 WL 1177950, at *5 (N.D. Cal. Mar. 22, 2016) (approving an hourly rate of $900 for an attorney with over 40 years of practice and a rate of $750 per hour for an attorney with 25 years of experience); *Human Rights Def. Ctr. v. Cnty. of Napa*, 2021 WL 1176640, at *11 (N.D. Cal. Mar. 28, 2021) (approving hourly rates of $950 for an attorney with about 40 years of experience; $625 for an attorney with about 10 years of experience; $650 for an attorney with about 20 years of experience; and $260 and $350 for paralegals with 10 and 30 years of experience, respectively).

Peters has been a licensed attorney in California for approximately 26 years (https://apps.calbar.ca.gov/attorney/Licensee/Detail/184018), and is a personal injury and criminal defense attorney, not a civil rights attorney.  Peters Dec, at 2:7-17.  His own biography on his firm's website does not even mention civil rights and he has simply not established that he has any specialized expertise in the civil rights arena.  Id. (see https://altairlaw.us/craig-m-peters).  Gearinger and May have been licensed attorneys in California for approximately 33 years (https://apps.calbar.ca.gov/attorney/Licensee/Detail/146125) and 17 years (https://apps.calbar.ca.gov/attorney/Licensee/Detail/245924), respectively.  Although they appear to have more experience in civil rights matters than Peters, they have offered no evidence that such cases account for a

Defs' Opp to Plts' Mtn for Attorneys' Fees and Non-Statutory Costs [20-cv-04679-WHA]

ORBACH HUFF & HENDERSON LLP

significant portion of their practice.  Rather, Gearinger's practice appears to also include personal injury actions, claims for breach of contract and violation of disability laws, while May likewise handles personal injury actions.  See Gearninger Dec, ¶ 9; May Dec, ¶ 6.  There is simply no indication that any of Plaintiffs' counsel brought any specialized expertise or knowledge that would warrant the rates they are requesting.[6]

Further, although counsels' declarations purport to affirm their legal experience (*see,* May Dec at ¶¶ 4-12; Gearinger Dec at ¶¶ 9-10; Peters Dec at ¶¶ 2-4), nowhere in either the Motion or the declarations is the claimed rate asserted for each of the attorneys ever explained or justified.  *See, generally,* Motion; May Dec; Gearinger Dec; Peters Dec.  Rather, they simply assert their alleged "current rate" (Peters Dec at ¶ 6), claim they are "informed and believe and thereon allege" that the hourly rates they are seeking are reasonable and customary (Gearinger Dec at ¶ 14), or that it is their "understanding and belief" that the rate they are seeking is reasonable and customary (May Dec at ¶ 17), without support.  In fact, the rates claimed by Plaintiffs' counsel are well above what is typical in this locale for civil rights litigation.  Gilbert Dec at ¶ 5.  Plaintiffs offer no evidence or support at all to suggest that they are entitled to the rates asserted except for their own self-serving declarations and declarations of individuals with a similar interest in assuring the highest rate possible.  As such, Plaintiffs have failed to meet their burden to prove that their fees were reasonably incurred.

For these reasons, attorneys May, Gearinger, and Peters are not entitled to hourly rates of $700, $850, and $950, respectively.  Nor is their paralegal entitled to $325 per hour, which would be a reasonable hourly rate for an *attorney*.  Defendants therefore submit that Plaintiffs' counsels' rates and the consequent award should be reduced as follows:  Gearinger ($450/hr), Peters ($400/hr), May ($350/hr), and Michael Keck ("Keck") ($200/hr).

///

///

---

[6] Indeed, in Exhibit B to the May Declaration, which compiles all of the billed time at issue in the Motion, there are 103 references to "research" as well as numerous other entries for "review[ing]" specific cases and statues.  See generally, May Dec, Exh. B.  If Plaintiffs' counsel were truly experts in civil rights law and litigation, as their requested hourly rates would suggest, they would not have had to do so much research to understand basic law and procedure.  On the other hand, if Plaintiffs' counsel were new to this area of law and inexperienced, it may be reasonable to have more hours for research and education, but at a lower hourly rate reflecting the relative inexperience of counsel.  Plaintiffs, however, are not entitled to *both* the extra time for research *and* the hourly rate of an expert attorney.

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

3.      **Three Partner Level Attorneys Billed for Work That Should Be Done by**

**Associates or Legal Assistants**

"When a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable."  *New Mexico Citizens for Clean Air & Water v. Espanola Mercantile Co., Inc.*, 72 F.3d 830, 834 (10th Cir. 1996), *citing Halderman ex rel. Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3rd Cir. 1995); *see also, Zucker v. Occidental Petroleum Corp.*, 968 F. Supp. 1396, 1402 (C.D. Cal. 1997) (reducing fees based upon failure to delegate tasks to associates, such as legal research); *MacDougal v. Catalyst Nightclub*, 58 F.Supp.2d 1101, 1106-07 (N.D. Cal. 1999) (reducing fee award where trial lawyer with 30 years' experience billed for tasks that "could have been undertaken by less experienced associates").

In this case, for example, Peters, a lawyer with 26 years of experience, spent time reviewing deposition videos (Peters Dec, Exh. A, p. 2), while May, with 17 years of experience, spent time obtaining "sample complaints" (May Dec, Exh. A at p. 2), filing documents[7] (id. at p. 2), researching basic law (id. at pp. 2-5), and researching public policies (id. at p. 5).  Gearinger appears to have also billed for the same research performed by May (Gearinger Dec, Exh. A at p. 2 (e.g., reasonable suspicion research)), in addition to research of legislative histories of statutes (id. at p. 16), and reviewing cases cited by Defendants (id. at p. 31).  Indeed, these billing statements show a disproportionate amount of time by partner level attorneys on non-legal and associate level tasks such as routine client correspondence (see, e.g., May Dec, Exh. B at pp. 2, 4, 5, 6, 13),

---

[7] It appears both May and Gearinger do not have legal support assistants.  Their apparent decision not to hire an assistant or secretary does not impose an obligation on Defendants to pay May's requested $700 an hour for "filing" and "serving" documents.  Such actions appear multiple times in his billing records. See generally, May Dec., e.g., Exh. A at p. 2 (filing summons and complaint), 3 (filing certification of interested entities), 7 (e-filing stipulation and order, and First Amended Complaint), 10 (filing discovery letter), 12 (serving report), 13 (serving amended notice of deposition, objections to deposition notice, second amended deposition notice).  Secretarial work is compensable only if it is customary to bill separately for such services in their legal market, and then, only at the market rate for those services. *See Trustees of Constr. Indus. & Laborers' Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006); *see also Lipsett v. Blanco*, 975 F.2d 934, 940 (1st Cir. 1992) ("[C]lerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them."); *Sanford*, 2005 WL 2562712, at '3 (denying fees for secretarial work, which "constitute overhead") (citations omitted); *In re Wepsic*, 238 B.R. 845, 851 (Bankr. S.D. Cal. 1999) (disallowing time for preparing for service of complaint; secretarial work is included in overhead).  Accordingly, all such billed time should be removed or significantly reduced.

Defs' Opp to Plts' Mtn for Attorneys' Fees and Non-Statutory Costs [20-cv-04679-WHA]

1   compiling records and exhibits and other document management tasks (see, e.g., id., at pp. 9, 22, 43, 67),

2   researching law and procedure such as local rules (see, e.g., id., at pp. 1-7, 9, 13, 17, 39, 47), and instructing

3   vendors such as court reporters (see, e.g., id. at pp. 11, 15, 21, 23, 41).  Plaintiffs fail to explain why Keck,

4   Gearinger's paralegal, did not perform this work, instead of the attorneys.  These tasks are not just an

5   occasional item in these bills but instead a substantial component of the total hours claimed.  As discussed

6   above, the rates being claimed by Plaintiffs' counsel are those of partner-level attorneys with 40+ years of

7   experience.  Such rates should not be awarded where, as here, the hours being billed do not reflect the use of

8   the corresponding professional competencies.  Rather, Plaintiffs' counsels' alleged billings are over-inflated

9   with non-legal or other more menial legal tasks for which legal service rates should not be reimbursed.

10                  **4.      Unnecessary Staffing**

11          Bills that are excessive based on overstaffing should also be reduced.  *See Cunningham v. Cnty. of Los*

12   *Angeles*, 879 F.2d 481, 485 (9th Cir. 1988) (overstaffing is among factors that may distinguish between hours

13   spent and reasonable number of hours); *Chalmers*, 796 F.2d at 1210; *Potter v. Blue Cross Blue Shield of Mich.*,

14   10 F.Supp.3d 737, 749 (E.D. Mich. 2014) (adopting magistrate's reduction of hours for overstaffing on briefing

15   and preparation for a hearing); *Chavez v. Netflix, Inc.* 162 Cal.App.4th 43, 63-64 (2008) (reducing hours

16   claimed when two attorneys billed for activities - such as court hearings - that could have been accomplished

17   by one); *Thayler v. Wells Fargo Bank, N.A.* 92 Cal.App.4th 819, 839 (2001) (finding a downward adjustment

18   necessary where there is duplication and stating that "the unquestioning award of generous fees may encourage

19   duplicative and superfluous litigation"); *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th

20   Cir. 2004) ("[C]ourts ought to examine with skepticism claims that several lawyers were needed to perform a

21   task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing

22   when one would do.").  Indeed, as this Court stated in its Post-Trial Order: "Ordinarily, no more than one

23   attorney and one paralegal need be present at a deposition; more will normally be deemed excessive.

24   Ordinarily, no more than one attorney need attend a law-and-motion hearing; more will normally be deemed

25   excessive.  To allow for symmetry, however, the award will take into account the staffing used by the opposing

26   party."  Dkt. 241, at ¶ 5.

27   ///

28   ///

Defs' Opp to Plts' Mtn for Attorneys' Fees and Non-Statutory Costs [20-cv-04679-WHA]

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

This case is the poster-child for unnecessary staffing.[8]  As discussed above, despite what should have been a simple case for an unlawful detention, Plaintiffs staffed this action with three partner-level attorneys from separate law firms, and then had *at least* two of those attorneys at nearly every pre-trial event, working on the same pleadings and discovery throughout the action, and *all three* attended trial.  See, e.g., May Dec, Exh. B at pp. 9, 19, 20, 27, 34-35, 72-74.[9]  Defendants, on the other hand, had one partner and one associate handle day to day litigation and only the partner attended trial.  Gilbert Dec, ¶ 7.  Similarly, Defendants had one attorney handle depositions and court hearings with very few exceptions, such as the pretrial conference.  Id. Plaintiffs' excessive staffing was unnecessary and unjustified and any fees awarded to Plaintiffs should be reduced accordingly.

## 5.    Plaintiffs Rely on Inappropriate Block Billing

Block billing is generally impermissible; a district court has "authority to reduce hours that are billed in block format[,]" because "block billing makes it more difficult to determine how much time was spent on particular activities."  *Welch*, 480 F.3d at 948; *see also Hensley*, 461 U.S. at 437 (holding that an application for

---

[8] Plaintiffs assert in the Motion that it is "customary in complicated cases" to have "more than one attorney" attend depositions and hearings, and even to have three attorneys attend trial, because "two heads are better than one."  Motion, at 6:15-19.  There are a few problems with Plaintiffs' statement. First, it is directly contradicted by the Court's Post-Trial Order, which provides that staffing multiple attorneys for one event is "normally deemed excessive (Dkt. 241, at ¶ 5), and where this action, involving a simple alleged unlawful detention, is not and should not have been in any way complicated. Plaintiffs' counsel even conceded this point in Peters' rebuttal closing argument, stating that "this case is not actually that complicated at the end of the day.  The law is super clear." Id., at 1270:10-11.  Rather, to the extent there were any complications in this matter, it was because of the way Plaintiffs' counsel litigated the action.  Indeed, even the Court chastised May for "how ridiculous [he made] this case" and "the complicated way in which [he] tried to pitch this case…" Trial Tx, at 717:2-8.  While Plaintiffs now wish to make this case out to be a matter of rocket science for purposes of the pending Motion, that is simply not an accurate characterization of the relatively simple facts and law that were applicable to this matter.  In any event, attorneys such as May, Gearinger, and Peters, with 17, 33, and 26 years of experience, respectively, should be able to handle hearings, depositions and trial without the support of co-counsel, just as counsel for Defendants did.  And, despite Plaintiffs' counsels' continued unprofessional accusations against Defendants' counsel, Defendants' counsel did not knowingly make any misrepresentations to the Court or Plaintiffs' counsel during the course of this action.  Gilbert Dec., ¶ 9.  Regardless, even if Defendants' counsel made an inadvertent mistake of fact at some point, Plaintiffs fail to explain why they believe they need three attorneys to catch and correct a simple mistake.  Motion, at 11:16-18.

[9] Again, these are just examples, as this was a theme by Plaintiffs' counsel, not a one-off circumstantial anomaly.  There is simply not enough room in this Opposition to identify each instance in which two or three of Plaintiffs' counsel billed for the same work, to attend the same hearings, calls, and conferences, and for the same communications.  It happened ad nauseum.

- 17 -

attorneys' fees must be supported by billing records that enable the reviewing court to easily identify the hours reasonably expended). A "fee award may be reduced when block billing – the lumping together of multiple tasks in a single time entry – makes it impossible to determine the reasonableness of the time spent on each task." *Petroleum Sales, Inc. v. Valero Ref. Co.*, C 05-3526, 2007 WL 2694207, *7 (N.D. Cal. Sept. 11, 2007). Courts "frow[n] on block billing where discrete and unrelated tasks are lumped into one entry, as the practice can make it impossible . . . to determine the reasonableness of the hours spent on each task." *Defenbaugh v. JBC & Assocs., Inc.*, 2004 WL 1874978, *9 (N.D. Cal. Aug. 10, 2004). One method for reducing block bills approved by the Ninth Circuit is to identify the percentage rate at which block billing occurs and reduce that percentage of hours by 30%. *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222-23 (9th Cir. 2010).

In this case, the attorney records, especially those of Peters, demonstrate a number of block billing entries and entries which make it impossible to determine what he actually did. See, e.g., Peters Dec, Exh. A at pp. 1 ("Write, review and respond to email to/from JSM/BGK and clients"), and 5 ("Trial prep" and "Trial preparation"). Not only are these entries representative of block billing, but they are also so vague that there is no indication of what Peters actually did or communicated about. There are many entries for May and Gearinger that have the same problem. May Dec, Exh. A at 5 ("Call with defense counsel. Debrief with Brian. Prepare follow-up e-mail, send draft to Brian and Mike"); Gearinger Dec, Exh. A at 13 ("Prepare for hearing on motion to maintain confidentiality (1.8); review of relevant case law (2.2); email to JSM regarding same (.1)"). In each entry, multiple tasks are identified and no descriptive information is provided. This is the exact sort of block billing, "lumping together of multiple tasks in a single time entry" that makes it "impossible to determine the reasonableness of the time spent on each task." *Petroleum Sales, Inc. v. Valero Ref. Co.*, C 05-3526, 2007 WL 2694207, *7 (N.D. Cal. Sept. 11, 2007). All of Plaintiffs' counsels' block-billed time should be excluded.

Further, as the Court has confirmed:

> Counsel may not submit a plethora of noncompensable, vague, blockbilled attorney time entries and expect particularized, individual deletions as the only consequence. The trial court could reasonably conclude counsel made no effort to prune the fee request to comply with the law. Counsel erred grievously by attempting to transfer that responsibility onto the trial court. The trial court could reasonably conclude counsel's disregard for the law undercut the credibility of their fee request and, as officers of the court, warranted a severe reaction. *Cristian Research Institute v. Alnor,* 165 Cal.App.4th 1315, 1328 (2008).

ORBACH HUFF & HENDERSON LLP

Given Plaintiffs' counsels' vague billing records and the plethora of block billing, duplicative, inflated and unjustified entries throughout the records submitted, Defendants request that the entirety of Plaintiffs' Motion be denied.  *See, Ketchum*, 24 Cal.4th at 1137 ("A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.").

### E.    Any Multiplier is Inappropriate

#### 1.    Plaintiffs Are Not Entitled to a Multiplier Under Federal Law

Plaintiffs argue for an upward multiplier of 2.0 on *all* of their fees in this action.  Motion, at 14:1-18:2. However, under the leading case of *Hensley*, the amount of a statutory fee award is determined by the lodestar method: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 440.  While earlier cases contemplated that the lodestar could be augmented by a multiplier, such multiplication is not allowed by the modern trend other than in the most exceptional cases. Accord *Blum*, 465 U.S. at 898-899 (explaining that increasing rates for "the quality of representation, the complexity of the issues, the riskiness of success, and the great benefit to the large class that was achieved" already accounted for in the lodestar methodology without a multiplier).

Most prominently, in *City of Burlington v. Dague*, 505 U.S. 557 (1992), the Court ruled that district courts cannot "enhance the fee award above the 'lodestar' amount in order to reflect the fact that the party's attorneys were retained on a contingent fee basis and thus assumed the risk of no payment at all for their services." *Id.*, at 559, 567 ("we hold that enhancement for contingency is not permitted under the fee-shifting statutes").  The Court noted that "[t]he risk of loss in a particular case (and, therefore, the attorney's contingent risk) is the product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits." *Id.* at 562.  The Court stated that the legal and factual merits of the claim are irrelevant to the fee award and noted that the difficulty of establishing the merits should be reflected "either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so." *Id.* at 563.

In *Perdue v. Kenny A.*, 559 U.S. 542 (2010), the Court held that there is a "strong presumption" that the lodestar calculation is reasonable, but that there may be a "few" circumstances in which superior attorney performance is not represented in the lodestar calculation.  In such cases, the lodestar amount would not have been sufficient to attract competent counsel initially.  The Court identified three bases for a possible

- 19 -

ORBACH HUFF & HENDERSON LLP

enhancement: 1) that the hourly rate does not adequately measure the attorney's true market value, such as when the rate is keyed only to the number of years out of law school, 2) the performance involves an "extraordinary" outlay of expenses and litigation is protracted and 3) the performance involves an unanticipated delay in the recovery of fees. *Id.* at 554-56.  Plaintiff does not qualify for any of these limited avenues for a multiplier.[10]

### 2.    Plaintiffs Are Not Entitled to a Multiplier Under State Law

Plaintiffs do not appear to dispute that they do not qualify for a multiplier under federal law and instead argue that they are entitled to a multiplier under California state law because they prevailed on a single claim against Holland under California Civil Code section 52.1, for which they claim to be entitled to recover their fees under section 52.1(h).[11]  Motion, at 8:9-14, 14:3-8.  That is inaccurate.

---

[10] This is confirmed by Plaintiffs' authority as well.  Motion, at 8:7-14; *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014) ("Such a multiplier is not available under § 1983"); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ("contingency-fee multipliers are unavailable under federal fee-shifting statutes.").

[11] Nothing in California Civil Code section 52.1(h) provides for the recovery of attorneys' fees.  Rather, that section provides that "[a]n action brought pursuant to this section is independent of any other action, remedy or procedure that may be available to an aggrieved individual under any other provision of law, including, but not limited to, an action, remedy, or procedure brought pursuant to Section 51.7."  Cal. Civ. Code § 52.1(h).  This is true of section 52.1 now and the version in place at the time of the incident underlying this action.  Cal. Civ. Code § 52.1(h), see also Stats.2018, c. 776 (A.B.3250), § 4, eff. Jan. 1, 2019.  Plaintiffs did not notice any other subdivision of section 52.1 as a basis for their demand for attorneys' fees, and their request for a multiplier under the Bane Act must be denied for this reason alone.  See Northern District of Cal. Local Rule 7-2(b) (requiring notice of motion to include a concise statement of what relief the movant seeks).  Perhaps Plaintiffs intended to cite Civil Code section 52.1(i), which, in certain circumstances, allows that "the court may award the petitioner or plaintiff reasonable attorney's fees."  Cal. Civ. Code § 52.1(i).  However, even if Plaintiff had noticed and cited the correct statute, their claim would still fail where the version of section 52.1 in effect at the time of the incident underlying this action did not allow for the recovery of attorney's fees by private plaintiffs.  The underlying incident occurred on September 20, 2019.  Motion, at 4:8-20.  The version of section 52.1 in effect from January 1, 2019 to December 31, 2021 provided at section 52.1(i): "In addition to any damages, injunction, or other equitable relief awarded in an action brought pursuant to *subdivision (b)*, the court may award the petitioner or plaintiff reasonable attorney's fees."  Cal. Civ. Code § 52.1 (eff. Jan. 1, 2019 to Dec. 31, 2021), Stats.2018, c. 776 (A.B.3250), § 4, eff. Jan. 1, 2019 (emphasis added).  Thus, at the time of the incident, the attorneys' fees allowed under subdivision (i) only applied to an action brought pursuant to subdivision (b), which could only be brought by "the Attorney General, or any district attorney or city attorney," not private individuals.  While section 52.1(i) has since been amended to apply to section 52.1(c), the rights and liabilities of the parties must be determined by the law as it existed at the time the controversy arose.  See e.g., *Fidalgo Island Packing Co v. Phillips*, 147 F. Supp. 883, 885–86 (D. Alaska), *modified on reh'g*, 149 F. Supp. 260 (D. Alaska 1957).  Because Plaintiffs cannot seek fees under the Bane Act, they also cannot benefit from a state law multiplier.

- 20 -

ORBACH HUFF & HENDERSON LLP

1         **a.**         **The Premium Plaintiffs Seek Via a Multiplier Is Already Encompassed**

2                          **Within the Lodestar**

3         The party seeking a multiplier bears the burden of justifying its request. *Ketchum*, 24 Cal.4th at 1138.

4 Under both federal and California law, the court has "broad discretion" in determining whether to award a

5 multiplier. *Id.*; *see also In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*,

6 109 F.3d 602 (9th Cir. 1997). Importantly, the entire purpose of the multiplier under California state law is to

7 "approximate market-level compensation" for the attorneys' services. *Ketchum*, 24 Cal.4th at (2001). The

8 multiplier does not always result in an increase in fees. Rather, a court may augment *or reduce* the lodestar

9 figure in order to bring it in line with "the range of fees freely negotiated in the legal marketplace in comparable

10 litigation." *Lealao v. Beneficial California, Inc.,* 82 Cal.App.4th 19, 50 (2000). To do so, the Court considers

11 several factors, including the novelty and difficulty of the questions involved, the skill displayed in presenting

12 them, the extent to which the nature of the litigation precluded other employment, and the contingent nature of

13 the fee award. *Ketchum*, 24 Cal.4th at 1132. However, the court "*should not consider these factors to the*

14 *extent that they are already encompassed within the lodestar*." *Id.* at 1138 (emphasis added). This is crucial –

15 if the premium Plaintiffs wish to achieve by virtue of a multiplier is already encompassed within the lodestar,

16 no multiplier is appropriate.

17         Here, all three of Plaintiffs' attorneys have already included a significant premium in their hourly rates

18 of $700 for May, $850 for Gearinger, and $950 for Peters. Motion, at 7:1-2. May and Gearinger both state in

19 their declarations that their requested hourly rates of $700 and $850 are "reasonable and customary…for

20 attorneys in the San Francisco Bay Area with comparable education, experience, and skill." Gearinger Dec ¶

21 14; May Dec ¶ 17. Peters states that $950 is his "current hourly rate" and commensurate with rates charged by

22 "litigation attorneys with a comparable level of skill and experience in the San Francisco Bay Area." Peters

23 Dec, ¶ 6. And, Plaintiffs seek to apply these rates to all of Plaintiffs' counsels' time in this action. See Motion,

24 at 3:11-18. Thus, the time, labor and skill of Plaintiffs' counsel are already reflected in their requested lodestar

25 award and no multiplier is appropriate. *Craig v. Cnty. of Orange*, No. SACV1700491CJCKESX, 2019 WL

26 12378994, at *6 (C.D. Cal. Sept. 5, 2019) ("The Court does not find that a multiplier is warranted under either

27 federal or state law. … The time, labor, and skill of Plaintiffs' counsel are already reflected in the fee award.").

28 ///

Defs' Opp to Plts' Mtn for Attorneys' Fees and Non-Statutory Costs [20-cv-04679-WHA]

ORBACH HUFF & HENDERSON LLP

Indeed, like *Craig*, Plaintiffs' counsel here, who request a multiplier of 2.0, have offered no evidence whatsoever that market-level compensation would amount to hourly rates of $1,400 for May, $1,700 for Gearinger, and $1,900 for Peters. Such hourly rates would be facially absurd. *Id.*, 2019 WL 12378994, at *6 ("And although the Court considers the contingent nature of a fee in determining the propriety of a multiplier in an award of fees under California Civil Code § 52.1, the purpose of that multiplier is to approximate market-level compensation for such services. Plaintiffs' counsel offer no evidence that market-level compensation would amount to hourly rates of $1,500 for Mr. Galipo, $1,102.50 for Ms. Partow, and $937.50 for Mr. Hughes—the result if the Court were to apply the requested 1.5 multiplier. The Court declines to apply any multiplier to the lodestar amount."). The requested fee multiplier of 2.0 should be denied.

### b.   The Applicable Factors Do Not Weigh in Favor of a Fee Enhancement

Further, even considering the applicable factors, Plaintiffs have not established that they qualify for a fee enhancement. As discussed above and as Plaintiffs' counsel conceded on the record at trial, the questions in this case were not novel or difficult. Trial Tx, at 1270:10-11 (Peters stated, "this case is not actually that complicated at the end of the day. The law is super clear."). The action should have been a simple, straightforward matter of an alleged unlawful detention and associated searches and use of force, and to the extent it was not, that is because of the inexplicably convoluted manner in which Plaintiffs' counsel opted to present the case. Even the Court made multiple comments at trial about the unnecessarily complicated presentation by Plaintiffs' counsel, "how ridiculous [he made] this case" and "the complicated way in which [he] tried to pitch this case…" Trial Tx, at 717:2-8. These comments also weigh against the issuance of a fee enhancement under the next factor, which is the skill displayed in presenting the action. Given Plaintiffs' counsel's admission that this action was not complicated and that the applicable law is "super clear," it would be entirely inconsistent to chastise Plaintiffs' counsel on the record for making a "ridiculous" and "sprawling mess" of the case (id., at 217:2-8, 232:11-12) and then award Plaintiffs' counsel a fee enhancement based on skill. Finally, Plaintiffs' counsel have failed to establish that this litigation precluded other employment. Peters states he was asked to "co-counsel as the primary trial lawyer on numerous cases that had trial dates ranging from January through early April of 2023" but declined due to the trial in this action and the time he allegedly needed to successfully litigate this case. Peters Dec, ¶ 10. Gearinger states only that he "declined numerous

ORBACH HUFF & HENDERSON LLP

potential cases since taking on the Loggervale case due to the time intensive nature of the case."[12]  Gearinger Dec, ¶ 18.  Nowhere does either Peters or Gearinger state any supporting information, such as the time-frame in which they allegedly turned away business due to this action, the types of cases they purportedly turned away, the approximate value of the turned-away business, or what specifically about this action forced them to allegedly decline work.  They offer nothing but conclusory, self-serving statements, that are unsupported by evidence and incapable of verification.

Further, their claims are simply nonsensical where Gearinger has been working on this case since December 13, 2019 (Gearinger Dec, Exh. A, p. 1), and has billed a total of 693.8 hours through March 17, 2023 (Motion, at 3:14).  Thus, over the course of 39 months, Gearinger billed an average of approximately 18 hours per month to this case.  Assuming a bare minimum 40 hour work week, there are 160 working hours in a month.  Gearinger certainly did not need to decline other cases where this action only accounted for about 11% of a minimum month of work.  The same applies to Peters, who has billed a total of 329.4 hours between December 20, 2021, and March 17, 2023, thereby averaging approximately 22 hours of work per month over the 15 month period, or about 14% of a minimum work week.[13]  Motion, at 3:15; Peters Dec, Exh. A at 1.  As such, neither Gearinger nor Peters were required to decline other business as a result of this action.  For these reasons, Plaintiffs' counsel should not be awarded a multiplier under state law.

c.      **Any Multiplier Should Only Apply to the Fees Incurred In Connection with the Section 52.1 Claim Against Holland**

In the event the Court opts to award a multiplier on the basis that Plaintiffs prevailed under Civil Code section 52.1 as against Holland, the multiplier should only be applied to the fees incurred on that one claim, not *all* of the claims on which Plaintiffs prevailed.  *See Rodriguez v. Cnty. of Los Angeles*, 96 F.Supp.3d 1012,

---

[12] May concedes that he was in the process of closing his law practice anyway, "did not turn down other paid employment," and that this "case did not keep [him] from earning money from other business…" May Dec, ¶ 20.  Therefore, this factor clearly weighs against the imposition of a positive multiplier on any fee award. While Plaintiffs contend that May gave up closing his law practice to work on this case, they do not and cannot cite any authority that choosing to work instead of retire warrants an enhancement of attorneys' fees.  Nothing in the applicable factors suggests that the Court should consider subjective non-pecuniary trade-offs.  Further, May billed 902.8 hours between December 13, 2019 and March 17, 2023 (May Dec, Exh. A at p. 1; Motion, at 3:13), which comes out to an average of approximately 23 hours of work per month.  Mr. May still had plenty of free time.

[13] Keck spent even less time, only putting in 118.8 hours between July 6, 2020, and March 17, 2023. Gearinger Dec, Exh. A at p. 95; Motion at 3:16.

ORBACH HUFF & HENDERSON LLP

1021-22 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018) (separately calculating fees under section 52.1 and section 1983, and applying 2.0 multiplier only to fees under section 52.1); *Mangold*, 67 F.3d at 1479 ("The trial court did not err in applying state law to calculate the fees available under state law.").  Plaintiffs' section 52.1 claim against Holland was just one of the five claims on which Plaintiffs prevailed and one of nearly 60 claims total asserted in the SAC (taking into account the various causes of action against various defendants).  And, there is simply no indication that any portion, let alone a significant portion, of the jury's damages award applied to the section 52.1 claim against Holland.[14]

It would not be equitable to exercise the Court's discretion to *enhance* Plaintiffs' already inflated attorney's fees, for all work against all defendants, based on one claim against one defendant that made up approximately 2% of Plaintiffs' SAC and less than 20% of the claims remaining at trial.  This is particularly true where the hourly rates Plaintiffs' counsel request already encompass the premium they now seek via a multiplier, as discussed above.  Further, under California law, even if a multiplier is applied, it cannot be applied to "fees on fees," meaning fees expended in the pursuit of attorneys' fees recovery, such as drafting and litigating Plaintiffs' Motion.  *Ketchum*, 24 Cal.4th at 1141 (the multiplier only applies to the lodestar prior to the fees on fees).  Accordingly, to the extent a multiplier is applied at all in this case, it should only be applied to the fees expended in the pursuit of the section 52.1 claim against Holland, excluding any attorneys' fees related to the recovery of fees.

## F.   Plaintiffs Are Not Entitled to Unreasonable Costs

Out-of-pocket expenses under section 1988 may only be recovered as part of the attorney's fees award if those expenses would normally be charged to a fee paying client and are reasonable.  *Dang*, 422 F.3d at 814; *Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  Some of the expenses identified by Plaintiffs' counsel are clearly not reasonable.

///

---

[14] Plaintiffs do not mention or analyze the impact of the verdict form's failure to allocate the amount of damages attributable to the federal (§ 1983) or state (Civ. Code § 52.1) claims.  Dkt. 237, at p. 5.  "Here, it is possible that the entire jury award is based on federal law, not state law.  If that is the case, California law would not govern the hourly rate analysis."  *Jadwin v. Cnty. of Kern*, 767 F.Supp.2d 1069, 1126 (E.D. Cal. 2011).  And, if federal law governs, then no multiplier applies.

Defs' Opp to Plts' Mtn for Attorneys' Fees and Non-Statutory Costs [20-cv-04679-WHA]

ORBACH HUFF & HENDERSON LLP

1   With respect to May's expenses, Plaintiffs never explain why a jury consultant was necessary in this

2   matter, why $1,218.75 is reasonable for that service, nor cite any authority that such fees may be included as

3   costs under section 1988.  May Dec, Exh. H.  The same is true with respect to May's $6,255.70 in expenses for

4   daily trial transcripts.  Id.  Similarly, regarding Gearinger's expenses, Plaintiffs fail to attempt to justify $495

5   for the legislative history of a Vehicle Code section (Gearinger Dec, Exh. B at p. 2), fail to explain why it was

6   reasonable to charge for travel to Las Vegas and back to meet with clients where such a meeting could have

7   taken place on Zoom or the telephone (id.), why it was reasonable to stay in a hotel like the Westin instead of

8   something more modest (id.), or why it was reasonable for Gearinger to charge for staying in a hotel during

9   trial when he is from Santa Rosa (id.).  Peters, who worked on this matter for the least amount of time relative

10   to his co-counsel, somehow managed to rack up the most expenses, claiming over $25,000 in allegedly

11   compensable expenses for mostly Lyft rides, lunches, litigation consulting services, and $20,000 for a mock

12   trial focus group.  Again, Plaintiffs have offered no authority whatsoever that litigation consulting services are

13   recoverable under section 1988, particularly where they are more akin to an expert fee than an expense.  The

14   same is true with respect to the mock trial focus group, which Plaintiffs have both failed to justify and failed to

15   explain why it was so expensive.  While such a focus group is a luxury, it was not necessary or reasonable for

16   purposes of this trial and Defendants certainly did not convene one.  Gilbert Dec. ¶ 8.  Plaintiffs simply have

17   not met their burden of establishing that these expenses were reasonable.

18   **IV.      CONCLUSION**

19          For the reasons discussed herein, Defendants respectfully request that this Court deny Plaintiffs'

20   Motion for Attorneys' Fees and Costs or, in the alternative, significantly reduce any award, to no more than

21   $457,826.25 in fees and $10,000 in costs.

22   Dated:  April 5, 2023                          Respectfully submitted,
                                                    **ORBACH HUFF & HENDERSON LLP**
23

24                                                  By:    /s/ *Kevin E. Gilbert*
                                                        Kevin E. Gilbert
25                                                      Christopher R. Creech
                                                        Attorneys for Defendants
26                                                      COUNTY OF ALAMEDA, STEVEN
                                                        HOLLAND and MONICA POPE
27

28