Joseph S. May   SBN 245924
LAW OFFICE OF JOSEPH S. MAY
1388 Sutter Street, Suite 810
San Francisco, CA 94109
Tel: (415) 781-3333
Fax: (415) 707-6600
joseph@josephmaylaw.com

Brian Gearinger   SBN 146125
GEARINGER LAW GROUP
740 Fourth Street
Santa Rosa, CA 95404
Tel: (415) 440-3102
brian@gearingerlaw.com

Craig M. Peters   SBN 184018
ALTAIR LAW
465 California Street, 5th Floor
San Francisco, CA 94104-3313
(415) 988-9828
cpeters@altairlaw.us

Attorneys for Plaintiffs AASYLEI LOGGERVALE, AASYLEI HARDGE-LOGGERVALE, and AAOTTAE LOGGERVALE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| AASYLEI LOGGERVALE; AASYLEI HARDGE-LOGGERVALE; and AAOTTAE LOGGERVALE,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA; STEVEN HOLLAND; MONICA POPE; and DOES 1 to 50, inclusive,<br><br>Defendants. | CASE NO. C20-4679-WHA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (FRCP 50(b))**<br><br>Hearing:  May 11, 2023<br>Time:    8:00 a.m.<br>Place:   450 Golden Gate Ave.<br>         Courtroom 12, 19th Floor<br>         San Francisco, CA 94102<br><br>Action Filed:  July 14, 2020<br>Trial Date:    February 13, 2023 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

    I.     Defendant Holland Unlawfully Detained Plaintiffs ................................................1

          A.    Reasonable Suspicion Is Required to Demand Identification ....................1

          B.    There Was No Reasonable Suspicion to Detain for Auto Burglaries ........2

    II.    There Was Ample Evidence of Racial Motivation ..................................................3

    III.   Defendants Are Not Entitled to Qualified Immunity ..............................................5

    IV.   Substantial Evidence Supports Plaintiffs' *Monell* Claim for Ratification ..............8

    V.    The Evidence Clearly Supported a Bane Act Claim Against Holland .................10

    VI.   Defense Counsel Continues to Misrepresent Facts ...............................................13

    VII.  Conclusion ............................................................................................................14

# TABLE OF AUTHORITIES

**Statutes**

Cal. Civ. Code § 52.1 ..................................................................................................................10

Cal. Veh. Code § 22511.56 ...........................................................................................................7

**Cases**

*Aka v. Washington Hosp. Center*
    156 F.3d 1284 (D.C. Cir. 1998) ...........................................................................................4

*Ayuyu v. Tagabuel*
    284 F.3d 1023 (9th Cir. 2002) ......................................................................................12, 13

*B.B. v. County of Los Angeles*
    10 Cal. 5th 1 (2020) ..........................................................................................................12

*Blodgett v. Holden*
    275 U.S. 142 (1927) ............................................................................................................7

*Brown v. Crowdtwist*
    C12-6110-HB, 2014 WL 1468145 (S.D.N.Y. Apr. 15, 2014) ...........................................4

*Brown v. Texas*
    443 U.S. 47 (1979) .........................................................................................................1, 2

*Castro v. County of Los Angeles*
    833 F.3d 1060 (9th Cir. 2016) ............................................................................................9

*Chaudhry v. City of Los Angeles*
    751 F.3d 1096 (9th Cir. 2014) ..........................................................................................11

*Clouthier v. County of Contra Costa*
    591 F.3d 1232 (9th Cir. 2010) ............................................................................................9

*Drummond ex rel. Drummond v. City of Anaheim*
    343 F.3d 1052 (9th Cir. 2003) .......................................................................................3, 6

*Dunaway v. New York*
    442 U.S. 200 (1979) ............................................................................................................1

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*
    485 U.S. 568 (1988) ............................................................................................................7

*Escriba v. Foster Poultry Farms, Inc.*
        743 F.3d 1236 (9th Cir. 2014) ....................................................................................1

*Eventbrite, Inc. v. M.R.G. Concerts Ltd.*
        C20-4040-SI, 2022 WL 16579319 (N.D. Cal. Nov. 1, 2022) ............................................1

*Forsberg v. Pac. Nw. Bell Tel. Co.*
        840 F.2d 1409 (9th Cir. 1988) ....................................................................................4

*Gillette v. Delmore*
        979 F.2d 1342 (9th Cir. 1992) ..................................................................................10

*Hooper v. California*
        155 U.S. 648 (1895) ..................................................................................................7

*In re M.S.*
        10 Cal. 4th 698 (1995) ............................................................................................11

*Lipton v. United States*
        348 F.2d 591 (9th Cir. 1965) .................................................................................2, 7

*Lytle v. Carl*
        382 F.3d 978 (9th Cir. 2004) ....................................................................................10

*Moreno v. Town of Los Gatos*
        267 Fed. Appx. 665 (9th Cir. 2008) .........................................................................10

*Reese v. County of Sacramento*
        888 F.3d 1030 (9th Cir. 2018) ..................................................................................11

*Robinson v. PPG Indus., Inc.*
        C19-4033-ODW, 2021 WL 5868323 (C.D. Cal. Dec. 9, 2021) .........................................4

*Terry v. Ohio*
        392 U.S. 1 (1968) ...................................................................................................1, 7

*Traver v. Meshriy*
        627 F.2d 934 (9th Cir. 1980) .....................................................................................5

*United States v. Carrizoza-Gaxiola*
        523 F.2d 239 (9th Cir. 1975) .....................................................................................2

*United States v. Landeros*
        913 F.3d 862 (9th Cir. 2019) ..........................................................................1, 2, 6, 7

*United States v. Mendenhall*
        446 U.S. 544 (1980) ..................................................................................................1

*Venegas v. County of Los Angeles*
　　32 Cal. 4th 820 (2004) ..............................................................................................10, 12

*Whren v. United States*
　　517 U.S. 806 (1996) ..............................................................................................................3

*Winarto v. Toshiba Am. Elecs. Components, Inc.*
　　274 F.3d 1276 (9th Cir. 2001) ..............................................................................................1

1    Under Rule 50(b) of the Federal Rules of Civil Procedure, a party may renew its motion for judgment as a matter of law after the jury returns its verdict. However, the moving party has a heavy burden of proving that "the evidence, construed in a light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014).

> "A jury's verdict must be upheld if it is supported by substantial evidence that is adequate to support the jury's findings, even if contrary findings are also possible." *Id*. "[T]he court must not weigh the evidence, and instead should simply ask whether the nonmoving party has presented sufficient evidence to support the jury's conclusion." *Id*. (internal quotations, citations, and modifications omitted). "The court must accept the jury's credibility findings consistent with the verdict [and] may not substitute its view of the evidence for that of the jury." *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001) (citations omitted). "In so doing, the court must draw all reasonable inferences in favor of the nonmoving party and disregard all evidence favorable to the moving party that the jury is not required to believe." *Escriba*, 743 F.3d at 1242-43 (internal quotations and citations omitted).

*Eventbrite, Inc. v. M.R.G. Concerts Ltd.*, C20-4040-SI, 2022 WL 16579319, at *3 (N.D. Cal. Nov. 1, 2022).

The verdict is fully supported by the facts and the law. Therefore, Plaintiffs request that the Court deny the Defendants' motion in its entirety.

**I.     Defendant Holland Unlawfully Detained Plaintiffs**

***A.     Reasonable Suspicion Is Required to Demand Identification***

A law enforcement officer may approach an individual on the street and ask questions without any legal justification. *Dunaway v. New York*, 442 U.S. 200, 210 n. 12 (1979). However, the person approached may "decline to listen to the questions at all and may go on his [or her] way." *Terry v. Ohio*, 392 U.S. 1, 32-33 (1968). When an officer's words or conduct would lead a reasonable person to believe he or she was not free to leave, then the encounter has escalated into a seizure for which the officer must have reasonable suspicion. *United States v. Mendenhall*, 446 U.S. 544, 556 (1980). Officers cannot detain people merely to obtain identification and statutes that purport to allow officers to do so are *per se* unconstitutional. *Brown v. Texas*, 443 U.S. 47, 48-49 (1979); *see also United States v. Landeros*, 913 F.3d 862, 869 (9th Cir. 2019) ("Unlike Hiibel, Brown was stopped, detained, and interrogated about his identity even though there was

1   no reasonable suspicion that he had committed any offense. [Citations.] *Brown* held squarely that

2   law enforcement may not require a person to furnish identification if not reasonably suspected of

3   any criminal conduct. [Citation.]"). Despite Plaintiffs' repeated citation of *Landeros* as a primary

4   authority for their position, Defendants' motion fails to distinguish or even mention this case.

5         Defendants cite *United States v. Carrizoza-Gaxiola*, 523 F.2d 239 (9th Cir. 1975) to

6   support their contention that officers can stop drivers simply to make sure they have a valid

7   license. In that case, law enforcement were stopping anyone heading towards Mexico in a 1970-

8   1974 Ford LTD, because those were the cars that were commonly stolen and taken south of the

9   border. 523 F.2d at 240. The Ninth Circuit stated that even if *Lipton v. United States*, 348 F.2d

10  591 (9th Cir. 1965) (permitting vehicle stops to check license and registration without reasonable

11  suspicion) was still good law, it was distinguishable because the officers detained *Carrizoza-*

12  *Gaxiola* not to check his license but to investigate whether the vehicle was stolen. *Id*. at 241. The

13  Ninth Circuit further held that there was no reasonable suspicion to stop the defendant because

14  "[d]riving a car as common as a Ford LTD is not suspicious nor is driving it towards Nogales."

15  *Id*.

16        In the instant case, the evidence showed that Defendant Holland approached the

17  Loggervales to investigate car break-ins, not to see if Ms. Loggervale had a valid license or

18  disabled persons parking placard. *See* Trial Exhibits 1 (Incident Report), 37 (Holland Body-

19  Worn Camera). Thus, even if *Lipton* is still good law (which it is *not*), there was substantial

20  evidence to support a finding that Defendants did not "stop" Plaintiffs to make sure Ms.

21  Loggervale had a valid driver's license or placard.

22        **B.**    ***There Was No Reasonable Suspicion to Detain for Auto Burglaries***

23        Defendants' absolute best case is that there was a string of auto burglaries involving

24  Black men and silver sedans. Even assuming this is true, it would not justify detaining Plaintiffs

25  – three Black women. But the Court need not look at Defendants' best case. The jury received

26  evidence showing that the only auto burglaries Defendants could have "known" about were the

27  ones actually documented by the Sheriff's Office, namely, those shown in Trial Exhibit 70. A

28  single Black man in a silver car (type, make, and model all unknown) allegedly broke into a car

in the subject location on July 10, 2019, more than two months before Plaintiffs' detention/arrest. On September 18, 2019, there was a break-in at the parking lot with no suspects identified. Then, September 19, 2019, the day before the incident, the suspects in an auto break-in were described as a young Black man and young Latino man in a dark gray, small, two-door hatchback. Even where the subject matches the approximate age, race, and gender of the suspect, that is still not enough, without more, for reasonable suspicion to detain. *See* Trial Exhibit 71 (POST Learning Domain 42); TT 377:5-378:11 (Sgt. Martinez Direct Examination); *cf. Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003) ("Anaheim's training materials are relevant not only to whether the force employed in this case was objectively unreasonable, see supra section I.A.3, but also to whether reasonable officers would have been on notice that the force employed was objectively unreasonable.").

Because there was never reasonable suspicion to detain any of the Plaintiffs, their refusal to cooperate was justified and could not furnish the basis for probable cause to arrest. Nor could the unlawful detention provide a basis for using force on Plaintiffs or searching their belongings.

## II.     There Was Ample Evidence of Racial Motivation

The evidence presented to the jury at trial showed that the only characteristic Plaintiffs had in common with any of the other auto burglary suspects was the fact that they were African American. When race is the only factor for a detention, that constitutes racial profiling. *See* Final Charge to the Jury (Dkt. 231), 7:14-18 ("Race is a factor that, when combined with other circumstances, can reasonably factor into an officer detaining a specific individual. But, race, standing alone, is never enough to establish reasonable suspicion. No detention or arrest should ever be based solely on someone's race. Not only would that violate the Fourth Amendment, it would also violate the Equal Protection Clause of the Fourteenth Amendment.")[1]; *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("to the extent that ... [a] false arrest claim

---

[1] Defendants did not object to this instruction. *See* Dkt. 229.

3

Loggervale v. County of Alameda et al., Case No. C20-4679-WHA
PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (FRCP 50(b))

rests on [a] ... claim ... [of] racial profiling, it would be cognizable under the Fourteenth Amendment, not the Fourth" amendment.).

Further evidence that supported the claim of racial discrimination was Defendant Holland's police report (Trial Exhibit 1), where he stated that the suspects in the previous day's auto burglary were "two young black males" in a "silver 4-door vehicle." This was false and the jury could conclude that Holland intentionally misrepresented the description he was given the previous day in order to bolster his decision to detain the Loggervales. This misrepresentation could be construed as evidence of consciousness of guilt and discriminatory animus. *Cf. Aka v. Washington Hosp. Center*, 156 F.3d 1284, 1293 (D.C. Cir. 1998) ("The jury can conclude that an employer who fabricates a false explanation has something to hide; that 'something' may well be discriminatory intent.")[2]; *Robinson v. PPG Indus., Inc.*, C19-4033-ODW, 2021 WL 5868323, at *10 (C.D. Cal. Dec. 9, 2021) ("Evidence that an employer's stated reason is false, inconsistent with facts, or inconsistent over time may permit an inference that the reason was a pretext for a discriminatory motive."); *Brown v. Crowdtwist*, C12-6110-HB, 2014 WL 1468145, at *5 (S.D.N.Y. Apr. 15, 2014) (in an employment discrimination context, when a plaintiff makes a reasonable showing that one of his employer's explanations is false or misleading, he is generally entitled to have a jury consider whether this false explanation is evidence of consciousness of guilt or a discriminatory motive); Cal. Crim Jury Instr. 362 ("If [defendant] made a false or misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show (he/she) was aware of (his/her) guilt of the crime and you may consider it in determining (his/her) guilt.").

As the Court noted in its summary judgment ruling, "A reasonable jury could conclude that similarly-situated white women would not have been investigated or unlawfully searched, as were the Loggervales." Dkt. 106, 10:10-12. The evidence at trial was at least as strong as that

---

[2] Defendants also cite employment discrimination cases in their motion, suggesting that Defendants agree that such situations are analogous for purposes of analyzing Plaintiffs' Fourteenth Amendment claims. *See, e.g.,* Def. Mot., at 13, citing *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988).

before the Court at the summary judgment stage. Therefore, there was more than sufficient evidence to support a finding by the jury that Holland's actions towards Plaintiffs constituted intentional race discrimination and profiling.[3]

### III. Defendants Are Not Entitled to Qualified Immunity

As to the Fourth Amendment claims, the issue of qualified immunity turns largely on factual, not legal questions. When construing the actual facts (and not Defendants' lies) in a light most favorable to Plaintiffs, no reasonable officer could have believed their actions were constitutional.

Defendants claimed that they were informed about a crime wave that involved Black men in silver sedans breaking into vehicles. Defendants claimed that when they observed Plaintiffs' car, they believed it was occupied by one Black man. Defendant Holland claimed that he did not see the disabled person parking placard before approaching the Loggervales' vehicle, which was parked in an accessible stall. Defendants claim that previous burglaries at the subject location occurred near where the Loggervales were parked. Defendants claimed that criminals often use rental cars, which made the Loggervales' vehicle more suspicious. Defendants claimed that it was suspicious that there were no Starbucks products in the vehicle. Defendants claimed that it was suspicious that Ms. Loggervale said she was waiting for Starbucks to open despite the fact that it was already open. All of these claims are false, or at least the jury could reasonably have found as much. Thus, viewing the facts in a light most favorable to Plaintiffs, no reasonable officer could have possibly believed there was reasonable suspicion to detain the Loggervales.

In this case, not only has the Court correctly found that the law applicable to Plaintiffs' claims were clearly established, it also required Plaintiffs to prove to the jury that qualified

---

[3] Even if the jury did not find race discrimination, it would not change the verdict, which required a finding that Holland violated *any* of Plaintiffs' rights. Thus, the fact that Defendants wrongfully detained Plaintiffs is sufficient to support the verdict. *See Traver v. Meshriy*, 627 F.2d 934, 938 (9th Cir. 1980) (finding employer liable for verdict that could have been based on state law as opposed to Section 1983 because court may "construe a general verdict as attributable to another theory if it was supported by substantial evidence and was submitted to the jury free from error").

5
Loggervale v. County of Alameda et al., Case No. C20-4679-WHA
PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (FRCP 50(b))

immunity did not apply. The jury unanimously agreed that all reasonable officers in Defendants' positions would have recognized their actions were unconstitutional. Further evidence supporting the verdict was the POST training that officers receive in the police academy. Learning Domain 42 deals with racial bias and racial profiling. The training includes the following hypothetical scenario:

> At roll-call briefing, you receive information about several complaints by community members about drug activity in the vicinity of Main and Grove Streets. The description of the individual reported to be possibly selling narcotics is male Hispanic, 18-25 years of age.
>
> While on patrol, you observe a male Hispanic about 20 years of age, standing on the corner of Main and Grove Streets with his hands in his pockets. What would you do? If you opt to contact him, what will you say to him? What are your articulable behaviors and characteristics to warrant a legal stop or detention?

Trial Exhibit 71.

The County representative who trains Alameda County Sheriff Deputies on racial profiling (Sgt. Martinez) admitted on direct examination that the deputies need more information that what is contained in the hypothetical in order to detain the individual. TT, 377:24-378:11. In the above scenario, the officer knows the suspect's gender, race, and approximate age and yet it would still be improper to detain a subject based solely on that information. In the instant case, the only match between the Loggervales and the prior suspects was their race (although the previous day's break-in was allegedly committed by a Black man working with a *Latino* man). Thus, any reasonable deputy would know that the detention of the Loggervales was unlawful. *See Drummond, supra*, 343 F.3d at 1062 (relying on department training materials to support finding that qualified immunity did not apply).

As to Defendants' alternative argument that they had the right to demand Ms. Loggervale's identification simply to check her license or placard, it was clearly established at least by early 2019 that reasonable suspicion is needed to demand identification. *United States v. Landeros*, 913 F.3d 862, 869 (9th Cir. 2019) ("Unlike Hiibel, Brown was stopped, detained, and

1  interrogated about his identity even though there was no reasonable suspicion that he had
2  committed any offense. [Citations.] *Brown* held squarely that law enforcement may not require a
3  person to furnish identification if not reasonably suspected of any criminal conduct.
4  [Citation.]").[4]
5       Defendants' contention that Section 22511.56 of the California Vehicle Code allowed
6  them to detain Plaintiffs without reasonable suspicion is without merit. The statute does not
7  allow officers to demand identification and proof of issuance of a placard without reasonable
8  suspicion. The statute only requires that when an officer *does* demand those things (presumably
9  because the officer has reasonable suspicion to believe the placard user is violating the statute),
10 then the person to whom the request is made must furnish those things. There is no reason to
11 read the statute as unconstitutional when there is a reasonable reading of the statute that is
12 consistent with the Fourth Amendment. *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. &*
13 *Constr. Trades Council*, 485 U.S. 568, 575 (1988), quoting *Hooper v. California*, 155 U.S. 648,
14 657 (1895) ("'The elementary rule is that every reasonable construction must be resorted to, in
15 order to save a statute from unconstitutionality.'"); *Blodgett v. Holden*, 275 U.S. 142, 148 (1927)
16 (opinion of Holmes, J.) ("[A]s between two possible interpretations of a statute, by one of which
17 it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save
18 the Act.").
19      Even under Defendants' often-cited *Lipton* case, the Ninth Circuit held that that the
20 ability to stop a vehicle to make sure the driver is licensed (again, this decision pre-dated *Terry v.*
21 *Ohio*) "does not mean that a traffic officer might stop an automobile and ask to see the operator's
22 license as a ruse in an intended search for evidence of some possible crime unrelated to
23 possession of a driver's license. [Citation omitted.]"). *Lipton*, 348 F.2d at 594.
24      Plaintiffs believe the precedent cited here, and in the other numerous filings in this matter
25 clearly establish the unconstitutionality of Defendants' conduct. However, Defendants admit that

---

[4] The *Landeros* decision was filed on January 11, 2019.

1   in obvious cases, there need not exist a case directly on point to make the right at issue clearly
2   established. This is precisely such a case. Taken in a light most favorable to Plaintiffs, the facts
3   show that the Defendants detained Plaintiffs for no reason other than they were Black. This is
4   evidenced by the fact that the previous day the suspects were clearly described to the deputies as
5   a young Black man and young Latino man in a dark gray, small two-door hatchback. Defendants
6   deliberately ignored this information and detained the Loggervales, one Black adult and two
7   Black teenagers – all three women – in a large silver sedan. The deputies clearly knew the
8   Plaintiffs were not the suspects in the prior auto burglaries.
9       The Defendants also made up many allegedly suspicious facts, which a reasonable jury
10  could clearly conclude were mere pretext. Indeed, many of the "suspicious" facts were never
11  mentioned during the incident or in the incident report. For Defendants to claim that this is an
12  unclear situation where they should benefit from qualified immunity is the very sort of sophistry
13  and overreaching the defense has engaged in repeatedly throughout the entirety of this case.
14  Plaintiffs trust that the Court is noting all of the meritless arguments and made-up facts presented
15  by the defense and considers them if and when the Court considers Plaintiffs' pending motion for
16  attorneys' fees. If so, it will be clear that much of the tremendous amount of work Plaintiffs'
17  lawyers have had to undertake was solely necessitated by the dilatory and oftentimes bad faith
18  defense tactics.
19      **IV.     Substantial Evidence Supports Plaintiffs' *Monell* Claim for Ratification**
20       Defendants fail to set forth the facts that were proven at trial, likely to avoid having to
21  admit that the only evidence presented to the jury fully supported a finding of ratification by the
22  County of Alameda. The facts include the following: (1) Captain Brodie conducted the
23  investigation into the Loggervale incident and then provided information directly to Sheriff
24  Ahern, TT 411:16-18, 413:19-21, (2) the Internal Affairs unit is tasked with "ensur[ing] that the
25  members of the Sheriff's Office are following the policies and the laws as necessary, that they
26  are responsible," TT 412:10-18, (3) Captain Brodie reviewed Holland's incident report and body
27  cam videos from the day of the incident, TT 414:10-14, (4) Captain Brodie testified about his
28  memorandum detailing his investigation and conclusions in the Loggervale incident, and how he

1  addressed the memo to the Sheriff, TT 425:7-427:13, (5) according to Brodie, Sheriff Ahern
2  indicated on the memorandum that he was briefed and that no further action was required, TT
3  435:7-19, (6) Captain Brodie testified that Sheriff Ahern has the sole authority to administer
4  discipline, TT 417:6-8, (7) The County made an official finding that it was lawful and in
5  accordance with Sheriff's Office policy for the deputies to detain and search Plaintiffs (three
6  Black women) despite the auto burglary suspects being described as Black males in silver
7  sedans, TT 416:21-417:4, 427:23-428:16, (8) Lieutenant DeSousa commented several times to
8  each of the Plaintiffs that he would not have handled the situation the same way Defendant
9  Holland did, Trial Exhibit 17, (9) Sgt. Martinez, the Alameda County trainer on racial profiling,
10 testified that based on the facts known regarding prior auto burglaries, there was no reasonable
11 suspicion to detain Plaintiffs, TT 378:17-380:14, Trial Exhibit 70, (10) Defendants Holland and
12 Pope were never disciplined or retrained as a result of the Loggervale incident (Pope was never
13 even advised that a complaint was made until the investigation was complete); instead, after the
14 incident both *promoted* to the rank of Sergeant, TT 816:19-817:16, 1134:16-1135:16.

15      Based on this evidence, a reasonable jury could easily conclude that Sheriff Ahern, the
16 final policymaking official with regard to the internal affairs complaint, made a conscious and
17 deliberate decision to approve of the clearly unconstitutional conduct of Defendants Holland and
18 Pope. Indeed, it appears that the County deliberately chose to endorse the conduct to avoid
19 liability or bad publicity, despite likely understanding that the detention and search of Plaintiffs
20 was unconstitutional. The County's "person most knowledgeable" about racial profiling training
21 even concluded that the conduct was unconstitutional. It is likely that Brodie and Ahern reached
22 the same conclusion but made a choice to adopt and ratify the deputies' conduct for political and
23 economic reasons. The upshot is that the County chose to make itself equally liable with its
24 deputies in this matter. The evidence at trial was that Ahern decided to "adopt [the
25 unconstitutional actions] as official policy." TT 416:21-417:4, 427:23-428:16; *Clouthier v.*
26 *County of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010), *overruled on other grounds by*
27 *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).
28

1    Defendants did not offer any other evidence to refute Plaintiffs' *Monell* case. Even after
2 the lawsuit was filed and a wealth of evidence was uncovered showing the egregious
3 constitutional violations by Holland and Pope (and after the Court even granted partial summary
4 judgment in favor of Plaintiffs based on the search), Defendants still failed to present any
5 evidence that the County took any steps to address the Constitutional violations by Holland and
6 Pope.
7    "To show ratification, a plaintiff must show that the authorized policymakers approve a
8 subordinate's decision and the basis for it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).
9 Ratification requires an authorized policymaker to make a "conscious, affirmative choice" to
10 endorse subordinate's actions. *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).
11 Here, Sheriff Ahern made a conscious choice to endorse (as opposed to discipline) the clearly
12 unconstitutional actions by his deputies, finding that the Defendants' behavior was fully in line
13 with Alameda County Sheriff's Office policy. This is sufficient to support the jury's finding in
14 favor of Plaintiffs on the *Monell* claim.

15   **V.    The Evidence Clearly Supported a Bane Act Claim Against Holland**

16    Plaintiffs' right to be free from unlawful search and seizure, their First Amendment right
17 to question government action, their Fourteenth Amendment right to equal protection under the
18 law, and their right under Civil Code section 43 to protection from bodily restraint or harm were
19 all violated by threat, intimidation, and/or coercion by Holland, which is what the jury found.
20 Defendants make several arguments that have been previously rejected multiple times by the
21 Court.
22    First, Defendants claim that the Bane Act requires violence or a threat of violence. The
23 Ninth Circuit has considered and rejected this argument. *Moreno v. Town of Los Gatos*, 267 Fed.
24 Appx. 665, 666 (9th Cir. 2008) ("The district court erred in holding that a valid section 52.1
25 claim requires a plaintiff to allege violence or threats of violence . . . Reading section 52.1 on its
26 own terms, as *Venegas [v. County of Los Angeles*, 32 Cal. 4th 820 (2004)] directs, the statutory
27 language clearly requires only 'threats, intimidation, or coercion.'").
28

10

1       However, even assuming violence or threats of violence is required, the evidence
2   supported such a finding, as Holland threatened to handcuff the daughters if they did not return
3   to the vehicle (despite the absence of reasonable suspicion) and threatened to handcuff and take
4   Ms. Loggervale to jail if she refused to exit the vehicle (again, with no reasonable suspicion).
5   After Plaintiffs refused to cooperate with the unlawful commands, Holland did, in fact, cause
6   each of the three Plaintiffs to be subjected to handcuffing and forced into separate police cars.
7   The jury could certainly have concluded that this was a form of violence against Plaintiffs.
8   In addition, to the extent the evidence supported a jury finding on excessive force, that in itself
9   satisfies the elements of the Bane Act. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105
10  (9th Cir. 2014) ("[A] successful claim for excessive force under the Fourth Amendment provides
11  the basis for a successful claim under [the Bane Act]."), *cert. denied sub nom*. *City of Los*
12  *Angeles, Cal. v. Chaudhry*, 135 S. Ct. 295 (2014).
13      Defendants next complain that Plaintiff failed to show that Holland acted with the
14  required "specific intent" to violate Plaintiffs' rights. In *Reese v. County of Sacramento*, 888 F.3d
15  1030, 1045 (9th Cir. 2018), the Court found that the Bane Act's requirement of "specific intent"
16  to violate the Plaintiffs' rights is satisfied by a showing of reckless disregard for those rights:
17  "But it is not necessary for the defendants to have been 'thinking in constitutional or legal terms
18  at the time of the incidents, because a reckless disregard for a person's constitutional rights is
19  evidence of a specific intent to deprive that person of those rights.' [Citation.]" *Id*. Here, there
20  was ample evidence that Holland specifically intended to "commit the act in question with the
21  particular purpose of depriving [Plaintiffs] of [their] enjoyment of the interests protected by that .
22  . . right." *In re M.S.*, 10 Cal. 4th 698, 713 (1995).
23      First, Holland admitted that reasonable suspicion is required to detain someone. TT
24  674:14-21. Holland testified that he believed he had reasonable suspicion to detain the driver
25  based on the Vehicle Code. TT 687:20-23. But as the Court is aware, Holland had no evidence to
26  believe Ms. Loggervale violated any provision of the Vehicle Code. For example, there was no
27  evidence Holland observed Ms. Loggervale commit a traffic infraction (he did not even see her
28  driving), a parking violation, or any other violation. While he claimed that he could not see the

disabled person parking placard in her rearview mirror,[5] the evidence, including body cam video, showed that the placard was highly visible. Holland also lied in his police report about the suspects in the prior days' break-in (he claims they were two Black men in a silver four-door) and lied about many other allegedly suspicious facts of the encounter.

All of this evidence shows a consciousness of guilt and shows that Holland must have known what he was doing was unconstitutional at the time. In other words, there was a plethora of evidence confirming his specific intent to deprive the Loggervales of their Fourth and Fourteenth Amendment rights. Finally, as explained above, there was evidence that Holland intended to discriminate against Plaintiffs based on their race, in which case the jury could have found that Holland used physical violence against Plaintiffs specifically to deprive them of their right to be free from intentional race discrimination. While Bane Act does not require a showing of discriminatory animus, it was originally designed to address the growing problem of hate crimes. *B.B. v. County of Los Angeles*, 10 Cal. 5th 1, 31-32 (2020), quoting *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 84 (2004) ("The Bane Act was passed to 'stem a tide of hate crimes' against minorities in the 1980s.").

Defendants also take exception to the verdict form in that it did not permit the jury to specify which rights in particular Holland violated. But Defendants waived any claim of error by requesting a special verdict form from the Court (that would have made it even less clear which violations the jury found), and failing to object to the first question on the form ultimately submitted to the jury either on the record before the jury retired or in their motion for new trial. *See* TT 1005, 18-22 ("Your Honor, given the legal issues in this case, defendants would request a general verdict that would simply ask: As to plaintiff Aasylei Loggervale's claim against Deputy Holland, we decide for plaintiff/defendant. And with each plaintiff."); Dkt. 258 (Def. New Trial Motion) (omitting any claim of error based on Question 1 on the verdict form); *Ayuyu*

---

[5] Before trial, Holland claimed the placard was obscured by an air freshener. (Dkt. 79-1 at 11:6-7 ("There was a large air freshener also hanging from the rearview mirror that was obscuring the placard.")) He wisely abandoned that argument at trial since the body cam clearly shows the placard in the windshield with an air freshener so small that it was not "obscuring the placard."

1  *v. Tagabuel*, 284 F.3d 1023, 1026 (9th Cir. 2002) (finding in federal civil suit that claim based on
2  an improper verdict form is waived if no objection to the form of the verdict was made in the
3  record or in the motion for new trial).

### VI.   Defense Counsel Continues to Misrepresent Facts

As the Court is aware, defense counsel has made numerous misrepresentations to the Court throughout the case. *See, e.g.*, Dkt. 106 at 5:3-6 ("This order denies summary judgment on both liability and qualified immunity grounds because counsel for the defense made four material misrepresentations at the hearing. We know they were material because counsel himself brought them up. Thankfully, plaintiffs' counsel was prepared and exposed all four."). This continues in the pending motion.

Defendants state that Plaintiff's vehicle was "in the same location as a car that was burglarized the day before" Mot. for JMOL (Dkt. 257), 5:13-14. Defendant Pope's body cam video shows that the minivan that was burglarized the day before was located across the lot from the disabled parking spot. *See* Trial Exhibit 45. The victim stated that the suspicious youths she saw before going to the Starbucks were first spotted near the disabled parking spot but pulled their car out and parked closer to the Lake Chabot Road exit. *Ibid*.

Defendants claim that "Plaintiffs were parked in a handicapped stall with the placard obscured by a hanging air freshener." Mot. for JMOL (Dkt. 257), 5:16-18. At trial, Holland (nor anyone else) testified that the air freshener was obscuring the placard. On the contrary, on cross-examination, Holland testified as follows:

> Q. Okay. Well, let's look at Exhibit 60-4. This is just a still from your body-worn camera. Can you see the disabled person parking placard in this?
>
> A. From the picture, yes. But the camera sits lower on my chest from where my eyes are.

TT, 807:1-5. In other words, Holland was admitting that the air freshener was not obscuring the placard. Counsel for Holland did not address the "air freshener" defense on re-direct examination. As such, Defendants' representation that the placard was obscuring the placard is not supported by any evidence whatsoever; indeed, it is a false representation.

Defendants claim in their motion that reasonable suspicion was supported by, *inter alia*, "the video interview of a Starbucks employee the day before confirming the prior burglaries." Mot. for JMOL (Dkt. 257), 5:28-6:1. No Starbucks employees were ever interviewed (at least not according to the evidence produced by Defendants at trial and in discovery). This is a made-up factual assertion.

### VII. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion under Rule 50 in its entirety.

Dated: April 12, 2023

LAW OFFICE OF JOSEPH S. MAY
and
GEARINGER LAW GROUP
and
ALTAIR LAW LLP


*/s/ Joseph S. May*
By: JOSEPH S. MAY
Attorneys for Plaintiffs