Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
**ORBACH HUFF & HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, California 94588
Telephone:      (510) 999-7908
Facsimile:      (510) 999-7918

Attorney for Defendants
COUNTY OF ALAMEDA, STEVEN HOLLAND and MONICA POPE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AASYLEI LOGGERVALE; AASYLEI HARDGE-LOGGERVALE; and AAOTTAE LOGGERVALE, | Case No. 20-cv-04679-WHA |
| Plaintiffs, | **REPLY IN SUPPORT OF DEFENDANTS COUNTY OF ALAMEDA, STEVEN HOLLAND AND MONICA POPE'S MOTION FOR NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR PURSUANT TO FRCP RULE 59** |
| v. | |
| COUNTY OF ALAMEDA; STEVEN HOLLAND; and MONICA POPE, | |
| Defendants. | DATE:      May 11, 2023<br>TIME:      8:00 a.m.<br>DEPT:      Courtroom 12, 19th Floor<br>JUDGE:      Hon. William Alsup |

ORBACH HUFF & HENDERSON LLP

# TABLE OF CONTENTS

                                                                                                    **Page(s)**

I.    INTRODUCTION ................................................................................................................ 1

II.   ARGUMENT ..................................................................................................................... 1

      A.    The Court Erred in Excluding Evidence Supporting Reasonable Suspicion ..................... 1

      B.    The Court Erred in Sua Sponte Finding Daughters' ID Searches Unconstitutional ........... 3

      C.    The Court Erred in Submitting Improper Jury Instructions and Advocating
            for Plaintiffs ................................................................................................................. 5

      D.    The Court Erred in Submitting the Verdict Form and Belatedly Amending It ................. 8

            1.    The Amended Special Verdict Form Improperly Asked the Jury to Decide
                  if the County Is Liable for Officer Pope's Conduct................................................ 8

            2.    The Amended Special Verdict Form Improperly Suggested to the Jury the
                  County Would Pay for Any Judgements Against Holland and Pope ................. 11

            3.    The Amended Special Verdict Form Improperly Instructed the Jury that
                  Defendants Violated Daughters' Constitutional Rights........................................ 11

      E.    Damages Are Excessive, Entitling Defendants to Remittitur or New Trial ..................... 12

III.  CONCLUSION................................................................................................................ 15

ORBACH HUFF & HENDERSON LLP

Reply ISO Defs' Motion for New Trial or, in the alt, for Remittitur Pursuant to FRCP Rule 59 [20-cv-04679-WHA]

1

<div align="center">**TABLE OF AUTHORITIES**</div>

2

<div align="right">**Page(s)**</div>

<u>**Federal Cases**</u>

3

4

*Archibald v. Cnty. of San Bernardino*,
No. EDCV1601128ABSPX, 2018 WL 8949779 (C.D. Cal. May 10, 2018).................................14, 15

5

*Arizona v. ASARCO LLC*,
773 F.3d 1050 (9th Cir. 2014) ..........................................................................................................9

6

7

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*,
932 F.2d 442 (5th Cir. 1991) ............................................................................................................4

8

9

*Brown v. Texas*,
443 U.S. 47 (1979)............................................................................................................................5

10

*Chaoui v. City of Glendora*,
No. CV 13-9422-CJC E, 2015 WL 728506, at *9 (C.D. Cal. Feb. 19, 2015) .................................5

11

12

*Diaz v. Tesla, Inc.*,
598 F.Supp.3d 809 (N.D. Cal. 2022) ........................................................................................13, 14

13

*Graham v. Connor*,
490 U.S. 386 (1989)..........................................................................................................................6

14

15

*Harper v. City of Los Angeles*,
533 F.3d 1010 (9th Cir. 2008) .....................................................................................................13, 14

16

17

*Hernandez v. Marshall*,
No. C-94-0917 EFL, 1995 WL 481431 (N.D. Cal. Aug. 8, 1995) ..................................................8

18

19

*Jefferson v. City of Fremont*,
No. C-12-0926 EMC, 2012 WL 1534913 (N.D. Cal. Apr. 30, 2012) ...........................................15

20

*Jones v. Murray*,
962 F.2d 302 (4th Cir. 1992) ...........................................................................................................7

21

22

*Lipton v. U.S.*,
348 F.2d 591 (9th Cir. 1965) ...........................................................................................................5

23

24

*Mateyko v. Felix*,
924 F.2d 824 (9th Cir. 1990) .........................................................................................................12

25

*Mendez v. County of San Bernardino*,
540 F.3d 1109 (9th Cir. 2008) ...............................................................................................8, 9, 10

26

27

*Mueller v. Hawaii Dept. of Public Safety*,
595 F.Supp.3d 920 (D. Haw. 2022).............................................................................................13, 14

28

<div align="center">- ii -</div>

ORBACH HUFF & HENDERSON LLP

1

<div align="center">**TABLE OF AUTHORITIES**</div>

2

**Page(s)**

3

*Oviatt v. Pearce,*
    954 F.2d 1470 (9th Cir. 1992) ...............................................................................8

4

5

*Passantino v. Johnson Consumer Products, Inc.,*
    212 F.3d 493 (9th Cir. 2000) .................................................................................12

6

7

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986) ................................................................................................8

8

*Ramirez v. Ghilotti Bros. Inc.,*
    941 F.Supp.2d 1197 (N.D. Cal. 2013) ....................................................................8

9

10

*Terry v. Ohio,*
    392 U.S. 1 (1968) ....................................................................................................5

11

*United State v. Alvarez,*
    899 F.2d 833 (9th Cir. 1990) ..................................................................................4

12

13

*United States v. Arvizu,*
    534 U.S. 266 (2002) ................................................................................................2

14

15

*United States v. Bowen,*
    500 F.2d 960 (9th Cir. 1974) ..................................................................................5

16

*United States v. Carrizoza-Gaxiola,*
    523 F.2d 239 (9th Cir. 1975) ..................................................................................5

17

18

*United States v. Hernandez-Rivas,*
    348 F.3d 595 (7th Cir. 2003) ..................................................................................7

19

20

*United States v. Rodgers,*
    656 F.3d 1023 (9th Cir. 2011) ............................................................................4, 5

21

*United States v. Sokolow,*
    490 U.S. 1 (1989) ....................................................................................................2

22

23

*Velazquez v. City of Long Beach,*
    793 F.3d 1010 (9th Cir. 2015) ................................................................................6

24

**State Cases**

25

*Harris v. Capital Growth Investors XIV,*
    52 Cal.3d 1142 (1991) ...........................................................................................15

26

27

*Hunio v. Tishman Construction Corporation of California et al.,*
    24 Cal.App.4th 792 .........................................................................................13, 14

28

<div style="writing-mode: vertical-rl">ORBACH HUFF & HENDERSON LLP</div>

<div align="center">- iii -</div>

# TABLE OF AUTHORITIES

**Page(s)**

*In re Arturo D.*,
   27 Cal.4th 60 (2002) ...........................................................................................................4

*People v. Henderson*,
   58 Cal.App.3d 349 (1976) ...................................................................................................7

**<u>Federal Statutes</u>**

42 U.S.C. section:
   1981..................................................................................................................................13
   1983....................................................................................................................................9

**<u>State Statutes</u>**

Civil Code section:
   52........................................................................................................................1, 14, 15

Government Code section:
   818..................................................................................................................................15

Penal Code section:
   148....................................................................................................................................4
   243....................................................................................................................................4
   243(b)..............................................................................................................................7

Vehicle Code section:
   12951................................................................................................................................5
   22511.56...........................................................................................................................5
   22511.56(a).......................................................................................................................5

ORBACH HUFF & HENDERSON LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Reply ISO Defs' Motion for New Trial or, in the alt, for Remittitur Pursuant to FRCP Rule 59 [20-cv-04679-WHA]

Defendants COUNTY OF ALAMEDA ("County"), STEVEN HOLLAND ("Holland") and MONICA POPE ("Pope") ("Defendants") submit the following Reply in support of their Motion for New Trial or, in the alternative, for Remittitur Pursuant to Federal Rules of Civil Procedure (FRCP), Rule 59, against Plaintiffs AASYLEI LOGGERVALE ("Mother"), AASYLEI HARDGE-LOGGERVALE ("Aasylei"); and AAOTTAE LOGGERVALE ("Aaottae") ("Plaintiffs").

## I.    INTRODUCTION

Plaintiffs' opposition, which exceeds local page limits and contains nothing but a series of factual inaccuracies and inapplicable authority, fails to overcome Defendants' position that the verdict was against the weight of the evidence, that the damages were excessive, and Defendants were not provided a fair trial.  First, contrary to Plaintiffs' claim, the Court improperly excluded far more than 2 prior incidents that formed the basis of Holland's and Pope's determination of reasonable suspicion to conduct an investigatory stop of Plaintiffs.  By excluding these incidents, the Court failed to apply the requisite "totality of the circumstances" analysis applicable to the question of reasonable suspicion.  Nor do Plaintiffs adequately rebut that the Court issued improper jury instructions, advocated for Plaintiffs, and infected the jury's deliberative process.

Further, to the extent Plaintiffs cite several cases in support of the jury's award, those decisions actually favor *reducing* the award.  In each case, the plaintiff(s) suffered *severe* emotional distress and could establish supporting circumstances, including extreme physical manifestations of the distress, suicide attempts, and stays in psychiatric wards, to name a few.  Here, Plaintiffs testified that sometimes they get sad and anxious.  The cases cited by Plaintiffs are not remotely comparable to Plaintiffs' claims and in several of those cases, the emotional distress damages award was *less* than Plaintiffs received here.  Accordingly, a remittitur should issue reducing the award to $150,000 per Plaintiff.  Alternatively, because Plaintiffs have conceded that they received treble damages under California Civil Code section 52, the award, *at minimum*, must be reduced by two-thirds where public entities, like the County, are immunized from such treble damages.

## II.    ARGUMENT

### A.    The Court Erred in Excluding Evidence Supporting Reasonable Suspicion

Plaintiffs argue that Defendants had several witnesses testify about the string of recent auto burglaries by Black men in silver cars (Opp., at 2:3-7), and that the Court only excluded two prior incidents that occurred three miles from the subject Starbucks, did not involve Black men in silver sedans, and would not have helped

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

1   Defendants (id., at 2:11-14).  This is entirely inaccurate as the Court excluded far more than two prior incidents.

2   Prior to trial, Defendants presented evidence of 11 prior incidents from the three Starbucks locations the

3   Deputies were investigating, including a summary of witness descriptions of suspects and their vehicles.  Defs'

4   Opp. to Plt's Motion in Limine No. 1, Ex. A.  Many of those incidents involved black males, undescribed

5   males, and silver, grey or other light-colored vehicles.  Id.  Moreover, those were just the relevant *documented*

6   prior incidents that formed the basis of Holland's and Pope's reasonable suspicion.  There were also numerous

7   relevant *undocumented* prior incidents, but nevertheless known, heard by deputies over their radios or

8   otherwise conveyed to deputies.  Trial Tx (hereafter "TT"), at 638:3-640:7, 640:25-648:17, 740:25-741:18,

9   758:10-759:14, 1082:6-12, 1083:9-12.  However, despite all these prior incidents that were part of Holland's

10  and Pope's reasonable suspicion determination, Defendants were only allowed to discuss two prior incidents at

11  Starbucks' parking lots within a mile of the subject incident.[1]  TT, at 24:6-48:7, 318:25-319:14, 404:21-405:10,

12  646:8-12, 653:21-658:17, 223:16-225:18, 1022:24-1025:17.

13      This is crucial because the reasonable suspicion analysis must look to the *totality of the circumstances*

14  and Defendants were entitled to "due weight" in their factual inferences of reasonable suspicion.  *United States*

15  *v. Sokolow*, 490 U.S. 1, 7 (1989); *United States v. Arvizu*, 534 U.S. 266, 276-77 (2002).  Thus, it would be

16  completely arbitrary to suggest, as the Court did here, that a reasonable suspicion analysis has discrete

17  geographical limitations, and that prior incidents outside of that arbitrarily determined distance must be

18  excluded.  Indeed, as Pope testified, the recent string of auto burglaries in her "area" had occurred in the same

19  "busines corridor" in Castro Valley that has stores, a downtown strip, coffee shops, etc.  TT, at 1079:21-1081:6.

20  And, as Holland testified, when officers evaluate crimes at other locations for purposes of forming reasonable

21  suspicion, they consider all crime in their beat area; they do not pull out a tape measure and measure the

22  distance to determine relevance, which would be entirely arbitrary.  TT, at 643:23-644:19.  Defendants were

23  entitled to consideration of the totality of the circumstances, including all of the prior incidents that went into

24  Holland's and Pope's reasonable suspicion determination.[2]

25

26  [1] Because of the Court's ruling in this regard, counsel for Defendants was hamstrung from eliciting testimony
    from Pope and Holland about the details of the undocumented prior incidents that did not fall within the
27  Court's arbitrary geographical limitation.
    [2] Regarding the Big 5 incident, Plaintiffs assert that despite Holland and Pope testifying in deposition that the
28  Big 5 incident did not specifically play a role in their initial decision to detain Plaintiffs, Galloway nevertheless
    testified about his investigation of the Big 5 incident and the actions he took during the subject incident, and

1

ORBACH HUFF & HENDERSON LLP

   **B.      The Court Erred in Sua Sponte Finding Daughters' ID Searches Unconstitutional**

   Plaintiffs argue that the Court initially granted Plaintiffs partial summary judgment as to the illegality of the searches for Aasylei's and Aaottae's ("Daughters") ID's, and then granted reconsideration as to the applicability of the automobile exception, but stated that "all other issues…remain unaffected." Opp., at 5:1-9. Thus, Plaintiffs argue that Defendants should not have been allowed to "re-raise the issue of consent for the search" and "cannot complain that the Court erred instructing the jury on this issue or that they were surprised by the Court's ruling." Opp., at 5:10-17.  This is nonsensical.  Defendants did not move on consent grounds in their summary judgment motion, let alone implied consent (see generally, Dkt. 92), which the Court expressly noted in its Order thereon (see Dkt. 106 at 8:1-2). And, given that the Court ruled it was for the jury to decide the constitutionality of the search for Daughters' ID's, Defendants were entitled to present all applicable defenses on which they had not previously moved.  Further, the Court also noted that during trial, "*both sides allowed, by tacit consent, the issue of consent to be testified to.*"  TT, at 772:13-23.  The issue of consent was also still relevant to the question of qualified immunity.  TT, at 1291:7-1293:8.

   Plaintiffs further argue that Defendants should not have been surprised by the Court's finding that the searches for Daughters' ID's were unconstitutional because the Court allegedly advised Defendants' counsel that the Court was intending on making a finding as to those searches.  Opp. at 5:18-6:2.  While it is true that the parties discussed the issue with the Court on several occasions, that does not render it appropriate to simply make a ruling at some unknown time, without providing any notice to Defendants or their counsel, and then

---

thus, the Big 5 incident was not actually excluded.  Opp., at 9:3-7.  Plaintiffs fail to provide context.  While Galloway was allowed to provide limited testimony regarding the Big 5 incident for purposes of demonstrating that it was relevant to the duration of the detention, the Court did not allow evidence of the Big 5 incident with respect to Holland's and Pope's formation of reasonable suspicion for the stop.  TT, at 897:22-898:3, 905:3-12. Indeed, although Holland and Pope may have testified that the Big 5 incident itself did not play into their determination of reasonable suspicion, they were aware of recent crimes in the area committed by multiple Black suspects, including information heard over the radio and otherwise provided to them, and the Big 5 incident involved three Black females and had occurred just the day prior.  TT, at 645:22-652:9, 812:15-21, 891:4-893:7, 895:22-896:3, 897:22-898:3, 905:3-12, 913:4-914:4.  Thus, the circumstances of the Big 5 incident were clearly relevant to Holland's and Pope's analysis of reasonable suspicion, not just to the duration of the stop.  Notably, Plaintiffs spend a significant amount of space addressing purported misrepresentations made by Defendants' counsel relating to the Big 5 incident.  See Opp., at 3:9-4:26.  Defendants dispute that their counsel made any misrepresentations to the Court, whatsoever.  While Defendants' counsel will be prepared to discuss these alleged misrepresentations at the hearing on this Motion, they are ultimately irrelevant to the issues discussed herein and will not be addressed in this Reply.

include that ruling in the jury instructions and verdict form. *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991) (while a District Court has the authority to enter judgment sua sponte, it must provide the losing party with adequate notice and a reasonable opportunity to respond). Despite discussing the issue with counsel, at no point did the Court rule that it was taking the issue out of the jury's hands during those discussions. It was not until the Court issued the proposed jury instructions on February 16, 2023, that it became clear the Court had reached a ruling at some unknown time. See Dkt. 210, at 7:14-16.

Plaintiffs also argue that *In re Arturo D.* only justified a limited search for a driver's ID during a detention for a Vehicle Code infraction and that there is "no authority that permits search for *passengers'* identification even during a *valid* traffic stop of the driver." Opp. at 6:7-18. Plaintiffs are misguided. Neither *Arturo D.* nor any case thereafter has ever said that *Arturo D.*'s holding only applies to the driver and not passengers. Rather, under *Arturo D.*, it is the need of an officer to "learn the true identity of the person to be cited" that justifies an officer to conduct a targeted search for identification, irrespective of whether the person to be cited is the driver or a passenger. *In re Arturo D.*, 27 Cal.4th 60, 87 (2002). Here, the two passengers, Daughters, violated Penal Code section 148 (by admittedly refusing to reenter the vehicle pursuant to the Deputies' demands and by interfering with the Deputies' investigation), and Aasylie committed a battery on Pope in violation of Penal Code section 243. TT, at 580:5-8, 724:2-753:16, 1092:23-1094:19. They were thus subject to citation and the Deputies were authorized to undertake an investigation for their ID's.

As for *United States v. Rodgers*, 656 F.3d 1023 (9th Cir. 2011), which Plaintiffs cite in support of their position that the searches for Daughters' ID's were unconstitutional, the Ninth Circuit in that case found that search for identification unlawful under the automobile exception, but in doing so, explained what would be necessary in future cases to justify a similar search: "What is missing in the search [for passenger's identification] is any specific particularized fact indicating that [passenger] had identification and that such identification was located in [driver's] car." *Id.*, at 1029. Indeed, "[p]robable cause exists if, under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United State v. Alvarez*, 899 F.2d 833, 839 (9th Cir. 1990). Unlike *Rodgers*, Mother and Aaottae told the Deputies where their identifications were located, and although Aasylei did not do so, it was reasonable for the Deputies to assume she would not have left it in Nevada during an interstate trip and that it

- 4 -

ORBACH HUFF & HENDERSON LLP

would be found in the purse next to where she was seated in the vehicle.  TT, at 551:2-9, 571:15-24, 733:10-735:7, 1112:20-1114:4.  Thus, *Rodgers* does not render the searches unconstitutional.

### C.    The Court Erred in Submitting Improper Jury Instructions and Advocating for Plaintiffs

Plaintiffs argue that Instruction 23 is in line with Supreme Court and Ninth Circuit precedent, and that *Lipton v. U.S.*, 348 F.2d 591 (9th Cir. 1965) is no longer good law in light of *Terry v. Ohio*, 392 U.S. 1 (1968).  Opp., at 7:11-17 (citing *Brown v. Texas*, 443 U.S. 47, 52-53 (1979)).  It is unclear how Plaintiffs are able to reach this dubious conclusion given that the Ninth Circuit has repeatedly reaffirmed the rule in *Lipton* (whereby reasonable suspicion is not required for investigatory stops to enforce laws susceptible of no other means of enforcement), including *after Terry* was decided in 1968.  *See United States v. Carrizoza-Gaxiola*, 523 F.2d 239, 241 (9th Cir. 1975); *United States v. Bowen*, 500 F.2d 960, 965 (9th Cir. 1974) (per curiam).  The Ninth Circuit has held that this rule applies to a request for drivers to produce their license under Vehicle Code section 12951.  *Lipton*, 348 F.2d at 594.  Moreover, California Vehicle Code section 22511.56 requires anyone using a handicap placard to provide identification to officers upon request.  Cal. Veh. Code § 22511.56(a).  And, there is simply no language in *Terry* that mentions *Lipton*, let alone overrules *Lipton*.  *See generally*, *Terry*, 392 U.S. 1.  To the contrary, *Lipton* is still very much good law and has been cited by a District Court in California as recently as 2015.  *Chaoui v. City of Glendora*, No. CV 13-9422-CJC E, 2015 WL 728506, at *9 (C.D. Cal. Feb. 19, 2015) (quoting *Lipton*, 348 F.2d at 594) ("When appellant was unable to produce the driver's license in response to [the officer's] demand, then the officer had probable cause to arrest the appellant, as he did, for violation of § 12951 of the California Vehicle Code.").  Therefore, *Lipton*, its progeny, and the California Vehicle Code clearly allow for peace officers to conduct stops in certain circumstances where reasonable suspicion is not present, rendering Instruction 23 incorrect as a matter of law.[3]

As for Instruction 34, Plaintiffs argue that the language in that instruction providing, "Where officers are presented with circumstances …" means the evidence the officers know at the time the force is used and

---

[3] *Brown*, on the other hand, which Plaintiffs cite, did not involve any applicable state laws similar to California's Vehicle Code that allowed peace officers to stop an individual without reasonable suspicion.  Rather, in *Brown*, the officers observed the plaintiff and another man walking in opposite directions away from one another in an alley.  *Brown*, 443 U.S. at 48.  Believing the two men were about to meet until they saw the patrol car, the officers got out of their vehicle and asked the plaintiff to identify himself and explain what he was doing there.  *Id.*, at 48-49.  Thus, *Brown* has no applicability to this matter, in which Plaintiffs were in a vehicle in a handicapped parking spot, such that the California Vehicle Code applied.  TT, at 515:14-16.

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

1    does not refer to after-acquired evidence.  Opp., at 7:19-27.  Plaintiffs further argue that even if Instruction 34

2    was legally deficient, that is irrelevant because Plaintiffs' only claim for excessive force is based on the

3    illegality of the detention and, therefore, the excessive force claim was subsumed by the false arrest claim and

4    no separate instruction was necessary.  Opp., at 8:1-6.  However, the problem with Instruction 34 is the

5    language that Plaintiffs conveniently chose to omit from their quote, which provides that "[w]here officers are

6    presented with circumstance indicating to them that *no crime was in fact committed*…the 'severity of the

7    crime' factor is necessarily diminished."  Dkt. 231 at 12:12-14, emph. added.  This language suggests that the

8    "severity of the crime" factor may be diminished if the officers learn, *after the use of force*, that "no crime was

9    in fact committed," which is confusing to the jury and wrong as a matter of law.  *See Graham v. Connor*, 490

10   U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of

11   a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").  There is simply nothing in

12   Instruction 34 that suggests the phrase, "presented with circumstances" means "at the time the force is used."

13   As for Plaintiffs' other argument, that the false arrest claim subsumed the excessive force claim, the Court itself

14   cited authority which eviscerated this argument during trial.  TT, at 972:23-976:14.  Specifically, the Court

15   relied on *Velazquez v. City of Long Beach*, 793 F.3d 1010 (9th Cir. 2015), in which the Ninth Circuit ruled that

16   "'[b]ecause the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable

17   cause to make an arrest does not establish an excessive force claim, and vice-versa."  *Id.*, at 1024.  Thus, the

18   false arrest claim is distinct from and did not subsume the excessive force claim.[4]

19            Regarding Instruction 38, and citing no legal authority whatsoever, Plaintiffs argue in conclusory

20   fashion that the Court's finding that the searches for Daughters' ID's were unconstitutional was "legally

21   proper" and that there "is no basis whatsoever to accuse the Court of trying to advocate for the Plaintiffs by

22   giving these instructions to the jury…"  Opp., at 8:20-25.  As discussed above, the Court's finding was *not*

---

[4] Further, even though the Court specifically found the excessive force claim to be distinct from the false arrest claim, the Court nevertheless chose not to distinguish between those claims in the Amended Special Verdict Form, asking the jury to determine, generally, whether "plaintiffs prove[d] by a preponderance of the evidence that Deputy Steven Holland violated any of plaintiffs' constitutional rights?"  Dkt. 237 at 1:17-19.  Thus, Plaintiffs do not know whether the jury found for Plaintiffs on the false arrest claim, the excessive force claim, or both.  The Amended Special Verdict Form does not provide that information.  Accordingly, Plaintiffs do not have the information they need to so much as make the argument that the false arrest claim subsumed the excessive force claim.

legally proper, it was legally incorrect, and the fact the Court opted to unnecessarily emphasize and repeat that finding to the jury while reading the jury instructions is indicative of judicial bias in favor of Plaintiffs.  To this point, Plaintiffs incredulously argue that just because the court reporter was obviously able to clearly understand the *first* instance of the judge making this statement while reading the instructions to the jury, that does not mean the jury heard it and that the judge's voice may have cracked the first time, leading to the Court reiterating the statement to the jury.  Opp., at 9:1-8.  However, the transcript directly contradicts this notion.  Throughout the trial, the court reporter routinely used two dashes ("--") to identify instances in which the individual speaking paused, coughed, or otherwise did not clearly continue his or her thought, including the Court.  See e.g., TT, at 172:9-12 (the Court: "Would that be better for you, more comfortable, so you won't -- what's the word?"), 67:23 (the Court: "The defense – excuse me.  The defense…"), 1302:21-22 (the Court: "The jury -- the clerk will take the exhibits in pronto, right away.").  However, no such dashes appear anywhere in the section of the transcript in which the Court repeated and emphasized to the jury its finding that the searches for Daughters' ID's were unconstitutional.  TT, at 1287:13-18.  The Court's statement was clear and unobstructed by any cracking voice, cough, or other noise.  Rather, the Court's repetition of this statement was clearly for no other purpose except emphasis and improper judicial advocacy.[5]

As for Instructions 40 and 44, pertaining to consent for the searches, Plaintiffs argue only that the Court had already ruled, in granting Plaintiffs' prior motion for partial summary judgment, that there was no consent

---

[5] Plaintiffs argue that the finding of illegality as to the searches for Daughters' ID's was immaterial because there was no reasonable suspicion for the detention in the first place, rendering all subsequent searches illegal.  Opp., at 9:9-14.  This is wrong for numerous reasons.  First, Plaintiffs do not know if the jury found a lack of reasonable suspicion because the Amended Special Verdict Form did not distinguish between the various constitutional violations alleged against Defendants.  As it reads, for example, the Amended Special Verdict Form could reflect that the jury found for Plaintiffs on the excessive force claim against Holland, but no other claim against him, and for Plaintiffs on the illegal search claim against Pope, but no other claim against her.  See Dkt. 237.  Accordingly, Instruction 38 is clearly material.  Moreover, even if the initial detention was unlawful, that does not necessarily mean that all subsequent searches were unlawful.  For example, Defendants put forth evidence that one of the Daughters, Aasylei, committed a battery on Pope after the initial detention.  Trial Tx, at 1092:23-1094:19.  Under California law, resistance to an *unlawful* arrest may still constitute the misdemeanor offense of battery under Penal Code section 243(b).  *People v. Henderson*, 58 Cal.App.3d 349, 356-57 (1976).  And, once an officer has probable cause to believe a subject has committed a misdemeanor violation of Section 243(b), the officer may search for the subject's identification for purposes of processing the offense.  *Jones v. Murray*, 962 F.2d 302, 306 (4th Cir. 1992); *United States v. Hernandez-Rivas*, 348 F.3d 595, 599 (7th Cir. 2003).  Accordingly, even if the detention was unlawful, that does not per se render all subsequent searches unlawful.

ORBACH HUFF & HENDERSON LLP

as a matter of law and that no warrant exception applied.  Opp., at 9:16-22.  Plaintiffs contend that the "ruling was correct and it was equally correct when the Court instructed the jury that no valid consent was given as a matter of law."  Opp., at 9:22-23.  As discussed in detail above, this is inaccurate.  Defendants did not move for summary judgment on consent grounds, were entitled to present a consent defense at trial, and at a minimum, the issue of consent was relevant to the qualified immunity analysis.  Further, Plaintiffs do not address Defendants' legal arguments whatsoever, such as the fact that consent may be implied, which is a question of fact to be resolved by the jury, or that the instruction included improper colloquy by the Court concerning the Court's irrelevant opinion on whether the consents were valid.  See Motion, at 12:22-13:24; see Opp., at 9:15-10:12.  Plaintiffs' failure to respond to these points constitutes a concession that they are meritorious.  *See Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp.2d 1197, 1210 n.7 (N.D. Cal. 2013) (collecting cases and finding a party's failure to address an argument concedes the issue raised).

Regarding Instruction 47, Plaintiffs argue that Defendants did not offer testimony on the issue of whether Ahern is a final policy making authority regarding County employment policy and that the "only evidence in this case is that Sheriff Ahern made the decision that no further action was required."  Opp., at 10:27-11:3.  Plaintiffs improperly seek to shift the burden of proof to Defendants.  Plaintiffs carry the burden of establishing ratification by a policymaking authority; it is not Defendants' burden to prove that some specific individual is *not* a policymaking official.  *Hernandez v. Marshall*, No. C-94-0917 EFL, 1995 WL 481431, at *2 (N.D. Cal. Aug. 8, 1995) ("Plaintiff has failed to satisfy his burden of showing the policy to be a deliberate or conscious choice by a municipality's final policy making official") (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) and *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)).  After years of litigation, Plaintiffs have yet to proffer any evidence that Sheriff Ahern had final policy making authority for purposes of establishing County employment policy.  Simply receiving information about an internal investigation, or having authority to hire/fire employees and issue discipline, is not sufficient.  *Pembaur*, 475 U.S. at 483.

**D.    The Court Erred in Submitting the Verdict Form and Belatedly Amending It**

**1.    The Amended Special Verdict Form Improperly Asked the Jury to Decide if the County Is Liable for Officer Pope's Conduct**

Plaintiffs argue that it was proper for the Court to amend the Verdict Form after the jury had deliberated for nearly two days, relying solely on *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1119

(9th Cir. 2008), overruled by *Arizona v. ASARCO LLC*, 773 F.3d 1050, 1058 n.1 (9th Cir. 2014).  Opp., at 11:12-23.  However, *Mendez* has no application to this action.  *Mendez* involved a civil rights action under 42 U.S.C. section 1983 arising from the aftermath of an officer-involved shooting that resulted in the death of the plaintiff's son and the alleged arrest of the plaintiff.  *Mendez*, 540 F.3d at 1115-16.  During a break between the defendant's closing argument and the plaintiff's rebuttal, the court expressed concern that the plaintiff had not presented sufficient evidence of ongoing emotional distress damages and ordered both sides to prepare a record of transcript excerpts regarding ongoing emotional damages.  *Id.*, at 1118-19.  *The plaintiff voluntarily agreed to defer the court's ruling on the issue until after her rebuttal argument.  Id.*, at 1118, 1120.  In the meantime, the case was submitted to the jury with the Court initially instructing the jury that the plaintiff's "damages should be 'the amount of money which would reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant."  *Id.*, at 1117.  However, after reviewing the parties' submissions concerning ongoing emotional distress, the court ruled the following morning that "limitation is appropriate..."  *Id.*, at 1119.  Thus, in the midst of deliberations, the court recalled the jury and added an instruction, providing that "the evidence does not support an award of damages for any period after July 3, 2002," which was the day the plaintiff was released from the police station.  *Id.*, at 1117-1119.  The plaintiff appealed the propriety and timing of this additional instruction, which the Ninth Circuit affirmed.

First, *Mendez* is distinguishable on the simple fact that the court in that matter simply added a jury instruction after deliberations had begun.  That is not at all similar to what the Court did in this matter.  The Court here actually amended the Special Verdict Form over which the jury had already been deliberating for nearly two days.  In doing so, the Court did not simply alter the temporal scope of Plaintiffs' damages claim.  Rather, the Court *added* a *Monell* claim against the County to the Verdict Form that the Court previously ruled was waived (relative to Pope's alleged conduct), removed the language advising the jury that the County is not liable for Pope's conduct, removed an entire column in which the jury was to allocate damages to the County, added language advising the jury to "not worry" about allocating damages to the County without explanation, and also added a statement that the searches for Daughters' identifications were unconstitutional, after already including that statement in the jury instructions and emphasizing that instruction to the jury *twice*.  Compare, Dkt. 226-1 and Dkt. 237; TT, at 1287:13-18.  Thus, on its facts, *Mendez*'s additional jury instruction concerning the temporal scope of the plaintiff's damages is inapposite.

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

More importantly, the court in *Mendez* did not hold that it is per se acceptable to issue new jury instructions after deliberations had begun. To the contrary, the court analyzed whether the plaintiff was "substantially misled in formulating [her] arguments" or was otherwise prejudiced, and concluded she was not. *Id.*, at 1119-1120. Unlike *Mendez*, counsel for Defendants here *did not* voluntarily agree to postpone any rulings by the Court until after closing arguments had concluded, and Defendants were clearly misled and prejudiced by the Court's conduct. If Defendants had known that the Court was going to *add* a *Monell* claim against the County relative to Pope's conduct, counsel for Defendants would have elicited substantially more testimony concerning the Internal Affairs investigation and its scope, focused more on Pope's conduct during the incident, would have had Brodie testify in person rather than merely relying on his deposition transcript, and would have specifically addressed the *Monell* claim as to Pope's conduct in closing argument. Instead, Defendants relied upon Plaintiffs' counsel's representation at the beginning of trial that they were not pursuing a *Monell* claim relative to Pope's conduct (see Motion, at 15:15-28) and the Court's explicit statement that the *Monell* claim against the County regarding Pope's conduct was waived because Plaintiffs did not timely object to the Court's initial Special Verdict Form. TT, at 1172:22-1173:6 ("THE COURT: …But the point about whether or not ratification was in the case as to Pope was there on Friday. And you should have raised it. You did not raise it. I said it would be waived if you didn't, and it's just too late for me now to go back and try to revamp these instructions. So I'm sorry. It's going to be sent to the jury in the form that I have it here. So your point, subject to what I've just said, you can raise with the Court of Appeals if it becomes – if they find Sergeant Pope guilty."). The Court made this statement on the morning of February 27, 2023, *immediately before closing arguments were to commence* (id.), and then simply added the claim back to the Amended Special Verdict Form on March 1, 2023, after closing arguments had concluded and after the jury had been deliberating for nearly two days (see Dkt. 237). As such, Defendants were both misled and prejudiced.[6]

---

[6] Plaintiffs claim that the "facts and law governing the *Monell* claim based on ratification of the deputies' conduct applies equally to both Holland and Pope." Opp., at 11:24-28. Plaintiffs argue that there "was no differentiation between the conduct conducted by Holland of the mother's belongings or by Pope of the daughters' belongings" and that the applicable County policy at issue applied to the searches of all Plaintiffs. Opp., at 12:1-10. However, Plaintiffs' *Monell* claim was based solely on a ratification theory, not a County policy, as ratification was the only theory remaining following Defendants' summary judgment motion. See Dkt. 106, at 11:7-12:28. Thus, Plaintiffs' reference to some County policy is irrelevant and should be disregarded. Further, there were different facts and applicable law at play relative to the searches of Mother and Daughters, as discussed above.

**2. The Amended Special Verdict Form Improperly Suggested to the Jury the County Would Pay for Any Judgements Against Holland and Pope**

Plaintiffs argue that the Amended Special Verdict Form did not suggest to the jury that the County would pay for any judgment against Defendants because the Court advised the jury "that they should not consider who will be paying the judgment" and that Defendants' own proposed verdict form only had one line for damages for each Plaintiff, without breaking out the damages against any particular defendant. Opp., at 12:25-13:7. Thus, Plaintiffs argue that Defendants cannot claim error where the Amended Special Verdict Form was "more in line with Defendants' own requested form." Opp., at 13:5-9. Plaintiffs are misguided. Defendants' argument is about the *changes* the Court made in the middle of deliberations and the resulting confusion to the jury, not whether there should have initially been one, two, or three lines for damages for each Plaintiff. The problem is that the jury initially saw a Special Verdict Form that asked them to allocate damages to each defendant, including the County, Holland, and Pope. See Dkt. 226-1. The Court then issued the Amended Special Verdict Form, which removed the line to allocate damages to the County and added language stating, "Do not worry about a column for Alameda County," which was both misleading and confusing to the jury to the extent the Court did not provide them with any explanation for these changes. Further, while the Court may have advised the jury to not consider who will be paying any potential judgment, the Court's conduct nevertheless sent the message to the jury that the County would be paying, which was not only judicial advocacy but prejudicial to Defendants.

**3. The Amended Special Verdict Form Improperly Instructed the Jury that Defendants Violated Daughters' Constitutional Rights**

Regarding the Court's addition to the Amended Special Verdict Form of the statement that the searches for Daughters' ID's were unconstitutional, Plaintiffs argue that the jury could not have been confused that question 1 of the Amended Special Verdict Form (regarding whether Holland violated any of Plaintiffs' constitutional rights) permitted them to find Holland liable for those searches because Pope was the one who conducted them. Opp. at 6:19-7:2. The problem with Plaintiffs' argument is that nothing in the Amended Special Verdict Form stated that the finding of unconstitutionality of the searches for Daughters' ID's was limited to Pope. See generally, Dkt. 237. Rather, the Amended Special Verdict Form merely stated, ambiguously and generally, that the "Court has already told you the searches for the identifications of the two

- 11 -

passengers violated the Fourth Amendment." Id. at 4:1-6.  The same is true of the final Jury Instructions, which likewise did not limit the Court's finding of a constitutional violation to Pope. Dkt. 231 at 13:9-11 ("I instruct you that even if the detention was valid in our case the search for identifications of the *passengers* in our case was unconstitutional.").  Clearly, this would be confusing to a jury who was then asked to ambiguously decide whether "Deputy Steven Holland violated any of plaintiffs' constitutional rights."  Dkt. 237, at 1:17-18.  Jurors cannot be expected to make the same type of legal deductions that lawyers make.  They are laypeople who were instructed that the searches for Daughters' ID's were unconstitutional, without any language tying that violation solely to Pope, and were then asked whether Holland violated any of Plaintiffs' constitutional rights.  They were quite literally set up by the Court to find for Plaintiffs against Holland and Pope.  Adding the statement to the Amended Special Verdict Form that the searches for Daughters' ID's were unconstitutional remains prejudicial, incorrect as a matter of law, constituted judicial advocacy, and violated the province of the jury by taking the issue out of its hands.  *Mateyko v. Felix*, 924 F.2d 824, 827 (9th Cir. 1990) (verdict form must "fully and fairly present[] to the jury the issues it was called upon to decide").

**E.    Damages Are Excessive, Entitling Defendants to Remittitur or New Trial**

Plaintiffs argue that they presented sufficient evidence of significant damages through their own self-serving testimony and that they were not required to proffer documentary or other evidence of damages.  Opp., at 13:25-14:10 (citing *Passantino v. Johnson Consumer Products, Inc.*, 212 F.3d 493, 513 (9th Cir. 2000)).  They further argue that the evidence concerning damages came from the body-worn camera video of the Deputies and Plaintiffs' testimony, referring to alleged testimony from Plaintiffs about how upset this incident made them.[7]  Opp., at 14:17-16:28.  However, at no point in this completely irrelevant diatribe do Plaintiffs ever actually cite to the record for this purported testimony and instead randomly discuss the United States'

---

[7] While Defendants do not dispute that emotional damages may be awarded based on testimony alone, the problem here is that Plaintiffs' testimony, albeit nothing but self-serving, was still insufficient for purposes of supporting the jury's monstrous award.  For example, taking the case Plaintiffs cite, *Passantino*, which involved a workplace retaliation claim under Title VII and Washington state law, the plaintiff testified that she was forced to spend less time with her family because she feared she would lose her job, suffered stomach problems, rashes and headaches which required medical attention, and sought counseling. *Passantino*, 212 F.3d at 503.  Based on those facts, the Ninth Circuit upheld an emotional distress damages award of $1,000,000. *Id.* at 504.  Unlike *Passantino*, Plaintiffs presented no such evidence of emotional distress here, such as physical manifestations or seeking counseling, and to the extent the Opposition suggests they testified about the impact the incident had on them, no citations to the record are provided.  See Opp., at 14:17-16:28.

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

1  "history of slavery," as though that has anything to do with this matter.  Opp., at 17:1-3.  Plaintiffs are clearly

2  implying that it would be racist for the Court to reduce the award or order a new trial (see Opp., at 17:9-16),

3  and such extortionist tactics should not be tolerated.

4        Moreover, none of the cases Plaintiffs cite in support of the verdict are even remotely similar to this

5  matter.  In *Harper v. City of Los Angeles*, 533 F.3d 1010 (9th Cir. 2008), which involved the Rampart scandal

6  in the LAPD, the plaintiff-officers testified about the substantial adverse and physical emotional effects that the

7  subject incident caused.  One plaintiff developed high blood pressure, intestinal issues, a drinking problem,

8  paranoia, and had to work lower-paying security jobs.  *Id.*, at 1029.  Another plaintiff developed heartburn,

9  back and neck pain, and anxiety attacks, his wife left him and his family fell apart, his teenage stepdaughter ran

10  away, and he ultimately attempted suicide before being placed in a psychiatric ward.  *Id.*  A third officer gained

11  100 pounds, was hospitalized for chest pains, developed high blood pressure and anxiety, lost his career, and

12  filed for bankruptcy, all of which affected his children.  *Id.*  Similarly, in *Mueller v. Hawaii Dept. of Public

13  Safety*, 595 F.Supp.3d 920 (D. Haw. 2022), which involved an alleged sexual assault of an inmate in her cell by

14  a male correctional officer, and in which the Ninth Circuit affirmed a damages award of $7,050,000, including

15  $2 million for negligent infliction of emotional distress, "[t]here was evidence that Plaintiff had been diagnosed

16  with various mental health conditions and sought treatment in 2018 and 2019 related to the [sexual assault]."

17  *Id.*, at 929.  As for *Hunio v. Tishman Construction Corporation of California et al.*, 24 Cal.App.4th 792, 18

18  Cal.Rptr.2d 253, which involved an ADEA claim, and in which a California state court affirmed an emotional

19  distress damages award of $2 million (following remittitur from the trial court from $4 million), it is no longer

20  good law as review was granted and the opinion was superseded, and contrary to Plaintiffs' assertion, it is

21  unclear on what grounds review was granted.  Further, the plaintiff in *Hunio* wound up in a psychiatric hospital

22  with severe depression, with his own physicians testifying that it was caused by the defendants' conduct.  *Id.*, at

23  257- 258.  The plaintiff also suffered impotence and necessitated lifetime anti-depressant medication and

24  psychiatric care.  *Id.*, at 264-265.  Finally, in *Diaz v. Tesla, Inc.*, 598 F.Supp.3d 809 (N.D. Cal. 2022), which

25  involved a 42 U.S.C. section 1981 race discrimination claim in employment, and in which the district court

26  reduced a non-economic compensatory damages award based on workplace racial harassment from $6.9

27  million to $1.5 million, the plaintiff became withdrawn, fundamentally different, stopped eating and sleeping,

28  stopped having intimate relations with his wife, and stopped being involved in his child's life.  *Id.*, at 835.

ORBACH HUFF & HENDERSON LLP

1    Unlike the plaintiffs in *Harper*, *Mueller*, *Hunio*, and *Diaz*, none of the Plaintiffs here developed high

2    blood pressure, intestinal issues, heartburn, physical pain, or any other physical manifestations of their

3    emotional injuries as a result of the incident.  See generally, TT.  Nor did Plaintiffs develop substance abuse

4    issues, their family did not fall apart, and none of them ended up in a psychiatric ward as a result of the

5    incident.  In fact, none of them so much as sought treatment.  See generally, TT, and 560:14-561:1, 590:25-

6    591:2, 627:10-12.  Plaintiffs also did not attempt to commit suicide, did not gain a significant amount of

7    weight, did not lose their careers, were not diagnosed with any mental health conditions, do not require lifetime

8    medications or psychiatric care, and have not stopped eating or sleeping as a result of the incident.  The notion

9    that Plaintiffs' purported injuries are even remotely in the same conversation as the cases they cite is nothing

10   short of absurd.[8]  Rather, the cases cited by Defendants in the Motion are far more applicable to the facts of this

11   matter.  Motion, at 19:11-20:26.  Considering that authority and Plaintiffs' garden-variety emotional distress, a

12   remittitur should issue in an amount of up to $150,000 for each Plaintiff.[9]

13   Finally, in a significant admission, Plaintiffs agree with Defendants that the jury clearly awarded treble

14   damages under the Bane Act and California Civil Code section 52, on the entire award.  Opp., at 18:14-19:2.

15   For this reason alone, the entire award must be reduced by at least two-thirds.  As a District Court in the Central

16   District of California recently concluded, treble damages under Section 52 may not be awarded against a public

17   entity.  *Archibald v. Cnty. of San Bernardino*, No. EDCV1601128ABSPX, 2018 WL 8949779, at *1–2 (C.D.

---

[8] Mother testified that she gets anxious and sad at times, as most people do in ordinary life, and that she doesn't like going to Starbucks anymore.  TT, at 529:7-14.  Aaottae testified that she thinks about the incident at "times" and that when she does, she sometimes gets scared, and that she is otherwise more aware of everything she does.  TT, at 572:20-573:15.  Indeed, far from winding up in a psychiatric ward with severe depression after this incident, Plaintiffs continued on to San Diego to explore the City and celebrate Aaottae's birthday.  TT, at 591:14-24.  Aasylei testified that she was somewhat emotional during the trip to San Diego immediately after the incident, was stressed and anxious (not just with respect to the incident but also a statistics exam she had taken thereafter), and that she went to sleep later than usual.  TT, at 612:19-613:10.  At present, Aasylei said she sometimes feels confused and frightened.  TT, at 613:11-18.  These are garden-variety emotional distress claims.  They are not claims involving the sort of severe emotional distress discussed in *Harper*, *Mueller*, *Hunio*, and *Diaz*.  There is simply no evidence supporting an award of $2.75 million per Plaintiff in this action.

[9] Plaintiffs "suggest" that the verdict is "consistent with the large-scale focus group Plaintiffs conducted prior to trial."  Opp., at 25:2-3.  However, Plaintiffs cite no authority that a District Court may consider a private focus group commissioned by a party to the action in determining whether the jury's award is excessive, and nor can they, as no such authority exists.  An entirely separate, informal, ex parte focus group involving only Plaintiffs and their counsel, for which neither the Court nor Defendants have any idea what evidence was presented, has no relevance to this action or whether the jury's verdict was excessive.

Cal. May 10, 2018).  This is because California Government Code section 818 immunizes public entities from punitive damages.  *Id.*, at *1; Cal. Gov. Code § 818.  And, the treble damages allowable under California Civil Code section 52 are properly characterized as punitive damages.  *Archibald*, at *1 (citing cases); *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1172 (1991).  As such, "treble damages under §52(a) are punitive and therefore unavailable against a public entity."  *Archibald*, at *1; *Jefferson v. City of Fremont*, No. C-12-0926 EMC, 2012 WL 1534913, at *7 (N.D. Cal. Apr. 30, 2012).  Further, even if treble damages could potentially be awarded as against Pope and Holland, the Court's Amended Special Verdict Form did not allow the jury to allocate liability to the County and so it is unclear how much liability was allocated solely to Holland and solely to Pope. Dkt. 237, 5:2-14.  Like *Archibald*, "[b]ecause the jury's damage award cannot be apportioned between [Holland and Pope] and the County, there is no award that can be trebled as to [Holland or Pope] alone."[10]  *Archibald*, at *1.  *At a minimum*, Plaintiffs are not entitled to treble damages and the award must be reduced by at least two-thirds.

**III.      CONCLUSION**

        Defendants respectfully request that if judgment as a matter of law is not granted in favor of Defendants, that Defendants' motion for new trial be granted in the alternative or, a remittitur issued in an amount up to $150,000 for each Plaintiff.

Dated:  April 19, 2023                       Respectfully submitted,
                                             **ORBACH HUFF & HENDERSON LLP**

                                             By:    /s/ *Kevin E. Gilbert*
                                                     Kevin E. Gilbert
                                                     Attorney for Defendants
                                                     COUNTY OF ALAMEDA, STEVEN
                                                     HOLLAND and MONICA POPE

---

[10] Further, even if there were some non-punitive purpose behind section 52's treble damages provision, such as to ensure the plaintiff is fully compensated and to encourage persons with low-value Bane Act claims to pursue them, neither such purpose applies here.  *Id.*, at *2.  Taking away two-thirds of the damages award, $2.75 million would remain, leaving $916,666.67 for each Plaintiff.  In other words, each Plaintiff would receive close to $1 million for garden-variety emotional distress resulting from an investigatory detention in a Starbucks parking lot that did not result in physical injuries and lasted just over an hour.  Clearly, this would be adequate compensation for each Plaintiff for such claims, even under Plaintiffs' own cited authority above, and certainly is not "low-value."

ORBACH HUFF & HENDERSON LLP