Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
**ORBACH HUFF + HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, California 94588
Telephone:   (510) 999-7908
Facsimile:    (510) 999-7918

Attorney for Defendants
COUNTY OF ALAMEDA, STEVEN HOLLAND and MONICA POPE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AASYLEI LOGGERVALE; AASYLEI HARDGE-LOGGERVALE; and AAOTTAE LOGGERVALE,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA; STEVEN HOLLAND; and MONICA POPE,<br><br>Defendants. | Case No. 20-cv-04679-WHA<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO COURT'S REQUEST FOR FURTHER BRIEFING ON BANE ACT ISSUES** |

Defendants hereby respond to the Court's Request for Reply Briefing on the Bane Act and on the effect of *Delaware v. Prouse,* 440 U.S. 648 (1979) (Dkt. 290). On the Bane Act issues, Defendants respond only to questions 1, 6, and 7, as the parties appear to generally agree as to questions 2-5.

**Q1.     Is any part of the trebling under the Bane Act <u>punitive</u> in nature?**

Plaintiffs state they could not find any decision directly addressing whether section 52(a) treble damages are punitive. But, *Harris v. Capital Growth Invs. XIV,* cited in Plaintiffs' brief, expressly stated that section 52(a)'s treble damages provision "*reveals a desire to punish intentional and morally offensive conduct.*" *Harris*, 52 Cal.3d 1142, 1172 (1991) (emphasis added) (superseded by statute on other grounds as stated in *Munson v. Del Taco, Inc.*, 46 Cal.4th 661, 664 (2009)).

While the statement in *Harris* was not a *holding* that treble damages under section 52(a) are punitive for the purpose of Government Code section 818, the Court's determination that these damages were punitive provided key support for its ultimate holding that a certain form of Title VII action is not available under section 52(a). See *Harris*, 52 Cal.3d at 1170–85. If this is "dicta," it is important dicta by the California Supreme Court on a California statute, and this Court should follow it. See *Aviles-Rodriguez v. Los Angeles Community College Dist.*, 14 Cal.App.5th 981, 990 (2017) ("As one appellate court has advised: 'Generally speaking, follow dicta from the California Supreme Court'"); see also *Koebke v. Bernardo Heights Country Club*, 36 Cal.4th 824, 853 (2005), citing *Harris* with approval in distinguishing the intentional and punitive character of § 52(a) from Title VII of the Civil Rights Act.

In arguing that section 52(a) treble damages are *not* punitive, Plaintiffs rely primarily on *Los Angeles County Metropolitan Transportation Authority v. Superior Court* ("*Los Angeles MTA*"), which concluded that section 52(b)'s *civil penalty* is not "primarily" punitive and therefore that public entities can be liable for the penalty despite section 818 immunity. That misses the point. This Court asked about treble damages, not the separate civil penalty remedy.[1] The Court in *Los Angeles MTA* said nothing about the purpose of section 52(a) treble damages, and Plaintiffs have not shown that *Los Angeles MTA*'s rationale applies to treble damages.

///

---

[1] Defendants concede that their argument submitted in Opposition to Plaintiffs' Motion for Interest and Bane Act Penalty – that the civil penalty in Civ. Code § 52(b)(2) is not applicable to the Bane Act – appears to be overruled by the legislative history and authority in *Los Angeles MTA*, and thus the $25,000 penalty would be applicable in this case, assuming a violation of the Bane Act occurred. See, Opp. (Dkt. 256) at 8-9, § C.

ORBACH HUFF + HENDERSON LLP

Moreover, a legislative history report discussed in *Los Angeles MTA* evidences that the Legislature intended treble damages under section 52 subdivision (a) to be essentially punitive. The report describes a previous version of section 52 subdivision *(b)* that provided for treble damages just as subdivision (a) still does; the report says that under that version of subdivision (b), defendants "may be held liable to the victim for actual damages, *exemplary damages* of up to a maximum of 3 times the amount of actual damages, a civil penalty …." S. Comm. Judiciary, Rep. S.B. 98 (1991–1992 Reg. Sess.) (emphasis added), cited at 123 Cal.App.4th 261, 270-271 (2004). Another committee analysis similarly referred to this provision of the former section 52(b) as a "cap on *punitive damages*." Assemb. Comm. Pub. Safety, Repub. Analysis of S.B. 98 (1991–1992 Reg. Sess.) (Aug. 28, 1991). In sum, back when subdivision (b) had a treble damages rule like that of subdivision (a), the Legislature referred to these as exemplary or punitive damages. It must have intended likewise for the treble damages provided for in subdivision (a).

Plaintiffs also argue that section 818 does not preclude the County from treble damage liability. *See* Plts' Brief (Dkt. 287) at 3:1-3. This argument lacks merit, as the cases cited by both parties demonstrate that courts routinely find that treble damages under section 52(a) are barred by section 818. See, Defs' Brief (Dkt. 286) at 6, n. 1; Plts' Brief at 3:8-16. Nor is there merit to Plaintiffs' contention (pp. 3-4) that the County cannot invoke section 818 immunity because of its relationship with Holland. Plaintiffs' speculation about a potential conflict caused by Holland and the County's joint representation is unsupported by any actual information about the terms of the representation. Moreover, Plaintiffs' assertion that the County has agreed to indemnify Holland undercuts their claim of a supposed conflict. Importantly, Government Code section 825 and the Bane Act directly address this issue. See, Gov. Code § 825(a)-(b); Civ. Code § 52.1(o).

Notably, in enacting the Bane Act, while the Legislature specifically precluded *some* governmental immunities, and expressly made certain employee indemnification statutes applicable to Bane Act claims (see § 52.1(n)), the Legislature did *not* expressly eliminate section 818's protections for public entities. The ordinary section 818 analysis, thus, applies: As Defendants argued below, public entities are not liable because treble damages' purpose is primarily punitive. See, e.g., TT, 1320–1321.

///

///

///

**Q6.** ***The Court recalls no timely objection having been made to the Bane Act instruction regarding trebling or the absence of criteria for the exercise of the jury's discretion regarding trebling. Is this correct?***

Plaintiffs and Defendants agree that Defendants did not object to the treble damages instructions or verdict—but that was because Defendants had no reasonable opportunity to do so:

- The original instructions did not provide for Bane Act treble damages (Dkt. 210);
- In their objections, Plaintiffs proposed including a treble damages instruction and verdict form (Dkt. 227);
- Only *two days later*, the Court announced its ruling that the final instructions and verdict would include Bane Act treble damages, and then the Court asked counsel to limit objections *only* to "something that you think I did not intend that is just an obvious mistake by me." TT, 1165:15-21. Because the Court clearly *intended* to allow for treble damages, this direction effectively cut off potential objections.

Also, as noted in Defendants' brief, the lack of an objection in this context is irrelevant. As the California Supreme Court explained, when even though the defendant may have failed to preserve the issue, the Court reached the argument that punitive damages were excessive: "[T]he primary interest that must be protected is the public interest in punitive damage awards in appropriate amounts. We cannot allow the public interest to be thwarted by a defendant's oversight or trial tactics." *Adams v. Murakami*, 54 Cal.3d 105, 115 n. 5 (1991) (en banc). The same reasoning applies here.

**Q7.** ***The Bane Act is Section 52.1 of the California Civil Code. Section 52 calls out for trebling only claims arising under Section 51, 51.5 or 51.6, but omits Section 52.1. What authority addresses this apparent discrepancy?***

Plaintiffs cite three cases to support their claim that section 52(a) treble damages are available for Bane Act claims despite section 52.1 not being mentioned in section 52. All three cases, however, fall into the category described in Defendants' brief as decisions "recit[ing] that the Bane Act allows recovery of treble damages, without noting or considering" whether damages are available under section 52(a) or section 52(b). See Defs' Breif, p. 2; *Klein v. City of Laguna Beach*, 810 F.3d 693, 696 n.2, 698-702 (9th Cir. 2016) (analyzing only whether district court applied correct legal standard to request for attorney fees);

- 3 -

*Grassilli v. Barr*, 142 Cal.App.4th 1260, 1290-1294 (2006) (analyzing only whether punitive damage award was unconstitutionally excessive); *Gatto v. County of Sonoma*, 98 Cal.App.4th 744, 753 (2002) (stating that the only questions on appeal are whether complaint was timely and whether plaintiff presented a valid constitutional or statutory claim).

Decisions are not authority for propositions not actually considered. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019) (law of the circuit arises only when "a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion"). The opinions cited by Plaintiffs, thus, do not overcome the legislative history described in Defendants' briefing (Dkt. 286). That history proves the Legislature's intent to entitle Bane Act claimants to damages under section 52(b), but not section 52(a).

**Q8.    Were Defendants aware of *Delaware v. Prouse*, 440 U.S. 648 (1979), and if so, why was *Prouse*'s holding not brought to the Court's attention?**

Defendants were aware of *Prouse* generally, having cited it for an unrelated point in their summary judgment motion. Dkt. 92 at 13. Text searches in response to the Court's inquiry also show that Plaintiffs' Rule 50(a) motion argued that *Lipton v. United States*, 348 F.2d 591 (9th Cir. 1965) was not good law in light of *Prouse*. Dkt. 212, pp. 1-2; Dkt. 221, p. 5. Neither party appears to have discussed *Prouse* further after that briefing.

Defendants did not interpret *Prouse* as necessitating further discussion because *Lipton* was not among the cases discussed in *Prouse*, nor are Defendants aware of any post-*Prouse* Ninth Circuit decision purporting to overrule *Lipton*. Indeed, *Lipton* does not have a yellow or red flag in Westlaw.

Nor, in Defendants' view, did *Prouse* impact Defendants' primary argument under *Lipton*—namely, that officers can stop vehicles without reasonable suspicion *to enforce laws not susceptible to other means of effective enforcement*. See, e.g., TT, 492 (defense counsel citing *Lipton* for this concept). *Lipton* held that an officer could stop a car to investigate whether the driver had a license, because "[n]o other way was available to the officer to determine whether [the driver] possessed the required license." 348 F.2d at 593 ("A contrary holding would render unenforceable the State statute requiring that automobile drivers be licensed"); see also

ORBACH HUFF + HENDERSON LLP

*U.S. v. Carrizoza-Gaxiola*, 523 F.2d 239, 241 (9th Cir. 1975) (*Lipton*'s rationale "permits stops without founded suspicion only to enforce laws susceptible of no other means of enforcement") (cited, inter alia, in Defendants' Rule 50(b) motion and reply in support of new trial motion [Dkt. 257, 258] and in oral arguments to the court [e.g., TT, 492]). *Prouse* held that it was unreasonable—and thus unconstitutional—for officers to randomly stop vehicles to check whether the drivers had licenses, *because there were other, less intrusive means to achieve the state's professed interest* in ensuring that only qualified drivers operate cars and that vehicles are fit for safe operation—including "acting upon observed violations" of driving rules or vehicle safety requirements. 440 U.S. at 658-61. *Prouse* expressly left the door open to "spot checks that involve less intrusion," and held "only that persons in automobiles on public roadways may not *for that reason alone* have their travel and privacy interfered with at the unbridled discretion of police officers." *Id.* at 663; see also *United States v. Delgado*, 545 F.3d 1195, 1202 (9th Cir. 2008) (holding that *Prouse* does not forbid suspicionless stops and inspections of commercial trucks).

    *Prouse*'s focus on whether there are other means of achieving the stated goal appeared to Defendants to be consistent with *Lipton*'s rationale that an officer can stop a vehicle without particularized suspicion *to enforce laws not otherwise susceptible of enforcement*. Accordingly, even if *Prouse*'s specific factual holding were viewed as in tension with *Lipton*'s conclusion that stopping cars to check licenses was the only effective method of enforcing drivers' license requirements, *Prouse* did not appear to cast doubt on *Lipton*'s not-otherwise-susceptible-of-enforcement standard. That is the relevant standard here, particularly as to handicapped parking placards. And, as this Court observed at one point, "we have, in our state, rampant misuse of the handicapped placards. And how else are the cops ever going to stamp that out if they can't go up randomly to cars and say, 'Let me see – you have a placard. Let me see your identification'? To me, that's the only practical way to enforce the handicapped laws . . . I just find a hard time to believe that the Fourth Amendment prohibits that inquiry" for cars in a handicapped parking spot. TT, 511.

Dated: May 10, 2023        Respectfully submitted,
                                    **ORBACH HUFF + HENDERSON LLP**

                                By:   /s/ *Kevin E. Gilbert*
                                      Kevin E. Gilbert
                                      Attorney for Defendants
                                      COUNTY OF ALAMEDA, STEVEN
                                      HOLLAND and MONICA POPE

Defs' Reply To Plaintiffs' Response to Court's Request for Further Briefing on Bane Act Issues[20-cv-04679-WHA]