1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joseph S. May   SBN 245924
LAW OFFICE OF JOSEPH S. MAY
1388 Sutter Street, Suite 810
San Francisco, CA 94109
Tel: (415) 781-3333
Fax: (415) 707-6600
joseph@josephmaylaw.com

Brian Gearinger   SBN 146125
GEARINGER LAW GROUP
740 Fourth Street
Santa Rosa, CA 95404
Tel: (415) 440-3102
brian@gearingerlaw.com

Craig M. Peters   SBN 184018
ALTAIR LAW
465 California Street, 5th Floor
San Francisco, CA 94104-3313
(415) 988-9828
cpeters@altairlaw.us

Attorneys for Plaintiffs
AASYLEI LOGGERVALE,
AASYLEI HARDGE-LOGGERVALE, and
AAOTTAE LOGGERVALE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| AASYLEI LOGGERVALE; AASYLEI HARDGE-LOGGERVALE; and AAOTTAE LOGGERVALE,<br><br>              Plaintiffs,<br><br>      v.<br><br>COUNTY OF ALAMEDA; STEVEN HOLLAND; MONICA POPE; and DOES 1 to 50, inclusive,<br><br>              Defendants. | CASE NO. C20-4679-WHA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND NON-STATUTORY COSTS**<br><br>Hearing:           June 15, 2023<br>Time:              2:30 p.m.<br>Location:          Via Zoom<br>Special Master :     Matthew Borden, Esq.<br><br>Action Filed:  July 14, 2020<br>Trial Date:     February 13, 2023 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

I.      Defendants' "Factual Background" Is Rife with Falsehoods ...............................................1

II.     Plaintiffs Fully Complied with the Court's Order; Defendants Did Not ............................1

III.    Plaintiffs Achieved Overwhelming Success on All Related Claims ...................................3

IV.     The Hours Expended by Plaintiffs' Counsel Were Reasonable ..........................................5

V.      The Rates Sought by Plaintiffs' Counsel Are Reasonable ..................................................8

VI.     A Large Multiplier Is Warranted ......................................................................................10

VII.    Plaintiffs' Claimed Costs Are Reasonable .......................................................................14

VIII.   Defendants Should Be Required to Bear the Cost of the Special Master .........................15

IX.     Conclusion ........................................................................................................................15

1

**TABLE OF AUTHORITIES**

2

3

**Cases:**

4

*Baker v. John Morrell & Co.*
    263 F. Supp. 2d. 1161 (N.D. Iowa 2003) ........................................................................10

5

*Castillo-Antonio v. Lam*
6
    No. C18-4593-EDL, 2019 WL 2642469 (N.D. Cal. Apr. 10, 2019) ................................9

7

*Chapman v. NJ Properties, Inc.*
8
    No. C16-2893-EJD, 2019 WL 3718585 (N.D. Cal. Aug. 7, 2019) ..................................9

9

*Chaudhry v. City of Los Angeles*
    751 F.3d 1096 (9th Cir. 2014) ....................................................................................5, 13

10

*City of Burlington v. Dague*
11
    505 U.S. 557 (1992) ......................................................................................................10

12

*Civil Rights Education and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.,*
13
    No. C15-216-DMR, 2016 WL 1177950 (N.D. Cal. Mar. 22, 2016) ...........................9, 10

14

*Confederated Tribes of Siletz Indians of Or. V. Weyerhaeuser Co.*
15
    No. C00-1693-A, 2003 WL 23715982 (D. Or. Oct. 27, 2003) ........................................14

16

*Crommie v. Cal. PUC*
    840 F. Supp. 719 (N.D. Cal. 1994) ................................................................................13

17

*Dominguez, et al., v. City of San Jose, et al.*
18
    No. C18-4826-BLF, 2023 WL 2717266 (N.D. Cal. Mar. 29, 2023) ................................9

19

*Downey Cares v. Downey Commity Dev. Com.*
20
    196 Cal. App. 3d 983 (1987) ........................................................................................14

21

*Fidalgo Island Packing Co. v. A. B. Phillips*
    147 F. Supp. 883 (D. Alaska 1957) ..............................................................................11

22

*Gonzalez v. Machado*
23
    No. C17-2203-LB, 2019 WL 3017647 (N.D. Cal. July 10, 2019) ..................................9

24

*Heifetz v. Mona's Burgers Clayton LLC*
25
    No. C19-2392-LB, 2021 WL 292034 (N.D. Cal. Jan. 28, 2021) ......................................9

26

*Hensley v. Eckerhart*
27
    461 U.S. 424 (1983) ........................................................................................................3

28

*Human Rights Defense Ctr., v. County of Napa*
    No. C20-1296-JCS, 2021 WL 1176640 (N.D. Cal. Mar. 28, 2021) ...............................9

*Jadwin v. Cnty. of Kern*
    767 F. Supp. 2d 1069 (E.D. Cal. 2011) ..........................................................................13

*Johnson v. 12 N Park Victoria LLC*
    No. C20-2200-LHK, 2021 WL 3291890 (N.D. Cal. Aug. 2, 2021) ...............................9

*Johnson v. 480 Geary St., LLC*
    No. C19-2460-JSW, 2021 WL 5407874 (N.D. Cal. Jan. 27, 2021) ...............................9

*Johnson v. AutoZone, Inc.*
    No. C17-2941-PJH, 2019 WL 2288111 (N.D. Cal. May 29, 2019) ...............................9

*Johnson v. Johnson*
    No. C17-4840-SVK, 2020 WL 901517 (N.D. Cal. Feb. 25, 2020) ...............................9

*Johnson v. Oakwood Ctr. LLC*
    No. C19-1582-VKD, 2019 WL 7209040 (N.D. Cal. Dec. 27, 2019) ...............................9

*K-2 Ski Co. v. Head Ski Co., Inc.*
    506 F.2d 471 (9th Cir. 1974) ........................................................................................15

*Ketchum v. Moses*
    24 Cal. 4th 1122 (2001) .........................................................................................11, 14

*Mangold v. Cal. PUC*
    67 F.3d 1470 (9th Cir. 1995) ..................................................................................12, 13

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*
    C05-2200-MMM, 2008 WL 655604 (C.D. Cal. Jan. 7, 2008) .......................................11

*Moreno v. City of Sacramento*
    534 F.3d 1106 (9th Cir. 2008) ........................................................................................5

*Odima v. Westin Tucson Hotel*
    53 F.3d 1484 (9th Cir. 1995) ..........................................................................................3

*Padgett v. Loventhal*
    No. C04-3946-EJD, 2019 WL 2491957 (N.D. Cal. June 14, 2019) ...............................8

*Rodriguez v. County of Los Angeles*
    96 F. Supp. 3d 1012 (C.D. Cal. 2014) ..........................................................................13

*Sorenson v. Mink*
    239 F.3d 1140 (9th Cir. 2001) ...................................................................................3, 5

*Trujillo v. Orozco*
No. C17-566-EJD, 2018 WL 1142311 (N.D. Cal. Mar. 2, 2018) ......................................9

*Webb v. Sloan*
330 F.3d 1158 (9th Cir. 2003) ...........................................................................5

*Zuegel v. Mountain View Police Dept.*
No. C-3249-BLF, 2021 WL 2808977 (N.D. Cal. July 6, 2021) ........................................9

**Statutes:**

Cal. Civ. Code § 52.1 ....................................................................................passim

Loggervale v. County of Alameda et al., Case No. C20-4679-WHA
PLAINTIFFS' REPLY IN SUPPOORT OF MOTION FOR ATTORNEYS' FEES AND NON-STATUTORY COSTS

## I.   Defendants' "Factual Background" Is Rife with Falsehoods

Defendants set forth a skewed and largely false account of the facts of the case,[1] perhaps in an attempt to suggest to the Special Master that Plaintiffs should not have prevailed in the first place. For example:

| Defendants' Claim | Actual Facts |
| --- | --- |
| Plaintiffs' vehicle was gray. | It was silver. |
| Plaintiffs' vehicle was "apparently not displaying a disabled-parking placard." | There was a placard hanging in the rearview mirror, visible to anyone who looked. |
| Plaintiffs "loosely match[ed]" the description of prior burglary suspects. | Plaintiffs were three Black women (mother and two daughters) while the previous day's suspects were described as a young Black man and young Latino man in a dark gray two-door hatchback; no other suspects at the subject location were described as women and nowhere in Alameda County in the six months prior to the detention were auto burglary suspects described as three Black women or anyone in a Cadillac. Indeed, Plaintiffs had virtually nothing whatsoever in common with any of the prior suspects except that they happened to be Black. |
| Plaintiffs (plural) "became defiant and refused to provide any identification." | The deputies only asked mother for her identification prior to the deputies detaining all three Plaintiffs, handcuffing them, and placing them in three separate patrol police cars. |
| Plaintiffs were placed in police cars "until they could be identified." | Even after each of their identifications were illegally obtained through a warrantless search of the vehicle, Plaintiffs were *still* held for nearly an hour in handcuffs in the back of patrol cars. |

## II.   Plaintiffs Fully Complied with the Court's Order; Defendants Did Not

Anticipating that Defendants would challenge Plaintiffs' counsel's fees and demand the underlying records, Plaintiffs included the full documentation with their fee motion even though

---

[1] Plaintiffs ask the Special Master to be cautious about the representations of Mr. Gilbert, who has been repeatedly and roundly criticized for making factual misrepresentations to the Court in this matter. *See* Transcript of 5/11/23 [May Reply Decl., Ex. K] 8:13-16, 11:5-7, 11:9-11, 12:6-10, 12:17-13:18, 17:9-14, 17:23-18:7, 21:3-22:14, 53:2-10; *see also* Dkt. 106, 5:3-24.

Loggervale v. County of Alameda et al., Case No. C20-4679-WHA
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND NON-STATUTORY COSTS

it was not required. *See* May Decl., Ex. A; Gearinger Decl., Ex. A; Peters Decl., Ex. A. When Christopher Creech, former attorney for Defendants, asked for the underlying records, Mr. May explained that Plaintiffs had already "provided all of the documentation supporting all of our time and all of our expenses as exhibits to our declarations." Gilbert Decl. (Dkt. 264-1), Ex. 1, p. 11 of 153. Mr. May also later provided a print-out directly from his timekeeping software reflecting the time spent on the case through March 17, 2023. *Id*. at p. 8 of 153. Mr. Creech did not thereafter indicate that any documentation was lacking.

Defendants, on the other hand, failed to comply with the order, which required that "[i]f the opposing party contends that any item or project was excessive, then the opposition must explain why and provide a declaration setting forth completely all time expended by the opposing party on the same and on similar projects, in the same format described above, so that symmetry may be considered, making available the underlying records for inspection if requested." Dkt. 241, ¶ 6. In their opposition, Defendants attached only their time records related to the cross-motions for summary judgment. *See* Gilbert Decl. (Dkt. 264-1), Ex. 3. However, despite claiming that the records provided were "a true and correct copy of time entries billed to the County of Alameda related to Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Summary Judgment," Gilbert Decl., ¶ 10, the actual documents Defendants submitted appear to have been doctored, with multiple columns of information removed. However, Defendants failed to advise that the document was altered or redacted, possibly in an attempt to conceal the fact that information is missing from the document.

Defendants later e-mailed Plaintiffs' counsel Word documents purporting to show the billing for four other projects. However, these records were inaccurate. For example, the document purportedly reflecting billing for depositions failed to include the taking of the depositions of Plaintiffs Aasylei Hardge-Loggervale and Aaottae Loggervale. After Plaintiffs raised this failing to the Court, Defendants included this time in the Excel document submitted to Special Master Borden. *See* Dkt.267, 3:10-15; Dkt. 267-1, p. 29 of 29 (including the preparation time but omitting the actual June 28, 2021 depositions); May Reply Decl., Ex. I (including an additional 8.8 hours for these depositions).

1   Further, Defendants fail to explain the discrepancy between Exhibit 3 to Mr. Gilbert's

2   declaration, showing 240.35 hours related to the summary judgment motions, and the Excel

3   spreadsheet e-mailed to Special Master Borden on May 12, 2023 (May Decl., Ex. I), showing

4   only 176.5 hours related to "dispositive motions." It appears that Defendants spent far more time

5   on the case than shown in the invoices, Word docs or Excel spreadsheets they submitted.

6   Defendants' refusal to comply with the Court order, which required Plaintiffs to file an

7   administrative motion to compel the records, further reinforces how Defendants' aggressive

8   (indeed abusive) litigation tactics have required the large time commitment by Plaintiffs'

9   counsel. It is unfair for Defendants to create a huge mess and then blame Plaintiffs' lawyers for

10  taking the required time to clean it up.

11  Defendants also failed to comply with the Order in that they did not (1) state, in their

12  Opposition, "the billing rates charged to the opposing party for all professionals representing the

13  opposing party and in the case and their experience levels," (2) "state, as to each project, the

14  percentage of the project the opposition contends was directed at issues on which fees are

15  awardable, stating reasons for the percentage," (3) "set forth a counter-analysis," that explains

16  why they are challenging any given entry. Dkt. 241, pp. 3-4. Defendants merely attacked

17  Plaintiffs' time using a legend of boilerplate objections, but without explanations or reasoning.

18  **III.   Plaintiffs Achieved Overwhelming Success on All Related Claims**

19  As Defendants acknowledge, the Court should only reduce the fee for time spent on

20  "unrelated" claims that Plaintiffs lost. Def. Opp., 4:24-25. "Claims are 'unrelated' if they are

21  'entirely distinct and separate' from the claims on which the plaintiff prevailed." *Sorenson v.*

22  *Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001), citing *Odima v. Westin Tucson Hotel*, 53 F.3d 1484,

23  1499 (9th Cir. 1995); *see also Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (related claims

24  mean that they involve "a common core of facts or will be based on related legal theories").

25  Defendants' only argument that any of Plaintiffs' claims were "unrelated" is in footnote 2

26  of the Opposition, where they claim that "Leeper's dismissal from these claims was the result of

27  Leeper arriving to the scene 'late'" and he was "thereby 'protected by his good-faith reliance on

28  Deputies Holland and Pope's accounts." Defendants fail to note that this language related only to

3

1   the dismissal of the Fourteenth Amendment equal protection claim against Leeper. *See* Dkt. 106,

2   10:16-18. However, Leeper was *denied* summary judgment as to the false arrest and excessive

3   force claims under the Fourth Amendment and the free speech retaliation claim under the First

4   Amendment, *see* Dkt. 106, 6:19-24, 9:14-16, 11:5-6. Leeper's liability for false arrest and

5   excessive force (the claims Plaintiffs prevailed on) involved the same common core of facts as

6   the claims against Holland and Pope, and thus were related for purpose of determining whether

7   Plaintiffs' fees should be reduced. Finally, Defendants attempt to mislead the Court by blatantly

8   misrepresenting that Plaintiffs waived their right to recover fees or costs against Leeper or

9   DeSousa. *See* Def. Opp. 6:7-8, citing Dkt. 174. The stipulation to dismiss Leeper and DeSousa

10  provided explicitly that the *Defendants* waive their right to recover fees or costs in connection

11  with the dismissals, not that *Plaintiffs* waive such rights. Dkt. 174, 2:19-20, 3:14-16

12  ("Defendants Leeper and DeSousa shall bear their own attorneys' fees and costs in connection

13  with this Dismissal *with prejudice* of the claims against them." (Italics in orig.)).

14      All of the claims on which Plaintiffs prevailed involved the detention/arrest, search, and

15  force used against them. The claims that Plaintiffs voluntarily dismissed were for conversion

16  (when the deputies took their cell phones during the false arrest/detention), First Amendment

17  retaliation (on the theory that the deputies retaliated against Plaintiffs in response to their

18  speech), supervisor liability (on the theory that DeSousa should have released them from the

19  handcuffs and police cars once he realized there was no basis for the detention/arrest), 42 U.S.C.

20  Section 1981 claim (on the theory that what the deputies did violated Plaintiffs' right under this

21  statute), Civil Code 51.7 claim (on the theory that the deputies' actions constituted violence

22  committed on the basis of protected status), and state law claims (based on all the same facts and

23  theories as the Section 1983 claims). All of these claims shared the same common core of facts

24  as the claims that remained at trial and involved closely related legal theories. Defendants fail to

25  show otherwise. As such, none of the claimed hours should be reduced.

26      Plaintiffs were successful on each and every claim that remained at trial (except for

27  punitive damages against Holland), and the claims that Plaintiffs voluntarily dismissed before

28  trial were duplicative or superfluous and were abandoned simply to streamline the case and make

4

Loggervale v. County of Alameda et al., Case No. C20-4679-WHA
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND NON-STATUTORY COSTS

1    it easier for the jury. Plaintiffs should not be penalized for eliminating such claims or else it will

2    disincentivize parties from doing so, which will put a burden on litigants and the courts.

3         In *Sorenson v. Mink, supra*, cited by Defendants, the Court of Appeal affirmed the award

4    to the plaintiffs of a fully compensatory fee because they achieved an "excellent result" by

5    achieving a settlement that reformed Oregon's disability determination system. 239 F.3d at 1147.

6    This was despite the fact the plaintiffs did not achieve all the changes to the defendants' program

7    that they sought to achieve. *Id*. But because the plaintiffs' claims were all related and all focused

8    on improving the disability determination system, and involved a common core of facts and were

9    based on related legal theories, the lawsuit could not be viewed as a series of discrete claims. *Id*.

10        Defendants' claim that the Ninth Circuit in *Webb v. Sloan*, 330 F.3d 1158 (9th Cir. 2003)

11   "note[ed] that the jury found in favor of plaintiff on all claims against one defendant, but against

12   it on the rest, and affirming a roughly 50 percent fee reduction." Opp. at 5:7-8, citing *Webb* at

13   1163. The pin cite is to a discussion in *Webb* about what transpired in the district court; however,

14   *Webb* "reverse[d] and remand[ed] the fee award because the district court used an incorrect legal

15   standard in deciding what issues were 'unrelated' to the successful claims." *Webb* at 1167. While

16   the district court required both a common core of facts *and* related legal theories to show

17   relatedness, the Ninth Circuit said the plaintiff can show *either* of those things. *Id*. at 1168

18   ("However, contrary to the district court's understanding, we have not required commonality of

19   both facts and law before concluding that unsuccessful and successful claims are related.").

20   Thus, contrary to Defendants' representation, *Webb* found that the claims of the plaintiff "arose

21   out of a common core of facts and a common course of conduct: Plaintiff's arrest, detention, and

22   prosecution." *Id*. at 1169. Defendants have clearly misrepresented the holding in *Webb* in an

23   attempt to reduce their liability for fees, which is highly inappropriate.

24        **IV.    The Hours Expended by Plaintiffs' Counsel Were Reasonable**

25        As an initial matter, Plaintiffs note that "[b]y and large, the [district] court should defer to

26   the winning lawyer's professional judgment as to how much time he [or she] was required to

27   spend on the case." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th Cir. 2014),

28   (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)). Defendants

1   nitpick about certain ways in which they claim Plaintiffs' fees were excessive, none of which

2   overcome Plaintiffs' showing that the time they dedicated to the case was reasonable.

3       Defendants claim that Plaintiffs should not recover fees related to a motion to compel all

4   reports of auto burglaries in unincorporated Alameda County in the six-months leading up to the

5   subject incident. Def. Opp., 10:6-12 (describing records as "entirely irrelevant to this action" and

6   Plaintiffs' attempt to obtain them a "colossal waste of time and resources [that] should not be

7   charged to Defendants."). However, Defendants themselves have argued that one of the

8   documents included in that production was so important to the case that the Court erred in

9   excluding it from evidence. *See* Def. Reply ISO Mot. for New Trial (Dkt. 271), 2:1-5 (referring

10  to Ex. A to Defendants' Opp. to Plaintiffs' MIL No. 1); Def. Opp. to Pltf. MIL No. 1 (Dkt. 172),

11  Ex. A (listing, *inter alia*, Incident Report No. 19-009170); *see also* May Reply Decl., ¶ 5

12  (showing that the report in question was only produced as part of the approx. 1,500 pages the

13  Court ordered Defendants to provide in response to Plaintiffs' motion to compel).

14      Defendants claim that Mr. May improperly billed simply to "review" the opposition to

15  the motion to retain confidentiality designations prepared by Mr. Gearinger. Def. Opp. at 10:14-

16  16. This is highly misleading, as the actual time entry does not just include "review" of the

17  opposition, it includes Mr. May's assistance in preparation of the opposition. *See* May Decl.

18  (Dkt. 254-1), Ex. B, at p. 9 (billing for 1.2 hours for the following: Review Brian's draft

19  opposition to motion to retain confidentiality. Research local rules and efiling rules re redactions

20  and narrow-tailoring. Review Harmon case and incorporate case facts and holding into

21  opposition. Edit, and comment on draft and e-mail back to Brian.").

22      Defendants also claim that Plaintiffs' hours were "grossly inflated," pointing to the

23  amount billed for preparing their own motion for partial summary judgment and opposing

24  Defendants' motion for summary judgment. Def. Opp. (Dkt. 264) at 10:19-21. However,

25  Defendants' attorneys actually spent more time working on these motions than Plaintiffs'

26  attorneys did. *Compare* May Decl., Ex. B, at pp. 24, 45 (reflecting 192 total hours in connection

27  with the cross motions), *with* Gilbert Decl., Ex. 3 (reflecting 240.35 total hours in connection

28  with these motions).  Similarly, Defendants spent 44.4 hours in connection with a motion to

6

1    reconsider a narrow and discrete portion of the Court's summary judgment order, while Plaintiffs

2    only spent 15.5 hours on this project. Defendants also spent nearly twice as much time (54.2

3    hours versus 27.8 hours) as Plaintiffs on the 12(b)(6) motion filed at the outset of the case, which

4    required both parties to conduct extensive research and brief writing. There were also many

5    projects that Plaintiffs handled that the defense did not, such as conducting a large-scale focus

6    group, employing and working with a jury consult, transcribing the body worn camera videos,

7    submitting a government tort claim, internal affairs complaint, and public records act request,

8    and researching and briefing Covid-19 vaccination issues in response to the Court's request for

9    briefing. Plaintiffs also set forth numerous "miscellaneous," but necessary, tasks they performed.

10   Similarly, Defendants criticize Plaintiffs' counsel for spending a total of 37.8 hours in

11   connection with the depositions of Defendants Holland and Pope – the two main defendants in

12   the case. Def. Opp., 10:23-25 ("Those depositions lasted a combined total of less than 11

13   hours"). Of course, the billing records reflect many entries for not only the taking of the

14   depositions for also for the extensive preparation required to effectively depose the two arresting

15   officers. Even Defendants billed 21.8 hours in connection with these depositions, which is far

16   more than the 11 or fewer hours of actual deposition time.

17   Defendants also criticize the 50.5 hours of total time spent in connection with the

18   Plaintiffs' depositions. This total included much time spent in preparation with the clients. Any

19   competent plaintiff's attorney understands the importance of spending adequate time preparing

20   their clients for the deposition, one of the most crucial components of the case. The Defendant

21   police officers have a wealth of experience testifying in trials and depositions. Plaintiffs hardly

22   ever have such experience and had no such experience here. Both Mr. May and Mr. Gearinger

23   defended the deposition of Ms. Loggervale and were wise to do so due to the highly abusive

24   tactics employed by Mr. Creech. However, Mr. May only attended part of the deposition of one

25   of the daughters, with Mr. Gearinger defending those depositions. The time spent was reasonable

26   under the circumstances and Defendants' criticisms are unfounded.

27   Finally, Defendants' claim that they "managed with one trial counsel," is belied by the

28   verdict. Defendants did not manage very well at all. Plaintiffs' counsel had distinct roles and

7

1  responsibilities and needed to attend all of the trial to have the information needed to accurately

2  respond to the myriad questions from the Court, to address potential inconsistencies in witness

3  testimony, to address the frequent defense untruths and other tactics, and to otherwise be

4  prepared to contribute to the overall handling of the trial, including preparation for the eventual

5  closing argument. Plaintiffs' strategy of dividing the labor (and witnesses) paid off, as the jury

6  returned a verdict even higher than the one requested by counsel.

7       As noted above, it appears Defendants' actual time spent on this case is considerably

8  more than reflected in their invoices or Excel sheet. However, even using the figures provided by

9  the defense, the mere fact that Plaintiffs spent more time on the case does not mean their time

10 was unreasonable. Plaintiffs had the burden of proof and had to deal with numerous defenses and

11 dilatory tactics. As plaintiff attorneys know, their job is akin to that of a movie *director* while the

12 defense attorneys often have an easier task more similar to a movie *critic*. Using another apt

13 analogy, it is always easier and takes less time to *make* a mess than to *clean it up*.

14     **V.    The Rates Sought by Plaintiffs' Counsel Are Reasonable**

15     Defendants suggest the Court should ignore all of the declarations Plaintiffs submitted in

16 support of their requested rates, accusing all of the declarants as being "members of or

17 sympathetic to Plaintiff's Bar." Def. Opp., 12:11-12. Defendants ignore the fact that one of the

18 declarations supporting the claimed rates was from Richard Pearl, a leading expert on attorneys'

19 fees, and one of the most cited authorities on the topic. Mr. Pearl is not sympathetic to the

20 Plaintiff's bar; he is a reputed legal scholar who is responsible for publishing a non-biased

21 treatise on which attorneys and judges frequently rely.

22     Defendants rely on *Padgett v. Loventhal*, an unpublished 2019 order from the San Jose

23 Division of this Court, which stated that a "reasonable hourly rate for civil rights attorneys in this

24 community is up to $700 for partners, up to $350 for associates, [and] up to $200 for paralegals

25 and law clerks." 2019 WL 2491957, at *3. However, *Padgett* cites to three other Northern

26 District cases, all from 2010, for this statement. The *Padgett* Court did not need to look at current

27 rates because the plaintiff's firm in that case sought rates that were within the range determined

28 to be reasonable back in 2010. This case has no bearing on reasonable rates in 2023. Similarly,

1    the *Dominguez* case awarded the attorneys' customary fee, and does not set any limits or caps

2    that would be relevant here. It is otherwise not dispositive on the proper rates for this case.

3         Defendants cite numerous ADA cases to support their argument that the Court should

4    award much lower rates to Plaintiffs' counsel. *See* Def. Opp., pp. 12-13 (citing *Johnson v. 480*

5    *Geary St., LLC*; *Heifetz v. Mona's Burgers Clayton LLC*; *Gonzalez v. Machado*; *Johnson v.*

6    *AutoZone, Inc.*; *Castillo-Antonio v. Lam*; *Trujillo v. Orozco*; *Johnson v. 12 N Park Victoria LLC*;

7    *Civil Rights Ed. & Enforc. Ctr. v. Ashford Hosp. Trust, Inc.*). However, courts generally award

8    lower rates in ADA cases. *See Zuegel v. Mountain View Police Dept.*, No. C-3249-BLF, 2021

9    WL 2808977, at *6 (N.D. Cal. July 6, 2021) (criticizing defendants' attempt, in Section 1983

10   case, to "rely on rates approved for lawyers who handle tens of thousands of cookie-cutter ADA

11   cases as a benchmark"); *Johnson v. Oakwood Ctr. LLC*, No. C19-1582-VKD, 2019 WL

12   7209040, at *12 (N.D. Cal. Dec. 27, 2019), citing *Chapman v. NJ Properties, Inc.*, No. C16-

13   2893-EJD, 2019 WL 3718585, at *4 (N.D. Cal. Aug. 7, 2019) ("Another court in this district has

14   observed that a rate over $700/hour is the exception, and not the norm, for disability cases.").

15        The Section 1983 cases cited by Defendants are consistent with the rates Plaintiffs'

16   counsel seek. In *Human Rights Defense Ctr., v. County of Napa*, No. C20-1296-JCS, 2021 WL

17   1176640 (N.D. Cal. Mar. 28, 2021), the rates of each of the plaintiffs' attorneys were accepted

18   by the Court. This includes $1,100 per hour for a partner who was admitted in 1974, $950 per

19   hour for a partner admitted in 1981, $625 per hour for "senior counsel" admitted in 2009, and

20   $650 per hour for an attorney admitted in Florida in 2002. Plaintiffs' rates are in this range.

21        In *Zuegel v. Mountain View Police Dept., supra*, the plaintiff recovered only $3,000 in

22   damages. The plaintiff's attorney, Ms. Grayson, sought $675 per hour, which was granted. The

23   order did not indicate that this was the maximum amount reasonably awarded. Further, there is

24   no indication Ms. Grayson has the credentials or accomplishments that Plaintiffs' attorneys have.

25   Simply because an attorney has been practicing for a long time does not mean the attorney is

26   exceptionally skilled or their time more valuable.

27        *Civil Rights Education and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.,* No. C15-

28   216-DMR, 2016 WL 1177950 (N.D. Cal. Mar. 22, 2016), cited by Defendants, despite being an

1    ADA case, nonetheless awarded significant hourly rates to plaintiffs' counsel, including $750 per

2    hour for a lawyer with 24 years of experience, and $550 per hour for an attorney with 10 years of

3    experience. 2016 WL 1177950, at *5 (awarding 2015 rates).

4          Plaintiffs' counsel's rates are further supported by numerous declarations, while

5    Defendants present no evidence pertaining to the reasonableness of their proposed rates.

6          In light of his history of tremendous trial results, it is hard to dispute that Mr. Peters is

7    one of the (if not *the*) very best trial attorneys in the state. In addition to the results already

8    disclosed, Mr. Peters (as lead trial counsel) and Mr. May obtained a verdict on April 3, 2023 in

9    Alameda County Superior Court for $40 million in non-economic damages only, for a 78-year-

10   old plaintiff who, although suffering neck and back injuries that required surgeries, still works as

11   a contractor, and walks without assistive devices. *See* May Decl., Ex. J. $950 per hour is actually

12   quite low for someone of Mr. Peters' caliber. The fact that he does not have extensive experience

13   in civil rights cases is irrelevant; Mr. Peters is a *trial* specialist, and his exceptional skill

14   presenting cases at trial justifies a high hourly rate. *See* Pearl Decl., ¶ 16, quoting *Baker v. John*

15   *Morrell & Co.*, 263 F. Supp. 2d. 1161, 1191 (N.D. Iowa 2003) (lawyers who actually try cases

16   "are certainly entitled to a premium fee in comparison to litigators who push lots of papers, take

17   lots of depositions, file lots of motions, but who seldom actually try cases . . .").

18          **VI.    A Large Multiplier Is Warranted**

19          Defendants falsely claim that there is no multiplier available under federal law and that

20   Plaintiffs have so conceded. Indeed, Defendants' own citations reveal that under federal law

21   courts may increase the lodestar, the difference being that contingent risk only allows an

22   enhancement under state, not federal, law. *See City of Burlington v. Dague*, 505 U.S. 557 (1992).

23          Defendants argue that Plaintiffs are not entitled to a multiplier under state law because

24   they relied on Section 52.1(h), not (i). Obviously, Defendants knew which subdivision Plaintiffs

25   were referring to and they never challenged Plaintiff's entitlement to fees under the Bane Act, for

26   example, by filing a motion to dismiss or strike. Contrary to Defendants' contention, the Bane

27   Act has always provided for recovery of attorneys' fees by individuals who prevail on the claim.

28   The original text of subdivision (h) provided for attorneys' fees for actions brought pursuant to

subdivision (b), which permitted an individual whose rights had been interfered with to prosecute a civil action. Later, subdivision (b) was re-lettered (c), but the legislature did not immediately update subdivision (h) (which became (i)) to match the re-lettering. Now, however, and throughout almost the entirety of this litigation, the statute has clearly provided what it intended all along, which is for the individual plaintiff who prevails on a Bane Act claim to recover fees. *See Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, C05-2200-MMM, 2008 WL 655604, at *5 (C.D. Cal. Jan. 7, 2008) (statutory amendment that merely clarifies the law (such as the current version of Section 52.1(i)) may be applied retroactively because it is not considered a change in the law). Defendants' 1957 case from the District of Alaska (*Fidalgo Island Packing Co*.) contains no analysis relevant here and is thus unhelpful. Tellingly, myriad decisions in the Ninth Circuit and Northern District, from the inception of the Bane Act through the present, have recognized the right to recover attorneys' fees by individual plaintiffs. Not a single case supports Defendants' disingenuous interpretation of the statute.[2]

Defendants next argue that the enhancement is only applied to bring otherwise low rates up to market rates. The California Supreme Court has held, however, that "the unadorned lodestar reflects the general local hourly rate for a fee-bearing case; it does not include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider under *Serrano III*." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001). Thus, the very factors that the Court should use to determine the availability and extent of a multiplier have not already been included in the "unadorned lodestar."

Even under Defendants' faulty analysis, a 2.0 multiplier would, indeed, help bring the hourly rates sought by Plaintiffs' counsel into line with a case like this for a non-contingent firm. For example, if the Loggervales had gone to Morrison & Foerster LLP, in San Francisco, and asked that three partners with 17, 26, and 33 years of experience, handle the case on a contingent

---

[2] While Defendants now claim that this case is legally simple, they have throughout the litigation thrown up numerous creative and novel (indeed specious) arguments, such as this one, that have forced Plaintiffs' counsel to spend a significant amount of time addressing them. So Defendants are partially correct; this case *should not have been* complex. But it was, thanks to Defendants.

1   fee basis (i.e., no fee unless they win), and lay out all of the case expenses (with no chance of

2   recovery unless they prevail), and have to deal with the long, drawn-out, aggressive, nasty,

3   scorched-earth litigation conducted by defense counsel (precluding other opportunities), it would

4   be quite *reasonable* for attorneys from Morrison & Foerster LLP  to request hourly rates that are

5   double those Plaintiffs are now seeking (i.e., $1,400, $1,700, and $1,900).

6          Defendants also claim a multiplier is not warranted because the case was not complex.

7   Defendants cite to one statement made by Mr. Peters in his rebuttal closing argument, where he

8   told the jury that "the law is super clear." For purposes of arguing the case to the jury, Plaintiffs'

9   counsel had to make the law as simple as possible, at which they succeeded. But this was after

10  having to wade through a swamp of legal arguments and defenses thrown up by defense counsel.

11  The sheer number of times the Court has asked for additional briefing on legal issues in the case

12  is strong evidence of how legally complex the case was. That is, until Plaintiffs were able to

13  artfully navigate the morass and present a rather simple and straightforward case to the jury at

14  the very end of the trial, which itself came after years of hard-fought litigation. Even just looking

15  at what a mess Defendants have made of the instant motion, including the citation of dozens of

16  inapposite cases, Defendants' subterfuge is on display. Hopefully it is clear to the Special Master

17  by now that the Defendants' aggressive approach has created an inordinate amount of work for

18  Plaintiffs' counsel. Defendants, through their misrepresentations, created enough confusion to

19  almost convince Judge Alsup to throw the case out on summary judgment. *See* May Decl., Ex.

20  K, 13:14-18 ("Now, I almost was going to rule for Mr. Gilbert and grant summary judgment

21  because . . .  he knew it would make me mad to hear somebody say that because of their race

22  they didn't have to comply with something . . . But Ms. Loggervale never said that.").

23         Defendants claim that any multiplier should only apply to the time spent on the state law

24  claims. *However, Mangold v. Cal. PUC*, 67 F.3d 1470 (9th Cir. 1995), on which Defendants

25  rely, upheld a 2.0 multiplier for all time spent by plaintiffs' counsel on both the state law and

26  federal age discrimination claims. This case is actually highly instructive. There, the district

27  court granted a 2.0 multiplier based on factors that apply to the instant case as well.

28

1

> Both Mr. Rogers and Ms. Tress undertook representation of plaintiffs on a
> contingency basis and prevailed after a protracted and complicated 3–week
> trial. This court finds the result exceptional in light of defense counsel's
> excessively vexatious and often unreasonable opposition to plaintiffs'
> counsel which the court observed during trial and during discovery
> conferences and motion arguments . . . Due to the difficulty of the litigation,
> the success on the merits, and public interest value, the court finds that
> plaintiffs' counsel are entitled to a multiplier of 2.0.

2

3

4

5

*Crommie v. Cal. PUC*, 840 F. Supp. 719, 726 (N.D. Cal. 1994).

6

7          Defendants also fault Plaintiffs for failing to address the "verdict form's failure to

8    allocate the amount of damages attributable to the federal [ ] or state [ ] claims." Opp. at n.14.

9    However, Defendants have also represented to the Court that the verdict was likely the result of

10   the jury's awarding of treble damages under the California Bane Act. *See* Def. Opp. to Motion

11   for Interest and Penalties (Dkt. 256), 1:21 ("[I]t can only be presumed Plaintiffs were awarded

12   treble damages"). Since treble damages are only available under state law, Defendants have

13   conceded that the *large majority* of the verdict was attributable to the state law claim.

14          Nonetheless, there is no authority suggesting courts may only apply multipliers to the

15   time spent on state law claims where the plaintiff prevails on both state and federal claims.

16   Defendants merely cite a case noting that if "the entire jury award is based on federal law, not

17   state law" then "California law would not govern the hourly rate analysis." Def. Opp., 24:26-28,

18   n. 14, citing *Jadwin v. Cnty. of Kern*, 767 F. Supp. 2d 1069, 1126 (E.D. Cal. 2011). The other

19   case Defendants cite, *Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 1012 (C.D. Cal. 2014)

20   is inapposite. There, the plaintiffs were prisoners, and thus the fees awardable on their federal

21   claims (including Section 1983) were severely limited by the Prison Litigation Reform Act,

22   including a cap on the rate allowed. *Rodriguez* at 1017. Thus, differentiation between time spent

23   on state and federal claims, while "particularly difficult," was necessary in light of the severe

24   limits under the PLRA. *Id*. at 1019-1020.

25          Instead, all of the cases where plaintiffs prevailed on Section 1983 and Bane Act claims,

26   federal courts have applied a multiplier, based on state law factors, to all of the fees. *See, e.g.*,

27   *Chaudhry v. City of Los Angeles*, supra, at 1112; *Mangold v. Cal. PUC, supra,* at 1478-79.

28

1    Defendants finally claim that "even if a multiplier is applied, it cannot be applied to 'fees

2    on fees.'" Opp. at 24:12-13, citing *Ketchum, supra*, 24 Cal. 4th at 1141. However, *Ketchum* did

3    not broadly hold that no multiplier is permitted for fees on fees. It merely noted that when

4    determining such fees, the contingent risk factor is typically absent once Plaintiff has already

5    established a right to fees. *Ketchum* at 1142; *but see Downey Cares v. Downey Commity Dev.*

6    *Com.*, 196 Cal. App. 3d 983, 998 (1987) ("[A] trial court would not necessarily abuse its

7    discretion if it chose not to distinguish the two categories but to apply the multiplier to the whole

8    lodestar. For instance, if the contingency of receiving any fee and the long delay in receiving the

9    fee . . . were important to the trial judge's calculation, they seem equally applicable to the award

10   for fee-related services."). Even if the contingent fee factor is not available for fees-on-fees, the

11   other ones, such as novelty and complexity may be available.

12   **VII.    Plaintiffs' Claimed Costs Are Reasonable**

13   Jury consultant fees are awardable under Section 1988. *See Confederated Tribes of Siletz*

14   *Indians of Or. V. Weyerhaeuser Co.*, No. C00-1693-A, 2003 WL 23715982, at *8 n.12 (D. Or.

15   Oct. 27, 2003), *vacated and remanded on other grounds*, 484 F.3d 1086 (9th Cir. 2007) (citing

16   numerous cases allowing recovery of expenses related to mock juries and trial consultants).

17   Defendants' failure to use a jury consultant or conduct mock trials was their choice and could

18   well have explained why they were surprised by the size of the verdict.

19   Plaintiffs are entitled to recover the cost of daily trial transcripts, which were essential

20   and used regularly during the oral and written proceedings during trial. *See, e.g.*, Trial Transcript,

21   789:24-790:14, 934:5-12 (requiring counsel to cite to the trial transcript if the accuracy of their

22   closing argument is questioned), 1007:20-1008:15, 1012:14-19, 1013:8-24, 1018:20-21, 1215:4-

23   6, 1270:3-5; Dkt. Nos. 205, 212, 216, 221, 225, 227. It also appears Defendants ordered the trial

24   transcripts (as the charge for transcripts was invoiced to their clients) and the defense also cited

25   to the transcripts numerous times during trial.

26   The travel, hotels, meals, and transportation are also all appropriate and reasonable costs.

27   Defendants fail to cite any authority to the contrary and fail to rebut the declarations of Plaintiffs'

28   counsel supporting these expenses.

14

Loggervale v. County of Alameda et al., Case No. C20-4679-WHA
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND NON-STATUTORY COSTS

1

2      **VIII.   Defendants Should Be Required to Bear the Cost of the Special Master**

3      "The prevailing party has a right to recover moneys paid for the master 'as part of its

4      recoverable costs . . .." *K-2 Ski Co. v. Head Ski Co., Inc.*, 506 F.2d 471, 476 (9th Cir. 1974),

5      citing 9 C. Wright & A. Miller, Federal Practice and Procedure § 2608, at 798 (1971) and 6 J.

6      Moore, Federal Practice P54.77(3), at 1718 (2d ed. 1974).

7      However, additional factors weigh in favor of requiring Defendants to bear the entire cost

8      of the Special Master. Defendants refused to meet and confer, in violation of the Court's Order

9      and local rules, *see* Dkt. 241; N.D. Cal. Local Rule 54-5, claiming that they were unable to get

10     the necessary authority to negotiate any resolution.   Further, the position taken by Defendants in

11     their opposition is unreasonable and without support. They rely on ADA cases to argue that

12     Plaintiffs' rates are too high. They failed to provide their underlying time records, in violation of

13     Judge Alsup's order. They claim the esteemed Richard Pearl is a Plaintiff's advocate but fail to

14     present any evidence of their own to support their contentions. They misrepresent the facts of the

15     case and the holdings of other cases. And they ask for the Court to award ¼ of what Plaintiffs

16     have requested, without any actual explanation for such a drastic reduction.

17     **IX.     Conclusion**

18     For the foregoing reasons, Plaintiffs respectfully the Court grant their motion and award

19     the lodestar fees requested (including those up to the date of the determination of this motion,

20     which Plaintiffs will provide in the format and manner requested by the Special Master), and the

21     costs incurred. Plaintiffs further request that the Court apply a 2.0 multiplier to the lodestar fees

22     to account for the relevant factors discussed herein.

23     While Plaintiffs have attempted to respond fully to Defendants' numerous contentions,

24     Plaintiffs reserve the right to provide additional argument and/or evidence, including as the Court

25     may direct, at or prior to the June 15, 2023 hearing on the motion.

26     //

27     //

28     //

       //

Loggervale v. County of Alameda et al., Case No. C20-4679-WHA
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND NON-STATUTORY COSTS

1

2    Dated: May 16, 2023                          LAW OFFICE OF JOSEPH S. MAY
                                                  and
3                                                 GEARINGER LAW GROUP
                                                  and
4                                                 ALTAIR LAW LLP

5

6                                                 _/s/ Joseph S. May_
                                                  By: JOSEPH S. MAY
7                                                 Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Loggervale v. County of Alameda et al., Case No. C20-4679-WHA
PLAINTIFFS' REPLY IN SUPPOORT OF MOTION FOR ATTORNEYS' FEES AND NON-STATUTORY COSTS