1    Matthew Borden, Esq. (SBN: 214323)
        borden@braunhagey.com
2    BRAUNHAGEY & BORDEN LLP
     351 California Street, 10th Floor
3    San Francisco, CA 94104
     Telephone: (415) 599-0210
4    Facsimile: (415) 276-1808

5

6

7                        UNITED STATES DISTRICT COURT

8                        NORTHERN DISTRICT OF CALIFORNIA

9

10   AASYLEI LOGGERVALE; AASYLEI            Case No. 20-cv-04679-WHA
11   HARDGE-LOGGERVALE; and AAOTTAE
     LOGGERVALE,                            SPECIAL MASTER'S REPORT AND
12                                          RECOMMENDATION RE:
           Plaintiffs,                      ATTORNEY'S FEES, COSTS, AND
13                                          SPECIAL MASTER FEES
           v.
14
     COUNTY OF ALAMEDA; STEVEN
15   HOLLAND; MONICA POPE; KEITH LEEPER;
     ANTHONY DeSOUSA; CAMERON
16   GALLOWAY; and DOES 1 to 50, inclusive,

17         Defendants.

18

19

20

21

22

23

24

25

26

27

28

The Special Master respectfully submits this Report & Recommendation regarding the attorney's fees that Defendants Steven Holland, Monica Pope and the County of Alameda should pay Plaintiffs Aasylei Loggervale; Aasylei Hardge-Loggervale; and Aaottae Loggervale.

## SUMMARY

Plaintiffs seek attorney's fees under federal and state law for obtaining an $8,250,000 jury verdict in a civil rights lawsuit. They request $1,757,333 in fees with a multiplier of two. It is recommended that Plaintiffs be awarded $1,644,656 in legal fees without any multiplier, and $42,948.15 in non-statutory costs.

Defendants object to almost every aspect of the fee request. They argue that Plaintiffs only obtained limited success. They further contest the hourly rates of Plaintiffs' counsel, the amount of time counsel spent, and how counsel apportioned the tasks. These objections mainly lack merit.

Plaintiffs achieved an excellent result. The verdict they attained exceeded Defendants' last settlement offer by more than tenfold. Plaintiffs vindicated important constitutional principles, and the judgment they secured will act as a deterrent against racial profiling and violations of the Fourth Amendment. By any measuring stick, Plaintiffs won big.

The lodestar claimed by Plaintiffs is generally reasonable. Plaintiffs were represented by two solo practitioners and an attorney in a small firm. This model may be less efficient than having a single firm staff the case in a pyramid structure with junior associates on the bottom and a senior partner on the top. The pyramid model used by larger firms, however, does not reflect the reality of how lawyers take on cases like this one, where there is no guarantee of recovery, limited physical injuries, and many obstacles to recovery, such as qualified immunity. To attract lawyers to accept such cases, which is the purpose of the fee-shifting statutes at issue, it is reasonable for counsel, especially small firms and solo practitioners, to spread risk through associating multiple firms. While this sometimes leaves more senior lawyers performing tasks that less experienced counsel might do at a big firm, it would be inappropriate to reduce counsel's recovery on the ground that they are not part of a larger institution.

On the whole, Plaintiffs were efficient in litigating the case. There was some duplication of efforts, such as having multiple attorneys attend the same deposition, for which adjustments to the

lodestar are recommended. Additionally, Plaintiffs' recordkeeping was less than ideal in two respects. First, one attorney did not keep contemporaneous time notes, which is difficult to justify given that he always understood that any compensation would be through a fee petition, and many of his time entries are vague. Second, there is some block billing. Adjustments have been recommended to account for these and other issues.

Finally, Plaintiffs seek a multiplier of twice their lodestar. Federal law disfavors such adjustments. However, in cases such as this one, which contain overlapping state and federal claims, a multiplier is available. The purpose of such a multiplier is to approximate the fair market rate for counsel's legal services in cases that require extraordinary legal skill or contingent risk. This Report & Recommendation seeks to account for the skill of counsel and the risk they incurred by applying the current hourly rates requested by Plaintiffs' counsel, which are significantly higher than those paid by Defendants, and by forgiving some of the inefficiencies inherent in having multiple law firms involved.

Plaintiffs claim that Defendants' litigation tactics increased Plaintiffs' risk. In a case where the defendant drove up risk beyond what a reasonable contingency lawyer ought to expect in assessing whether to take on a case, a multiplier might be appropriate to account for such risks. There is some evidence that Defendants engaged in such conduct, such as by propounding 421 written discovery requests on Plaintiffs. The record on Defendants intentionally driving up costs, however, is insufficiently developed to warrant a multiplier on this ground. Plaintiffs also contend that Defendants increased Plaintiffs' costs by being inaccurate in some of their legal and factual arguments. There is some merit to that contention. Defendants made arguments in this proceeding that were foreclosed by controlling law. They also took unreasonable positions that drove most of the work that went into this Report & Recommendation, such as arguing that Plaintiffs should receive $0.00 for preparing for trial. Accordingly, it is recommended that Defendants exclusively bear the Special Master's fees of $8,400.

## PROCEDURAL BACKGROUND

On May 5, 2023, an initial conference was held to establish procedures for resolving this dispute. At the conference, Defendants were asked to provide their actual invoices, Plaintiffs were

given permission to file a reply brief in support of their motion for attorney's fees, and to provide proof of the actual time they spent after they filed their attorney's fees motion. A hearing was set for June 15, 2023.

Because Defendants objected to producing their actual invoices on the grounds of attorney-client and work product privilege, Defendants were given the opportunity to brief whether their time notes were subject to any privilege. Defendants submitted a brief on May 10, 2023. On May 11, 2023, an interim Report & Recommendation was issued rejecting Defendants' contentions.[1] As explained therein, in cases involving a mix of federal and state claims, federal law governs claims of privilege. Under federal law, attorney invoices generally are not privileged. Defendants were given the option of having the Interim Report & Recommendation immediately entered so that they could seek judicial review, or producing their invoices with redactions for privilege and reserving any objection. On May 15, 2023, Defendants submitted their unredacted invoices.

On June 5, 2023, Plaintiffs timely provided supplemental declarations regarding time and costs postdating March 22, 2023, the date that they filed their motion for attorney's fees. Defendants timely filed written objections on June 9, 2023. On June 21, 2023, Plaintiffs submitted their time for the period of June 5 through June 21, 2023.

A hearing lasting approximately two hours was held on June 15, 2023. Before the hearing, Plaintiffs asked that it be recorded. Defendants objected, so it was not recorded. At the hearing, the parties were asked to submit supplemental briefing on what the parties now both acknowledge was a "scrivener's error" in the Bane Act. The parties timely did so on June 21, 2023. On June 29, 2023, a copy of this Report & Recommendation was provided to the parties to allow them to make sure that all time and expenses were addressed and to correct any mathematical errors. Plaintiffs found one mistake that ended up costing them $425. No response was received from Defendants.

## ANALYSIS AND RECOMMENDATIONS

For the reasons below, it is recommended that Plaintiffs be awarded most of their attorney's fees and non-statutory costs at their counsel's customary rates, without a multiplier.

---

[1] A copy of the Interim Report & Recommendation is attached to this Final Report & Recommendation as Appendix A and is incorporated by reference.

## I.   PLAINTIFFS WERE FULLY SUCCESSFUL

Defendants contend that Plaintiffs did not fully prevail because their amended complaint alleged 13 causes of action against six Defendants, three of whom Plaintiffs eventually dismissed, and that "by the time of trial, the case had been reduced to a mere skeleton of what Plaintiffs had litigated for over two years" (Opp. at 5-6). Under the circumstances of this case, reducing Plaintiffs' fees based on these arguments is not recommended.

In cases where a plaintiff has multiple claims, and some do not win, a court must look at whether the unsuccessful claims are "related" to the successful ones. *Webb v. Sloan*, 30 F.3d 1158, 1168 (9th Cir. 2003). "[R]elated claims involve a common core of facts or are based on related legal theories." *Id*. A court may only exclude fees that are "entirely distinct and separate" from the successful ones. *Id*.

Here, Plaintiffs' 13 causes of action all arose from the same events, although they were set up under different legal theories. Plaintiffs contended that Defendants detained Plaintiffs, searched their vehicle and personal belongings, and held them in handcuffs in police cars, and sought redress on numerous legal bases, *e.g*., unlawful seizure under the Fourth Amendment, racial discrimination under the Fourteenth Amendment, retaliation under the First Amendment, and violation of various state statutory and tort laws, such as false arrest and imprisonment, invasion of privacy, assault and battery. Each of the claims was asserted against at least one of the three Defendants who were found liable (Defendants Holland, Pope and the County of Alameda). These claims "involve a common core of facts," and are therefore related to one another.

The Ninth Circuit reversed a district court for reducing a prevailing plaintiff's fees in similar circumstances. In *Webb*, the plaintiff claimed that an officer and the city unlawfully arrested him, held him in jail, and prosecuted him for obstruction of justice to try to coerce him to waive his claims. In reversing the district court's reduction of plaintiff's fee award, the Ninth Circuit noted: "Plaintiff asserted numerous legal theories against several defendants. However, all his claims arose out of a common core of facts and a common course of conduct: Plaintiff's arrest, detention, and prosecution." *Webb*, 330 F.3d at 1169. The Court then held that "[i]n such a situation, we cannot say that the claims the district court excluded were 'entirely distinct and separate' from the

1  successful claims." *Id*. (quotation omitted). *Webb*'s reasoning applies here. Plaintiffs' claims, like

2  Mr. Webb's, all arose from the same events under differing legal theories.

3          In *Webb*, the Ninth Circuit also held that the district court had discretion to reduce its fee

4  award on the ground that plaintiff only had "limited success" because the deputy who arrested him

5  was exculpated. *Id*. at 1169.[2] A reduction of that type is not recommended here. Unlike in *Webb*,

6  none of the Defendants in this case was exonerated. Plaintiffs' elimination of legal theories and

7  potentially liable parties before trial did not diminish their result. To the contrary, Defendants have

8  argued that the verdict Plaintiffs obtained is too large even without the inclusion of the dismissed

9  theories and parties. Further, unlike in *Webb*, where the jury found that the officer had not

10  unlawfully arrested plaintiff although the city subsequently wrongfully held and prosecuted him,

11  the jury's finding that Defendants violated Plaintiffs' constitutional rights here fully vindicated

12  Plaintiffs' theory—that they were detained and searched without legal grounds.

13          For each of these reasons, reducing Plaintiffs' recovery based on the result they achieved is

14  not recommended.

15  **II.     PLAINTIFFS' LODESTAR**

16          To calculate a party's lodestar, a court "multiplies the number of hours the prevailing party

17  reasonably expended on the litigation by a reasonable hourly rate." *Ballen v. City of Redmond*, 466

18  F.3d 736, 746 (9th Cir. 2006) (quotation marks omitted). Plaintiffs' recommended lodestar is set

19  forth below.

20          **A.     Reasonable Hourly Rates**

21          In civil rights cases, counsel is compensated at rates that are "in line with those prevailing

22  in the community for similar services by lawyers of reasonably comparable skill, experience, and

23  reputation." *Blum v. Stenson*, 465 U.S. 886. 896 n.11 (1984). None of Plaintiffs' counsel is

24  routinely compensated by hourly paying clients, so there is not a purely objective way to calculate

25  their appropriate rates.

26

27  ─────────────

    [2] The jury found "that Deputy Sloan did not falsely arrest Plaintiff but that Carson City falsely

28  imprisoned, maliciously prosecuted, and committed abuse of process against Plaintiff under state
    law." *Id*. at 1163.

1   Defendants appear to base their assessment of rates on the number of years that counsel

2   have practiced and their experience with civil rights litigation (Opp. at 13-14). That reasoning

3   leaves out the skill and reputation of counsel, two considerations that strongly factor into how

4   much clients will pay for legal services. Defendants also cite a number of decisions where courts

5   have approved various rates (Opp. at 12-13). Those decisions, too, do not reflect the skill or

6   reputation of Plaintiffs' counsel and thus are not particularly persuasive. Moreover, they reflect a

7   wide range of rates, time periods, subject matters and skills and do not purport to set benchmarks

8   for how much any attorney should be paid, much less support Defendants' suggested rates of

9   $450/hour for Mr. Gearinger, $400/hour for Mr. Peters and $350/hour for Mr. May (Opp. at 14).

10  *See, e.g.*, *Civil Rights Education and Enforcement Center v. Ashford Hospitality Trust, Inc.*, No. C

11  15-216-DMR, 2016 WL 1177950, *5 (N.D. Cal. Mar. 22, 2016) (cited in Opp. at 13, approving

12  $900/hour for civil rights lawyer in 2016); *Human Rights Def. Ctr. V. Cnty. Of Napa*, No. C 20-

13  1296-JCS, 2021 WL 1176640, *11 (N.D. Cal. Mar. 28, 2021) (cited in Opp. at 13, approving

14  hourly rate of $1,100 for civil rights attorney in 2021). In *Human Rights Defense Center*, Judge

15  Spero cited at least seven decisions from this district approving similar rates for civil rights

16  attorneys. 2021 WL 1176640 at *11.[3]

17  Plaintiffs have submitted declarations by their counsel detailing their accomplishments and

18  credentials, declarations from other lawyers who know them, attesting to their reputations and skill,

19  and an expert declaration by Richard M. Pearl, Esq., to which Defendants did not submit any expert

20  declaration in rebuttal. Although all these materials are unrebutted, this Report & Recommendation

21  does not rely heavily on anything beyond the declarations of Plaintiffs' counsel.

22

23  [3] The cases Defendants cite do not support their proposed rates for other reasons. *Johnson v.
24  Johnson*, No. C 17-04840-SVK, 2020 WL 901517 (N.D. Cal. Feb. 25, 2020), *Johnson v. 480
    Geary St., LLC*, No. C 19-460-JSW, 2021 WL 5407874 (N.D. Cal. Jan. 27, 2021), *Heifetz v.
25  Mona's Burgers Clayton LLC.*, No. C 19-02392-LB, 2021 WL 292034 (N.D. Cal. Jan. 28, 2021),
    *Gonzalez v. Machado*, No. C 17-2203-LB, 2019 WL 3017647 (N.D. Cal. July 10, 2019), and
26  *Johnson v. AutoZone, Inc.*, No. 17-CV-2941-PJH, 2019 WL 2288111 (N.D. Cal. May 29, 2019)
    (cited in Opp. at 12-13) are ADA cases, where the court based counsel's rate on what other courts
27  had found to be a reasonable hourly rate for those lawyers. The remainder of the decisions that
    Defendants rely on (Opp. at 12-13) are cases where the court approved the rates that plaintiff's
28  counsel requested, rather than reduced the rates, as Defendants seek to do here.

While Mr. Pearl appears to be an expert on attorney's fees, the evidence on which he relies appears to be skewed. For example, Exhibit B to his declaration is a compendium of rates found to be reasonable in the Bay Area. Mr. Pearl, however, offers no evidence that Plaintiffs' counsel have similar skill and reputation to the law firms in the exhibit, such as Cooley LLP and Zuckerman Spaeder LLP, both of which primarily charge clients on an hourly basis and have established market rates. Further, the cases in Exhibit B involve a wide spectrum of subject matters, ranging from breach of contract to disability discrimination to securities class actions. Very few involve civil rights.

The same deficiencies permeate the other statistical materials cited by Mr. Pearl. Exhibit C reflects rates charged in the Bay Area from firms ranging from Akin Gump to Wilson Sonsini, and other firms that commonly bill on an hourly basis. Such materials do not establish the skill or reputation of Plaintiffs' counsel and have little to do with civil rights practice. Similarly, Exhibit D and F are rate reports on various practice areas, which only contain averages that do not bear on the skill and reputation of Plaintiffs' counsel and do not include civil rights. Exhibit G is a bankruptcy court fee petition from Simpson Thatcher that has little probative value for similar reasons.

The declarations by Plaintiffs' counsel and their colleagues are sufficient to support their requested rates. Mr. Gearinger began practicing in 1989. He was a partner at a mid-size law firm for nine years and worked at the San Francisco City Attorney's Office for six years. He has tried more than 10 cases. His requested rate of $850/hour is reasonable in light of his experience and accomplishments, and the skill demonstrated in this case and others listed in his declaration.

Mr. Peters has been practicing since 1996 and has tried many civil and criminal cases. He has worked teaching and training trial skills and won many other accolades from lawyers' organizations (Peters Decl. ¶¶ 2-4). His 2021 rate of $895/hour was approved by Judge Chhabria two years ago. His requested rate of $950/hour is reasonable in light of his accomplishments and the skill he demonstrated in this case and the others listed in his declaration.

Mr. May has been practicing since 2006. In 2021, he was compensated at approximately $600/hour in a settlement (Schmidt Decl. ¶ 10). While he does not have as many accomplishments, trials or data points regarding his skills as his co-counsel, and his requested rate is on the high end,

given his reputation and skill, including the skill he showed in this case, his requested rate of $700/hour is reasonable.

As noted in Section III below, it also would be possible to account for Plaintiffs' counsel's skill by using a multiplier. However, by applying counsel's full current rates for hours they spent in previous years, this Report seeks to account for counsel's skill and normal contingent risks.

Finally, Plaintiffs seek compensation for a paralegal who was once a practicing attorney at the rate of $325/hour. While this paralegal may be overqualified for the job, $325/hour is too high for paralegal services. It is recommended that paralegal time be compensated at $225/hour, which commensurate with what a senior paralegal commands.

**B.      Reasonable Time Spent**

In compliance with the Court's Order (Dkt. No. 241), Plaintiffs broke down their billing on the case into 62 discrete projects (May Decl, Ex. B, Supp. Project Breakdown, dated 6/5/2023, and Supp. Project Breakdown, dated 6/21/2023).

On May 12, 2023, Defendants submitted an excel spreadsheet with their project-by-project billing. Defendants' spreadsheet, however, did not break down projects in the manner required by the Court and did not correspond to the projects that Plaintiffs had created (Gilbert Decl, Ex. 1). Defendants' spreadsheet only had 11 projects, making it difficult to accurately compare Plaintiffs' and Defendants' time. Projects where a direct comparison could be made show relative parity. For example, Defendants spent 44.4 hours on their motion for reconsideration, and Plaintiffs spent 15.5 hours on this project. Defendants spent 54.2 hours on their motion to dismiss, and Plaintiffs spent 27.8 hours opposing the motion. Plaintiffs spent significantly more time preparing for trial and conducting the trial,[4] but as discussed below, the amount of time Plaintiffs spent was generally reasonable in light of the length and scope of the trial and the fact that they ramped up for trial in 2021 and again in 2023 when trial occurred.

---

[4] Plaintiffs broke up the pretrial and trial tasks separately (Trial Preparation 2021, Trial Preparation 2022/2023, Motions in Limine, Trial, Charging Conference and Rule 50 motions, Submitting Transcripts for Video/Audio Plated at Trial, and Preparations for Completion of Trial). While Defendants listed trial preparation and trial as a single project, and it is not clear what activities this category precisely encompasses, Defendants claim to have spent 463.8 hours, whereas Plaintiffs' combined trial-related projects totaled over 900 hours.

Defendants object to the amount of fees for each one of Plaintiffs' projects. Defendants' main objections are duplication of efforts and that senior attorneys performed lower-level tasks. Coordinating among counsel does require having meetings, but that is true within firms as well as when solo practitioners work together. For the reasons given above, Plaintiffs should not be punished for the way they staffed the case. For the most part, Plaintiffs' attorney with the lowest rate did the junior-most tasks. It is also clear from some time entries that Plaintiffs are not seeking compensation for all strategy communications between counsel.

The documentation for the amount of fees was submitted in three tranches: (1) the fees submitted with the motion, (2) the fees incurred after the motion was filed but before June 5, 2023, and (3) the fees incurred between June 5 and June 21, 2023. Each group of fees was broken down by project. After considering the parties' positions, the following recommendations are made, which are tabulated in Appendix B:

### 1.    Fees Incurred Before Filing Attorney's Fees Motion

1.    <u>Case Intake</u>: Plaintiffs seek reimbursement for 12.8 hours of attorney time for this task, which involved initial contact with the clients, interviewing them, reviewing some of the underlying facts, and preparing engagement agreements. The time spent was reasonable.

2.    <u>Research on Tort Claims Act and Public Records Act Request</u>: This task involved 7.3 hours of research and communications with the government by Plaintiffs' junior-most attorney. The time spent was reasonable.

3.    <u>Preparing Complaint</u>: Plaintiffs seek compensation for 33.8 hours of attorney time and 1.1 hours of paralegal time for this project. A small portion of the BG time was spent on tasks that could have been done by a paralegal or secretary (0.3 preparing summons, 0.3 filing the summons and complaint, 0.3 filing a subpoena, and 0.3 on service issues on 7/13/2020, 7/15/2020 and 7/21/20). Plaintiffs had a paralegal who was assigned to the matter and who billed on this project. Accordingly, it is recommended that 1.2 hours of BG time be deducted.

4.    <u>Preparing First Round of Written Discovery</u>: Plaintiffs spent 10.3 hours of attorney time and 3.7 hours of paralegal time on this task. The paralegal's rate should be reduced for the reasons stated above. No further reductions are recommended.

5.     <u>Research</u>: This task involved research on the legal issues in the case. Plaintiffs spent 6.5 hours on this task. Doing so was reasonable.

6.     <u>Initial Case Management Conference</u>: Plaintiffs spent 2 hours of attorney time and 1.6 hours of paralegal time on this task, which comprised preparing the case management conference statement and preparing for and attending the case management conference. This time was reasonable.

7.     <u>Initial disclosures</u>: Plaintiffs spent 2 hours of attorney time and 1.6 hours of paralegal time on this task. This time was reasonable.

8.     <u>Challenging confidentiality designations</u>: - Plaintiffs spent 52.4 hours of attorney time and 13.9 hours of paralegal time on this project. This time was spent doing research, meeting and conferring with Defendants, reviewing and challenging designations, responding to Defendants' motion to maintain confidentiality and attempting to seal certain documents. These tasks can be quite time-consuming. Some time recorded for this project may relate to other discovery tasks (e.g., BG 12/21/2020 entry for 0.5 "Telephone call to JSM regarding various discovery issues). Because it is discovery related, there is no need to reduce it. It is recommended that the JM 1/25/2021 entry for creating a TOA and TOC (0.5 hours) be deducted because this work should not be compensated at lawyer rates. The 2/18/2020 entries for BG and JM show that they both attended the hearing. Accordingly 1 hour of BG time also should be deducted.

9.     <u>Responding to written discovery</u>: Plaintiffs spent 27.9 hours of attorney time and 3.7 hours of paralegal time on this task. One entry (JM 11/14/20) reflects some administrative work by an attorney. The full entry states: "Research elements of vehicle code section allegedly violated. Organize files, assess for handling re responding to defendants' discovery." Because this entry is block billed, it is impossible to determine exactly how much of the time was spent organizing the files. Many courts have expressed frustration with block billing because it makes reviewing the bills difficult, and it is not uncommon for courts to apply across-the-board cuts on fee petitions for this practice. *See*, *e.g.*, *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. C 11-1846 LHK (PSG), 2012 WL 5451411, *4-5 (N.D. Cal. Nov. 7, 2012). In the instant fee petition, only one attorney block billed. Rather than making a global reduction for block billing, cuts will be recommended when the

1    block billing makes a material difference. Here, it does because it is impossible to isolate the

2    administrative time. Accordingly, it is recommended that one hour from the 11/14/20 JM entry be

3    deducted from this project.

4        10.    Settlement conference: Plaintiffs seek compensation for 39.9 hours for this task.

5    This task comprised preparing a settlement conference statement, preparing for, and attending the

6    settlement conference, and related tasks. Two attorneys attended the settlement conference. The

7    Court has indicated that generally only one attorney is permitted at hearings (Dkt. No. 241 ¶ 5).[5]

8    Accordingly, it is recommended that 2.5 hours of JM time be deducted. This reduces the claimed

9    2.8 hours for duplication but allows 0.3 hours to reflect that counsel would need to discuss the

10   results of the settlement conference if he had not attended.

11       11.    Holland deposition: Plaintiffs spent 26.4 hours on this project. Two attorneys

12   attended the deposition, but only one took it. Per the Court's Order, having multiple attorneys

13   attend a deposition is generally not reasonable. Defendants did not specifically identify each

14   deposition at which only one of their attorneys was present, but this appears to have been one of

15   them. Having multiple attorneys at a deposition is not wholly wasteful because this enables counsel

16   to strategize and obviates the need for the attending lawyer to review the transcript. A 50%

17   reduction is appropriate for this task. Accordingly, the 2/4/2021 BG entry should be reduced from

18   6.5 hours to 3.2 hours.

19       12.    Plaintiffs' First Motion to Compel: Plaintiffs spent 25.8 hours on this project. The

20   12/21/2020 JM entry for 0.7 hours is blocked billed and contains at least some tasks that are not

21   related to this project. However, the other tasks are case-related, and no deduction is recommended.

22   Similarly, the JM 1/5/2021 entry for 2.3 hours is related to Plaintiffs' motion for summary

23   judgment. This amount should have been included as part of the summary judgment project and is

24   considered and allowed in conjunction with the other entries on that project. Last, as reflected in

25   the 1/12/2021 entries both JM and BG attended the hearing. To eliminate duplication, 2 hours of

26   BG time should be deducted.

27

28   _____

[5] Only one attorney attended the conference for Defendants.

13.  <u>Transcribing body camera videos</u>: Plaintiffs seek 2.9 hours of attorney time and 10.4 hours of paralegal time for this task. These amounts are reasonable.

14.  <u>Plaintiffs' motion for summary judgment</u>: Plaintiffs spent 80.8 hours of attorney time and 0.6 hours of paralegal time on this project (plus the 2.3 hours noted in Project #12 above). This time was generally reasonable for putting together a 19-page motion with significant documentation.

Two entries raise issues. First, the 5/25/2021 JM entry states: "Continue preparing MSJ. Prepare TOC and TOA. Prepare cover: 1.5 hours" and the 5/26/2021 JM entry refers to finalizing the TOC/TOA and "assess for filing and service." These entries are block billed with other tasks, so it is unknown how long was spent on them. It is recommended that 0.5 hours be reduced from this project to eliminate payment for administrative work.

15.  <u>Amending complaint to add Deputy Galloway</u>: Plaintiffs seek 3.6 hours of attorney time for this task. At the hearing on June 15, 2023, Plaintiffs agreed to withdraw their request for compensation for this task because Deputy Galloway was eventually dismissed.

16.  <u>Opposition to motion to dismiss First Amended Complaint</u>:  Plaintiffs seek 27.8 hours of attorney time for this task. Two hours of BG time should be deducted because two attorneys attended the hearing.

17.  <u>Deposition of Monica Pope</u>: Plaintiffs seek 11.4 hours of attorney time for this task. This deposition was attended by two attorneys. BG spent 3.9 hours on this task for attending the deposition. It is recommended that only 1.9 of this time be allowed for the reasons given above.

18.  <u>Second set of written discovery to Defendants</u>: Plaintiffs seek 9.2 hours of attorney time for this task. The time spent on this project is generally reasonable. The 3/19/2021 JM entry is block billed and contains tasks that may not be related to this project (e.g., "Discussion re having body cam footage reviewed by lip readers"). However, this entry is only for 1.3 hours, all the tasks relate to the case, and it does not appear that a lot of time was spent on it. No adjustment is recommended for this project.

19.  <u>Amendment to Stipulated Protective Order</u>: Plaintiffs seek one hour of attorney time for this task. This amount is reasonable.

20.     <u>Plaintiffs' Motion to Compel Further Responses to 2nd set of Requests For Production of Documents</u>: Plaintiffs seek 2.9 hours of attorney time for this task. This is reasonable.

21.     <u>Plaintiffs' Motion for Sanctions for Defense Counsel's Deposition Conduct</u>: Plaintiffs seek 10.4 hours of attorney time for this task, and 0.2 hours of paralegal time. The 3/30/2021 JM entry is block billed and reflects time spent on e-filing the motion and email a proposed order to chambers. Those are paralegal tasks. A deduction of $350 is recommended to account for this time. The 4/23/2021 BG entry seeks 0.5 for attending the hearing when JM argued the motion. A further reduction of $425 is recommended.

22.     <u>Second Amended Complaint and Motion for Leave to File</u>: Plaintiffs seek 5.5 hours of attorney time for this task. The time spent on this project was reasonable.

23.     <u>Expert Retention, Disclosure and Report</u>: This task comprised research potential experts, interviewing experts and working with experts. Plaintiffs seek 12.6 hours of attorney time for this task. The 7/02/2021 JM entry is a block billed entry for 1.1 hours that reflects work on a Rule 30(b)(6) deposition among other tasks. Such tasks are case related, and given the small amount of time, no deduction is recommended.

24.     <u>Responding to Defendants' Second set of Written Discovery</u>: Plaintiffs seek 4.5 hours of attorney time and 2.8 hours of paralegal time for this task. These amounts are reasonable.

25.     <u>Depositions of Plaintiffs</u>: Plaintiffs seek 49.7 hours of attorney time and 0.8 hours of paralegal time for this task. This project has the following issues:

The BG 6/25/2021 entry seeks 7.8 hours for attending the deposition of Aasylei Loggerdale, which was defended by Mr. May. This entry should be reduced to 3.9 hours for the reasons given above.

The JM 6/28/2021 entry is block-billed entry that seeks 2.8 hours for among other tasks attending part of a deposition that was defended by Mr. Gearinger. This entry should be reduced to 1.4 hours.

26.     <u>Deposition of Keith Leeper</u>: Plaintiffs seek 13.5 hours of attorney time for this task. The 7/06/2021 BG entry seeks 3.9 for attending the deposition, which was taken by Mr. May. This entry should be reduced to 1.9 hours.

27.     <u>Plaintiffs' First Motion to Compel 30(b)(6) deposition</u>: Plaintiffs seek 19.4 hours of attorney time for this task. This time was reasonable.

28.     <u>Expert Depositions</u>: Plaintiffs seek 21.6 hours of attorney time for this task. The BG time for attending the deposition should be reduced from 5.3 to 2.6 hours because the deposition was defended by Mr. May.

29.     <u>Deposition of Anthony DeSousa</u>: Plaintiffs seek 12.1 hours of attorney time for this task. The time for JM attending the deposition taken by his co-counsel should be reduced from 5.2 to 2.6 hours.

30.     <u>Deposition of Cameron Galloway</u>: Plaintiffs seek 8.8 hours of attorney time for this task. JM's time for attending a deposition taken by another attorney should be reduced from 2.7 to 1.3 hours.

31.     <u>Depositions of Alameda County 30(b)(6) witnesses</u>: Plaintiffs seek 50.6 hours of attorney time and 1.1 hours of paralegal time for this task. The following reductions are recommended:

The BG 7/22/21 entry should be reduced from 2.5 to 1.2 hours for duplicative attendance at a deposition.

The JM 8/2/21 entry of 0.3 hours should be eliminated because these are administrative tasks.

The 8/9/2021 BG entry should be reduced from 2.2 to 1.1 for duplicative attendance at a deposition.

32.     <u>Plaintiffs' Second Motion to Compel 30(b)(6) deposition</u>: Plaintiffs seek 1.3 hours of attorney time for this task. This time was reasonable.

33.     <u>Defense Motion for Summary Judgment</u>: Plaintiffs seek 93.3 hours of attorney time and 17.7 hours of paralegal time for this task, for a total of $76,852.50. These amounts are generally reasonable.

Defendants assert that only 1.6 hours of JM time should be allowed for this entire task (Gilbert Decl., Ex. 2 at 54-59). That is not a fair or realistic assessment of how much time it takes to oppose a summary judgment motion. From a review of the records, the time spent appears to be appropriate. Due to block billing, some of the time under this task appears to relate to other issues in the case (*e.g.*, JM 8/27/2021), and this task also includes time related to reviewing the Court's Order and research regarding the Order's implications (*e.g.*, JM and BG 10/4/2021 entries). Because these tasks are case related, no reduction is recommended for them.

The only recommended reduction is for 3.3 hours of BG travel time on 9/7/2021.

34. <u>Jury Consultant Karen Jo Koonan</u>: Plaintiffs seek 15 hours of attorney time for this task. This time was reasonable. Defendants' main objection appears to be that using a jury consultant was unnecessary. Use of jury consultants is common in civil litigation and 15 hours is a reasonable amount of time, especially in a case that proved to be worth over $8 million.

35. <u>Defendants' Motion for Reconsideration of MSJ Order</u>: Plaintiffs seek 15.5 hours of attorney time for this task. Defendants assert that Plaintiffs should receive $0.00 for this task (Gilbert Decl., Ex. 2 at 60-62). This position is especially unreasonable given that Defendants' spreadsheet shows that they spent 44.4 hours (nearly three times longer than Plaintiffs) on this project. Plaintiffs' time was reasonable.

36. <u>Trial Preparation 2021</u>: Plaintiffs seek 98.8 hours of attorney time and 1.6 hours of paralegal time for this task. These amounts are reasonable.

Plaintiffs partially prepared for trial in 2021. The 2021 trial date, however, was vacated because Plaintiffs were not vaccinated. Defendants assert that Plaintiffs are only entitled to $2,275 for this task if the columns in Gilbert Declaration Exhibit 2 are totaled, or $0 if the final total in Gilbert Declaration Exhibit 2 at page 67 is used. Either way, this is not a fair assessment of the time Plaintiffs spent gearing up for trial in 2021, and it is especially unreasonable because Defendants likewise billed for preparing for trial in 2021. Some of the preparation time in 2021 may have been useful later, such as work on jury instructions, but getting ready for trial a year before the actual trial hardly eliminates the need to prepare anew.

37. <u>Motions in Limine 2021</u>: Plaintiffs seek 50.7 hours of attorney time and 8.9 hours of paralegal time for this task. This task includes preparing four motions in limine (Dkt. Nos.123-24, 126-27), which Plaintiffs later re-filed and used at trial (Dkt. No. 170, MILs 1, 5-7), and opposing Defendants five motions in limine.

Defendants assert that Plaintiffs should only be paid $400 for this task. This is not realistic or reasonable for preparing nine briefs. The time spent by Plaintiffs was reasonable.

38. <u>Vaccination Issue</u>: Plaintiffs seek 18 hours of attorney time for this task. This time was spent on research and proposals regarding Plaintiffs' lack of vaccinations. COVID-19 created numerous logistical difficulties for courts, lawyers and juries. How to pick a jury and conduct a trial when Plaintiffs are not vaccinated, and how to protect jurors and Court staff under such circumstances are novel issues that had to be resolved before the case could be tried. Defendants assert that Plaintiffs should get nothing for this task. This work, however, was necessary, and the amount of time spent by Plaintiffs was reasonable.

39. <u>Trial Preparation 2022/2023</u>: Plaintiffs seek 325.35 hours of attorney time and 9.8 hours of paralegal time for this task. Defendants contend that Plaintiffs should receive no compensation (Gilbert Decl., Ex. 2 at 74-91). The time spent was generally reasonable for a trial involving at least 10 witnesses, including experts, by the parties' account. It appears that Plaintiffs did not unnecessarily duplicate prior efforts. They did not spend much time on motions in limine, despite adding three new ones. They did not spend much time on jury instructions (some time was spent on this at the charging conference). They did not spend time preparing a trial brief.

Some of the CP entries for long chunks of time are vague, e.g., 2/5/2023 "Trial prep 13.5 hour," CP 2/8/2023 "Trial prep 9.5 hours," CP 2/9/2023 "Trial prep 7.75 hours," CP 2/10/2023 "Trial prep 11.5 hours," and CP 2/11/2023 "Trial prep 15.5 hours." Because this attorney was not part of the original team and had been brought in to try the case, it appears that he was swiftly familiarizing himself with the facts and evidence and procedural history and planning how to examine witnesses and what to say to the jury. Understandably, these hours ramped up as trial approached. While none of this is particularly unexpected, the vagueness of the entries prevents meaningful review. This is especially concerning given the premium rate CP commands. This

concern is magnified by the fact that CP time was not contemporaneously recorded. For each of these reasons, it is recommended that CP time, except where expressly noted otherwise, be wholesale reduced by 10% to ensure that Defendants are not overcharged due to the inaccuracies caused by trying to retroactively prepare time notes. There is 120.5 hours of CP time on this project. It is recommended that 12 hours be deducted.

The 2/9/2023 JM entry includes time for "compile exhibits" and "assess for handling re exhibit binders, compliance with Judge's order." These seem like administrative tasks. A deduction of 0.5 hours is recommended.

40.     <u>Mock Jury/Focus Group</u>: Plaintiffs seek 29.15 hours of attorney time for this task. Defendants' main objection appears to be that a focus group was unnecessary. However, focus groups and even mock trials are common in civil litigation. The time spent appears to be reasonable.

41.     <u>Settlement Negotiations</u>: Plaintiffs seek 1.5 hours for this task. This time was reasonable.

42.     <u>Pre-Trial Conference</u>: Plaintiffs seek 21.7 hours of attorney time for this task. This time is reasonable. The 2/1/2023 CP entry refers to a "trial planning meeting w/JSM/BKG." But whether it was part of the pretrial conference or trial, it appears to be reasonable.

43.     <u>Trial</u>: Plaintiffs seek 247.4 hours of attorney time and 14.2 of paralegal time for this task. Defendants assert that Plaintiffs should be awarded $0 for this task (Gilbert Decl., Ex. 2 at 95-98). At oral argument, Defendants focused their objections on certain time spent by CP and time that counsel spent waiting for a verdict. Specifically, they object that the 2/27/2023 CP entry, the day of closing arguments, seeks compensation for 16.25 hours (from 5:45 a.m. to 11:00 p.m.). The only descriptor for this time is "closing." Counsel, however, could not bill for closing after court ended. To ensure against overbilling, this entry should be reduced by 6 hours. As for time spent waiting for a verdict and being present to answer questions from the jury and Court if they arose, often counsel take such time to catch up on other matters they have not been working on during trial. Nonetheless, such time should be compensable. However, not more than 8 hours of time is fair for this task. So, CP 2/28/2023 entry for 12.25 hours should be reduced by 4.25 hours, the CP

3/1/2023 entry for 12.75 hours should be reduced by 4.75 hours. Per a 10% across-the-board reduction, another 7 hours of CP time should be reduced for the reasons given above.

44.     <u>Charging Conference and Rule 50 motions</u>: Plaintiffs seek 89.6 hours of attorney time for this task. There are 31.9 CP hours on this task. This amount should be reduced by 3.25 hours for the reasons above. Otherwise, this time was reasonable.

45.     <u>Submitting Transcripts for Video/Audio Played at Trial</u>: Plaintiffs spent 2.8 hours of attorney time and 10.4 hours of paralegal time. This time was reasonable.

46.     <u>Preparations for Completion of Trial</u>: Plaintiffs seek 65.15 hours of attorney time for this task. The 2/24/2023 JM block-billed entry reflects administrative work. It should be reduced by 0.3 hours. Per the 10% cut, 4 hours of CP time should be deducted. Otherwise, this time was reasonable.

47.     <u>Costs and Post-Trial Motions</u>: Plaintiffs seek 68.6 hours of attorney time and 0.8 of paralegal time for this task. This time is reasonable.

48.     <u>Miscellaneous</u>: Plaintiffs seek 175.75 hours of attorney time and 9.6 hours of paralegal time for these tasks.

These tasks span a period of roughly 31 months and comprise a wide variety of activities that are part of a case. These tasks include internal communications, some of which are sometimes only recorded by one attorney, communications with clients, communications with opposing counsel, review of filings, docket entries and Court Orders, review of documents and videos, factual research and fact gathering from public sources, such as sheriff's policies, communications with experts and the jury consultant, discussions with other attorneys, review of the Court's Standing Orders and Local Rules, sealing issues, preparing the co-counseling agreement,

All these things take time. All that time adds up. The entries mainly appear reasonable with the exceptions noted below:

The 12/16/21 JM entry seeks compensation for 0.9 hours for attending a hearing. This was a hearing on trial scheduling, so it was appropriate to have two attorneys attend.

The 8/10/22 trip to Sonoma by CP and BG for an in-person get together of counsel was not a necessary expense for a local case. It does not appear that any of the witnesses were at this

meeting, or were unable to communicate over Zoom. It is recommended that 0.8 of CP travel time and 2.2 hours of JM travel time should be deducted.

Plaintiffs' counsel also took a trip to Las Vegas around the beginning of September 2022. At least one of the clients lived in Las Vegas, but it does not seem reasonable to stick Defendants with paying travel time for flying three lawyers there, when the meeting could have been done by Zoom, or the client(s) could have flown to the Bay Area, or the meeting could have been done in conjunction with trial. Accordingly, the following deductions for travel time are recommended:

The CP 8/31/22 CP is block billed for a trip to Las Vegas and document review. A 3-hour reduction is recommended.

The BG 9/3/2022 entry should be reduced by 4.5 hours for travel time.

The CP 9/4/2022 entry should be reduced by 5.75 hours for travel time.

The BG 9/4/2022 entry should be reduced by 5.9 hours for travel time.

The JM 9/21/22 JM entry for filing documents should be reduced by 0.1 because it is an administrative task.

A few CP entries e.g., 1/9/23 "write, review & respond to email to/from JSM/BKG/CD" for 2.5 hours are too vague to properly assess for reasonableness. Between 12/28//22 and 3/3/23, CP spent 30.25 hours with similarly vague entries. It is impossible to tell whether this was a reasonable amount of time for internal emails and meetings for which nobody else billed. Such time should be reduced by 25% for a deduction of 7.5 hours.

### 2. Fees Incurred After Filing Motion for Attorney's Fees

1. <u>Cost Bill</u>: Plaintiffs seek 1.1 hours of attorney time for preparing a bill of costs. This amount is reasonable.

2. <u>Motion for attorney's fees and non-statutory costs</u>. This project is a continuation of their work on the fee motion, which is partially captured in project 47 above. Plaintiffs seek 68.8 hours of attorney time and 10.8 hours of paralegal time for this project. This project included preparing all the exhibits to the fee motion, obtaining all the declarations from third parties, working with the expert, meeting and conferring with opposing counsel and preparing the reply and the prehearing portions of the proceedings regarding fees.

Defendants take issue with the amount of time that Plaintiffs spent, a substantial amount of which involved complying with the Court's Order to break down their fees by project. This task is arduous and is not appropriately relegated to a non-attorney. The time spent on this project was reasonable.

3. <u>Rule 50 and 59 Motions</u>: Plaintiffs spent 96 hours of attorney time and 1.2 hours of paralegal time on this project. This time was reasonable. The project included opposing Defendants' post-trial motions, answering the Court's questions regarding the Bane Act, and preparing for and attending the hearing on the motions. A few of the entries reflect small amounts of time related to the Special Master proceedings (*e.g.*, BG 5/10/2023 entry, BG 5/11/2023 entry). These entries are case related and do not warrant any reduction.

The 5/11/2023 BG time entry reflects travel to and from Santa Rosa. It is unclear from the records, which attorney argued the hearing (both JM and BG were present). It is recommended that 3 hours of BG time be deducted to account for unnecessary travel and/or duplication for having multiple attorneys at the hearing.

4. <u>Rule 11 Motion</u>: Plaintiffs spent 5.1 hours of attorney time on this project. Even though the motion was denied, the time was spent in furtherance of the case. The amount of time spent was reasonable.

5. <u>Collections</u>: Plaintiffs spent 4.5 hours on this project. That time was reasonable.

6. <u>Motion for Interest and Bane Act Penalties</u>: Plaintiffs spent 9.7 hours of attorney time and 2.5 hours of paralegal time on this project. That time was reasonable.

7. <u>Motion to Compel Defense Billing Records</u>: Plaintiffs spent 6.5 hours on this project. That time was reasonable.

8. <u>Appellate Proceedings</u>: Plaintiffs spent 3.3 hours on this project. Determination of this issue should be reserved and calculated with fees on appeal, if Plaintiffs recover them.

9. <u>9th Circuit Mediation Program</u>: Plaintiffs spent 4 hours on this project. This is also an appellate issue that is best resolved after appeal.

10. <u>Opposing Defendants' Motion to Stay Enforcement</u>: Plaintiffs spent 5.6 hours on this project. These amounts are reasonable.

11.    <u>Miscellaneous</u>: Plaintiffs spent 18.4 hours on these projects. These projects largely consist of reviewing Court filings and Orders, communications with Court staff, communications with opposing counsel, and communications with clients that did not fit under other headings. This time is reasonable.

### 3.    Fees Between June 5, 2023 and June 21, 2023

1.    <u>Motion for attorneys' fees and non-statutory costs</u>. Plaintiffs spent 24.6 attorney hours and 0.6 paralegal hours on this project. This project included preparing for and attending the hearing on the fee motion, providing billing information requested by the Special Master, and preparing the supplemental brief on the Bane Act. All three attorneys for Plaintiffs attended the hearing, but this was not unreasonable because each one's presence was necessary to answer potential questions on their billing. This time was reasonable.

2.    <u>Rule 50 & 59 motions</u>. Plaintiffs seek 2.9 hours for this project, which comprises review and analysis of the Court's Order on Defendants' post-trial motions. This was a lengthy Order. The time spent was reasonable.

3.    <u>Miscellaneous</u>. Plaintiffs seek compensation for 4.3 hours in miscellaneous tasks, including communications with clients, review of Court Orders, and communications with opposing counsel. This time was reasonable.

## III.    MULTIPLIER

Plaintiffs seek a multiplier of two on their fee award (Mot. at 14). Under federal law, there is a strong presumption that the lodestar method sufficiently compensates the plaintiff. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). Under California law, however, courts have wider discretion to consider a multiplier. *See*, *e.g*., *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). In cases involving overlapping state and federal claims, federal courts apply state law and thus should consider whether a multiplier is appropriate. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478-79 (9th Cir. 1995) (affirming award of 2x multiplier where "Plaintiffs succeeded on both federal and state statutory grounds" and holding "The trial court did not err in applying state law to calculate the fees available under state law."); *Chaudry v. City of Los Angeles*, 751

1  F.3d 1096, 1112 (9th Cir. 2014) ("We have held that when a plaintiff succeeds on both federal and

2  state claims that support a fee award, the state-law multiplier is available.").

3      California law views a multiplier as a way to true up plaintiffs' lawyers who take large risks

4  or take cases that require extraordinary skill. To decide if a multiplier should be awarded, "the

5  court determines, retrospectively, whether the litigation involved a contingent risk or required

6  extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate

7  the fair market rate for such services." *Ketchum*, 24 Cal. 4th at 1132.

8      Here, Plaintiffs' Bane Act claim mirrors their § 1983 claims. Thus, as in *Mangold* and

9  *Chaudry*, Plaintiffs are eligible for a multiplier. A multiplier, however, is not recommended here.

10 This case involved some risk of loss, but that risk was not extraordinary. It also required skill to

11 win, and the result leaves no doubt that Plaintiffs' counsel were highly successful. These factors are

12 mainly addressed within the recommended hourly rates.

13     Plaintiffs did, however, incur some risks that were unnecessary. When an attorney is paid

14 on a contingent basis, counsel have some built-in incentives to be efficient. The time they spend

15 often represents lost opportunity costs, and every hour they put into a case makes the risk of losing

16 more profound. Counsel taking on a contingency case can reasonably estimate how much risk of

17 loss they are assuming by assessing how much work will be required to successfully litigate the

18 case, and what the chance of success/failure is. A plaintiff should not, however, have to assume the

19 risk that a defendant will misuse the legal process to increase the costs of litigation. Applying a

20 multiplier to the legal fees incurred from such conduct is consistent with the purpose of applying a

21 multiplier, *viz.*, to compensate for extraordinary contingent risks. *Ketchum*, 24 Cal. 4th at 1132.

22     Plaintiffs have identified instances where they claim that Defendants unreasonably

23 increased their costs by propounding voluminous written discovery to Plaintiffs (May Decl. ¶¶ 21).

24 Propounding 421 written discovery requests is excessive in a case about one morning's events in a

25 parking lot, especially when better information is available through deposition. Plaintiffs also

26 complain that Defendants asked a number of inappropriate questions at Plaintiffs' depositions, such

27 as asking whether they trafficked drugs, and inquiring into their personal relationships (*Ibid.*).

28 Plaintiffs also claim that Defendants withheld evidence (May Reply Decl. ¶ 5). If the amount of

1   time related to this conduct were proven, a multiplier on those fees for creating needless risk

2   beyond what counsel should have to anticipate would be warranted. The record, however, does not

3   identify these amounts. Nor do they seem to be of significant magnitude. Accordingly, a multiplier

4   on those grounds is not recommended.

5        Additionally, Plaintiffs claim that Defendants made a number of inaccurate statements to

6   the Court that required correction, necessitating them to spend extra time on the case. The amount

7   of time spent on such issues is also impossible to isolate, and is accounted for under the time

8   Plaintiff's counsel spent on the projects above. It was also considered in apportioning the Special

9   Master's fees, as noted below.

10   **IV.     NON-STATUTORY COSTS**

11        Costs that do not fall under 28 U.S.C. § 1920 may be recovered by a prevailing plaintiff.

12   *See Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (noting that plaintiff "may recover as

13   part of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee

14   paying client'") (quotation omitted).

15        Mr. Gearinger seeks to recover costs for obtaining legislative history, obtaining transcripts,

16   investigations, depositions, a hotel near Court for trial, Federal Express, parking, printing and a

17   CPA expert (Gearinger Decl., Ex. C and 6/5/2023 Submission). All those costs are reasonable, are

18   costs that a client would pay, and should be paid. Mr. Gearinger also seeks to recover for a trip to

19   interview his clients in Las Vegas, airport parking related to the trip, and an Uber and hotel related

20   to the trip. Those costs, $617.31, should not be allowed because this interview could have been

21   done by Zoom or when the clients came to California for trial.

22        Mr. May seeks to recover non-statutory costs for transcripts and jury consultant services

23   (May Decl., Ex. H). All his costs are reasonable and should be paid.

24        Mr. Peters seeks to recover costs for demonstratives, jury consulting services, transcripts,

25   the focus group, copies, Westlaw, parking for trial, and the expert (Peters Decl., Ex. B). Such costs

26   are reasonable and should be paid. Mr. Peters also seeks to recover costs for meals and Lyfts.

27   Sometimes clients pay for those costs, especially during trial and on exceptionally long days. It is

28   recommended that Mr. Peters costs are approved except for the following entries from after trial:

| 3/6/23 | Lyft | $11.71 |
|--------|------|--------|
| 3/6/23 | Trader Joe's | $80.38 |
| 3/6/23 | Lyft | $13.99 |
| 3/6/23 | Regent Catering FCS | $12.80 |
| 3/6/23 | Lyft | $12.72 |
| 3/6/23 | Philz Coffee | $37.50 |
| 3/6/23 | Bentobox | $16.29 |
| 3/6/23 | Lyft | $39.61 |
| 3/6/23 | Lyft | $11.99 |
| 3/6/23 | Lyft | $10.67 |
| 3/6/23 | Lyft | $12.81 |
| 3/6/23 | Thai Idea | $56.66 |
| 3/6/23 | Lyft | $10.99 |
| 3/6/23 | Lyft | $14.44 |
| 3/6/23 | Lyft | $13.95 |
| 3/6/23 | Lyft | $17.10 |
| 3/6/23 | Bini's Kitchen | $23.15 |
| 3/6/23 | Lyft | $17.45 |
| 3/6/23 | Lyft | $13.99 |
| 3/6/23 | Lyft | $11.85 |

This totals $440.5.

## V.    SPECIAL MASTER'S FEES

Disputes over attorney's fees are common, and they can be messy, protracted and emotional. It is routine to evenly split the Special Master fees for resolving such matters. In this case, however, it is recommended that Defendants bear the Special Master costs because Defendants occasioned the bulk of them. There was merit to Defendants' arguments about the CP time, and they raised a few other points that were reasonable, even if they ultimately did not prevail. But the vast majority of their objections, such as objecting to every project, or arguing that Plaintiffs should receive $0 or just a few thousand dollars for projects that took Defendants hundreds of hours, were not reasonable positions and just made more work for everyone. By failing to comply with the Court's Order to provide their own time broken down by project, Defendants increased the amount of work that had to be done by the Special Master.

Further, there is merit to Plaintiffs' contention that Defendants have not been accurate in their arguments. By way of example, in their Opposition to Plaintiffs' Motion for Attorneys' Fees and Non-Statutory Costs, Defendants argued that the version of the Bane Act operative at the time

of the underlying events did not enable private parties to recover attorney's fees (Opp. at 20 n.11). After supplemental briefing was ordered on this point, Defendants acknowledged that *Schmid v. City & County of San Francisco*, 60 Cal. App. 5th 470 (2021), rejected this argument and held that the statutory language Defendants were relying on was a "scrivener's error." *Id*. at 482 n.6. In their Brief Regarding Applicability of Attorney-Client Privilege to Legal Invoices at pages 2-3, Defendants cited numerous state-law decisions concerning privilege without citing Ninth Circuit case law holding that state law does not apply (Interim R&R at 1). In their Opposition to the fee motion at 19-20, Defendants claimed that multipliers are not permitted under federal law, without clearly explaining that the Ninth Circuit has held that in cases involving § 1983 and the Bane Act, multipliers are available (the relevant Ninth Circuit case is cited in footnote 10 for the proposition that multipliers are not available under federal law). Page 13 of Defendant's Opposition to the fee motion cites *Human Rights Defense Center v. County of Napa*, 2021 WL 1176640, using the parenthetical "approving hourly rates of $950 for an attorney with about 40 years of experience," which is truthful, but omits that the Court also approved hourly rates of $1,100 for a different attorney.[6] These types of statements increased the amount of work through no fault of Plaintiffs. The attendant costs are more appropriately borne by Defendants.

The Special Master spent 42 efficient billable hours preparing this Report & Recommendation for a total of $8,400.

## CONCLUSION

For the foregoing reasons it is recommended that Defendants pay Plaintiffs $1,644,656 in attorney's fees, $42,948.15 in non-statutory costs, and pay the Special Master's fees of $8,400.

Dated:  June 30, 2023

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By: _____

Matthew Borden

---

[6] It appears from the materials Plaintiffs have submitted that similar issues occurred in the District Court proceedings (May Decl. ¶ 21; May Reply Decl., Ex. K at 7-8.)

# APPENDIX A

Matthew Borden, Esq. (SBN: 214323)
  borden@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

*Special Master*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

AASYLEI LOGGERVALE; AASYLEI
HARDGE-LOGGERVALE; and AAOTTAE
LOGGERVALE,

            Plaintiffs,

      v.

COUNTY OF ALAMEDA; STEVEN
HOLLAND; MONICA POPE; KEITH
LEEPER; ANTHONY DeSOUSA; CAMERON
GALLOWAY; and DOES 1 to 50, inclusive,

            Defendants.

Case No. 20-cv-04679-WHA

**SPECIAL MASTER'S INTERIM REPORT
& RECOMMENDATION RE:
DEFENDANTS' PRODUCTION OF
INVOICES**

1    At the initial conference between the parties, Defendants were asked to produce their

2  invoices for legal services in this matter. In response, they asserted that the invoices were

3  privileged and alternatively that it would take a month to get authorization from the County to

4  produce them. Defendants were given the opportunity to file a brief supporting their claim of

5  privilege. Because Defendants' submission does not sustain their blanket assertion of privilege,

6  they are required to produce their invoices.

7    Defendants' brief focuses on state law decisions discussing privilege under California

8  Evidence Code § 952. The Ninth Circuit, however, has held that when a case involves claims under

9  both federal and state law, and "the same evidence relates to both federal and state law claims,"

10  then "federal privilege law governs." *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014) (applying

11  federal privilege law in case involving claims under 42 U.S.C. § 1983 and related state-law claims)

12  (internal citations and quotations omitted); *see also In re TFT-LCD (Flat Panel) Antitrust Litig*.,

13  1158-59 (9th Cir. 2016) (applying federal privilege law in case involving federal antitrust claims

14  and state-law analogs, in which federal claims had been dismissed). Here, Plaintiffs have asserted

15  factually similar claims under federal and state law. Federal law regarding privilege therefore

16  controls, and the state-law decisions cited by Defendants do not apply.

17    The Ninth Circuit also has held that legal invoices are generally not privileged. In *Clarke v.*

18  *American Commerce National Bank*, 974 F.2d 127 (9th Cir. 1982), the Court affirmed an order

19  requiring the defendant to produce legal invoices on the ground that "the attorney billing statements

20  are not protected by the attorney-client privilege, and were therefore properly ordered disclosed."

21  *Id*. at 130. The Court reasoned that while billing records could potentially reveal legal strategies,

22  the statements at issue "contain[ed] information on the identity of the client, the case name for

23  which payment was made, the amount of the fee, and the general nature of the services performed.

24  Our previous decisions have held that this type of information is not privileged. We find nothing in

25  the statements that reveals specific research or litigation strategy which would be entitled to

26  protection from disclosure." *Id*. at 130.

27    Defendants appear to assert that *Clarke* should not control here because *Clarke* did not

28  address "the special nature of attorney-client privilege in invoices when a litigation is still pending"

(Def. Br. at 3). Nothing in *Clarke*, however, turned on whether the billing records involved active litigation.[1] Rather, the decision was based on the content of the invoices and the fact that "Our decisions have recognized that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure." *Clarke*, 974 F.2d at 129. Virtually every dispute over attorney's fees involves litigation that is still pending, and parties on both sides produce their time notes to establish, or challenge, reasonableness.

A blanket assertion of privilege is unsupported. Defendants have not shown that their invoices reveal anything beyond what was found to be non-privileged in *Clarke*, *i.e*., the timekeepers, the amounts billed, and the general nature of the services performed. To the extent that Defendants believe in good faith that parts of their invoices contain privileged information, they may redact those specific portions.

In recognition of Defendants' assertion that the production of their invoices implicates attorney-client privilege, an Interim Report & Recommendation has been prepared, which Defendants can challenge in Court immediately if they choose to do so. If not, this Interim Report & Recommendation will be incorporated into a final Report & Recommendation, which any party can challenge after it issues without waiver. If Defendants do not seek instant review of this Interim Report & Recommendation, they shall produce their invoices for this matter by **May 15, 2023**.

Dated: May 11, 2023                                    Respectfully submitted,

                                                        _____
                                                        Matthew Borden
                                                        *Special Master*

---

[1] *Clarke* involved a subpoena that sought all invoices from a bank's various outside counsel from a date beginning shortly before the litigation to enforce the subpoena was commenced. *See id*. at 128. While the opinion does not address whether any of the litigation was active, there is no reason to assume that all the bank's litigation had concluded.

# APPENDIX B

| Project | Amount Requested | Recommended Deduction | Recommended Total |
| --- | --- | --- | --- |
| Case intake | $10,515 | 0 | $10,515 |
| Research on Tort Claims Act | $5,440 | 0 | $5,440 |
| Complaint | $24,362 | $840 | $23,522 |
| First written discovery | $7,885 | 0 | $7,885 |
| Research | $4,805 | 0 | $4,805 |
| Initial CMC | $1,140 | 0 | $1,140 |
| Initial Disclosures | $1,580 | 0 | $1,580 |
| Challenging confidentiality | $42,829.50 | $1,200 | $41,630 |
| Responding to Written Disco | $20,280 | $700 | $19,580 |
| Settlement Conference | $30,955 | $1,750 | $29,205 |
| Holland deposition | $19,650 | $2,805 | $16,845 |
| First motion to compel | $19,065 | $1,700 | $17,365 |
| Transcribing body cam videos | $2,465 | $0 | $2,465 |
| Plaintiffs MSJ | $59,200 | $350 | $58,850 |
| Amending to add Galloway | $0 | | 0 |
| Opposing MTD on FAC | $20,390 | $1,700 | $18,690 |
| Deposition of Pope | $8,700 | $1,700 | $7,000 |
| Second set of written disco | $6,890 | $0 | $6,890 |
| Amendment to PO | $700 | $0 | $700 |
| Second MTC | $2,090 | $0 | $2,090 |
| Motion re deposition conduct | $7,807.50 | $775 | $7,033 |
| SAC | $4,090 | $0 | $4,090 |
| Experts | $9,615 | $0 | $9,615 |
| Responding to 2nd Written Disco | $4,195 | $0 | $4,195 |
| Depostions of plaintiffs | $40,305 | $4,295 | $36,010 |
| Deposition of Leeper | $10,215 | $1,700 | $8,515 |
| First MTC 30(b)(6) deposition | $15,485 | $0 | $15,485 |
| Expert depositions | $16,590 | $2,295 | $14,295 |
| Deposition of DeSoussa | $9,505 | $1,820 | $7,685 |
| Deposition of Galloway | $7,045 | $980 | $6,065 |
| Depositions of 30(b)(6) witnesses | $38,794.50 | $2,250 | $36,545 |
| Second MTC 30(b)(6) witnesses | $955 | $0 | $955 |
| Defendants' MSJ | $71,100 | $2,805 | $68,295 |
| Jury consultant | $11,865 | $0 | $11,865 |
| Motion for reconsideration | $11,900 | $0 | $11,900 |
| Trial prep 2021 | $75,340 | $0 | $75,340 |
| MILs 2021 | $38,985 | $0 | $38,985 |
| Vaccination issue | $13,830 | $0 | $13,830 |
| Trial prep 2022/2023 | $263,690 | $11,750 | $251,940 |
| Mock trial/focus group | $24,677.50 | $0 | $24,678 |
| Settlement negotiations | $1,050 | $0 | $1,050 |
| PTC | $17,065 | $0 | $17,065 |
| Trial | $209,120 | $20,900 | $188,220 |
| Charging Conference / Rule 50 | $73,575 | $3,088 | $70,488 |
| Transcripts / video for trial | $1,960 | $0 | $1,960 |
| Completing trial | $54,217.50 | $4,010 | $50,208 |
| Costs and post-trial motions | $53,375 | $0 | $53,375 |
| Misc | $148,834.50 | $26,567.50 | $122,267 |
| | | | |
| **Post-Fee motion projects** | | | |
| | | | |
| Cost bill | $815 | 0 | $815 |
| Fee motion | $53,175 | 0 | $53,175 |

| | | | |
|---|---|---|---|
| Rule 50 and 59 motions | $71,865 | $2,550 | $69,315 |
| Rule 11 motion | $3,570 | 0 | $3,570 |
| Collections | $3,525 | 0 | $3,525 |
| Motion for interest and penalties | $7,780 | 0 | $7,780 |
| MTC Defendants' bills | $4,595 | 0 | $4,595 |
| Appellate proceedings | $2,685 | $2,685 | $0 |
| 9th Circuit mediation | $2,980 | $2,980 | $0 |
| Opposing stay motion | $3,920 | 0 | $3,920 |
| Misc. | $14,940 | 0 | $14,940 |
| | | | |
| **June 5-21 Fees** | | | |
| | | | |
| Fee motion | $18,835 | 0 | $18,835 |
| Rule 50 and 59 motions | $2,285 | 0 | $2,285 |
| Misc | $3,625 | 0 | $3,625 |
| | | | |
| Paralegal time - fee motion | $38,610 | $11,880 | $26,730 |
| Paralegal time - post fee motion | | | $3,262.50 |
| Paralegal time - 6/5-6/21 | | | $135 |
| | | | |
| | | | |
| **Totals** | $1,757,333 | 116075 | **$1,644,656** |