UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AASYLEI LOGGERVALE, AAOTTAE LOGGERVALE, and AASYLEI HARDGE-LOGGERVALE<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN HOLLAND, MONICA POPE, and COUNTY OF ALAMEDA,<br><br>Defendants. | No. C 20-04679 WHA<br><br>**ORDER ADOPTING SPECIAL MASTER REPORT AND RECOMMENDATION AS MODIFIED** |

Except to the extent described below, the report and recommendation submitted by Special Master Matthew Borden is **AFFIRMED AND ADOPTED IN FULL**. The following are rulings on the outstanding objections submitted by the parties.

**RULINGS ON OBJECTIONS**

1. **DEFENDANTS' OBJECTION NO. 1**.

Defendants object to fees relating to the 2021 trial preparation on the basis that plaintiffs were not vaccinated due to their own personal medical choice, which ultimately resulted in the trial delay. COVID-19 resulted in many unforeseen complications and delays in the district court, not unlike the case at bar. The work could have been re-purposed for the trial that did happen in 2023. The objection is **OVERRULED**.

2. **DEFENDANTS' OBJECTION NO. 2**.

Defendants object to instances where two attorneys attended the same proceeding on the basis that such time entries resulted in duplicative work. The general guideline is that one attorney should bill for one proceeding. Special Master Borden, however, reasonably allowed some instances and made deductions where appropriate. This order will not disturb his analysis. The objection is **OVERRULED**.

3. **DEFENDANTS' OBJECTION NO. 3**.

Defendants object to Attorney Craig Peters' billing practices and request a reduction of 50% of his lodestar amount. A further reduction of 10% — in addition to the 10% already deducted by Special Master Borden — will be applied. It is regretful that the two firms who initially developed the case bought a case that they were in fact unable to try themselves, necessitating a third firm. This is further compounded by Attorney Peters' extensive block-billing and the reconstruction of his time after the fact. An additional 10% deduction will be made. Thus, Attorney Craig Peters will receive a total of $278,597 in attorney's fees through March 3, 2023 — the total after a 20% deduction from his originally estimated total fees of $348,246.25 (*i.e.* 366.55 hours at $950 an hour) (Dkt. No. 254-3 at 12). Defendants' objection in this regard is **GRANTED IN PART AND DENIED IN PART**.

4. **DEFENDANTS' OBJECTION NO. 4**.

Defendants object to plaintiffs' use of a "mock jury/focus group" and a jury consultant. Such expenses are common in litigation and were not abused in this instance. This objection is **OVERRULED**.

5. **PLAINTIFFS' OBJECTION**

Plaintiffs' single objection to Special Master Borden's report is his decision to decline applying a state-law multiplier to the lodestar amount. Because plaintiffs here prevailed on overlapping state and federal law claims, state law applies and the enhancement is available. *See Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478–79 (9th Cir. 1995). Unlike with federal law, under California law, a multiplier for a contingent contract is permitted to

1  compensate a lawyer who bears the risk of not being paid if the suit does not succeed.  "Of course,
2  the trial court is not *required* to include a fee enchantment for contingent risk, exceptional skill, or
3  other factors, although it retains discretion to do so in the appropriate case; moreover, the party
4  seeking a fee enhancement bears the burden of proof."  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138
5  (2001) (emphasis in original).  Plaintiffs argue a multiplier is appropriate here because applicable
6  state law standards weigh in favor of an upward adjustment, namely due to (1) the novelty or
7  complexity of the case, (2) the demonstrated preclusion of other employment and (3) the
8  extraordinary result achieved by counsel (Br. 4 – 6).

9      *First*, plaintiffs state Special Master Borden failed to account for the novelty, difficulty, or
10 complexity of the case when considering whether a multiplier was appropriate.  In particular,
11 plaintiffs point to "the repeated substantive misrepresentations of fact and law by defense
12 counsel," and how the defense's "scorched earth approach and creative and unprecedented
13 arguments further complicated the matter" (Br. 4).  Although in *Ketchum* the California Supreme
14 Court identified "the novelty and difficulty of the questions involved" as one of the applicable
15 factors to be considered, such is not synonymous with how difficult *opposing counsel* was in the
16 case.  Indeed, the decision took care to point out that an enhancement  "may not be properly
17 imposed merely for the purpose of punishing [defendant]."  *Id*. at 1138.  The defendant there
18 allegedly threatened to "keep [plaintiff] in court" because he "could 'afford the best lawyers while
19 [plaintiff] could obtain only 'cheap legal aid.'"  Defense counsel in that case also overtried the
20 fees motion, "somewhat like building a sandcastle at low tide."  *Id.* at 1127, 1129.  Regardless, the
21 decision cautioned that a multiplier should not be applied on the basis of the court's disapproval of
22 the losing party's litigation strategy.   So too here.

23     Plaintiffs also state under this factor that they were able to successfully persuade the Court
24 that reasonable suspicion is required to check a disabled person parking pass, despite this question
25 not being directly answered by case law (Br. 4).  It is true this and other issues such as the *Arturo*
26 *D*. exception were implicated in this case and that the understanding of these issues evolved over
27 time.  However, because it seems a significant portion of plaintiffs' argument in this regard is
28 premised on how difficult defense counsel made the case due to his "aggressive, obstructionist and

3

1   dishonest" tactics, (Br 4.), this factor does not weigh in favor of a multiplier.

2   *Second*, plaintiffs say Special Master Borden failed to consider the fact that Attorneys Gearinger and Peters forwent other employment opportunities, and, somewhat inconsistently, that Attorney May delayed closing his practice due to this matter. "The extent to which the nature of the litigation precluded other employment by attorneys" is a relevant factor to consider under *Ketchum*. *Ibid*. This factor appears to be true at least as to one, maybe two, of the three attorneys, but the descriptions of what exact cases were precluded remain vague. This factor weighs slightly in favor of a multiplier.

*Third*, citing *Chaudhry v. City of Los Angeles*, 751 F.3de 1096, 1110 (9th Cir. 2014), plaintiffs argue that the level of success here (as measured by the jury verdict amount) weighs in favor of applying the state-law multiplier. "Level of success," however, is not a factor to be considered under *Ketchum* or its underlying case *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977) ("*Serrano III*"). Rather, this is a relevant factor for considering when to adjust the lodestar upward or downward under *federal* law. Here, plaintiffs are asking for California law to apply to consider whether a multiplier should be added, which includes (in part) consideration of the risks inherent in contingency representation. This distinction is important because such a multiplier is not available for federal claims. *See City of Burlington v. Dague*, 505 U.S. 557, 562–66 (1992). Thus, plaintiff's argument is more likened to the appropriate *Ketchum* factor of counsels' "skill in presenting the case." *Ketchum* spoke at length regarding the danger of "improper double counting" on this basis, however, stating "[a] trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation. Otherwise, the fee award will result in unfair double counting and be unreasonable." *Id.* at 1139, 1142.

It cannot be said that plaintiff counsel's representation "far exceeded" other attorneys at their level in this case. Counsel missed the mark on several important points of law during the trial. For example, plaintiff attorney Joseph May argued the mere fact of an unlawful detention necessarily established an excessive force violation, because *any* force in an unlawful arrest would

4

supposedly be excessive. Plaintiffs even proposed not having a separate excessive force question on the verdict form on this basis (Tr. 717:21 – 718:22). That argument was later revealed to have been flatly rejected in *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 (9th Cir. 2015), a published court of appeals case brought to light by the Court's law clerk, which plaintiffs' counsel admitted they did not know about or read (Tr. 973:12 –975:19). Further, as explained at length in the order denying motion for a new trial and judgment as a matter of law (Dkt. No. 304), plaintiffs overreached with damages under the Bane Act by not only asking for treble damages under Section 52(a), but also punitive damages under Section 52(b). Based on the work completed by the Court in the post-trial motions, this was a mistake — plaintiffs' counsel should not have asked for both. These shortfalls cannot be classified as the "extraordinary legal skill" required to justify a lodestar multiplier. *Ketchum*, 24 Cal. 4th at 1132. This factor weighs against.

It should be observed that this is not a case in which a multiplier might be considered because there was no contingency fee agreement and a fee award would be the only compensation. Instead, this is a case in which counsel negotiated a fifty-percent contingent fee with the clients (after the verdict no less). Thus, of the $8.25 million verdict, counsel will get $4.125 million (and plaintiffs will get half of the award). The objection is **OVERRULED**.

**IT IS SO ORDERED.**

Dated: August 22, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5